Alan L. Sullivan (3152)
Amber M. Mettler (11460)
SNELL & WILMER L.L.P.
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah  84101
Telephone:  801.257.1900
Facsimile:  801.257.1800
Email: asullivan@swlaw.com
        amettler@swlaw.com

Steven M. Gombos (pending *pro hac vice*)
Gerald Ritzert (pending *pro hac vice*)
Ritzert & Leyton PC
11350 Random Hills Road #400
Fairfax, Virginia 22030
Telephone: 703.934.2660
Facsimile: 703.934.9840
Email: sgombos@ritzert-leyton.com
        gritzert@ritzert-leyton.com

*Attorneys for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CENTER FOR EXCELLENCE IN HIGHER EDUCATION, an Indiana Corporation, <br><br> *Plaintiff*, <br><br> v. <br><br> JOHN B. KING, JR., in his official capacity as Secretary of the United States Department of Education; UNITED STATES DEPARTMENT OF EDUCATION; and UNITED STATES OF AMERICA, <br><br> *Defendants*. | **COMPLAINT AND JURY DEMAND** <br><br> Case No. 2:16-cv-00911-PMW <br><br> Magistrate Judge Paul M. Warner |

**A1**

## COMPLAINT AND PRAYER FOR RELIEF

Plaintiff, Center for Excellence in Higher Education, Inc. ("Plaintiff" or "CEHE"),

alleges the following, by and through its attorneys, for its complaint against Defendants  John B.

King, Jr., in his official capacity as Secretary of the United States Department of Education

("King" or the "Secretary"),  the United States Department of Education (the "Department"), and

the United States of America (the "United States"):

## PARTIES

1.       CEHE is a tax-exempt, nonprofit corporation under section 501(c)(3) of the

Internal Revenue Code ("IRC"), incorporated under the laws of the State of Indiana, with its

principal place of business at 4021 S 700 E, Suite 400, Salt Lake City, Utah 84107.

2.       John B. King, Jr. is the Secretary of the Department.  His official address is 400

Maryland Avenue, S.W., Washington, D.C. 20202.  He is being sued in his official capacity.  In

that capacity, King has overall responsibility for the operation and management of the

Department.   King, in his official capacity, is therefore responsible for the Department's acts

and omissions alleged herein.

3.       The United States Department of Education is, and was at all times relevant

hereto, an executive agency of the United States Government.  The Department, in its current

form, was created by the Department of Education Organization Act of 1979, 20 U.S.C. § 3401

*et seq.*, Pub. L. No. 96-88, 93 Stat. 668.  The Department is headquartered at 400 Maryland

Avenue, S.W., Washington, D.C. 20202.

4.       The United States of America is the federal government formed under the

Constitution of the United States, with its capital in Washington, D.C.

**A2**

**JURISDICTION AND VENUE**

5.      This action arises under the Higher Education Act of 1965, 20 U.S.C. § 1001, *et seq.* ("HEA").  This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331.  The Court is authorized to issue the nonmonetary relief sought herein pursuant to 28 U.S.C. §§ 2201, 2202.

6.      Venue is proper in this Court under 28 U.S.C. § 1391(e)(l) because this is an action against the United States, an officer of the United States, and an agency of the United States.  A substantial part of the events or omissions giving rise to this action occurred in this judicial district.  Plaintiff resides in this judicial district.  No real property is involved in the action.

**FACTUAL ALLEGATIONS**

**A.      CEHE Acquires Ownership of Formerly Proprietary Colleges**

7.      CEHE is a nonprofit public benefit corporation incorporated under the Indiana Nonprofit Corporation Act of 1991 ("the Act") on December 22, 2006.

8.      Founded by philanthropists who had donated millions of dollars to colleges and universities in the United States and who were concerned about higher education's continuing decline, CEHE was organized for the purpose of promoting excellence in higher education by working with philanthropists, institutions of higher education, and charitable organizations to develop and implement research and educational programs designed to ensure that American colleges and universities were training students for the challenges of a global marketplace. CEHE's founders believed that through effective philanthropy, due diligence, proper

**A3**

governance, and management accountability, America's colleges and universities could be transformed into high-performing institutions that prepare today's students to be tomorrow's leaders.

9.     CEHE is authorized under its articles of incorporation to pursue these purposes— as well as to assist and engage in all activities which serve chartable, educational, literary and scientific purposes, which are permitted to be carried on by nonprofit corporations under the Act and under the provisions of section 501(c)(3) of the IRC.

10.     CEHE's founding Board of Directors consisted of Michael Leven, representing the Marcus Foundation, James Arthur Pope, representing the John William Pope Foundation, and Charles Harper, from the Templeton Foundation.

11.     On September 4, 2007, the Internal Revenue Service ("IRS") classified CEHE as a public charity under 509(a)(1) and 170(b)(1)(a)(vi) of the IRC and exempt under section 501(c)(3) of the IRC from federal income taxation.  See **Exhibit 1** (September 4, 2007 IRS 501(c)(3) Determination Letter).

12.     On that date, the IRS issued CEHE a determination letter classifying CEHE as a tax-exempt nonprofit corporation under section 501(c)(3) of the IRC.  The determination letter also confirmed that contributions to CEHE were tax deductible under section 170 of the IRC.

13.     In 2012, after years of evaluating and commenting on higher education, CEHE began exploring the opportunity of tackling head-on the challenges facing higher education by becoming a direct provider of higher education.

14.     Those investigations culminated in negotiations for CEHE to merge its operations with those of Stevens-Henager College, Inc., a Utah corporation; CollegeAmerica Denver, Inc., a

Colorado corporation; CollegeAmerica Arizona, Inc., a Colorado corporation; California College San Diego, Inc., a Utah corporation; and CollegeAmerica Services, Inc., a Nevada corporation (collectively, "the Acquired Corporations").

15.    Prior to the merger, the Acquired Corporations were owned and operated by the Carl Barney Living Trust ("CBLT") whose trustee was Carl Barney ("Barney").

16.    Several of the Acquired Corporations owned and operated colleges ("the Colleges") that participated in federal student financial aid programs ("Title IV programs") as eligible proprietary institutions of higher education.

17.    At the time of the negotiations, CEHE's Board of Directors consisted of G.M. Curtis, a retired professor of history at Hanover College and Fellow at the Liberty Fund; Todd Zywicki, George Mason University Foundation Professor of Law, Senior Scholar of the Mercatus Center at George Mason University, and Senior Fellow at the F.A. Hayek Program; and William Dennis, former professor at Denison University and Senior Fellow of the Atlas Economic Research Foundation.

18.    The individuals comprising CEHE's Board of Directors ("the independent board") had no ownership interest in or other affiliation with the Acquired Corporations, the Colleges, the CBLT, or Barney.

19.    Prior to approving the merger, the independent board retained legal counsel, consulted valuation experts, and conducted significant due diligence on the Acquired Corporations, including an evaluation of the fair market value of the Colleges.  See **Exhibit 2** (Declaration of John S. Mercer).

20.     On December 31, 2012, the Acquired Corporations merged with and into CEHE. As a result of the merger, CEHE, as the surviving corporation, acquired ownership and operation of the Colleges as nonprofit colleges within the meaning of section 501(c)(3) of the IRC.

21.     Following the merger, CEHE amended its articles of incorporation and bylaws, which included naming Barney as a member of CEHE and the Chairman of the Board of Directors.  The independent board approved the amendments to CEHE's governance documents before the merger occurred.

22.     CEHE's amended governance documents also added, among others, Todd Zywicki, William Dennis, and G.M. Curtis, former directors of the independent board, to CEHE's Board of Directors.

23.     The Indiana Nonprofit Act of 1991, under which CEHE is incorporated, obligates CEHE's directors, including Barney, to discharge their duties (1) in good faith, (2) with the care an ordinary person in a like position would exercise under similar circumstances, and (3) in a manner the directors reasonably believe to be in the best interests of the corporation.  Indiana Code Ann. § 23-17-13-1.  CEHE's Board of Directors have always made a good faith effort to discharge their duties in compliance with these requirements and, in particular, so acted in their capacity as the independent directors with respect to the merger.

24.     Barney and/or CBLT do not own CEHE's assets under the laws of the State of Indiana, which is where the nonprofit was organized and created.  Similarly, neither have any ownership rights to the assets of CEHE.

**B.      The IRS Approved CEHE as an Educational Organization**

25.      Soon after the merger, CEHE submitted a letter to the IRS requesting

confirmation of its public charity status and reclassification from that of a publicly supported

organization under sections 509(a)(1) and 170(b)(1)(A)(vi) of the IRC to that of an educational

organization under sections 509(a)(1) and 170(b)(1)(A)(ii) ("the determination letter request").

See **Exhibit 3** (February 27, 2013 Post-Merger Request Letter to IRS).

26.      Enclosed with the determination letter request, CEHE included an executed Form

8940, "Request for Miscellaneous Determination," and a completed Schedule B of the IRS Form

1023 with respect to that section of the form applicable to educational institutions.

27.      The determination letter request also provided significant details about the terms

of the merger and related transactions, including all of the information the IRS needed to

determine whether the merger agreement and related financial transactions complied with the

IRS' limitations on private inurement, prohibitions against private benefit, and rules concerning

excess benefit transactions in section 4958 of the IRC.

28.      The determination letter request explained that:

a.   CEHE issued promissory notes for the acquisition of the Colleges in an amount

that reflected their fair market value;

b.   CEHE's independent Board of Directors reviewed the form and amount of

consideration to be paid to the former owner of the Acquired Corporations, and concluded (i)

that the merger provided CEHE with fair market value; (ii) that CEHE would provide a modest

consulting fee, substantially lower than fair market value, to the former owner for his continued

advisory services; and (iii) that leases of land and buildings from the former owner were at fair

market rates; and

       c.    CEHE's independent Board of Directors approved all changes to CEHE's

corporate governance before consummation of the transaction.

       29.    On July 25, 2014, the IRS issued CEHE a determination letter confirming

CEHE's tax-exempt classification under section 501(c)(3) of the IRC.  See **Exhibit 4** (July 25,

2014 IRS Letter Updating Charity Status).  The determination letter further explained that, upon

review of CEHE's determination letter request and supporting documentation, the IRS concluded

CEHE met the requirements for classification as an educational organization as described in

sections 509(a)(1) and 170(b)(1)(A)(ii) of the IRC.

**C.    New Ownership and Control of the Colleges by the Nonprofit Organization
Triggers a Change of Ownership and Control Under the Department's
Regulations**

      30.    Prior to the merger, the Acquired Corporations owned the Colleges and they were

proprietary institutions pursuant to the Department's regulatory definition.  At that time, each of

the Colleges participated in Title IV programs, operating multiple campuses in several states.

All of the Colleges were in good standing with their respective state regulatory agencies,

accrediting bodies, and the Department.

      31.    Upon the merger, the Acquired Corporations merged with and into CEHE,

transferring exclusive ownership and operational control of the Colleges into CEHE, a nonprofit

corporation.

      32.    Following the merger, the Colleges met the definition for a nonprofit institution

under the HEA, as ones "owned and operated by one or more nonprofit corporations or

associations, no part of the net earnings of which inures, or may lawfully inure, to the benefit of any private shareholder or individual." 20 U.S.C. § 1003.

33.     Likewise, the Colleges met the Department's regulatory definition for a nonprofit institution contained in 34 C.F.R. § 600.2.  To wit:

    a.   The Colleges were owned and operated by CEHE, a nonprofit corporation, with no shareholder or individual benefiting from the net earnings of the corporation;

    b.   The Colleges were legally authorized to operate as nonprofit organizations in each state in which they are physically located; and

    c.   The IRS determined that CEHE was a tax-exempt organization to which tax contributions are deductible under 501(c)(3) of the IRC.

34.     Under the Department's regulations, this change in ownership and control terminated the Colleges' eligibility to participate in federal student financial aid programs under the HEA.  34 C.F.R. § 600.31.

35.     Under the HEA, when an institution of higher education undergoes a change in ownership or control, the institution's program participation agreement expires and the institution's eligibility to participate in HEA programs ceases.  34 C.F.R. § 600.31.

36.     While the loss of eligibility to participate in HEA programs occurs when a new owner acquires an institution, the Department also recognizes other kinds of "covered transactions" that result in a change in ownership or control, including when a for-profit institution becomes a nonprofit institution.  34 C.F.R. § 600.31(d)(7); 59 Fed. Reg. 22324 (Apr. 20, 1994); Federal Student Aid Handbook, Volume 2, Chapter 5, p. 2-92 (August 2015).

37.     Indeed, the Department has clarified that a change in an institution's tax status "from a taxable to a tax-exempt entity that qualifies under 501(c)(3) of the Internal Revenue Service. . . constitutes a change of ownership and control."  59 Fed. Reg. 22324 (Apr. 20, 1994).

38.     To reestablish the Colleges' eligibility to participate in HEA programs, the Department's regulations required CEHE to submit applications to the Secretary to approve the Colleges' new owner's participation in Title IV federal financial aid programs.  The Department's regulations permit the Secretary to continue an institution's participation in Title IV programs on a provisional basis while the institution awaits reinstatement of eligibility for the institution's new owner.  34 C.F.R. § 600.20(g).

**D.     CEHE Submits A Change of Ownership Application Through the Department's Pre-Acquisition Review Process**

39.     Given the significant effect a change in ownership has on an institution's participation in Title IV programs, the Department allows institutions anticipating a change in ownership to submit a pre-acquisition review application for its review.  The pre-acquisition review application is submitted via an electronic application ("E-App") system established and maintained by the Department.  The purpose of the pre-acquisition review is to allow the Department to review the proposed change of ownership and identify any concerns, clarifications, or issues it may have before the transaction is consummated.

40.     Although the Department neither approves nor denies a pre-acquisition review application, the Department notifies the institution whether or not the pre-acquisition review application is approvable, if the institution properly completed the E-App, and whether the Department identified any items that need to be addressed before a final application would be approvable.  64 Fed. Reg. 58608 (Oct. 29, 1999).

41.     The purpose of this pre-acquisition review process is to permit the Department to determine whether the institution has completely and accurately answered all the questions in the application.  64 Fed. Reg. 58608; Department of Education, <u>Federal Student Aid Handbook</u>, Vol. 2, Ch. 5, p. 2-94 (August 2015).

42.     The pre-acquisition review process also allows the institution to ascertain what, if any, additional requirements the Department may impose on the institution to re-establish eligibility.  This is the fundamental purpose of the Department's pre-acquisition review process.

43.     CEHE took advantage of the Department's pre-acquisition review process. Before acquiring the Colleges, CEHE apprised the Department of the planned changes to the corporate ownership of the Colleges.

44.     In a letter dated October 2, 2012, counsel for the Colleges informed the Department of the planned merger of the Acquired Corporations into CEHE.  See **Exhibit 5** (October 2, 2012 Pre-Acquisition Review Request Letter).  The letter also informed the Department that CEHE was recognized by the IRS as a nonprofit corporation exempt from federal income taxation since 2007.

45.     Counsel further explained that, upon completion of the merger, CEHE would be the sole owner and operator of the Colleges.  The letter informed the Department about the anticipated funding for the transaction and the effect of the planned transaction on the Colleges' existing leases, facilities, and operational resources.

46.     Finally, in view of the significant stake the Colleges—and their students—had in ensuring a smooth change of ownership, the letter inquired as to whether or not the merger of the

Colleges into CEHE would prompt the Department to impose any special terms or conditions upon CEHE in new program participation agreements.

47.     On November 2, 2012, the Department responded to the Colleges' pre-acquisition review request by requesting additional documentation it wanted to examine including the following:

   a.   A copy of CEHE's 501(c)(3) determination letter from the IRS;

   b.   The names of the individuals or entities comprising CEHE's Board of Directors;

   c.   A copy of CEHE's bylaws and articles of incorporation;

   d.   A detailed description or copy of any draft contracts or agreements that CEHE may enter into as a result of the change of ownership; and

   e.   A copy or detailed description of the planned payment arrangements associated with the loans necessary to consummate the transaction of the change in ownership.

48.     Counsel for the Colleges responded to the Department's November 2, 2012 letter shortly thereafter, submitting the required pre-acquisition review E-App and providing the Department with the requested information and documentation.  See **Exhibit 6** (November 2, 2012 Response to Pre-Acquisition Review Request Letter).

49.     CEHE's November 2, 2012 letter included as attachments, CEHE's 501(c)(3) determination letter (dated September 4, 2007), the names of the individuals and entities comprising CEHE's Board of Directors, and CEHE's articles of incorporation and bylaws.

50.     The response letter also included a detailed memorandum describing the anticipated transaction.  The memorandum included draft contracts and agreements and a detailed description of the planned payment arrangements to consummate the merger.

**A12**

51.     The detailed description of the planned payment arrangements that the Colleges

provided to the Department disclosed the existence of seller loans and identified how the

payment amounts would be determined and the manner in which payments would be made to the

seller.

52.     By letter dated December 20, 2012, the Department informed the Colleges of the

results of its pre-acquisition review and its assessment of CEHE's response and the related

documentation the Department had received from the Colleges.  See **Exhibit 7** (December 20,

2012 Pre-Acquisition Review Letter from Department).  The Department reminded CEHE that

the Secretary could continue an institution's participation in Title IV programs on a provisional

basis *only* if the institution submitted a materially complete application within ten (10) business

days after the change in ownership occurred.

53.     In its pre-acquisition review response, the Department added that, to the extent

CEHE completed the E-App and submitted the required documentation following the merger, the

Department foresaw no impediment to the issuance of a temporary program participation

agreement upon CEHE becoming the owner and operator of the Colleges.

54.     In the Department's pre-acquisition review response, it identified only one unique

requirement with which the Colleges would have to comply following the change in ownership

from proprietary to nonprofit.  Notably, the Department stated that, because the change in

ownership included an institutional change in structure from proprietary to nonprofit, CEHE

would have to report the Colleges' percentage of annual revenue received from Title IV

programs (the "90/10 rule") for the Colleges' upcoming fiscal year ending December 31, 2013.

CEHE relied on the Department's representation in this regard.  In its letter informing the

Colleges of the results of its review, the Department provided no indication that it would classify the Colleges as proprietary institutions for Title IV regulatory purposes following the change in ownership while the Colleges' E-Apps were pending.

55.     The Department had previously announced that "the change from for-profit to nonprofit status warrants adopting as those conditions of the required provisional certification *those restrictions that would have applied to the institution <u>had it remained a for-profit entity</u>.*" 59 Fed. Reg. 22324 (Apr. 20, 1994).  Importantly, however, those conditions of the provisional certification that would apply, had the institution remained a for-profit entity, <u>must</u> be specified in the institution's provisional program participation agreement.  34 C.F.R. § 668.14(a)(1); see also <u>Mission Group Kansas v. Riley</u>, 146 F.3d 775 (10th Cir. 1998) (addressing the Secretary's assertion that he was authorized to "[specifically] condition[] [an institution's] receipt of Title IV funds on their complying with the [90/10] rule for a provisional period – despite [the institution's] non-profit status").

56.     This requirement for specificity in the provisional program participation agreement applies equally to the temporary provisional program participation agreement issued to CEHE immediately following its ownership of the Colleges.  Consistent with its regulations, the Department specified only one for-profit requirement (the 90/10 Rule) with which the Colleges were required to comply following the change in ownership.  The 90/10 Rule requirement was specifically limited to the Colleges' first fiscal year following the change in ownership.  See Department of Education, <u>Federal Student Aid Handbook</u>, Vol. 2, Ch. 5, p. 2-65 (August 2015) ("A school that converts from a for-profit to a nonprofit status must report its

compliance with the 90/10 revenue test for the first year after its conversion."); See also **Exhibit 7**.

57.     CEHE informed the Department of the Colleges' change in ownership within ten business days of the transaction closing and provided supplementary documentation to its previously filed E-Apps, as required by 34 C.F.R. § 600.20(g).

58.     Upon receipt and verification of CEHE's materially complete application, the Department, on January 31, 2013, issued CEHE temporary provisional program participation agreements ("TPPAs") for the Colleges.  The TPPAs continued the Colleges' participation in Title IV programs on a provisional basis while the Department completed its review of CEHE's applications for new program participation agreements following the Colleges' change of ownership.

**E.     The Department Delays Action On CEHE's Approvable Application For Over Forty-Four Months**

59.     On January 31, 2013, the Department issued TPPAs to CEHE for the Colleges. The TPPAs continued the Colleges' participation in Title IV programs on a provisional basis while the Department continued its review of CEHE's applications for new program participation agreements following the Colleges' change in ownership.  34 C.F.R. § 600.20(h).

60.     Because CEHE was a nonprofit corporation at the time it acquired the Colleges, CEHE was subject to the regulations applicable to nonprofit organizations after the merger. CEHE was also required to submit new applications for the Colleges' participation following the merger.

61.     Although CEHE was required to comply with the Department's 90/10 Rule for the 2013 fiscal year, the Secretary did not impose that requirement in the TPPAs it issued to

CEHE.  Regardless, each of the Colleges complied with the 90/10 Rule during the 2013 fiscal year.

62.     Following the Secretary's execution of the TPPAs on January 31, 2013, the Colleges were allowed to continue to participate in Title IV programs on a month-to-month basis.

63.     Since issuance of the TPPAs, several of the Department's public disclosures confirmed the Colleges' nonprofit status.  For example, data collected and reported in the Department's College Scorecard, College Navigator, and Integrated Postsecondary Education Data System websites list the Colleges as nonprofit institutions.  Additionally, all of CEHE's actions, communications, and correspondence with the Department since the merger have correctly identified the Colleges as nonprofit institutions.

64.     Each year, the Department requires institutions participating in Title IV programs to submit audited financial statements in order to demonstrate that they meet the Department's financial responsibility standards.  34 C.F.R. § 668.171(a).  The Secretary determines whether an institution is financially responsible, in part, based on the institution's equity, primary reserve, and net income ratios.  34 C.F.R. § 668.171(b)(1).  Under the Department's regulations, the formula for these ratios for nonprofit institutions is different from the formula for proprietary institutions.  34 C.F.R. § 668.172(b)(1-2).  An independent auditor must prepare an institution's annual audited financial statement report and, in order to do so, must know whether to apply the nonprofit or for-profit institution formula for the ratios.

65.     Moreover, pursuant to the regulations of the Office of Management and Budget applicable to nonprofit audits and generally accepted accounting principles ("GAAP"), the

**A16**

accounting standards applicable to nonprofit institutions of higher education differ substantively from those applicable to proprietary institutions.

66.     Between November 2012 and April 2016, CEHE submitted to the Department four annual audited financial statements.  Each of these audited financial statements clearly identified CEHE's 501(c)(3) status and the Colleges' nonprofit status.

67.     The Department accepted CEHE's audited financial statements that were prepared in accordance with the accounting standards applicable to nonprofit corporations and/or institutions.  It also relied upon CEHE's  audited financial statements to make determinations as to the Colleges' compliance with the Department's financial responsibility requirements. Indeed, following its review of CEHE's 2013 and 2014 audited financial statements, the Department concluded that CEHE's financial responsibility composite score fell short of the Department's regulatory minimum.  As a result, the Department demanded a substantial letter of credit ("LOC").  The Department's initial LOC demand to CEHE was for $71,600,000, which represented 50% of the Title IV distributed by the Colleges in the previous financial aid award year.  Historically, LOC's required by the Department based on concerns about an institution's financial responsibility have been much smaller than the amount the Department demanded of CEHE.

68.     The Department informed CEHE of its demand for an LOC in a letter dated January 26, 2015.  See **Exhibit 8** (January 26, 2015 Department Letter Demanding 50% Letter of Credit).  The letter explained that the Department required an LOC because CEHE's composite score was below the Department's minimum requirement.  The Department knew at the time it required CEHE to post the LOC that CEHE was a nonprofit corporation operating the Colleges

17

**A17**

as nonprofit institutions because CEHE's audited financial statements for 2013 and 2014 had been prepared in accordance with the standards for nonprofit institutions.

69.    From April through June 2015, CEHE made numerous urgent requests to meet with Department officials to discuss the LOC.  The Department repeatedly refused to meet.  It was only after CEHE's numerous electronic mails and letters explaining why the Department's demand for an LOC of over seventy million dollars was unwarranted that the Department ultimately agreed to lower its LOC demand to $42.9 million dollars on May 1, 2016.

70.    However, even with the lower LOC demand, CEHE advised the Department that it could not secure such a large LOC given the Colleges' financial position and the current banking environment in the United States.  CEHE further informed the Department that the only reason CEHE failed to meet the composite score minimum was because of the debt and goodwill on CEHE's balance sheet.  CEHE demonstrated to the Department that CEHE met all of the other financial responsibility requirements.  Finally, notwithstanding CEHE's otherwise overall financial stability, CEHE informed the Department that its demand for an immediate $42.9 million dollar LOC would cause the Colleges to be unable to pay on-going expenses and payroll and therefore force the Colleges to close.

71.    On May 11, 2015 CEHE sent a letter to the head of the Department's Federal Student Aid ("FSA") division requesting an immediate meeting to avoid the closure of the Colleges and the negative impact closure would have on students and employees.  The Department again refused to meet.  It was only after a Utah Congressional delegation intervened on behalf of CEHE that the Department agreed to meet.

72.     On May 16, 2015, the Department advised Eric Juhlin, CEHE's Chief Executive Officer, that it would meet with him on May 20, 2015 to discuss its $42.9 million dollar LOC demand.  However, before the Department would meet with CEHE on May 20, 2015, it demanded an initial $14.3 million dollar LOC by May 18, 2015.  CEHE asked the Department to suspend any LOC demand until after the parties had the chance to meet on May 20, 2015.  The Department agreed to do so, but only on the condition that CEHE immediately suspend the Colleges' participation in Title IV programs.  CEHE had no choice but to suspend the Colleges' participation in Title IV programs because of its need to meet with the Department.

73.     Mr. Juhlin, CEHE's legal counsel, and CEHE's Chairman met with Robin Minor, head of the FSA division, and other Department officials on May 20, 2015.  During the meeting, Department officials refused to answer any questions from CEHE.  Initially, the Department officials said that their meeting participation would be limited to listening to what CEHE had to say and that they would not respond to any questions from CEHE.  Despite months of prior communications between the parties, the Department revealed for the first time during the meeting that its LOC demand was also predicated upon a pending federal False Claims Act *qui tam* action and a lawsuit by the Colorado Attorney General against CEHE.  As of the date of the meeting, each case was still in the pleading and discovery stage.

74.     During the meetings, CEHE presented a plan to restructure its debt and other balance sheet accounts designed to cause CEHE to meet the required composite score.  CEHE also sought assurances from the Department that, if it implemented the plan, the LOC demand would be withdrawn following CEHE's submission of audited financial statements demonstrating a compliant composite score.  The Department refused to provide any such

19

**A19**

assurance.  Instead, the Department stated it would take several months review any new audited financial statements and renewed its demand that CEHE immediately post an LOC for $42.9 million dollars.

75.     Ultimately, the Department agreed to an alternative to its LOC demand.  The Department said CEHE could make three escrow deposits of $14.3 million dollars each, totaling $42.9 million dollars, by December 31, 2015, in lieu of a letter of credit.

76.     CEHE then implemented a restructuring plan, which included, in late 2015, a renegotiation and reduction of existing debt.  The reduction totaled $300,000,000.  Accordingly, CEHE's audited financial statements for fiscal year 2015 were submitted to the Department in March 2016.  The audited financial statements demonstrated that CEHE met the Department's required composite score of at least 1.5.  Despite CEHE's satisfaction of the 1.5 composite score along with all of the other requirements of financial responsibility and its request that the escrow funds be released, to date, the Department has refused to release them.

77.     CEHE's 2013, 2014, and 2015 annual audited financial statement reported the Colleges' composite score *using the calculation applicable to nonprofit institutions* and each audited financial statement submitted to the Department conspicuously identified CEHE's and the Colleges' nonprofit status.  In fact, the Colleges' composite score would have been higher if it had been prepared under the Department's standards applicable to proprietary institutions.

78.     As noted above, the Department used the 2013 and 2014 audited financial statements as the basis for its demand for an LOC.  In making its LOC demand, the Department treated the seller notes as debt.  Had the Department treated the seller notes as equity equivalents,

CEHE's composite score would not have been below the Department's required threshold because there would have been far less debt and a significant increase in equity equivalents.

79.     In its August 11, 2016 Decision on Change of Ownership ("Decision") demanding that the Colleges be considered proprietary institutions for Title IV purposes, the Department has chosen to treat the seller notes as equity equivalents as opposed to debt.  The Department now claims that the payments on the seller notes are distributions of net profits such as a dividend.  **Exhibit 9**.

80.     The Department has offered no statutory or regulatory basis for characterizing the seller notes as debt in its demand for an LOC in early 2015 and then treating the seller notes as equity equivalents in its August 2016 Decision.

81.     By September 2013, the Department had received all of the merger documents (including the seller notes) and related information necessary to make a determination of whether the seller notes were equity equivalents or debt.  The Department has never explained why it took almost three years for it to issue its Decision.  It also appears that the Department conveniently changed its characterization of the seller notes to meet its political purposes with respect to the demand for an LOC and its Decision denying nonprofit status under Title IV.  Such action is arbitrary and capricious.

82.     The Department knew at the time it required CEHE to post the escrow deposit that CEHE's Colleges were owned and operated by a nonprofit corporation and that CEHE was operating the institutions as a nonprofit.  As noted above, CEHE had prepared and submitted annual audited financial statements to the Department under nonprofit institution auditing standards and the Department had accepted them.

83.     Despite knowing and previously accepting that the Colleges had been operating as nonprofit institutions, the Department *first* notified CEHE that the Department wanted to consider the Colleges as proprietary institutions in a letter dated March 15, 2016.  See **Exhibit 10** (March 15, 2016 Department Initial Notice Letter).  The Department has never explained why it took thirty-nine (39) months after CEHE acquired the Colleges and one year after it imposed the LOC requirement on CEHE's institutions to reach this conclusion.

84.     The Department's March 15, 2016 letter included no reference to any statutory or regulatory support for an assertion that the Colleges must be proprietary institutions for Title IV purposes even though the change of ownership and control transferred to a nonprofit corporation and even though the changes necessitated the applications.  See 34 C.F.R. § 600.20(b)(2)(iii) (requiring an institution to reapply "to the Secretary for a determination that institution" meets the applicable requirements to "[r]eestablish eligibility . . . *after the institution changes its status* as proprietary, nonprofit, or public institution") (emphasis added).

85.     Upon information and belief, the Department has arbitrarily targeted institutions submitting change in ownership applications in instances in which the new owner is a nonprofit corporation by treating those institutions as if they were proprietary institutions during the pendency of their applications.  This practice is improper and unjust because it is occurring without forewarning and is contrary to the Department's historic practice.  It is being done solely to subject the institutions to more burdensome compliance requirements.

86.     For example, on August 29, 2015, the Department notified CEHE via email that the Colleges had failed to report information required by the gainful employment regulations

22

**A22**

applicable to proprietary institutions.  See **Exhibit 11** (August 29, 2015 Department Electronic Mail re: Gainful Employment).

87.     The Department's gainful employment regulations became effective on July 1, 2015, some two-and-one-half years after CEHE acquired the Colleges.  Regardless, these regulations are not applicable to CEHE because CEHE's Colleges are nonprofit colleges exclusively offering degree-granting programs.

88.     In an email dated August 30, 2015, CEHE promptly notified the Department that CEHE had no programs to which gainful employment requirements applied because CEHE's nonprofit colleges were exclusively offering degree-granting programs.

89.     The Department's March 15, 2016 letter indicates that the Department had always considered the Colleges for-profit institutions.  **Exhibit 10**.  This letter reversed the Department's previous notification that the Colleges were required to comply with only one regulation applicable to proprietary institutions (i.e., the 90/10 Rule) for the year immediately following the change in ownership.  **Exhibit 7.**  As such, the Department retroactively applied proprietary school regulations to CEHE.

90.     CEHE responded to the Department's March 15, 2016 letter by letter dated April 20, 2016.  See **Exhibit 12** (April 20, 2016 CEHE Letter to Department).  The letter expressed CEHE's concern about the Department's contention that it considered the Colleges to be for-profit institutions despite the fact the institutions had been operating as nonprofit institutions for over three years.  Since it was such a shocking and important matter to CEHE, it asked for an immediate meeting or a telephone conference with the Department to resolve the issues.

91.     Upon information and belief, the Department is subjecting converted nonprofit institutions to for-profit requirements, without prior notice, while the institution's change in ownership applications are pending before the Department.  Such actions indicate an intentional effort to close those formerly for-profit institutions.  As noted above, the Department's recent efforts to impose its gainful employment rules on nonprofit institutions are particularly revealing in this regard.  For example, during the negotiated rulemaking sessions for gainful employment, the President's Special Assistant for Education publically observed that the Administration "believe[s] [it] needs to cut [for-profits] out. . . of federal aid."  Roberto J. Rodriguez, Conference on Student Loans-Opening Plenary Session (Oct. 24, 2013).  The assistant affirmed that this was "the whole premise behind [the] [gainful] employment regulation[s]."  Id.

92.     Upon information and belief, the Department intentionally delayed action on CEHE's change of ownership applications pending resolution of litigation challenging the implementation of the gainful employment regulations.  See Assoc. of Private Sector Colleges & Universities v. Duncan, No. 15-5190, 2016 U.S. App. LEXIS 4381 (D.C. Cir. Mar. 8, 2016).

**F.     The Department Acted Arbitrarily and Capriciously in Denying CEHE's Application and its Request for Reconsideration**

93.     On August 11, 2016, approximately forty-four months after CEHE submitted its change of ownership applications, the Department issued a press release along with a redacted version of the Decision denying CEHE's Colleges nonprofit status for Title IV regulatory purposes.  See **Exhibit 13 (**August 11, 2016 Press Release Denying Request to Convert to Non-Profit Status ("Press Release")).

24

**A24**

94.     The second sentence of the Press Release clarified how this affected CEHE going forward:  "The denial means that the colleges' programs must continue to meet requirements under the federal Gainful Employment regulations."

95.     CEHE first learned of the Department's Decision through the Department's Press Release.  **Exhibit 9**.

96.     The Decision claims that the Colleges failed to meet the definition of a nonprofit institution set forth in 34 C.F.R. § 600.2.

97.     The Department defines a "nonprofit institution" as an institution that is (i) "owned by one or more nonprofit corporations or associations, no part of the net earnings of which benefits any private shareholder or individual"; (ii) "legally authorized to operate as a nonprofit organization by each State in which it is physically located"; and (iii) "determined by the U.S. Internal Revenue Service to be an organization to which tax contributions are tax-deductible in accordance with section 503(c)(3) of the Internal Revenue Code."  34 C.F.R. § 600.2.

98.     Alternatively, in a different subsection, the Department defines a nonprofit institution simply as any entity that "[i]s determined by the U.S. Internal Revenue Service to be an organization to which contributions are tax-deductible in accordance with section 501(c)(3) of the Internal Revenue Code."  34 C.F.R. § 600.2.

99.     Under the HEA, a proprietary institution is by definition not "a public or other nonprofit institution."  20 U.S.C. § 1002 (b)(1)(C); 34 C.F.R. § 600.5(a)(1).

100.     The Decision asserts, "[a] state authorization and IRS determination do not themselves confer nonprofit status for Title IV purposes."  The Department stated further that it

"must make an independent determination that the institution is 'owned and operated by one or more nonprofit corporations or associations, no part of the net earnings of which benefits any private shareholders or individual.'"

101.    The Department denied CEHE's application to participate in Title IV programs under its nonprofit status stating that it reached this conclusion based on this independent determination.  The Decision argues that the Colleges failed to meet the definition of nonprofit institutions because the merger transaction "was structured" to benefit the former owner and because the former owner "retained control" over the Colleges as a member of CEHE and as "Board Chairman of CEHE's board."

102.    The Department identified three particular findings supporting its Decision:

a.    The financing for the merger transaction "results in financial benefit which inures to [the former owner]" of the Colleges;

b.    The Colleges leased property owned by the former owner and "lease payments" "provide[d] additional economic benefit" to the former owner; and

c.    The former owner "retained control" of the Colleges in his role as member of CEHE and as "Board Chairman of CEHE's Board."

See **Exhibit 9.**

103.    The Decision also informed CEHE that the Colleges would have to be operated as proprietary institutions for Title IV regulatory purposes if the Colleges wanted to continue participating in Title IV programs.  In other words, CEHE would have to "meet the. . . HEA reporting and program eligibility requirements applicable to for-profit institutions, including the 90/10 eligibility requirements. . . and the gainful employment program requirements. . . ."

104.    The Department's Decision instructed CEHE to submit gainful employment certifications within three weeks notwithstanding the fact the Department was aware that the Colleges had already been operating as nonprofit institutions for almost four years.

105.    As noted in its Press Release, the Department intended its Decision to send a "clear message" to other schools thinking of "converting to non-profit status" – "Don't waste your time."

106.    The Department on August 11, 2016 issued the Decision.  It established a ten-day deadline for CEHE to submit any request for reconsideration CEHE intended to make.

107.    On August 12, 2016, CEHE asked the Department for an extension of the ten-day deadline to submit a request for reconsideration.  CEHE made the request due to the significance of the issues, the uncertainty caused by the Decision, and concern about the impact on the Colleges' students and employees.  While it took the Department almost four years to evaluate and respond to CEHE's applications for changes in ownership, CEHE only asked for a thirty-day extension.  See **Exhibit 15** (August 12, 2016 Letter to Department Requesting Extension).

108.    The Department denied CEHE's request for an extension on August 16, 2016, asserting that the 10-day period was sufficient to provide any additional factual information.  See **Exhibit 16** (August 16, 2016 Denial of Request for Extension Re: Request for Reconsideration).

109.    CEHE met the deadline by filing a Request for Reconsideration on August 21, 2016 with the Department ("Request for Reconsideration").  See **Exhibit 14**.

110.    Since the Decision imposed an ultimatum that CEHE had to either sign Provisional Program Participation Agreements by August 31, 2016 to avoid losing the right to participate in Title IV programs, CEHE asked the Department to extend the deadline for

executing the Provisional Participation Agreements to September 30, 2016.  See **Exhibit 17**

(August 16, 2016 Letter to Department Requesting New Deadline to Sign PPAs).  The request

was also made to provide the Department with adequate time to carefully review and consider

CEHE's request for reconsideration.

111.     The Department denied CEHE's request on August 17, 2016.  See **Exhibit 18**

(August 17, 2016 Denial of Request for Extension of Time to Respond).  The denial also

reiterated the Department's contention that the Colleges' gainful employment certifications were

past due.  This assertion is further indicates the Department's improper motives and/or bad faith.

CEHE had previously told the Department that, solely to preserve the Colleges' participation in

Title IV programs, CEHE would submit the gainful employment certifications despite not being

lawfully subject to them.  CEHE then asked the Department to make its E-Apps accessible so

CEHE could update its information including submitting the gainful employment certifications.

Because the database is not accessible to CEHE without the Department's assistance, CEHE's E-

Apps are technically still under review.  The Department never responded to CEHE's requests

seeking access to open the E-Apps.  In any event, CEHE could not update the E-App to provide

the gainful employment certifications because the Department refused to act.

112.     Contrary to subsequent actions described below, the denial also promised that if a

request for reconsideration was submitted, "the Department will review and consider that

request."  **Exhibit 18**.

113.     In what may be an unprecedented action by the Department, on August 22, 2016,

less than 24 hours after CEHE submitted a 17-page Request for Reconsideration that included

over 90 pages of exhibits, the Department denied CEHE's Request for Reconsideration through a

press statement by its spokeswoman, Kelly Leon.  She stated that the Department was "standing firmly behind its decision to deny" CEHE's applications seeking to the Colleges recognized as nonprofit institutions for purposes of Title IV programs.  The Department's denial was also reported by media groups, such as *Politico*.  The press statement was made even though CEHE has not received any communication in response to its Request for Reconsideration from the office that issued the Decision.

114.    CEHE feels compelled by duress and the lack of a reasonable alternative to sign the PPAs proffered by the Department because of the catastrophic impact the Department's denial of access to Title IV programs would have on the students and employees at the Colleges, the economic damage CEHE would suffer, and in order to mitigate any such damages.  CEHE intends to do so, under protest, by the deadline unilaterally imposed by the Department.  Notwithstanding, CEHE is reserving all of its available legal rights and remedies.  By signing the PPAs because of the Department's coercion, CEHE is not waiving any of its rights and expressly reserves all rights to pursue any remedies available to it so that the Colleges are properly recognized and granted status as nonprofit institutions having all rights to participate in Title IV programs, among any other remedies and damages.

G.    **The Department's Application Of Its Nonprofit Requirements Is Arbitrary And Capricious and Inconsistent with the Treatment of Similarly Situated Nonprofit Schools**

115.    The Department's three-part definition of a nonprofit institution in its regulations implements the definition of a nonprofit institution found in the HEA.  The HEA defines a nonprofit institution as "a school. . . or institution owned and operated by one or more nonprofit

29

**A29**

corporations or associations, no part of the net earnings of which inures, or may lawfully inure, to the benefit of any private shareholder or individual."  20 U.S.C. § 1003.

116.    The private inurement prohibition contained in the HEA's definition of a nonprofit is essentially the same language included in the definition of a nonprofit under section 501(c)(3) of the IRC, which includes, in relevant part, that "no part of the net earnings of [the nonprofit corporation] inures to the benefit of any private shareholder or individual."

117.    Indeed, before the HEA was adopted in 1965, the IRS had developed an interpretation of private inurement under section 501(c)(3) of the IRC.  Congress intended this established meaning of the private inurement prohibition to control in the HEA.

118.    At the time of the enactment of the HEA, federal courts had interpreted the private inurement prohibition of 501(c)(3) to permit tax-exempt nonprofit corporations to borrow money from an insider to purchase assets at fair market value and to repay the debt with revenue from the tax-exempt operations ("Transactional Exemption").

119.    Federal courts have clarified that the Transactional Exemption applies to any transaction negotiated at arm's length with a person having no prior relationship with the exempt entity, regardless of the relative bargaining strength of the parties or the resultant control that the contract gives a party over the exempt entity.

120.    The IRS formally adopted this position in Treasury Regulation 53.4958-4.

121.    This regulation provides that the private inurement prohibition does not apply to fixed payments made pursuant to an initial contract, even if such payment would otherwise constitute an excess benefit transaction.  See Treasury Regulation 53.4958-4(a)(3)(i) and (vii).

122.    An initial contract is a binding written contract between an organization and an individual who was not an insider immediately prior to entering into the contract.  See Treasury Regulation 53.4958-4(a)(3)(iii).

123.    A fixed payment means an amount of cash or other property specified in an initial contract or determined by a fixed formula specified in the contract that is paid or transferred in exchange for the provision of specified services or property.  See Treasury Regulation 53.4958-4(a)(3)(ii)(A).

124.    A fixed formula may incorporate an amount that depends on future specified events or contingencies (e.g., revenues generated by activities of the organization) provided that no person exercise discretion when calculating the payment amount or in determining whether payment is made.  These regulations permit the use of a cash-flow-based formula to determine the amount and timing of payments.

125.    Prior to its Decision requiring that CEHE's Colleges be considered proprietary institutions, the Department had consistently interpreted 34 C.F.R. § 600.2 in accordance with the IRS' interpretation of private inurement when ruling on change of ownership applications following an institution's change to nonprofit status.

126.    Upon information and belief, the Department has approved numerous change of ownership applications from formerly proprietary institutions seeking to participate in Title IV programs as nonprofit institutions following transactions in which the nonprofit buyer made cash-flow-based payments to the for-profit seller.

127.    Indeed, on November 23, 2011, the Department approved the change in ownership application of Remington Colleges, Inc., a nonprofit corporation classified as a public

charity under section 170(b)(1)(A)(ii) of the IRC ("Remington"), to participate in Title IV programs as a nonprofit institution following its acquisition of schools previously owned by Education America, Inc., a for-profit corporation.

128.   The Remington transaction was substantially similar to the CEHE transaction. Like the CEHE transaction, the Remington transaction was structured as an asset purchase in which the seller received payment in the form of promissory notes.  The terms of the Remington note provided for payments based on Remington's future cash flow formula similar to the formula used to finance the CEHE transaction.  Remington leased numerous buildings directly from the former owner or entities the former owner controlled.  Remington's Board of Directors included the primary shareholder of the former owner of the educational institutions.

129.   Moreover, like the CEHE transaction, the terms of the Remington transaction were submitted to the IRS as a part of Remington's application for designation as a tax exempt public charity under section 501(c)(3) of the IRC.  The IRS issued a determination letter granting Remington tax-exempt status and classified Remington as a public charity.  The IRS would not have issued the determination letter if the Remington's conversion transaction financing and lease contracts constituted a private benefit to the former owner.

130.   The Department was aware of the terms of the Remington transaction when it approved Remington's change in ownership application.

131.   In January 2012, the Department similarly approved the application of schools previously owned by Keiser School, Inc., a for-profit corporation, and acquired by Everglades Colleges, Inc., a nonprofit corporation classified as a public charity under section 170(b)(1)(A)(ii) of the IRC ("Everglades").

132.    The Everglades transaction was structured as an asset purchase and donation with the seller receiving promissory notes as the form of payment.

133.    Similar to the CEHE transaction, the terms of the Everglades note provide for payments based on Everglades' surplus earnings.  The primary shareholder of the former owner in that transaction was the president of the nonprofit schools and a member of the board of trustees when the nonprofit submitted its change-in-control application.  Moreover, like the CEHE transaction, Everglades' nonprofit schools leased property from entities owned in part by the former owner's primary shareholder.

134.    More recently, in 2015, the Department approved the change-in-control application of previously for-profit schools acquired by UMA Education, Inc., a nonprofit corporation classified as a public charity under Section 170(b)(1)(A)(ii) of the IRC ("UMA").  UMA consummated the conversion transaction in March of 2015.

135.    Like the CEHE transaction, the UMA transaction was structured so that the seller received promissory notes as the form of payment.  The terms of the notes provide for payments of a fixed amount but delays payment until UMA's net current assets exceed certain specified thresholds based upon its cash flow.  Like the cash flow notes CEHE issued, UMA is obligated to make note payments to the seller depending upon its cash flow.  Furthermore, the executive officers of the seller in the UMA transaction became executive officers of UMA following the transaction.

136.    Both before and after the CEHE transaction, the Department has applied the IRS private inurement principles and approved change of ownership applications and participation for nonprofit institutions using cash-flow formula based notes.

**A33**

137.    Congress has been fully aware of the Department's approval of these transactions and has taken no action to amend the HEA to require an interpretation of the private inurement principle inconsistent with the well-established IRS interpretation.

138.    The Senate Committee on Health, Education, Labor and Pensions' report ("HELP report") on for-profit education has a section devoted to nonprofit conversion transaction.  It specifically mentions the Everglades and Remington transactions.  The HELP report notes that the transactions were accomplished using contingent note payments and that the sellers remained involved after the transactions and nonprofit conversions.  Notwithstanding this report, Congress took no action to amend the HEA to reverse these longstanding interpretations of 20 U.S.C. § 1003 in order to preclude transactions involving promissory note payments based upon a nonprofit's cash flow.

139.    Although the HEA has been amended on numerous occasions, the definition of a nonprofit institution (20 U.S.C. § 1003) has remained unchanged since the initial Higher Education Act of 1965.

140.    Moreover, the Department continued after the issuance of the HELP report to apply its private benefit prohibition consistent with the longstanding IRS interpretation when approving applications following for-profit to nonprofit conversion transactions.

141.    In requiring CEHE's Colleges to be proprietary for Title IV purposes, the Department reversed its long-standing position and abandoned its prior practice of applying 34 C.F.R. § 600.2 consistent with the IRS private inurement principles.  Moreover, this determination came years after CEHE submitted the applications.

34

**A34**

142.    The Department's profit distribution theory reflected in the Decision ignores how the seller promissory notes are treated under GAAP.  The debt is classified as long-term debt.  Long-term debt is a liability on a nonprofit's statement of financial position (a nonprofit's balance sheet equivalent).  The payments due on the debt are classified as expenses on a nonprofit's statement of activities (a nonprofit's income statement equivalent).  Under GAAP's nonprofit accounting standards, nonprofits do not have net earnings but have a net change in assets.  The net change in assets is determined after accounting for the seller note payments in the same manner as all other indebtedness of a nonprofit.  The audited financial statement submitted to the Department reflects the "above the net change in assets line" treatment of the payment of interest and principal and related accruals relating to the seller note.

143.    The determination of the payment amount owed on the seller promissory notes in the CEHE transaction being tied to cash flow does not convert the obligation to one to be paid from net earnings under any definition of net earnings or net change in assets under GAAP standards or otherwise.  The Department's conclusion that the payment amount determination formula contained in the promissory notes in the CEHE transaction is the same as a distribution of net change in assets or profits is incorrect and ignores applicable accounting principles.

144.    The term "net earnings" is not ambiguous.  It has had the well-established and commonly understood meaning contained in GAAP for decades.  Congress intended for net earnings to have that meaning when it adopted the HEA.  The Department's interpretation of net earnings as reflected in its Decision directly contravenes precedent and Congressional intent.

## COUNT I
### (Declaratory Judgment Action)

145.    Plaintiff incorporates the preceding paragraphs as if they were fully set forth herein.

146.    The Colleges are nonprofit institutions as defined in the Department's regulations.

147.    Both the HEA and the Department's regulations define nonprofit institutions and proprietary institutions in a mutually exclusive manner.

148.    As a matter of law, the Colleges became nonprofit institutions of higher education on the date of the merger.

149.    Because the Colleges meet the Department's definition of a nonprofit institution of higher education, the Department acted arbitrarily and capriciously in concluding that the Colleges are proprietary institutions of higher education, which is a decision contrary to the HEA and the Department's regulations.

150.    An actual and justiciable controversy has arisen between the parties regarding the Department's regulations concerning the definition of a nonprofit institution and the Department erred in concluding that the Colleges are proprietary institutions of higher education.

151.    There is no adequate remedy by which these controversies may be resolved other than the relief requested herein.

152.    Plaintiff is therefore entitled, pursuant to Rule 57 of the Federal Rules of Civil Procedure, to a declaratory judgment order from this Court declaring that the Colleges are nonprofit institutions for purposes of Title IV programs and entitled to be regulated as nonprofit institutions commencing on the date of the change in ownership.

## COUNT II
### (Administrative Procedure Act)

153.    Plaintiff incorporates the preceding paragraphs as if they were fully set forth herein.

154.    The Department's Decision denying CEHE's change in ownership applications to participate in Title IV programs as a nonprofit institution is arbitrary and capricious, and Plaintiff is therefore entitled to have the decision vacated and set aside pursuant to 5 U.S.C. § 706.

155.    The Department's Decision disregards clear Congressional intent expressed in the HEA to the extent it interprets 34 C.F.R. § 600.2's "private benefit" principle to disqualify a section 501(c)(3) nonprofit corporation from being a nonprofit institution of higher education under the HEA because it has purchase money indebtedness with payment amounts based upon a cash-flow formula.

156.    Moreover, the Department's decision is arbitrary and capricious because the Decision reverses the Department's prior interpretation of 34 C.F.R. § 600.2 without providing a reasoned explanation for this change.

157.    The Department failed to engage in reasoned decision-making and arbitrarily and capriciously treated CEHE differently than similarly situated institutions whose applications the Department approved.

158.    The facts alleged above and the numerous political activities by the Department described in **Exhibit 14** highlight the Department's extremely improper series of actions during the extraordinarily long time it was considering CEHE's change of ownership applications.  The actions by the Department evidence a politicization of the change in ownership process intended to achieve a political agenda and in contravention of its duty to act impartially, fairly, and within

37

the confines of recognized law and precedent.  The Department's Decision refusing to recognize CEHE as a nonprofit educational institution denies CEHE the associated rights and protections to which it is entitled as a matter of law and it is arbitrary, capricious, and violates the APA.

159.    The actions by the Department are part of its concerted effort to deny CEHE and its Colleges regulatory status permitted by the HEA and likewise deny them the ability to survive and operate as nonprofit educational institutions for the public good.

160.    Plaintiff is, therefore, entitled to an order and judgment from this Court declaring that the Department's August 11, 2016 letter Decision is not in accordance with law and is arbitrary and capricious within the meaning of 5 U.S.C. § 706, and ordering the Department to hold that the Colleges are nonprofit educational institutions for all purposes.

### COUNT III
### (Equitable Estoppel)

161.    Plaintiff incorporates the preceding paragraphs as if they were fully set forth herein.

162.    Upon the completion of the merger, the Department affirmatively informed CEHE that it would be required to comply with the 90/10 requirement imposed on for-profit institutions only during the 2013 fiscal year.

163.    The Department did not require CEHE or the Colleges to comply with any other HEA regulations generally applicable only to proprietary institutions at any time prior to March 15, 2016.

164.    Moreover, following the merger, the Department-run College Scorecard, College Navigator, and Integrated Postsecondary Education Data System websites conspicuously identified CEHE as a nonprofit institution for Title IV purposes.

165.    CEHE reasonably relied upon the Department's pre-acquisition review response not identifying any special conditions other than its imposition of a single proprietary requirement (i.e., compliance with 90/10 during the 2013 fiscal year) when proceeding to close the transaction.

166.    CEHE complied with the 90/10 rule for the 2013 fiscal year.  Since the merger, CEHE operated the Colleges in compliance with the Department's nonprofit regulations.

167.    This includes, among other compliance requirements, CEHE's preparation of financial statements and audits in fiscal years 2013, 2014, and 2015, which were prepared in accordance with the Department's standards for nonprofit institutions.

168.    The Department accepted each of CEHE's annual financial audits.  Each financial audit conspicuously identified CEHE's nonprofit status and the Colleges as nonprofit institutions.

169.    CEHE's 2013 annual financial audit reported its composite score *using the nonprofit ratios*.

170.    CEHE's composite score would have been higher if prepared under the Department's standards for proprietary institutions.  Similarly, the score would have been higher if the seller notes had been classified in a manner consistent with the Department's position in its Decision that the seller note payments are distributions of net earnings and not indebtedness.

171.    The Department specifically reviewed CEHE's 2013 annual financial audit and imposed significant additional financial requirements on CEHE based on its composite score as determined under the applicable nonprofit ratios.

172.    On January 26, 2015, the Department cited CEHE's composite score in demanding that CEHE post an LOC for $71,600,000 if it wanted to continue participating in Title IV programs.

173.    The Department knew at the time it made the demand that CEHE considered itself a nonprofit institution and that it operated in accordance with the related nonprofit requirements. By that date, the Department had already received CEHE's 2013 fiscal year financial audit, which was prepared under the Department's nonprofit standards.

174.    The Department's position that the seller notes are a form of equity providing for distributions of net earnings or profits as opposed to classifying them as indebtedness is contrary to its interpretations of CEHE's audited financial statements.  For example, the Department relied on those audited financial statements to impose a $42,996,000 escrow deposit requirement.

175.    The Department first notified CEHE on March 15, 2016 that it still considered CEHE a proprietary institution for Title IV program purposes.  It was not until August 11, 2016, that the Department denied CEHE's application to participate in Title IV programs as a nonprofit institution of higher education.

176.    The Department's affirmative acts at all times prior to March 15, 2016 were consistent with its recognition that the Colleges had nonprofit status and that they would be regulated as nonprofit institutions under the HEA.

177.    CEHE relied upon the Department's regulations in operating the Colleges as nonprofits while the Department considered its applications for almost four years.  By operating the Colleges consistent with the Department's regulations applicable to nonprofits, CEHE reasonably relied on the Department's communications and actions to conclude that it was not

considered for-profit institutions and subject to such related regulations.  As a result of the arbitrary and capricious Decision, the Colleges' continued eligibility to participate in the Title IV programs is in immediate jeopardy.  The Colleges will suffer irreparable and significant damage if the Colleges are required to comply with the Department's for-profit regulations.

178.    Plaintiff is, therefore, entitled to an order and judgment from this Court estopping the Department from denying CEHE's nonprofit status and classifying CEHE as a proprietary institution for purposes of the HEA and Title IV programs.

### COUNT IV
### (Judicial Estoppel)

179.    Plaintiff incorporates the preceding paragraphs as if they were fully set forth herein.

180.    On May 2, 2014, the United States intervened in a False Claims Act *qui tam* action against Stevens-Henager College and CEHE (as the owner of or the successor in interest to Stevens-Henager College), alleging that Stevens-Henager College knowingly made false certifications regarding its compliance with the requirements of Title IV of the HEA in its 2007 and 2010 PPAs.

181.    In its complaint in intervention, the Government alleged that CEHE is an Indiana nonprofit corporation and that CEHE became the owner of the Colleges on December 31, 2012.

182.    In doing so, the Government correctly acknowledged that CEHE owns and operates the Colleges as nonprofit institutions.

183.    On March 30, 2016, prior to the filing of an answer, the District Court for the District of Utah entered an order ruling on a motion to dismiss the complaint in intervention in which the Court adopted the Government's allegation that the Colleges merged into an Indiana

nonprofit corporation, CEHE, on December 31, 2012, and that CEHE *operates* the schools as a result of the merger.  See ECF Doc. 245, United States District Court of Utah, Central Division.

184.    Plaintiff is, therefore, entitled to an order from this Court estopping the Department from asserting that the Colleges' former owner "retains control" over the Colleges, an assertion that is contrary to the position taken by the United States in earlier litigation instigated against CEHE.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

1.    Under the First Cause of Action, an order and judgment declaring that the Colleges are nonprofit institutions for purpose of Title IV programs and therefore entitled to be regulated as nonprofit institutions commencing with the date of the change in ownership;

2.    Under the Second Cause of Action, an order and judgment declaring that the Department's August 11, 2016 letter Decision is not in accordance with law and is arbitrary and capricious within the meaning of 5 U.S.C. § 706, and ordering the Department to hold that the Colleges are nonprofit educational institutions for all purposes;

3.    Under the Third Cause of Action, an order and judgment estopping the Department from denying CEHE's nonprofit status and classifying CEHE as a proprietary institution for purposes of the HEA and Title IV programs;

4.    Under the Fourth Cause of Action, an order and judgment from this Court estopping the Department from asserting that the Colleges' former owner "retains control" over the Colleges, an assertion that is contrary to the position taken by the United States in earlier litigation instigated against CEHE;

5.    Attorneys' fees and costs; and

6.    Any other relief that the Court deems just and equitable.

## JURY DEMAND

Pursuant to Rule 38, Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues so triable.

Dated this August 30, 2016:

Respectfully submitted,

SNELL & WILMER L.L.P.

/s/Amber M. Mettler
Alan L. Sullivan
Amber M. Mettler
*Attorneys for Plaintiff*

/s/ Steven M. Gombos
RITZERT & LEYTON, P.C.
11350 Random Hills Road, Suite 400
Fairfax, Virginia 22030
Telephone:  (703) 934-2660
Facsimile:  (703) 934-9840
*Lead Attorney for Plaintiff*

*Address for Plaintiff:*

Center for Excellence in Higher Education
c/o Snell & Wilmer L.L.P
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah  84101

## EXHIBIT LIST TO CEHE COMPLAINT

1.    September 4, 2007 IRS 501(c)(3) Determination Letter;

2.    Affidavit of John S. Mercer;

3.    February 27, 2013 Post-Merger Request Letter to IRS (without referenced exhibits);

4.    July 25, 2014 IRS Letter Updating Charity Status;

5.    October 2, 2012 Pre-Acquisition Review Request Letter;

6.    November 2, 2012 Response to Pre-Acquisition Review Request Letter;

7.    December 20, 2012 Pre-Acquisition Review Letter from Department;

8.    January 26, 2015 Department Letter Demanding 50% Letter of Credit;

9.    August 11, 2016 Department Decision on Change of Ownership (Redacted);

10.   March 15, 2016 Department Initial Notice Letter;

11.   August 29, 2015 Department Electronic Mail re: Gainful Employment;

12.   April 20, 2016 Letter to Department;

13.   August 11, 2016 Press Release Denying Request to Convert to Non-Profit Status;

14.   August 21, 2016 Request for Reconsideration;

15.   August 12, 2016 Letter to Department Requesting Extension;

16.   August 16, 2016 Denial of Request for Extension Re: Request for Reconsideration;

17.   August 16, 2016 Letter to Department Requesting New Deadline to Sign PPAs; and

18.   August 17, 2016 Denial of Request for Extension of Time to Respond.

PPA. OPE ID: 00367400. PPA Expiration Date: 01/31/2013                Page 1 of 18



FEDERAL STUDENT AID START HERE. GO FURTHER."

## UNITED STATES DEPARTMENT OF EDUCATION

### FEDERAL STUDENT AID
### SCHOOL ELIGIBILITY CHANNEL

## TEMPORARY PROGRAM PARTICIPATION AGREEMENT
## PROVISIONAL APPROVAL

Effective Date of Approval: The date on which this Agreement is signed on behalf of the Secretary of Education

Approval Expiration Date: **January 31, 2013**

Name of Institution: **Stevens Henager College**

dba: **Independence University**

Address of Institution: **1350 West 1890 South**
**West Haven, UT 84401-1420**

OPE ID Number: **00367400**

DUNS Number: ████

Taxpayer Identification Number (TIN): ████

> **The execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.**

The postsecondary educational institution listed above, referred to hereafter as the "Institution," and the United States Secretary of Education, referred to hereafter as the "Secretary," agree that the Institution may participate in those student financial assistance programs authorized by Title IV of the Higher Education Act of 1965, as amended (Title IV, HEA Programs) indicated under this Agreement and further agrees that such participation is subject to the terms and conditions set forth in this Agreement. As used in this Agreement, the term "Department" refers to the U.S. Department of Education.

### TEMPORARY PROVISIONAL PROGRAM PARTICIPATION AGREEMENT
### ISSUED UPON A CHANGE IN OWNERSHIP AND THE

doc?ope=003674&id=38834                1/24/2013

**A45**

PPA. OPE ID: 00367400. PPA Expiration Date: 01/31/2013          Page 2 of 18

## SUBMISSION OF A MATERIALLY COMPLETE APPLICATION

This Agreement is issued as a result of the Institution (a) having undergone a change in ownership resulting in a change of control, and (b) having submitted, within the statutorily mandated time period, a materially complete application to the Department for approval of the change in ownership. The purpose for which the Department has issued this Agreement is to provide to students of the Institution continued access to Federal student financial aid for a limited period while the Institution obtains and submits supporting documentation that was not available at the time of the change in ownership.

This temporary reinstatement is subject to the same terms and conditions that were contained in the Program Participation Agreement that governed the Institution's participation in the Title IV, HEA programs prior to the change in ownership.

Prior to the expiration date of this Agreement on January 31, 2013 the Institution must submit to the Department the following supporting documentation:

(a) A same-day balance sheet, prepared in accordance with *Generally Accepted Accounting Principles* audited in accordance with *Generally Accepted Government Auditing Standards* which show the financial condition of the Institution immediately after the change in ownership.
(b) A copy of the approval of the change in ownership from the Institution's accrediting agency (if the document has not already been submitted to the Department); and
(c) A copy of the approval of the change in ownership from the State agency that authorizes the Institution to provide a program of postsecondary education (if the document has not already been submitted to the Department).

If the Institution provides the necessary documentation prior to the expiration of this Agreement, then the Secretary will extend the expiration date of this agreement on a month-to-month basis until a determination to the change in ownership is made on the application for approval of the change in ownership.

If the Institution demonstrates that it meets the statutory and regulatory requirements for reinstatement to participation in the Title IV, HEA programs, then the Secretary will enter into a new Provisional Program Participation Agreement with the Institution.

If the Institution does not provide the required documentation prior to the expiration date of this Agreement, this Agreement will expire on the stated expiration date without further action or notice, and an order to Stop Payment of Federal Funds will be issued.

## SCOPE OF COVERAGE

This Agreement applies to all locations of the Institution as stated on the most current ELIGIBILITY AND CERTIFICATION APPROVAL REPORT issued by the Department. This Agreement covers the Institution's eligibility to participate in each of the following listed Title IV, HEA programs, and incorporates by reference the regulations cited.

- **FEDERAL PELL GRANT PROGRAM**, 20 U.S.C. §§ 1070a *et seq.*; 34 C.F.R. Part 690.

- **FEDERAL FAMILY EDUCATION LOAN PROGRAM**, 20 U.S.C. §§ 1071 *et seq.*; 34 C.F.R. Part 682.

- **FEDERAL DIRECT STUDENT LOAN PROGRAM,** 20 U.S.C. §§ 1087a *et seq.*; 34 C.F.R. Part 685.

- **FEDERAL PERKINS LOAN PROGRAM,** 20 U.S.C. §§ 1087aa *et seq.*; 34 C.F.R. Part 674.

- **FEDERAL SUPPLEMENTAL EDUCATIONAL OPPORTUNITY GRANT PROGRAM,** 20 U.S.C. §§ 1070b *et seq.*; 34 C.F.R. Part 676.

- **FEDERAL WORK-STUDY PROGRAM,** 42 U.S.C. §§ 2751 *et seq.*; 34 C.F.R. Part 675.

- **ACADEMIC COMPETITIVENESS GRANT AND NATIONAL SCIENCE AND MATHEMATICS ACCESS TO RETAIN TALENT GRANT PROGRAMS,** 20 U.S.C. §§ 1070a-1 *et seq.*; 34 C.F.R. Part 691.

- **IRAQ AND AFGHANISTAN SERVICE GRANT,** 20 U.S.C. §§ 1070d *et seq.*

## PROVISIONAL CERTIFICATION

This provisional certification is granted for a limited period to permit the Institution to participate in the Title IV, HEA programs referenced in this Agreement. During the period of provisional certification, the participation of the Institution will be subject to revocation for cause. Cause for revocation includes, without limitation, a failure to comply with any provision set forth in this Agreement, a violation of Department regulations deemed material by the Department, or a material misrepresentation in the material submitted to the Department as part of the Institution's application process for this certification. The Department in its sole discretion may provide the Institution with an opportunity to cure any such failure, may place the Institution on reimbursement funding pending a decision regarding revocation of this Agreement by a designated Department official, or may suspend the participation of the Institution pending a decision by the Department regarding revocation of this Agreement. In the event the Department chooses to revoke this Agreement and the Institution's participation in the Title IV, HEA programs, the Institution will have the right to show cause why this Agreement should not be revoked by presenting its objections to the designated Department official in writing. The Institution agrees that this opportunity to show cause, and not the procedures in 34 C.F.R. 668 subpart G, shall be the sole administrative appeal regarding such revocation. The decision by the designated Department official will constitute the final agency action.

### Special Requirements for Substantial Changes Made During Term of Provisional Certification

Any institution provisionally certified must apply for and receive approval by the Secretary for expansion or of any substantial change (as hereinafter identified) before it may award, disburse or distribute Title IV, HEA funds based on the substantial change. Substantial changes generally include, but are not limited to: (a) establishment of an additional location; (b) increase in the level of academic offering beyond those listed in the Institution's Eligibility and Certification Approval Report (ECAR); (c) addition of any nondegree or short-term training program; or (d) addition of a degree program by a proprietary institution.

If the Institution applies for the Secretary's approval of a substantial change, the Institution must demonstrate that it has the financial and administrative resources necessary to assure the Institution's continued compliance with the standards of financial responsibility (34 C.F.R. 668.15) and administrative capability (34 C.F.R. 668.16).

Case 1:22-cv-01732-LAS   Document 12-1   Filed 03/24/23   Page 48 of 288

PPA. OPE ID: 00367400. PPA Expiration Date: 01/31/2013                           Page 4 of 18

### Reasons and Special Conditions of Provisional Certification

*Change in Ownership*

The Institution has undergone a change in ownership.

# GENERAL TERMS AND CONDITIONS

1. The Institution understands and agrees that it is subject to and will comply with the program statutes and implementing regulations for institutional eligibility as set forth in 34 C.F.R. Part 600 and for each Title IV, HEA program in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA, and the Student Assistance General Provisions regulations set forth in 34 C.F.R. Part 668. *The recitation of any portion of the statute or regulations in this Agreement does not limit the Institution's obligation to comply with other applicable statutes and regulations.*

2.   a.  The Institution certifies that on the date it signs this Agreement, it has a drug abuse prevention program in operation that it has determined is accessible to any officer, employee, or student at the Institution.
     b.  The Institution certifies that on the date it signs this Agreement, it is in compliance with the disclosure requirements of Section 485(f) of the HEA (Campus Security Policy and Campus Crime Statistics).

3. The Institution agrees to comply with --
     a.  Title VI of the Civil Rights Act of 1964, as amended, and the implementing regulations, 34 C.F.R. Parts 100 and 101 (barring discrimination on the basis of race, color or national origin);
     b.  Title IX of the Education Amendments of 1972 and the implementing regulations, 34 C.F.R. Part 106 (barring discrimination on the basis of sex);
     c.  The Family Educational Rights and Privacy Act of 1974 and the implementing regulations, 34 C.F.R. Part 99;
     d.  Section 504 of the Rehabilitation Act of 1973 and the implementing regulations, 34 C.F.R. Part 104 (barring discrimination on the basis of physical handicap); and
     e.  The Age Discrimination Act of 1975 and the implementing regulations, 34 C.F.R. Part 110.
     f.  The Standards for Safeguarding Customer Information, 16 C.F.R. Part 314, issued by the Federal Trade Commission (FTC), as required by the Gramm-Leach-Bliley (GLB) Act, P.L. 106-102. These Standards are intended to ensure the security and confidentiality of customer records and information. The Secretary considers any breach to the security of student records and information as a demonstration of a potential lack of administrative capability as stated in 34 C.F.R. 668.16(c). Institutions are strongly encouraged to inform its students and the Department of any such breaches.

4.  The Institution acknowledges that 34 C.F.R. Parts 602 and 667 require accrediting agencies, State regulatory bodies, and the Secretary to share information about institutions. The Institution agrees that the Secretary, any accrediting agency recognized by the Secretary, and any State regulatory body may share or report information to one another about the Institution

http://eligcert.ed.gov/eapp/ppa_doc?ope=003674&id=38834                          1/24/2013

**A48**

without limitation.

5. The Institution acknowledges that the HEA prohibits the Secretary from recognizing the accreditation of any institution of higher education unless that institution agrees to submit any dispute involving the final denial, withdrawal, or termination of accreditation to initial arbitration prior to any other legal action.

## SELECTED PROVISIONS FROM
## GENERAL PROVISIONS REGULATIONS, 34 C.F.R. PART 668.14

An institution's program participation agreement applies to each branch campus and other location of the institution that meets the applicable requirements of this part unless otherwise specified by the Secretary.

(b) By entering into a program participation agreement, an institution agrees that--

(1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in and in accordance with that program;

(2) As a fiduciary responsible for administering Federal funds, if the institution is permitted to request funds under a Title IV, HEA program advance payment method, the institution will time its requests for funds under the program to meet the institution's immediate Title IV, HEA program needs;

(3) It will not request from or charge any student a fee for processing or handling any application, form, or data required to determine a student's eligibility for, and amount of, Title IV, HEA program assistance;

(4) It will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV, HEA programs, together with assurances that the institution will provide, upon request and in a timely manner, information relating to the administrative capability and financial responsibility of the institution to--

(i) The Secretary;

(ii) A guaranty agency, as defined in 34 CFR part 682, that guarantees loans made under the Federal Stafford Loan and Federal PLUS programs for attendance at the institution or any of the institution's branch campuses or other locations;

(iii) The nationally recognized accrediting agency that accredits or preaccredits the institution or any of the institution's branch campuses, other locations, or educational programs;

(iv) The State agency that legally authorizes the institution and any branch campus or other location of the institution to provide postsecondary education; and

(v) In the case of a public postsecondary vocational educational institution that is approved by a State agency recognized for the approval of public postsecondary vocational education, that State agency;

(5) It will comply with the provisions of § 668.15 relating to factors of financial responsibility;

(6) It will comply with the provisions of § 668.16 relating to standards of administrative capability;

(7) It will submit reports to the Secretary and, in the case of an institution participating in the Federal Stafford Loan, Federal PLUS, or the Federal Perkins Loan Program, to holders of loans made to the institution's students under that program at such times and containing such information as the Secretary may reasonably require to carry out the purpose of the Title IV,

HEA programs;

(8) It will not provide any statement to any student or certification to any lender in the case of an FFEL Program loan, or origination record to the Secretary in the case of a Direct Loan Program loan that qualifies the student or parent for a loan or loans in excess of the amount that the student or parent is eligible to borrow in accordance with sections 425(a), 428(a)(2), 428(b)(1) (A) and (B), 428B, 428H and 455(a) of the HEA;

(9) It will comply with the requirements of Subpart D of this part concerning institutional and financial assistance information for students and prospective students;

(10) In the case of an institution that advertises job placement rates as a means of attracting students to enroll in the institution, it will make available to prospective students, at or before the time that those students apply for enrollment--

(i) The most recent available data concerning employment statistics, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements; and

(ii) Relevant State licensing requirements of the State in which the institution is located for any job for which an educational program offered by the institution is designed to prepare those prospective students;

(11) In the case of an institution participating in the FFEL Program, the institution will inform all eligible borrowers, as defined in 34 CFR part 682, enrolled in the institution about the availability and eligibility of those borrowers for State grant assistance from the State in which the institution is located, and will inform borrowers from another State of the source for further information concerning State grant assistance from that State;

(12) It will provide the certifications described in paragraph (c) of this section;

(13) In the case of an institution whose students receive financial assistance pursuant to section 484(d) of the HEA, the institution will make available to those students a program proven successful in assisting students in obtaining the recognized equivalent of a high school diploma;

(14) It will not deny any form of Federal financial aid to any eligible student solely on the grounds that the student is participating in a program of study abroad approved for credit by the institution;

(15) (i) Except as provided under paragraph (b)(15)(ii) of this section, the institution will use a default management plan approved by the Secretary with regard to its administration of the FFEL or Direct Loan programs, or both for at least the first two years of its participation in those programs, if the institution --

(A) Is participating in the FFEL or Direct Loan programs for the first time; or

(B) Is an institution that has undergone a change of ownership that results in a change in control and is participating in the FFEL or Direct Loan programs.

(ii) The institution does not have to use an approved default management plan if --

(A) The institution, including its main campus and any branch campus, does not have a cohort default rate in excess of 10 percent; and

(B) The owner of the institution does not own and has not owned any other institution that had a cohort default rate in excess of 10 percent while that owner owned the institution.

(16) For a proprietary institution, the institution will derive at least 10 percent of its revenues for each fiscal year from sources other than Title IV, HEA program funds, as provided in § 668.28 (a) and (b), or be subject to sanctions described in § 668.28(c);

(17) The Secretary, guaranty agencies and lenders as defined in 34 CFR part 682, nationally recognized accrediting agencies, the Secretary of Veterans Affairs, State agencies recognized under 34 CFR part 603 for the approval of public postsecondary vocational education, and State agencies that legally authorize institutions and branch campuses or other locations of institutions to provide postsecondary education, have the authority to share with each other any information pertaining to the institution's eligibility for or participation in the Title IV, HEA programs or any

information on fraud and abuse;

(18) It will not knowingly --

(i) Employ in a capacity that involves the administration of the Title IV, HEA programs or the receipt of funds under those programs, an individual who has been convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds, or has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(ii) Contract with an institution or third-party servicer that has been terminated under section 432 of the HEA for a reason involving the acquisition, use, or expenditure of Federal, State, or local government funds, or that has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds; or

(iii) Contract with or employ any individual, agency, or organization that has been, or whose officers or employees have been--

(A) Convicted of, or pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds; or

(B) Administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(19) It will complete, in a timely manner and to the satisfaction of the Secretary, surveys conducted as a part of the Integrated Postsecondary Education Data System (IPEDS) or any other Federal collection effort, as designated by the Secretary, regarding data on postsecondary institutions;

(20) In the case of an institution that is co-educational and has an intercollegiate athletic program, it will comply with the provisions of § 668.48;

(21) It will not impose any penalty, including, but not limited to, the assessment of late fees, the denial of access to classes, libraries, or other institutional facilities, or the requirement that the student borrow additional funds for which interest or other charges are assessed, on any student because of the student's inability to meet his or her financial obligations to the institution as a result of the delayed disbursement of the proceeds of a Title IV, HEA program loan due to compliance with statutory and regulatory requirements of or applicable to the Title IV, HEA programs, or delays attributable to the institution;

(22)(i) It will not provide any commission, bonus, or other incentive payment based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid, to any person or entity who is engaged in any student recruitment or admission activity, or in making decisions regarding the award of title IV, HEA program funds.

(A) The restrictions in paragraph (b)(22) of this section do not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal student assistance.

(B) For the purpose of paragraph (b)(22) of this section, an employee who receives multiple adjustments to compensation in a calendar year and is engaged in any student enrollment or admission activity or in making decisions regarding the award of title IV, HEA program funds is considered to have received such adjustments based upon success in securing enrollments or the award of financial aid if those adjustments create compensation that is based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid.

(ii) Notwithstanding paragraph (b)(22)(i) of this section, eligible institutions, organizations that are contractors to eligible institutions, and other entities may make--

(A) Merit-based adjustments to employee compensation provided that such adjustments are not based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid; and

engaged in student recruitment or admission activity or in making decisions regarding the award of title IV, HEA program funds.

(iii) As used in paragraph (b)(22) of this section,

(A) *Commission, bonus, or other incentive payment* means a sum of money or something of value, other than a fixed salary or wages, paid to or given to a person or an entity for services rendered.

(B) *Securing enrollments or the award of financial aid* means activities that a person or entity engages in at any point in time through completion of an educational program for the purpose of the admission or matriculation of students for any period of time or the award of financial aid to students.

(1) These activities include contact in any form with a prospective student, such as, but not limited to--contact through preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution, attendance at such an appointment, or involvement in a prospective student's signing of an enrollment agreement or financial aid application.

(2) These activities do not include making a payment to a third party for the provision of student contact information for prospective students provided that such payment is not based on--

(i) Any additional conduct or action by the third party or the prospective students, such as participation in preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution or attendance at such an appointment, or the signing, or being involved in the signing, of a prospective student's enrollment agreement or financial aid application; or

(ii) The number of students (calculated at any point in time of an educational program) who apply for enrollment, are awarded financial aid, or are enrolled for any period of time, including through completion of an educational program.

(C) *Entity or person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid* means--

(1) With respect to an entity engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any institution or organization that undertakes the recruiting or the admitting of students or that makes decisions about and awards title IV, HEA program funds; and

(2) With respect to a person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any employee who undertakes recruiting or admitting of students or who makes decisions about and awards title IV, HEA program funds, and any higher level employee with responsibility for recruitment or admission of students, or making decisions about awarding title IV, HEA program funds.

(D) *Enrollment* means the admission or matriculation of a student into an eligible institution.

(23) It will meet the requirements established pursuant to Part H of Title IV of the HEA by the Secretary and nationally recognized accrediting agencies;

(24) It will comply with the requirements of § 668.22;

(25) It is liable for all--

(i) Improperly spent or unspent funds received under the Title IV, HEA programs, including any funds administered by a third-party servicer; and

(ii) Returns any title IV, HEA program funds that the institution or its servicer may be required to make;

(26) If the stated objectives of an educational program of the institution are to prepare a student for gainful employment in a recognized occupation, the institution will--

(i) Demonstrate a reasonable relationship between the length of the program and entry level requirements for the recognized occupation for which the program prepares the student. The

Secretary considers the relationship to be reasonable if the number of clock hours provided in the program does not exceed by more than 50 percent the minimum number of clock hours required for training in the recognized occupation for which the program prepares the student, as established by the State in which the program is offered, if the State has established such a requirement, or as established by any Federal agency; and

(ii) Establish the need for the training for the student to obtain employment in the recognized occupation for which the program prepares the student.

(27) In the case of an institution participating in a Title IV, HEA loan program, the institution --

(i) Will develop, publish, administer, and enforce a code of conduct with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs in accordance with 34 CFR 601.21; and

(ii) Must inform its officers, employees, and agents with responsibilities with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs annually of the provisions of the code required under paragraph (b)(27) of this section;

(28) For any year in which the institution has a preferred lender arrangement (as defined in 34 CFR 601.2(b)), it will at least annually compile, maintain, and make available for students attending the institution, and the families of such students, a list in print or other medium, of the specific lenders for loans made, insured, or guaranteed under Title IV, of the HEA or private education loans that the institution recommends, promotes, or endorses in accordance with such preferred lender arrangement. In making such a list, the institution must comply with the requirements in 34 CFR 682.212(h) and 34 CFR 601.10;

(29) (i) It will, upon the request of an enrolled or admitted student who is an applicant for a private education loan (as defined in 34 CFR 601.2(b)), provide to the applicant the self-certification form required under 34 CFR 601.11(d) and the information required to complete the form, to the extent the institution possesses such information, including --

(A) The applicant's cost of attendance at the institution, as determined by the institution under part F of Title IV, of the HEA;

(B) The applicant's estimated financial assistance, including amounts of financial assistance used to replace the expected family contribution as determined by the institution in accordance with Title IV, for students who have completed the Free Application for Federal Student Aid; and

(C) The difference between the amounts under paragraphs (b)(29)(i)(A) and (29)(i)(B) of this section, as applicable.

(ii) It will, upon the request of the applicant, discuss with the applicant the availability of Federal, State, and institutional student financial aid;

(30) The institution --

(i) Has developed and implemented written plans to effectively combat the unauthorized distribution of copyrighted material by users of the institution's network, without unduly interfering with educational and research use of the network, that include --

(A) The use of one or more technology-based deterrents;

(B) Mechanisms for educating and informing its community about appropriate versus inappropriate use of copyrighted material, including that described in § 668.43(a)(10);

(C) Procedures for handling unauthorized distribution of copyrighted material, including disciplinary procedures; and

(D) Procedures for periodically reviewing the effectiveness of the plans to combat the unauthorized distribution of copyrighted materials by users of the institution's network using relevant assessment criteria. No particular technology measures are favored or required for inclusion in an institution's plans, and each institution retains the authority to determine what its particular plans for compliance with paragraph (b)(30) of this section will be, including those that prohibit content monitoring; and

institution--

(A) Periodically review the legal alternatives for downloading or otherwise acquiring copyrighted material;

(B) Make available the results of the review in paragraph (b)(30)(ii)(A) of this section to its students through a Web site or other means; and

(C) To the extent practicable, offer legal alternatives for downloading or otherwise acquiring copyrighted material, as determined by the institution; and

(31) The institution will submit a teach-out plan to its accrediting agency in compliance with 34 CFR 602.24(c), and the standards of the institution's accrediting agency upon the occurrence of any of the following events:

(i) The Secretary initiates the limitation, suspension, or termination of the participation of an institution in any Title IV, HEA program under 34 CFR 600.41 or subpart G of this part or initiates an emergency action under § 668.83.

(ii) The institution's accrediting agency acts to withdraw, terminate, or suspend the accreditation or preaccreditation of the institution.

(iii) The institution's State licensing or authorizing agency revokes the institution's license or legal authorization to provide an educational program.

(iv) The institution intends to close a location that provides 100 percent of at least one program.

(v) The institution otherwise intends to cease operations.

(c) In order to participate in any Title IV, HEA program (other than the LEAP and NEISP programs), the institution must certify that it--

(1) Has in operation a drug abuse prevention program that the institution has determined to be accessible to any officer, employee, or student at the institution; and

(2)(i) Has established a campus security policy in accordance with section 485(f) of the HEA; and

(ii) Has complied with the disclosure requirements of § 668.47 as required by section 485(f) of the HEA.

(d)(1) The institution, if located in a State to which section 4(b) of the National Voter Registration Act (42 U.S.C. 1973gg-2(b)) does not apply, will make a good faith effort to distribute a mail voter registration form, requested and received from the State, to each student enrolled in a degree or certificate program and physically in attendance at the institution, and to make those forms widely available to students at the institution.

(2) The institution must request the forms from the State 120 days prior to the deadline for registering to vote within the State. If an institution has not received a sufficient quantity of forms to fulfill this section from the State within 60 days prior to the deadline for registering to vote in the State, the institution is not liable for not meeting the requirements of this section during that election year.

(3) This paragraph applies to elections as defined in Section 301(1) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(1)), and includes the election for Governor or other chief executive within such State.

(e)(1) A program participation agreement becomes effective on the date that the Secretary signs the agreement.

(2) A new program participation agreement supersedes any prior program participation agreement between the Secretary and the institution.

(f)(1) Except as provided in paragraphs (g) and (h) of this section, the Secretary terminates a program participation agreement through the proceedings in subpart G of this part.

(2) An institution may terminate a program participation agreement.

(3) If the Secretary or the institution terminates a program participation agreement under

paragraph (f) of this section, the Secretary establishes the termination date.

(g) An institution's program participation agreement automatically expires on the date that--

(l) The institution changes ownership that results in a change in control as determined by the Secretary under 34 CFR part 600; or

(2) The institution's participation ends under the provisions of § 668.26(a)(1), (2), (4), or (7).

(h) An institution's program participation agreement no longer applies to or covers a location of the institution as of the date on which that location ceases to be a part of the participating institution.

## WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM

If an institution participates in the William D. Ford Federal Direct Loan (Direct Loan) Program, the institution and its representatives shall comply with the statute, guidelines, and regulations governing the Title IV, Part D, William D. Ford Federal Direct Loan Program as required by 20 U.S.C. §§ 1087a *et seq.* (Part C) and 34 C.F.R. Part 685.

The institution will:

1. Provide for the establishment and maintenance of a Direct Loan Program at the Institution that will:

   Identify eligible students who seek student financial assistance in accordance with Section 484 of the Higher Education Act of 1965, as amended (the HEA).

   Estimate the need of students as required under Title IV, Part F of the HEA.

   Provide a certification statement of eligibility for students to receive loans that will not exceed the annual or aggregate limits, except the Institution may exercise its authority, under exceptional circumstances identified by the Secretary, to refuse to certify a statement that permits a student to receive a loan, or certify a loan amount that is less than the student's determination of need, if the reason for such action is documented and provided in written form to a student.

   Establish a schedule for disbursement of loan proceeds to meet the requirements of Section 428G of the HEA.

   Provide timely and accurate information to the Secretary concerning 1) the status of borrowers while students are in attendance, any new information pertaining to the status of student borrowers of which the Institution becomes aware after the student leaves the Institution, and 2) the utilization of Federal funds under Title IV, Part D of the HEA at such times and in such manner as prescribed by the Secretary.

2. Comply with requirements established by the Secretary relating to student loan information with respect to the Direct Loan Program.

3. Provide that students at the Institution and their parents (with respect to such students) will be eligible to participate in the programs under Title IV, Part B of the HEA, Federal Family Education Loan programs, at the discretion of the Secretary for the period during which such Institution participates in the Direct Loan Program, except that a student or parent may not

receive loans under both Title IV, Part B and Part D of the HEA for the same period of enrollment.

4. Provide for the implementation of a quality assurance system, as established by the Secretary and developed in consultation with Institutions of higher education, to ensure that the Institution is complying with program requirements and meeting program objectives.

5. Provide that the Institution will not charge any fees of any kind, regardless of how they are described, to student or parent borrowers for loan application, or origination activities (if applicable), or the provision and processing of any information necessary for a student or parent to receive a loan under Title IV, Part D of the HEA.

6. Provide that the Institution will originate loans to eligible students and parents in accordance with the requirements of Title IV, Part D of the HEA and use funds advanced to it solely for that purpose (Option 2 only).

7. Provide that the note or evidence of obligation of the loan shall be the property of the Secretary (Options 2 and 1 only).

8. Comply with other provisions as the Secretary determines are necessary to protect the interest of the United States and to promote the purposes of Title IV, Part D of the HEA.

9. Accept responsibility and financial liability stemming from its failure to perform its functions under this Program Participation Agreement.

## CERTIFICATIONS REQUIRED FROM INSTITUTIONS

The Institution should refer to the regulations cited below. Signature on this Agreement provides for compliance with the certification requirements under 34 C.F.R. Part 82, "New Restrictions on Lobbying," 34 C.F.R Part 84, "Governmentwide Requirements for Drug-Free Workplace (Financial Assistance)," 34 C.F.R. Part 85, "Governmentwide Debarment and Suspension (Nonprocurement)," and 34 C.F.R. Part 86, "Drug and Alcohol Abuse Prevention." Breach of any of these certifications constitutes a breach of this Agreement.

## PART 1  CERTIFICATION REGARDING LOBBYING; DRUG-FREE WORKPLACE; DEBARMENT, SUSPENSION AND OTHER RESPONSIBILITY MATTERS; AND DRUG AND ALCOHOL ABUSE PREVENTION

### *1. Lobbying*

As required by Section 1352, Title 31 of the U.S. Code, and implemented at 34 C.F.R. Part 82, for persons entering into a Federal contract, grant or cooperative agreement over $100,000, as defined at 34 C.F.R. Part 82, Sections 82.105, and 82.110, the undersigned certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the

making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan or cooperative agreement, the undersigned shall complete and submit Standard Form - LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Institution shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants and contracts under grants, loans and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

## *2a. Drug-Free Workplace (Grantees Other Than Individuals)*

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart B, for grantees, as defined at 34 C.F.R. Part 84, Sections 84.200 through 84.230 -

The Institution certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a drug-free workplace statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about-

    (1) The dangers of drug abuse in the workplace;

    (2) The Institution's policy of maintaining a drug-free workplace;

    (3) Any available drug counseling, rehabilitation, and employee assistance programs; and

    (4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a);

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will -

    (1) Abide by the terms of the statement, and

    (2) Notify the employer in writing if he or she is convicted for a violation of a criminal drug statute occurring in the workplace no more than five calendar days after such conviction;

(e) Notifying the agency, in writing, within 10 calendar days after receiving notice under this subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant;

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted -

    (1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1972, as amended; or

    (2)

        Requiring such employee to participate satisfactorily in a drug abuse assistance or

rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

## *2b. Drug-Free Workplace (Grantees Who Are Individuals)*

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart C, for recipients who are individuals, as defined at 34 C.F.R. Part 84, Section 84.300 -

1. As a condition of the grant, the Institution certifies that it will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity related to the award; and

2. If any officer or owner of the Institution is convicted of a criminal drug offense resulting from a violation occurring during the conduct of any award activity, the Institution will report the conviction, in writing, within 10 calendar days of the conviction, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant.

## *3. Debarment, Suspension, and Other Responsibility Matters*

As required by Executive Order 12549, Debarment and Suspension, and implemented at 34 C.F.R. Part 85, for prospective participants in primary covered transactions as defined at 34 C.F.R. Part 85, Sections 85.105 and 85.110, the Institution certifies that it and its principals:

(a) Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any Federal department or agency;

(b) Have not within a three-year period preceding this application been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; violation of Federal or State antitrust statutes; commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, receiving stolen property, making false claims, or obstruction of justice; or commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects their present responsibility.

(c) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and

(d) Have not within a three-year period preceding this application had one or more public transactions (Federal, State, or local) terminated for cause or default.

## *4. Drug and Alcohol Abuse Prevention*

As required by the Drug-Free Schools and Communities Act Amendments of 1989, which added section 1213 to the Higher Education Act, and implemented at 34 C.F.R. Part 86, the undersigned Institution certifies that it has adopted and implemented a drug prevention program for its students and employees that, at a minimum, includes--

1. The annual distribution in writing to each employee, and to each student who is taking one or more classes for any kind of academic credit except for continuing education units, regardless of the length of the student's program of study, of:

- Standards of conduct that clearly prohibit, at a minimum, the unlawful possession, use, or distribution of illicit drugs and alcohol by students and employees on its property or as part of any of its activities.
- A description of the applicable legal sanctions under local, State or Federal law for the unlawful possession or distribution of illicit drugs and alcohol.
- A description of the health risks associated with the use of illicit drugs and the abuse of alcohol.
- A description of any drug or alcohol counseling, treatment, or rehabilitation or re-entry programs that are available to employees or students.
- A clear statement that the Institution will impose disciplinary sanctions on students and employees (consistent with local, State and Federal law), and a description of those sanctions, up to and including expulsion or termination of employment and referral for prosecution, for violation of the standards of conduct. A disciplinary sanction may include the completion of an appropriate rehabilitation program.

2. A biennial review by the Institution of its program to:
   - Determine its effectiveness and implement changes to the program if they are needed.
   - Ensure that its disciplinary sanctions are consistently enforced.

## PART 2 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, INELIGIBILITY, AND VOLUNTARY EXCLUSION -- LOWER TIER COVERED TRANSACTIONS

**The Institution is to obtain the signatures of Lower Tier Contractors on reproduced copies of the certification below, and retain the signed certification(s) in the Institution's files.**

---

**CERTIFICATION BY LOWER TIER CONTRACTOR**
**(Before Completing Certification, Read Instructions for This Part 3, below)**

(1) The prospective lower tier participant certifies by submission of this proposal, that neither it nor its principals are presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal Department or Agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

| Name of Lower Tier Organization | PR/Award Number or Project Name |
|---|---|
| Name of Authorized Representative | Title of Authorized Representative |
| Signature of Authorized Representative | Date |

---

1. By signing and submitting this proposal, the prospective lower tier participant is providing the certification set out below.

2. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

3. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

4. The terms "covered transaction," "debarred," "suspended," "ineligible," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549. You may contact the person to whom this proposal is submitted for assistance in obtaining a copy of those regulations.

5. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

6. The prospective lower tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Ineligibility, and

Voluntary Exclusion--Lower Tier Covered Transactions," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

9. Except for transactions authorized under paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

**NOTE:** A completed copy of the "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion--Lower Tier Covered Transactions" form must be retained by the Institution. The original blank certification must be returned with the PPA.

PPA. OPE ID: 00367400. PPA Expiration Date: 01/31/2013          Page 18 of 18

## IN WITNESS WHEREOF

the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Signature of Institution's
Chief Executive Officer: _____     Date: 1/25/13

Print Name and Title:    Eric S. Juhlin
                         CHIEF EXECUTIVE OFFICER

For the Secretary: _____     Date: 1/
U.S. Department of Education

PPA. OPE ID: 02110800. PPA Expiration Date: 01/31/2013                          Page 1 of 18



FEDERAL STUDENT AID ░░START HERE. GO FURTHER.™

---

### UNITED STATES DEPARTMENT OF EDUCATION

### FEDERAL STUDENT AID
### SCHOOL ELIGIBILITY CHANNEL

## TEMPORARY PROGRAM PARTICIPATION AGREEMENT
## PROVISIONAL APPROVAL

Effective Date of Approval: The date on which this Agreement is signed on behalf of the Secretary of Education

Approval Expiration Date: **January 31, 2013**

Name of Institution: **California College San Diego**

Address of Institution: **6602 Convoy Court**
**Suite 100**
**San Diego, CA 92111-1009**

OPE ID Number: **02110800**
DUNS Number: **626397678**
Taxpayer Identification Number (TIN): **208091013**

> **The execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.**

The postsecondary educational institution listed above, referred to hereafter as the "Institution," and the United States Secretary of Education, referred to hereafter as the "Secretary," agree that the Institution may participate in those student financial assistance programs authorized by Title IV of the Higher Education Act of 1965, as amended (Title IV, HEA Programs) indicated under this Agreement and further agrees that such participation is subject to the terms and conditions set forth in this Agreement. As used in this Agreement, the term "Department" refers to the U.S. Department of Education.

### TEMPORARY PROVISIONAL PROGRAM PARTICIPATION AGREEMENT

#### ISSUED UPON A CHANGE IN OWNERSHIP AND THE

http://eligcert.ed.gov/eapp/ppa_doc?ope=021108&id=38837                     1/24/2013

## SUBMISSION OF A MATERIALLY COMPLETE APPLICATION

This Agreement is issued as a result of the Institution (a) having undergone a change in ownership resulting in a change of control, and (b) having submitted, within the statutorily mandated time period, a materially complete application to the Department for approval of the change in ownership. The purpose for which the Department has issued this Agreement is to provide to students of the Institution continued access to Federal student financial aid for a limited period while the Institution obtains and submits supporting documentation that was not available at the time of the change in ownership.

This temporary reinstatement is subject to the same terms and conditions that were contained in the Program Participation Agreement that governed the Institution's participation in the Title IV, HEA programs prior to the change in ownership.

Prior to the expiration date of this Agreement on January 31, 2013 the Institution must submit to the Department the following supporting documentation:

(a) A same-day balance sheet, prepared in accordance with *Generally Accepted Accounting Principles* audited in accordance with *Generally Accepted Government Auditing Standards* which show the financial condition of the Institution immediately after the change in ownership.

(b) A copy of the approval of the change in ownership from the Institution's accrediting agency (if the document has not already been submitted to the Department); and

(c) A copy of the approval of the change in ownership from the State agency that authorizes the Institution to provide a program of postsecondary education (if the document has not already been submitted to the Department).

If the Institution provides the necessary documentation prior to the expiration of this Agreement, then the Secretary will extend the expiration date of this agreement on a month-to-month basis until a determination to the change in ownership is made on the application for approval of the change in ownership.

If the Institution demonstrates that it meets the statutory and regulatory requirements for reinstatement to participation in the Title IV, HEA programs, then the Secretary will enter into a new Provisional Program Participation Agreement with the Institution.

If the Institution does not provide the required documentation prior to the expiration date of this Agreement, this Agreement will expire on the stated expiration date without further action or notice, and an order to Stop Payment of Federal Funds will be issued.

## SCOPE OF COVERAGE

This Agreement applies to all locations of the Institution as stated on the most current ELIGIBILITY AND CERTIFICATION APPROVAL REPORT issued by the Department. This Agreement covers the Institution's eligibility to participate in each of the following listed Title IV, HEA programs, and incorporates by reference the regulations cited.

- **FEDERAL PELL GRANT PROGRAM,** 20 U.S.C. §§ 1070a *et seq.*; 34 C.F.R. Part 690.

- **FEDERAL FAMILY EDUCATION LOAN PROGRAM,** 20 U.S.C. §§ 1071 *et seq.*; 34 C.F.R. Part 682.

- **FEDERAL DIRECT STUDENT LOAN PROGRAM,** 20 U.S.C. §§ 1087a *et seq.*; 34 C.F.R. Part 685.

- **FEDERAL SUPPLEMENTAL EDUCATIONAL OPPORTUNITY GRANT PROGRAM,** 20 U.S.C. §§ 1070b *et seq.*; 34 C.F.R. Part 676.

- **FEDERAL WORK-STUDY PROGRAM,** 42 U.S.C. §§ 2751 *et seq.*; 34 C.F.R. Part 675.

- **ACADEMIC COMPETITIVENESS GRANT AND NATIONAL SCIENCE AND MATHEMATICS ACCESS TO RETAIN TALENT GRANT PROGRAMS,** 20 U.S.C. §§ 1070a-1 *et seq.*; 34 C.F.R. Part 691.

- **IRAQ AND AFGHANISTAN SERVICE GRANT,** 20 U.S.C. §§ 1070d *et seq.*

## PROVISIONAL CERTIFICATION

This provisional certification is granted for a limited period to permit the Institution to participate in the Title IV, HEA programs referenced in this Agreement. During the period of provisional certification, the participation of the Institution will be subject to revocation for cause. Cause for revocation includes, without limitation, a failure to comply with any provision set forth in this Agreement, a violation of Department regulations deemed material by the Department, or a material misrepresentation in the material submitted to the Department as part of the Institution's application process for this certification. The Department in its sole discretion may provide the Institution with an opportunity to cure any such failure, may place the Institution on reimbursement funding pending a decision regarding revocation of this Agreement by a designated Department official, or may suspend the participation of the Institution pending a decision by the Department regarding revocation of this Agreement. In the event the Department chooses to revoke this Agreement and the Institution's participation in the Title IV, HEA programs, the Institution will have the right to show cause why this Agreement should not be revoked by presenting its objections to the designated Department official in writing. The Institution agrees that this opportunity to show cause, and not the procedures in 34 C.F.R. 668 subpart G, shall be the sole administrative appeal regarding such revocation. The decision by the designated Department official will constitute the final agency action.

### Special Requirements for Substantial Changes Made During Term of Provisional Certification

Any institution provisionally certified must apply for and receive approval by the Secretary for expansion or of any substantial change (as hereinafter identified) before it may award, disburse or distribute Title IV, HEA funds based on the substantial change. Substantial changes generally include, but are not limited to: (a) establishment of an additional location; (b) increase in the level of academic offering beyond those listed in the Institution's Eligibility and Certification Approval Report (ECAR); (c) addition of any nondegree or short-term training program; or (d) addition of a degree program by a proprietary institution.

If the Institution applies for the Secretary's approval of a substantial change, the Institution must demonstrate that it has the financial and administrative resources necessary to assure the Institution's continued compliance with the standards of financial responsibility (34 C.F.R. 668.15) and administrative capability (34 C.F.R. 668.16).

### Reasons and Special Conditions of Provisional Certification

http://eligcert.ed.gov/eapp/ppa_doc?ope=021108&id=38837                     1/24/2013

*Change in Ownership*

The Institution has undergone a change in ownership.

# GENERAL TERMS AND CONDITIONS

1. The Institution understands and agrees that it is subject to and will comply with the program statutes and implementing regulations for institutional eligibility as set forth in 34 C.F.R. Part 600 and for each Title IV, HEA program in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA, and the Student Assistance General Provisions regulations set forth in 34 C.F.R. Part 668.
*The recitation of any portion of the statute or regulations in this Agreement does not limit the Institution's obligation to comply with other applicable statutes and regulations.*

2.   a.   The Institution certifies that on the date it signs this Agreement, it has a drug abuse prevention program in operation that it has determined is accessible to any officer, employee, or student at the Institution.
     b.   The Institution certifies that on the date it signs this Agreement, it is in compliance with the disclosure requirements of Section 485(f) of the HEA (Campus Security Policy and Campus Crime Statistics).

3. The Institution agrees to comply with --
   a.   Title VI of the Civil Rights Act of 1964, as amended, and the implementing regulations, 34 C.F.R. Parts 100 and 101 (barring discrimination on the basis of race, color or national origin);
   b.   Title IX of the Education Amendments of 1972 and the implementing regulations, 34 C.F.R. Part 106 (barring discrimination on the basis of sex);
   c.   The Family Educational Rights and Privacy Act of 1974 and the implementing regulations, 34 C.F.R. Part 99;
   d.   Section 504 of the Rehabilitation Act of 1973 and the implementing regulations, 34 C.F.R. Part 104 (barring discrimination on the basis of physical handicap); and
   e.   The Age Discrimination Act of 1975 and the implementing regulations, 34 C.F.R. Part 110.
   f.   The Standards for Safeguarding Customer Information, 16 C.F.R. Part 314, issued by the Federal Trade Commission (FTC), as required by the Gramm-Leach-Bliley (GLB) Act, P.L. 106-102. These Standards are intended to ensure the security and confidentiality of customer records and information. The Secretary considers any breach to the security of student records and information as a demonstration of a potential lack of administrative capability as stated in 34 C.F.R. 668.16(c). Institutions are strongly encouraged to inform its students and the Department of any such breaches.

4. The Institution acknowledges that 34 C.F.R. Parts 602 and 667 require accrediting agencies, State regulatory bodies, and the Secretary to share information about institutions. The Institution agrees that the Secretary, any accrediting agency recognized by the Secretary, and any State regulatory body may share or report information to one another about the Institution without limitation.

5.
   The Institution acknowledges that the HEA prohibits the Secretary from recognizing the

accreditation of any institution of higher education unless that institution agrees to submit any dispute involving the final denial, withdrawal, or termination of accreditation to initial arbitration prior to any other legal action.

## SELECTED PROVISIONS FROM
## GENERAL PROVISIONS REGULATIONS, 34 C.F.R. PART 668.14

An institution's program participation agreement applies to each branch campus and other location of the institution that meets the applicable requirements of this part unless otherwise specified by the Secretary.

(b) By entering into a program participation agreement, an institution agrees that--

(1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in and in accordance with that program;

(2) As a fiduciary responsible for administering Federal funds, if the institution is permitted to request funds under a Title IV, HEA program advance payment method, the institution will time its requests for funds under the program to meet the institution's immediate Title IV, HEA program needs;

(3) It will not request from or charge any student a fee for processing or handling any application, form, or data required to determine a student's eligibility for, and amount of, Title IV, HEA program assistance;

(4) It will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV, HEA programs, together with assurances that the institution will provide, upon request and in a timely manner, information relating to the administrative capability and financial responsibility of the institution to--

(i) The Secretary;

(ii) A guaranty agency, as defined in 34 CFR part 682, that guarantees loans made under the Federal Stafford Loan and Federal PLUS programs for attendance at the institution or any of the institution's branch campuses or other locations;

(iii) The nationally recognized accrediting agency that accredits or preaccredits the institution or any of the institution's branch campuses, other locations, or educational programs;

(iv) The State agency that legally authorizes the institution and any branch campus or other location of the institution to provide postsecondary education; and

(v) In the case of a public postsecondary vocational educational institution that is approved by a State agency recognized for the approval of public postsecondary vocational education, that State agency;

(5) It will comply with the provisions of § 668.15 relating to factors of financial responsibility;

(6) It will comply with the provisions of § 668.16 relating to standards of administrative capability;

(7) It will submit reports to the Secretary and, in the case of an institution participating in the Federal Stafford Loan, Federal PLUS, or the Federal Perkins Loan Program, to holders of loans made to the institution's students under that program at such times and containing such information as the Secretary may reasonably require to carry out the purpose of the Title IV, HEA programs;

(8) It will not provide any statement to any student or certification to any lender in the case of an

FFEL Program loan, or origination record to the Secretary in the case of a Direct Loan Program loan that qualifies the student or parent for a loan or loans in excess of the amount that the student or parent is eligible to borrow in accordance with sections 425(a), 428(a)(2), 428(b)(1) (A) and (B), 428B, 428H and 455(a) of the HEA;

(9) It will comply with the requirements of Subpart D of this part concerning institutional and financial assistance information for students and prospective students;

(10) In the case of an institution that advertises job placement rates as a means of attracting students to enroll in the institution, it will make available to prospective students, at or before the time that those students apply for enrollment--

(i) The most recent available data concerning employment statistics, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements; and

(ii) Relevant State licensing requirements of the State in which the institution is located for any job for which an educational program offered by the institution is designed to prepare those prospective students;

(11) In the case of an institution participating in the FFEL Program, the institution will inform all eligible borrowers, as defined in 34 CFR part 682, enrolled in the institution about the availability and eligibility of those borrowers for State grant assistance from the State in which the institution is located, and will inform borrowers from another State of the source for further information concerning State grant assistance from that State;

(12) It will provide the certifications described in paragraph (c) of this section;

(13) In the case of an institution whose students receive financial assistance pursuant to section 484(d) of the HEA, the institution will make available to those students a program proven successful in assisting students in obtaining the recognized equivalent of a high school diploma;

(14) It will not deny any form of Federal financial aid to any eligible student solely on the grounds that the student is participating in a program of study abroad approved for credit by the institution;

(15) (i) Except as provided under paragraph (b)(15)(ii) of this section, the institution will use a default management plan approved by the Secretary with regard to its administration of the FFEL or Direct Loan programs, or both for at least the first two years of its participation in those programs, if the institution --

(A) Is participating in the FFEL or Direct Loan programs for the first time; or

(B) Is an institution that has undergone a change of ownership that results in a change in control and is participating in the FFEL or Direct Loan programs.

(ii) The institution does not have to use an approved default management plan if --

(A) The institution, including its main campus and any branch campus, does not have a cohort default rate in excess of 10 percent; and

(B) The owner of the institution does not own and has not owned any other institution that had a cohort default rate in excess of 10 percent while that owner owned the institution.

(16) For a proprietary institution, the institution will derive at least 10 percent of its revenues for each fiscal year from sources other than Title IV, HEA program funds, as provided in § 668.28 (a) and (b), or be subject to sanctions described in § 668.28(c);

(17) The Secretary, guaranty agencies and lenders as defined in 34 CFR part 682, nationally recognized accrediting agencies, the Secretary of Veterans Affairs, State agencies recognized under 34 CFR part 603 for the approval of public postsecondary vocational education, and State agencies that legally authorize institutions and branch campuses or other locations of institutions to provide postsecondary education, have the authority to share with each other any information pertaining to the institution's eligibility for or participation in the Title IV, HEA programs or any information on fraud and abuse;

(18) It will not knowingly --

receipt of funds under those programs, an individual who has been convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds, or has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(ii) Contract with an institution or third-party servicer that has been terminated under section 432 of the HEA for a reason involving the acquisition, use, or expenditure of Federal, State, or local government funds, or that has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds; or

(iii) Contract with or employ any individual, agency, or organization that has been, or whose officers or employees have been--

(A) Convicted of, or pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds; or

(B) Administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(19) It will complete, in a timely manner and to the satisfaction of the Secretary, surveys conducted as a part of the Integrated Postsecondary Education Data System (IPEDS) or any other Federal collection effort, as designated by the Secretary, regarding data on postsecondary institutions;

(20) In the case of an institution that is co-educational and has an intercollegiate athletic program, it will comply with the provisions of § 668.48;

(21) It will not impose any penalty, including, but not limited to, the assessment of late fees, the denial of access to classes, libraries, or other institutional facilities, or the requirement that the student borrow additional funds for which interest or other charges are assessed, on any student because of the student's inability to meet his or her financial obligations to the institution as a result of the delayed disbursement of the proceeds of a Title IV, HEA program loan due to compliance with statutory and regulatory requirements of or applicable to the Title IV, HEA programs, or delays attributable to the institution;

(22)(i) It will not provide any commission, bonus, or other incentive payment based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid, to any person or entity who is engaged in any student recruitment or admission activity, or in making decisions regarding the award of title IV, HEA program funds.

(A) The restrictions in paragraph (b)(22) of this section do not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal student assistance.

(B) For the purpose of paragraph (b)(22) of this section, an employee who receives multiple adjustments to compensation in a calendar year and is engaged in any student enrollment or admission activity or in making decisions regarding the award of title IV, HEA program funds is considered to have received such adjustments based upon success in securing enrollments or the award of financial aid if those adjustments create compensation that is based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid.

(ii) Notwithstanding paragraph (b)(22)(i) of this section, eligible institutions, organizations that are contractors to eligible institutions, and other entities may make--

(A) Merit-based adjustments to employee compensation provided that such adjustments are not based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid; and

(B) Profit-sharing payments so long as such payments are not provided to any person or entity engaged in student recruitment or admission activity or in making decisions regarding the award of title IV, HEA program funds.

(iii) As used in paragraph (b)(22) of this section,

(A) *Commission, bonus, or other incentive payment* means a sum of money or something of value, other than a fixed salary or wages, paid to or given to a person or an entity for services rendered.

(B) *Securing enrollments or the award of financial aid* means activities that a person or entity engages in at any point in time through completion of an educational program for the purpose of the admission or matriculation of students for any period of time or the award of financial aid to students.

(1) These activities include contact in any form with a prospective student, such as, but not limited to--contact through preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution, attendance at such an appointment, or involvement in a prospective student's signing of an enrollment agreement or financial aid application.

(2) These activities do not include making a payment to a third party for the provision of student contact information for prospective students provided that such payment is not based on--

(i) Any additional conduct or action by the third party or the prospective students, such as participation in preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution or attendance at such an appointment, or the signing, or being involved in the signing, of a prospective student's enrollment agreement or financial aid application; or

(ii) The number of students (calculated at any point in time of an educational program) who apply for enrollment, are awarded financial aid, or are enrolled for any period of time, including through completion of an educational program.

(C) *Entity or person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid* means--

(1) With respect to an entity engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any institution or organization that undertakes the recruiting or the admitting of students or that makes decisions about and awards title IV, HEA program funds; and

(2) With respect to a person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any employee who undertakes recruiting or admitting of students or who makes decisions about and awards title IV, HEA program funds, and any higher level employee with responsibility for recruitment or admission of students, or making decisions about awarding title IV, HEA program funds.

(D) *Enrollment* means the admission or matriculation of a student into an eligible institution.

(23) It will meet the requirements established pursuant to Part H of Title IV of the HEA by the Secretary and nationally recognized accrediting agencies;

(24) It will comply with the requirements of § 668.22;

(25) It is liable for all--

(i) Improperly spent or unspent funds received under the Title IV, HEA programs, including any funds administered by a third-party servicer; and

(ii) Returns any title IV, HEA program funds that the institution or its servicer may be required to make;

(26) If the stated objectives of an educational program of the institution are to prepare a student for gainful employment in a recognized occupation, the institution will--

(i) Demonstrate a reasonable relationship between the length of the program and entry level requirements for the recognized occupation for which the program prepares the student. The Secretary considers the relationship to be reasonable if the number of clock hours provided in the program does not exceed by more than 50 percent the minimum number of clock hours required

for training in the recognized occupation for which the program prepares the student, as established by the State in which the program is offered, if the State has established such a requirement, or as established by any Federal agency; and

(ii) Establish the need for the training for the student to obtain employment in the recognized occupation for which the program prepares the student.

(27) In the case of an institution participating in a Title IV, HEA loan program, the institution --

(i) Will develop, publish, administer, and enforce a code of conduct with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs in accordance with 34 CFR 601.21; and

(ii) Must inform its officers, employees, and agents with responsibilities with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs annually of the provisions of the code required under paragraph (b)(27) of this section;

(28) For any year in which the institution has a preferred lender arrangement (as defined in 34 CFR 601.2(b)), it will at least annually compile, maintain, and make available for students attending the institution, and the families of such students, a list in print or other medium, of the specific lenders for loans made, insured, or guaranteed under Title IV, of the HEA or private education loans that the institution recommends, promotes, or endorses in accordance with such preferred lender arrangement. In making such a list, the institution must comply with the requirements in 34 CFR 682.212(h) and 34 CFR 601.10;

(29) (i) It will, upon the request of an enrolled or admitted student who is an applicant for a private education loan (as defined in 34 CFR part 601.2(b)), provide to the applicant the self-certification form required under 34 CFR 601.11(d) and the information required to complete the form, to the extent the institution possesses such information, including --

(A) The applicant's cost of attendance at the institution, as determined by the institution under part F of Title IV, of the HEA;

(B) The applicant's estimated financial assistance, including amounts of financial assistance used to replace the expected family contribution as determined by the institution in accordance with Title IV, for students who have completed the Free Application for Federal Student Aid; and

(C) The difference between the amounts under paragraphs (b)(29)(i)(A) and (29)(i)(B) of this section, as applicable.

(ii) It will, upon the request of the applicant, discuss with the applicant the availability of Federal, State, and institutional student financial aid;

(30) The institution --

(i) Has developed and implemented written plans to effectively combat the unauthorized distribution of copyrighted material by users of the institution's network, without unduly interfering with educational and research use of the network, that include --

(A) The use of one or more technology-based deterrents;

(B) Mechanisms for educating and informing its community about appropriate versus inappropriate use of copyrighted material, including that described in § 668.43(a)(10);

(C) Procedures for handling unauthorized distribution of copyrighted material, including disciplinary procedures; and

(D) Procedures for periodically reviewing the effectiveness of the plans to combat the unauthorized distribution of copyrighted materials by users of the institution's network using relevant assessment criteria. No particular technology measures are favored or required for inclusion in an institution's plans, and each institution retains the authority to determine what its particular plans for compliance with paragraph (b)(30) of this section will be, including those that prohibit content monitoring; and

(ii) Will, in consultation with the chief technology officer or other designated officer of the institution--

copyrighted material;

(B) Make available the results of the review in paragraph (b)(30)(ii)(A) of this section to its students through a Web site or other means; and

(C) To the extent practicable, offer legal alternatives for downloading or otherwise acquiring copyrighted material, as determined by the institution; and

(31) The institution will submit a teach-out plan to its accrediting agency in compliance with 34 CFR 602.24(c), and the standards of the institution's accrediting agency upon the occurrence of any of the following events:

(i) The Secretary initiates the limitation, suspension, or termination of the participation of an institution in any Title IV, HEA program under 34 CFR 600.41 or subpart G of this part or initiates an emergency action under § 668.83.

(ii) The institution's accrediting agency acts to withdraw, terminate, or suspend the accreditation or preaccreditation of the institution.

(iii) The institution's State licensing or authorizing agency revokes the institution's license or legal authorization to provide an educational program.

(iv) The institution intends to close a location that provides 100 percent of at least one program.

(v) The institution otherwise intends to cease operations.

(c) In order to participate in any Title IV, HEA program (other than the LEAP and NEISP programs), the institution must certify that it--

(1) Has in operation a drug abuse prevention program that the institution has determined to be accessible to any officer, employee, or student at the institution; and

(2)(i) Has established a campus security policy in accordance with section 485(f) of the HEA; and

(ii) Has complied with the disclosure requirements of § 668.47 as required by section 485(f) of the HEA.

(d)(1) The institution, if located in a State to which section 4(b) of the National Voter Registration Act (42 U.S.C. 1973gg-2(b)) does not apply, will make a good faith effort to distribute a mail voter registration form, requested and received from the State, to each student enrolled in a degree or certificate program and physically in attendance at the institution, and to make those forms widely available to students at the institution.

(2) The institution must request the forms from the State 120 days prior to the deadline for registering to vote within the State. If an institution has not received a sufficient quantity of forms to fulfill this section from the State within 60 days prior to the deadline for registering to vote in the State, the institution is not liable for not meeting the requirements of this section during that election year.

(3) This paragraph applies to elections as defined in Section 301(1) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(1)), and includes the election for Governor or other chief executive within such State.

(e)(1) A program participation agreement becomes effective on the date that the Secretary signs the agreement.

(2) A new program participation agreement supersedes any prior program participation agreement between the Secretary and the institution.

(f)(1) Except as provided in paragraphs (g) and (h) of this section, the Secretary terminates a program participation agreement through the proceedings in subpart G of this part.

(2) An institution may terminate a program participation agreement.

(3) If the Secretary or the institution terminates a program participation agreement under paragraph (f) of this section, the Secretary establishes the termination date.

(g) An institution's program participation agreement automatically expires on the date that--
(l) The institution changes ownership that results in a change in control as determined by the Secretary under 34 CFR part 600; or
(2) The institution's participation ends under the provisions of § 668.26(a)(1), (2), (4), or (7).
(h) An institution's program participation agreement no longer applies to or covers a location of the institution as of the date on which that location ceases to be a part of the participating institution.

## WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM

If an institution participates in the William D. Ford Federal Direct Loan (Direct Loan) Program, the institution and its representatives shall comply with the statute, guidelines, and regulations governing the Title IV, Part D, William D. Ford Federal Direct Loan Program as required by 20 U.S.C. §§ 1087a *et seq.* (Part C) and 34 C.F.R. Part 685.

The institution will:

1. Provide for the establishment and maintenance of a Direct Loan Program at the Institution that will:

    Identify eligible students who seek student financial assistance in accordance with Section 484 of the Higher Education Act of 1965, as amended (the HEA).

    Estimate the need of students as required under Title IV, Part F of the HEA.

    Provide a certification statement of eligibility for students to receive loans that will not exceed the annual or aggregate limits, except the Institution may exercise its authority, under exceptional circumstances identified by the Secretary, to refuse to certify a statement that permits a student to receive a loan, or certify a loan amount that is less than the student's determination of need, if the reason for such action is documented and provided in written form to a student.

    Establish a schedule for disbursement of loan proceeds to meet the requirements of Section 428G of the HEA.

    Provide timely and accurate information to the Secretary concerning 1) the status of borrowers while students are in attendance, any new information pertaining to the status of student borrowers of which the Institution becomes aware after the student leaves the Institution, and 2) the utilization of Federal funds under Title IV, Part D of the HEA at such times and in such manner as prescribed by the Secretary.

2. Comply with requirements established by the Secretary relating to student loan information with respect to the Direct Loan Program.

3. Provide that students at the Institution and their parents (with respect to such students) will be eligible to participate in the programs under Title IV, Part B of the HEA, Federal Family Education Loan programs, at the discretion of the Secretary for the period during which such Institution participates in the Direct Loan Program, except that a student or parent may not receive loans under both Title IV, Part B and Part D of the HEA for the same period of

enrollment.

4. Provide for the implementation of a quality assurance system, as established by the Secretary and developed in consultation with Institutions of higher education, to ensure that the Institution is complying with program requirements and meeting program objectives.

5. Provide that the Institution will not charge any fees of any kind, regardless of how they are described, to student or parent borrowers for loan application, or origination activities (if applicable), or the provision and processing of any information necessary for a student or parent to receive a loan under Title IV, Part D of the HEA.

6. Provide that the Institution will originate loans to eligible students and parents in accordance with the requirements of Title IV, Part D of the HEA and use funds advanced to it solely for that purpose (Option 2 only).

7. Provide that the note or evidence of obligation of the loan shall be the property of the Secretary (Options 2 and 1 only).

8. Comply with other provisions as the Secretary determines are necessary to protect the interest of the United States and to promote the purposes of Title IV, Part D of the HEA.

9. Accept responsibility and financial liability stemming from its failure to perform its functions under this Program Participation Agreement.

## CERTIFICATIONS REQUIRED FROM INSTITUTIONS

The Institution should refer to the regulations cited below. Signature on this Agreement provides for compliance with the certification requirements under 34 C.F.R. Part 82, "New Restrictions on Lobbying," 34 C.F.R Part 84, "Governmentwide Requirements for Drug-Free Workplace (Financial Assistance)," 34 C.F.R. Part 85, "Governmentwide Debarment and Suspension (Nonprocurement)," and 34 C.F.R. Part 86, "Drug and Alcohol Abuse Prevention." Breach of any of these certifications constitutes a breach of this Agreement.

## PART 1  CERTIFICATION REGARDING LOBBYING; DRUG-FREE WORKPLACE; DEBARMENT, SUSPENSION AND OTHER RESPONSIBILITY MATTERS; AND DRUG AND ALCOHOL ABUSE PREVENTION

### *1. Lobbying*

As required by Section 1352, Title 31 of the U.S. Code, and implemented at 34 C.F.R. Part 82, for persons entering into a Federal contract, grant or cooperative agreement over $100,000, as defined at 34 C.F.R. Part 82, Sections 82.105, and 82.110, the undersigned certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any

cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan or cooperative agreement, the undersigned shall complete and submit Standard Form - LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Institution shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants and contracts under grants, loans and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

### 2a. Drug-Free Workplace (Grantees Other Than Individuals)

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart B, for grantees, as defined at 34 C.F.R. Part 84, Sections 84.200 through 84.230 -
The Institution certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a drug-free workplace statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about-

    (1) The dangers of drug abuse in the workplace;

    (2) The Institution's policy of maintaining a drug-free workplace;

    (3) Any available drug counseling, rehabilitation, and employee assistance programs; and

    (4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a);

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will -

    (1) Abide by the terms of the statement, and

    (2) Notify the employer in writing if he or she is convicted for a violation of a criminal drug statute occurring in the workplace no more than five calendar days after such conviction;

(e) Notifying the agency, in writing, within 10 calendar days after receiving notice under this subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant;

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted -

    (1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1972, as amended; or

    (2)

       Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health,

law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

### 2b. Drug-Free Workplace (Grantees Who Are Individuals)

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart C, for recipients who are individuals, as defined at 34 C.F.R. Part 84, Section 84.300 -

1. As a condition of the grant, the Institution certifies that it will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity related to the award; and

2. If any officer or owner of the Institution is convicted of a criminal drug offense resulting from a violation occurring during the conduct of any award activity, the Institution will report the conviction, in writing, within 10 calendar days of the conviction, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant.

### 3. Debarment, Suspension, and Other Responsibility Matters

As required by Executive Order 12549, Debarment and Suspension, and implemented at 34 C.F.R. Part 85, for prospective participants in primary covered transactions as defined at 34 C.F.R. Part 85, Sections 85.105 and 85.110, the Institution certifies that it and its principals:

(a) Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any Federal department or agency;

(b) Have not within a three-year period preceding this application been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; violation of Federal or State antitrust statutes; commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, receiving stolen property, making false claims, or obstruction of justice; or commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects their present responsibility.

(c) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and

(d) Have not within a three-year period preceding this application had one or more public transactions (Federal, State, or local) terminated for cause or default.

### 4. Drug and Alcohol Abuse Prevention

As required by the Drug-Free Schools and Communities Act Amendments of 1989, which added section 1213 to the Higher Education Act, and implemented at 34 C.F.R. Part 86, the undersigned Institution certifies that it has adopted and implemented a drug prevention program for its students and employees that, at a minimum, includes--

1. The annual distribution in writing to each employee, and to each student who is taking one or more classes for any kind of academic credit except for continuing education units, regardless of the length of the student's program of study, of:

   • Standards of conduct that clearly prohibit, at a minimum, the unlawful possession, use,

or distribution of illicit drugs and alcohol by students and employees on its property or as part of any of its activities.

- A description of the applicable legal sanctions under local, State or Federal law for the unlawful possession or distribution of illicit drugs and alcohol.
- A description of the health risks associated with the use of illicit drugs and the abuse of alcohol.
- A description of any drug or alcohol counseling, treatment, or rehabilitation or re-entry programs that are available to employees or students.
- A clear statement that the Institution will impose disciplinary sanctions on students and employees (consistent with local, State and Federal law), and a description of those sanctions, up to and including expulsion or termination of employment and referral for prosecution, for violation of the standards of conduct. A disciplinary sanction may include the completion of an appropriate rehabilitation program.

2. A biennial review by the Institution of its program to:
- Determine its effectiveness and implement changes to the program if they are needed.
- Ensure that its disciplinary sanctions are consistently enforced.

## PART 2 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, INELIGIBILITY, AND VOLUNTARY EXCLUSION -- LOWER TIER COVERED TRANSACTIONS

**The Institution is to obtain the signatures of Lower Tier Contractors on reproduced copies of the certification below, and retain the signed certification(s) in the Institution's files.**

| CERTIFICATION BY LOWER TIER CONTRACTOR<br>(Before Completing Certification, Read Instructions for This Part 3, below) |
| --- |

(1) The prospective lower tier participant certifies by submission of this proposal, that neither it nor its principals are presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal Department or Agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

| Name of Lower Tier Organization | PR/Award Number or Project Name |
| --- | --- |
| Name of Authorized Representative | Title of Authorized Representative |
| Signature of Authorized Representative | Date |

1. By signing and submitting this proposal, the prospective lower tier participant is providing the certification set out below.

2. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

3. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

4. The terms "covered transaction," "debarred," "suspended," "ineligible," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549. You may contact the person to whom this proposal is submitted for assistance in obtaining a copy of those regulations.

5. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

6. The prospective lower tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Ineligibility, and

Voluntary Exclusion--Lower Tier Covered Transactions," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

9. Except for transactions authorized under paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

NOTE: A completed copy of the "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion--Lower Tier Covered Transactions" form must be retained by the Institution. The original blank certification must be returned with the PPA.

PPA. OPE ID: 02110800. PPA Expiration Date: 01/31/2013          Page 18 of 18

### IN WITNESS WHEREOF

the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Signature of Institution's
Chief Executive Officer: _____     Date: 1/25/13

Print Name and Title: ERIC S. JUNIN

CEO

For the Secretary: _____     Date: 1/34/13
U.S. Department of Education

PPA. OPE ID: 02594300. PPA Expiration Date: 01/31/2013                    Page 1 of 18



FEDERAL STUDENT AID ☆☆☆ START HERE. GO FURTHER.™

---

### UNITED STATES DEPARTMENT OF EDUCATION

### FEDERAL STUDENT AID
### SCHOOL ELIGIBILITY CHANNEL

# TEMPORARY PROGRAM PARTICIPATION AGREEMENT
## PROVISIONAL APPROVAL

Effective Date of Approval: The date on which this Agreement is signed on behalf of the Secretary of Education

Approval Expiration Date: **January 31, 2013**

Name of Institution: **CollegeAmerica Denver**

Address of Institution: **1385 South Colorado Boulevard**
**Suite A512**
**Denver, CO 80222-3380**

OPE ID Number: **02594300**
DUNS Number: **869303586**
Taxpayer Identification Number (TIN): **208091013**

> **The execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.**

The postsecondary educational institution listed above, referred to hereafter as the "Institution," and the United States Secretary of Education, referred to hereafter as the "Secretary," agree that the Institution may participate in those student financial assistance programs authorized by Title IV of the Higher Education Act of 1965, as amended (Title IV, HEA Programs) indicated under this Agreement and further agrees that such participation is subject to the terms and conditions set forth in this Agreement. As used in this Agreement, the term "Department" refers to the U.S. Department of Education.

### TEMPORARY PROVISIONAL PROGRAM PARTICIPATION AGREEMENT

#### ISSUED UPON A CHANGE IN OWNERSHIP AND THE

http://eligcert.ed.gov/eapp/ppa_doc?ope=025943&id=38836                    1/24/2013

## SUBMISSION OF A MATERIALLY COMPLETE APPLICATION

This Agreement is issued as a result of the Institution (a) having undergone a change in ownership resulting in a change of control, and (b) having submitted, within the statutorily mandated time period, a materially complete application to the Department for approval of the change in ownership. The purpose for which the Department has issued this Agreement is to provide to students of the Institution continued access to Federal student financial aid for a limited period while the Institution obtains and submits supporting documentation that was not available at the time of the change in ownership.

This temporary reinstatement is subject to the same terms and conditions that were contained in the Program Participation Agreement that governed the Institution's participation in the Title IV, HEA programs prior to the change in ownership.

Prior to the expiration date of this Agreement on January 31, 2013 the Institution must submit to the Department the following supporting documentation:

(a) A same-day balance sheet, prepared in accordance with *Generally Accepted Accounting Principles* audited in accordance with *Generally Accepted Government Auditing Standards* which show the financial condition of the Institution immediately after the change in ownership.

(b) A copy of the approval of the change in ownership from the Institution's accrediting agency (if the document has not already been submitted to the Department); and

(c) A copy of the approval of the change in ownership from the State agency that authorizes the Institution to provide a program of postsecondary education (if the document has not already been submitted to the Department).

If the Institution provides the necessary documentation prior to the expiration of this Agreement, then the Secretary will extend the expiration date of this agreement on a month-to-month basis until a determination to the change in ownership is made on the application for approval of the change in ownership.

If the Institution demonstrates that it meets the statutory and regulatory requirements for reinstatement to participation in the Title IV, HEA programs, then the Secretary will enter into a new Provisional Program Participation Agreement with the Institution.

If the Institution does not provide the required documentation prior to the expiration date of this Agreement, this Agreement will expire on the stated expiration date without further action or notice, and an order to Stop Payment of Federal Funds will be issued.

## SCOPE OF COVERAGE

This Agreement applies to all locations of the Institution as stated on the most current ELIGIBILITY AND CERTIFICATION APPROVAL REPORT issued by the Department. This Agreement covers the Institution's eligibility to participate in each of the following listed Title IV, HEA programs, and incorporates by reference the regulations cited.

- **FEDERAL PELL GRANT PROGRAM**, 20 U.S.C. §§ 1070a *et seq.*; 34 C.F.R. Part 690.

- **FEDERAL FAMILY EDUCATION LOAN PROGRAM**, 20 U.S.C. §§ 1071 *et seq.*; 34 C.F.R. Part 682.

- **FEDERAL DIRECT STUDENT LOAN PROGRAM,** 20 U.S.C. §§ 1087a *et seq.*; 34 C.F.R. Part 685.

- **FEDERAL PERKINS LOAN PROGRAM,** 20 U.S.C. §§ 1087aa *et seq.*; 34 C.F.R. Part 674.

- **FEDERAL SUPPLEMENTAL EDUCATIONAL OPPORTUNITY GRANT PROGRAM,** 20 U.S.C. §§ 1070b *et seq.*; 34 C.F.R. Part 676.

- **FEDERAL WORK-STUDY PROGRAM,** 42 U.S.C. §§ 2751 *et seq.*; 34 C.F.R. Part 675.

- **ACADEMIC COMPETITIVENESS GRANT AND NATIONAL SCIENCE AND MATHEMATICS ACCESS TO RETAIN TALENT GRANT PROGRAMS,** 20 U.S.C. §§ 1070a-1 *et seq.*; 34 C.F.R. Part 691.

- **IRAQ AND AFGHANISTAN SERVICE GRANT,** 20 U.S.C. §§ 1070d *et seq.*

## PROVISIONAL CERTIFICATION

This provisional certification is granted for a limited period to permit the Institution to participate in the Title IV, HEA programs referenced in this Agreement. During the period of provisional certification, the participation of the Institution will be subject to revocation for cause. Cause for revocation includes, without limitation, a failure to comply with any provision set forth in this Agreement, a violation of Department regulations deemed material by the Department, or a material misrepresentation in the material submitted to the Department as part of the Institution's application process for this certification. The Department in its sole discretion may provide the Institution with an opportunity to cure any such failure, may place the Institution on reimbursement funding pending a decision regarding revocation of this Agreement by a designated Department official, or may suspend the participation of the Institution pending a decision by the Department regarding revocation of this Agreement. In the event the Department chooses to revoke this Agreement and the Institution's participation in the Title IV, HEA programs, the Institution will have the right to show cause why this Agreement should not be revoked by presenting its objections to the designated Department official in writing. The Institution agrees that this opportunity to show cause, and not the procedures in 34 C.F.R. 668 subpart G, shall be the sole administrative appeal regarding such revocation. The decision by the designated Department official will constitute the final agency action.

### Special Requirements for Substantial Changes Made During Term of Provisional Certification

Any institution provisionally certified must apply for and receive approval by the Secretary for expansion or of any substantial change (as hereinafter identified) before it may award, disburse or distribute Title IV, HEA funds based on the substantial change. Substantial changes generally include, but are not limited to: (a) establishment of an additional location; (b) increase in the level of academic offering beyond those listed in the Institution's Eligibility and Certification Approval Report (ECAR); (c) addition of any nondegree or short-term training program; or (d) addition of a degree program by a proprietary institution.

If the Institution applies for the Secretary's approval of a substantial change, the Institution must demonstrate that it has the financial and administrative resources necessary to assure the Institution's continued compliance with the standards of financial responsibility (34 C.F.R. 668.15) and administrative capability (34 C.F.R. 668.16).

**Reasons and Special Conditions of Provisional Certification**

*Change in Ownership*

The Institution has undergone a change in ownership.

# GENERAL TERMS AND CONDITIONS

1. The Institution understands and agrees that it is subject to and will comply with the program statutes and implementing regulations for institutional eligibility as set forth in 34 C.F.R. Part 600 and for each Title IV, HEA program in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA, and the Student Assistance General Provisions regulations set forth in 34 C.F.R. Part 668. *The recitation of any portion of the statute or regulations in this Agreement does not limit the Institution's obligation to comply with other applicable statutes and regulations.*

2.  a. The Institution certifies that on the date it signs this Agreement, it has a drug abuse prevention program in operation that it has determined is accessible to any officer, employee, or student at the Institution.
    b. The Institution certifies that on the date it signs this Agreement, it is in compliance with the disclosure requirements of Section 485(f) of the HEA (Campus Security Policy and Campus Crime Statistics).

3. The Institution agrees to comply with --
    a. Title VI of the Civil Rights Act of 1964, as amended, and the implementing regulations, 34 C.F.R. Parts 100 and 101 (barring discrimination on the basis of race, color or national origin);
    b. Title IX of the Education Amendments of 1972 and the implementing regulations, 34 C.F.R. Part 106 (barring discrimination on the basis of sex);
    c. The Family Educational Rights and Privacy Act of 1974 and the implementing regulations, 34 C.F.R. Part 99;
    d. Section 504 of the Rehabilitation Act of 1973 and the implementing regulations, 34 C.F.R. Part 104 (barring discrimination on the basis of physical handicap); and
    e. The Age Discrimination Act of 1975 and the implementing regulations, 34 C.F.R. Part 110.
    f. The Standards for Safeguarding Customer Information, 16 C.F.R. Part 314, issued by the Federal Trade Commission (FTC), as required by the Gramm-Leach-Bliley (GLB) Act, P.L. 106-102. These Standards are intended to ensure the security and confidentiality of customer records and information. The Secretary considers any breach to the security of student records and information as a demonstration of a potential lack of administrative capability as stated in 34 C.F.R. 668.16(c). Institutions are strongly encouraged to inform its students and the Department of any such breaches.

4. The Institution acknowledges that 34 C.F.R. Parts 602 and 667 require accrediting agencies, State regulatory bodies, and the Secretary to share information about institutions. The Institution agrees that the Secretary, any accrediting agency recognized by the Secretary, and any State regulatory body may share or report information to one another about the Institution

without limitation.

5. The Institution acknowledges that the HEA prohibits the Secretary from recognizing the accreditation of any institution of higher education unless that institution agrees to submit any dispute involving the final denial, withdrawal, or termination of accreditation to initial arbitration prior to any other legal action.

## SELECTED PROVISIONS FROM
## GENERAL PROVISIONS REGULATIONS, 34 C.F.R. PART 668.14

An institution's program participation agreement applies to each branch campus and other location of the institution that meets the applicable requirements of this part unless otherwise specified by the Secretary.

(b) By entering into a program participation agreement, an institution agrees that--

(1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in and in accordance with that program;

(2) As a fiduciary responsible for administering Federal funds, if the institution is permitted to request funds under a Title IV, HEA program advance payment method, the institution will time its requests for funds under the program to meet the institution's immediate Title IV, HEA program needs;

(3) It will not request from or charge any student a fee for processing or handling any application, form, or data required to determine a student's eligibility for, and amount of, Title IV, HEA program assistance;

(4) It will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV, HEA programs, together with assurances that the institution will provide, upon request and in a timely manner, information relating to the administrative capability and financial responsibility of the institution to--

(i) The Secretary;

(ii) A guaranty agency, as defined in 34 CFR part 682, that guarantees loans made under the Federal Stafford Loan and Federal PLUS programs for attendance at the institution or any of the institution's branch campuses or other locations;

(iii) The nationally recognized accrediting agency that accredits or preaccredits the institution or any of the institution's branch campuses, other locations, or educational programs;

(iv) The State agency that legally authorizes the institution and any branch campus or other location of the institution to provide postsecondary education; and

(v) In the case of a public postsecondary vocational educational institution that is approved by a State agency recognized for the approval of public postsecondary vocational education, that State agency;

(5) It will comply with the provisions of § 668.15 relating to factors of financial responsibility;

(6) It will comply with the provisions of § 668.16 relating to standards of administrative capability;

(7) It will submit reports to the Secretary and, in the case of an institution participating in the Federal Stafford Loan, Federal PLUS, or the Federal Perkins Loan Program, to holders of loans made to the institution's students under that program at such times and containing such information as the Secretary may reasonably require to carry out the purpose of the Title IV,

HEA programs;

(8) It will not provide any statement to any student or certification to any lender in the case of an FFEL Program loan, or origination record to the Secretary in the case of a Direct Loan Program loan that qualifies the student or parent for a loan or loans in excess of the amount that the student or parent is eligible to borrow in accordance with sections 425(a), 428(a)(2), 428(b)(1) (A) and (B), 428B, 428H and 455(a) of the HEA;

(9) It will comply with the requirements of Subpart D of this part concerning institutional and financial assistance information for students and prospective students;

(10) In the case of an institution that advertises job placement rates as a means of attracting students to enroll in the institution, it will make available to prospective students, at or before the time that those students apply for enrollment--

(i) The most recent available data concerning employment statistics, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements; and

(ii) Relevant State licensing requirements of the State in which the institution is located for any job for which an educational program offered by the institution is designed to prepare those prospective students;

(11) In the case of an institution participating in the FFEL Program, the institution will inform all eligible borrowers, as defined in 34 CFR part 682, enrolled in the institution about the availability and eligibility of those borrowers for State grant assistance from the State in which the institution is located, and will inform borrowers from another State of the source for further information concerning State grant assistance from that State;

(12) It will provide the certifications described in paragraph (c) of this section;

(13) In the case of an institution whose students receive financial assistance pursuant to section 484(d) of the HEA, the institution will make available to those students a program proven successful in assisting students in obtaining the recognized equivalent of a high school diploma;

(14) It will not deny any form of Federal financial aid to any eligible student solely on the grounds that the student is participating in a program of study abroad approved for credit by the institution;

(15) (i) Except as provided under paragraph (b)(15)(ii) of this section, the institution will use a default management plan approved by the Secretary with regard to its administration of the FFEL or Direct Loan programs, or both for at least the first two years of its participation in those programs, if the institution --

(A) Is participating in the FFEL or Direct Loan programs for the first time; or

(B) Is an institution that has undergone a change of ownership that results in a change in control and is participating in the FFEL or Direct Loan programs.

(ii) The institution does not have to use an approved default management plan if --

(A) The institution, including its main campus and any branch campus, does not have a cohort default rate in excess of 10 percent; and

(B) The owner of the institution does not own and has not owned any other institution that had a cohort default rate in excess of 10 percent while that owner owned the institution.

(16) For a proprietary institution, the institution will derive at least 10 percent of its revenues for each fiscal year from sources other than Title IV, HEA program funds, as provided in § 668.28 (a) and (b), or be subject to sanctions described in § 668.28(c);

(17) The Secretary, guaranty agencies and lenders as defined in 34 CFR part 682, nationally recognized accrediting agencies, the Secretary of Veterans Affairs, State agencies recognized under 34 CFR part 603 for the approval of public postsecondary vocational education, and State agencies that legally authorize institutions and branch campuses or other locations of institutions to provide postsecondary education, have the authority to share with each other any information pertaining to the institution's eligibility for or participation in the Title IV, HEA programs or any

information on fraud and abuse;

(18) It will not knowingly --

(i) Employ in a capacity that involves the administration of the Title IV, HEA programs or the receipt of funds under those programs, an individual who has been convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds, or has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(ii) Contract with an institution or third-party servicer that has been terminated under section 432 of the HEA for a reason involving the acquisition, use, or expenditure of Federal, State, or local government funds, or that has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds; or

(iii) Contract with or employ any individual, agency, or organization that has been, or whose officers or employees have been--

(A) Convicted of, or pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds; or

(B) Administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(19) It will complete, in a timely manner and to the satisfaction of the Secretary, surveys conducted as a part of the Integrated Postsecondary Education Data System (IPEDS) or any other Federal collection effort, as designated by the Secretary, regarding data on postsecondary institutions;

(20) In the case of an institution that is co-educational and has an intercollegiate athletic program, it will comply with the provisions of § 668.48;

(21) It will not impose any penalty, including, but not limited to, the assessment of late fees, the denial of access to classes, libraries, or other institutional facilities, or the requirement that the student borrow additional funds for which interest or other charges are assessed, on any student because of the student's inability to meet his or her financial obligations to the institution as a result of the delayed disbursement of the proceeds of a Title IV, HEA program loan due to compliance with statutory and regulatory requirements of or applicable to the Title IV, HEA programs, or delays attributable to the institution;

(22)(i) It will not provide any commission, bonus, or other incentive payment based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid, to any person or entity who is engaged in any student recruitment or admission activity, or in making decisions regarding the award of title IV, HEA program funds.

(A) The restrictions in paragraph (b)(22) of this section do not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal student assistance.

(B) For the purpose of paragraph (b)(22) of this section, an employee who receives multiple adjustments to compensation in a calendar year and is engaged in any student enrollment or admission activity or in making decisions regarding the award of title IV, HEA program funds is considered to have received such adjustments based upon success in securing enrollments or the award of financial aid if those adjustments create compensation that is based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid.

(ii) Notwithstanding paragraph (b)(22)(i) of this section, eligible institutions, organizations that are contractors to eligible institutions, and other entities may make--

(A) Merit-based adjustments to employee compensation provided that such adjustments are not based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid; and

engaged in student recruitment or admission activity or in making decisions regarding the award of title IV, HEA program funds.

(iii) As used in paragraph (b)(22) of this section,

(A) *Commission, bonus, or other incentive payment* means a sum of money or something of value, other than a fixed salary or wages, paid to or given to a person or an entity for services rendered.

(B) *Securing enrollments or the award of financial aid* means activities that a person or entity engages in at any point in time through completion of an educational program for the purpose of the admission or matriculation of students for any period of time or the award of financial aid to students.

(1) These activities include contact in any form with a prospective student, such as, but not limited to--contact through preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution, attendance at such an appointment, or involvement in a prospective student's signing of an enrollment agreement or financial aid application.

(2) These activities do not include making a payment to a third party for the provision of student contact information for prospective students provided that such payment is not based on--

(i) Any additional conduct or action by the third party or the prospective students, such as participation in preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution or attendance at such an appointment, or the signing, or being involved in the signing, of a prospective student's enrollment agreement or financial aid application; or

(ii) The number of students (calculated at any point in time of an educational program) who apply for enrollment, are awarded financial aid, or are enrolled for any period of time, including through completion of an educational program.

(C) *Entity or person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid* means--

(1) With respect to an entity engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any institution or organization that undertakes the recruiting or the admitting of students or that makes decisions about and awards title IV, HEA program funds; and

(2) With respect to a person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any employee who undertakes recruiting or admitting of students or who makes decisions about and awards title IV, HEA program funds, and any higher level employee with responsibility for recruitment or admission of students, or making decisions about awarding title IV, HEA program funds.

(D) *Enrollment* means the admission or matriculation of a student into an eligible institution.

(23) It will meet the requirements established pursuant to Part H of Title IV of the HEA by the Secretary and nationally recognized accrediting agencies;

(24) It will comply with the requirements of § 668.22;

(25) It is liable for all--

(i) Improperly spent or unspent funds received under the Title IV, HEA programs, including any funds administered by a third-party servicer; and

(ii) Returns any title IV, HEA program funds that the institution or its servicer may be required to make;

(26) If the stated objectives of an educational program of the institution are to prepare a student for gainful employment in a recognized occupation, the institution will--

(i) Demonstrate a reasonable relationship between the length of the program and entry level requirements for the recognized occupation for which the program prepares the student. The

Secretary considers the relationship to be reasonable if the number of clock hours provided in the program does not exceed by more than 50 percent the minimum number of clock hours required for training in the recognized occupation for which the program prepares the student, as established by the State in which the program is offered, if the State has established such a requirement, or as established by any Federal agency; and

(ii) Establish the need for the training for the student to obtain employment in the recognized occupation for which the program prepares the student.

(27) In the case of an institution participating in a Title IV, HEA loan program, the institution --

(i) Will develop, publish, administer, and enforce a code of conduct with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs in accordance with 34 CFR 601.21; and

(ii) Must inform its officers, employees, and agents with responsibilities with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs annually of the provisions of the code required under paragraph (b)(27) of this section;

(28) For any year in which the institution has a preferred lender arrangement (as defined in 34 CFR 601.2(b)), it will at least annually compile, maintain, and make available for students attending the institution, and the families of such students, a list in print or other medium, of the specific lenders for loans made, insured, or guaranteed under Title IV, of the HEA or private education loans that the institution recommends, promotes, or endorses in accordance with such preferred lender arrangement. In making such a list, the institution must comply with the requirements in 34 CFR 682.212(h) and 34 CFR 601.10;

(29) (i) It will, upon the request of an enrolled or admitted student who is an applicant for a private education loan (as defined in 34 CFR 601.2(b)), provide to the applicant the self-certification form required under 34 CFR 601.11(d) and the information required to complete the form, to the extent the institution possesses such information, including --

(A) The applicant's cost of attendance at the institution, as determined by the institution under part F of Title IV, of the HEA;

(B) The applicant's estimated financial assistance, including amounts of financial assistance used to replace the expected family contribution as determined by the institution in accordance with Title IV, for students who have completed the Free Application for Federal Student Aid; and

(C) The difference between the amounts under paragraphs (b)(29)(i)(A) and (29)(i)(B) of this section, as applicable.

(ii) It will, upon the request of the applicant, discuss with the applicant the availability of Federal, State, and institutional student financial aid;

(30) The institution --

(i) Has developed and implemented written plans to effectively combat the unauthorized distribution of copyrighted material by users of the institution's network, without unduly interfering with educational and research use of the network, that include --

(A) The use of one or more technology-based deterrents;

(B) Mechanisms for educating and informing its community about appropriate versus inappropriate use of copyrighted material, including that described in § 668.43(a)(10);

(C) Procedures for handling unauthorized distribution of copyrighted material, including disciplinary procedures; and

(D) Procedures for periodically reviewing the effectiveness of the plans to combat the unauthorized distribution of copyrighted materials by users of the institution's network using relevant assessment criteria. No particular technology measures are favored or required for inclusion in an institution's plans, and each institution retains the authority to determine what its particular plans for compliance with paragraph (b)(30) of this section will be, including those that prohibit content monitoring; and

institution--

(A) Periodically review the legal alternatives for downloading or otherwise acquiring copyrighted material;

(B) Make available the results of the review in paragraph (b)(30)(ii)(A) of this section to its students through a Web site or other means; and

(C) To the extent practicable, offer legal alternatives for downloading or otherwise acquiring copyrighted material, as determined by the institution; and

(31) The institution will submit a teach-out plan to its accrediting agency in compliance with 34 CFR 602.24(c), and the standards of the institution's accrediting agency upon the occurrence of any of the following events:

(i) The Secretary initiates the limitation, suspension, or termination of the participation of an institution in any Title IV, HEA program under 34 CFR 600.41 or subpart G of this part or initiates an emergency action under § 668.83.

(ii) The institution's accrediting agency acts to withdraw, terminate, or suspend the accreditation or preaccreditation of the institution.

(iii) The institution's State licensing or authorizing agency revokes the institution's license or legal authorization to provide an educational program.

(iv) The institution intends to close a location that provides 100 percent of at least one program.

(v) The institution otherwise intends to cease operations.

(c) In order to participate in any Title IV, HEA program (other than the LEAP and NEISP programs), the institution must certify that it--

(1) Has in operation a drug abuse prevention program that the institution has determined to be accessible to any officer, employee, or student at the institution; and

(2)(i) Has established a campus security policy in accordance with section 485(f) of the HEA; and

(ii) Has complied with the disclosure requirements of § 668.47 as required by section 485(f) of the HEA.

(d)(1) The institution, if located in a State to which section 4(b) of the National Voter Registration Act (42 U.S.C. 1973gg-2(b)) does not apply, will make a good faith effort to distribute a mail voter registration form, requested and received from the State, to each student enrolled in a degree or certificate program and physically in attendance at the institution, and to make those forms widely available to students at the institution.

(2) The institution must request the forms from the State 120 days prior to the deadline for registering to vote within the State. If an institution has not received a sufficient quantity of forms to fulfill this section from the State within 60 days prior to the deadline for registering to vote in the State, the institution is not liable for not meeting the requirements of this section during that election year.

(3) This paragraph applies to elections as defined in Section 301(1) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(1)), and includes the election for Governor or other chief executive within such State.

(e)(1) A program participation agreement becomes effective on the date that the Secretary signs the agreement.

(2) A new program participation agreement supersedes any prior program participation agreement between the Secretary and the institution.

(f)(1) Except as provided in paragraphs (g) and (h) of this section, the Secretary terminates a program participation agreement through the proceedings in subpart G of this part.

(2) An institution may terminate a program participation agreement.

(3) If the Secretary or the institution terminates a program participation agreement under

paragraph (f) of this section, the Secretary establishes the termination date.

(g) An institution's program participation agreement automatically expires on the date that--

(l) The institution changes ownership that results in a change in control as determined by the Secretary under 34 CFR part 600; or

(2) The institution's participation ends under the provisions of § 668.26(a)(1), (2), (4), or (7).

(h) An institution's program participation agreement no longer applies to or covers a location of the institution as of the date on which that location ceases to be a part of the participating institution.

## WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM

If an institution participates in the William D. Ford Federal Direct Loan (Direct Loan) Program, the institution and its representatives shall comply with the statute, guidelines, and regulations governing the Title IV, Part D, William D. Ford Federal Direct Loan Program as required by 20 U.S.C. §§ 1087a *et seq.* (Part C) and 34 C.F.R. Part 685.

The institution will:

1. Provide for the establishment and maintenance of a Direct Loan Program at the Institution that will:

   Identify eligible students who seek student financial assistance in accordance with Section 484 of the Higher Education Act of 1965, as amended (the HEA).

   Estimate the need of students as required under Title IV, Part F of the HEA.

   Provide a certification statement of eligibility for students to receive loans that will not exceed the annual or aggregate limits, except the Institution may exercise its authority, under exceptional circumstances identified by the Secretary, to refuse to certify a statement that permits a student to receive a loan, or certify a loan amount that is less than the student's determination of need, if the reason for such action is documented and provided in written form to a student.

   Establish a schedule for disbursement of loan proceeds to meet the requirements of Section 428G of the HEA.

   Provide timely and accurate information to the Secretary concerning 1) the status of borrowers while students are in attendance, any new information pertaining to the status of student borrowers of which the Institution becomes aware after the student leaves the Institution, and 2) the utilization of Federal funds under Title IV, Part D of the HEA at such times and in such manner as prescribed by the Secretary.

2. Comply with requirements established by the Secretary relating to student loan information with respect to the Direct Loan Program.

3. Provide that students at the Institution and their parents (with respect to such students) will be eligible to participate in the programs under Title IV, Part B of the HEA, Federal Family Education Loan programs, at the discretion of the Secretary for the period during which such Institution participates in the Direct Loan Program, except that a student or parent may not

receive loans under both Title IV, Part B and Part D of the HEA for the same period of enrollment.

4. Provide for the implementation of a quality assurance system, as established by the Secretary and developed in consultation with Institutions of higher education, to ensure that the Institution is complying with program requirements and meeting program objectives.

5. Provide that the Institution will not charge any fees of any kind, regardless of how they are described, to student or parent borrowers for loan application, or origination activities (if applicable), or the provision and processing of any information necessary for a student or parent to receive a loan under Title IV, Part D of the HEA.

6. Provide that the Institution will originate loans to eligible students and parents in accordance with the requirements of Title IV, Part D of the HEA and use funds advanced to it solely for that purpose (Option 2 only).

7. Provide that the note or evidence of obligation of the loan shall be the property of the Secretary (Options 2 and 1 only).

8. Comply with other provisions as the Secretary determines are necessary to protect the interest of the United States and to promote the purposes of Title IV, Part D of the HEA.

9. Accept responsibility and financial liability stemming from its failure to perform its functions under this Program Participation Agreement.

## CERTIFICATIONS REQUIRED FROM INSTITUTIONS

The Institution should refer to the regulations cited below. Signature on this Agreement provides for compliance with the certification requirements under 34 C.F.R. Part 82, "New Restrictions on Lobbying," 34 C.F.R Part 84, "Governmentwide Requirements for Drug-Free Workplace (Financial Assistance)," 34 C.F.R. Part 85, "Governmentwide Debarment and Suspension (Nonprocurement)," and 34 C.F.R. Part 86, "Drug and Alcohol Abuse Prevention." Breach of any of these certifications constitutes a breach of this Agreement.

## PART 1 CERTIFICATION REGARDING LOBBYING; DRUG-FREE WORKPLACE; DEBARMENT, SUSPENSION AND OTHER RESPONSIBILITY MATTERS; AND DRUG AND ALCOHOL ABUSE PREVENTION

### *1. Lobbying*

As required by Section 1352, Title 31 of the U.S. Code, and implemented at 34 C.F.R. Part 82, for persons entering into a Federal contract, grant or cooperative agreement over $100,000, as defined at 34 C.F.R. Part 82, Sections 82.105, and 82.110, the undersigned certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the

making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan or cooperative agreement, the undersigned shall complete and submit Standard Form - LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Institution shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants and contracts under grants, loans and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

### *2a. Drug-Free Workplace (Grantees Other Than Individuals)*

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart B, for grantees, as defined at 34 C.F.R. Part 84, Sections 84.200 through 84.230 -

The Institution certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a drug-free workplace statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about-

    (1) The dangers of drug abuse in the workplace;

    (2) The Institution's policy of maintaining a drug-free workplace;

    (3) Any available drug counseling, rehabilitation, and employee assistance programs; and

    (4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a);

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will -

    (1) Abide by the terms of the statement, and

    (2) Notify the employer in writing if he or she is convicted for a violation of a criminal drug statute occurring in the workplace no more than five calendar days after such conviction;

(e) Notifying the agency, in writing, within 10 calendar days after receiving notice under this subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant;

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted -

    (1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1972, as amended; or

    (2)

        Requiring such employee to participate satisfactorily in a drug abuse assistance or

rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

### 2b. Drug-Free Workplace (Grantees Who Are Individuals)

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart C, for recipients who are individuals, as defined at 34 C.F.R. Part 84, Section 84.300 -

1. As a condition of the grant, the Institution certifies that it will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity related to the award; and

2. If any officer or owner of the Institution is convicted of a criminal drug offense resulting from a violation occurring during the conduct of any award activity, the Institution will report the conviction, in writing, within 10 calendar days of the conviction, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant.

### 3. Debarment, Suspension, and Other Responsibility Matters

As required by Executive Order 12549, Debarment and Suspension, and implemented at 34 C.F.R. Part 85, for prospective participants in primary covered transactions as defined at 34 C.F.R. Part 85, Sections 85.105 and 85.110, the Institution certifies that it and its principals:

(a) Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any Federal department or agency;

(b) Have not within a three-year period preceding this application been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; violation of Federal or State antitrust statutes; commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, receiving stolen property, making false claims, or obstruction of justice; or commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects their present responsibility.

(c) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and

(d) Have not within a three-year period preceding this application had one or more public transactions (Federal, State, or local) terminated for cause or default.

### 4. Drug and Alcohol Abuse Prevention

As required by the Drug-Free Schools and Communities Act Amendments of 1989, which added section 1213 to the Higher Education Act, and implemented at 34 C.F.R. Part 86, the undersigned Institution certifies that it has adopted and implemented a drug prevention program for its students and employees that, at a minimum, includes--

1. The annual distribution in writing to each employee, and to each student who is taking one or more classes for any kind of academic credit except for continuing education units, regardless of the length of the student's program of study, of:

PPA. OPE ID: 02594300. PPA Expiration Date: 01/31/2013                    Page 15 of 18

- Standards of conduct that clearly prohibit, at a minimum, the unlawful possession, use, or distribution of illicit drugs and alcohol by students and employees on its property or as part of any of its activities.
- A description of the applicable legal sanctions under local, State or Federal law for the unlawful possession or distribution of illicit drugs and alcohol.
- A description of the health risks associated with the use of illicit drugs and the abuse of alcohol.
- A description of any drug or alcohol counseling, treatment, or rehabilitation or re-entry programs that are available to employees or students.
- A clear statement that the Institution will impose disciplinary sanctions on students and employees (consistent with local, State and Federal law), and a description of those sanctions, up to and including expulsion or termination of employment and referral for prosecution, for violation of the standards of conduct. A disciplinary sanction may include the completion of an appropriate rehabilitation program.

2. A biennial review by the Institution of its program to:
- Determine its effectiveness and implement changes to the program if they are needed.
- Ensure that its disciplinary sanctions are consistently enforced.

## PART 2 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, INELIGIBILITY, AND VOLUNTARY EXCLUSION -- LOWER TIER COVERED TRANSACTIONS

**The Institution is to obtain the signatures of Lower Tier Contractors on reproduced copies of the certification below, and retain the signed certification(s) in the Institution's files.**

| CERTIFICATION BY LOWER TIER CONTRACTOR |
|---|
| (Before Completing Certification, Read Instructions for This Part 3, below) |

(1) The prospective lower tier participant certifies by submission of this proposal, that neither it nor its principals are presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal Department or Agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

| | |
|---|---|
| Name of Lower Tier Organization | PR/Award Number or Project Name |
| Name of Authorized Representative | Title of Authorized Representative |
| Signature of Authorized Representative | Date |

1. By signing and submitting this proposal, the prospective lower tier participant is providing the certification set out below.

2. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

3. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

4. The terms "covered transaction," "debarred," "suspended," "ineligible," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549. You may contact the person to whom this proposal is submitted for assistance in obtaining a copy of those regulations.

5. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

6. The prospective lower tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Ineligibility, and

Voluntary Exclusion--Lower Tier Covered Transactions," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

9. Except for transactions authorized under paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

**NOTE:** A completed copy of the "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion--Lower Tier Covered Transactions" form must be retained by the Institution. The original blank certification must be returned with the PPA.

PPA. OPE ID: 02594300. PPA Expiration Date: 01/31/2013          Page 18 of 18

### IN WITNESS WHEREOF

the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Signature of Institution's
Chief Executive Officer: _____          Date: 1/25/13

Print Name and Title: _____Eric Jhlin_____
                      _____CEO_____

For the Secretary: _____          Date: 1/30/13
U.S. Department of Education

PPA. OPE ID: 03120300. PPA Expiration Date: 01/31/2013                    Page 1 of 18



FEDERAL STUDENT AID█████START HERE. GO FURTHER."

## UNITED STATES DEPARTMENT OF EDUCATION

### FEDERAL STUDENT AID
### SCHOOL ELIGIBILITY CHANNEL

## TEMPORARY PROGRAM PARTICIPATION AGREEMENT
## PROVISIONAL APPROVAL

Effective Date of Approval: The date on which this Agreement is signed on behalf of the Secretary of Education

Approval Expiration Date: **January 31, 2013**

Name of Institution: **CollegeAmerica - Flagstaff**

Address of Institution: **3012 East Route 66**
**Flagstaff, AZ 86004-3936**

OPE ID Number: **03120300**
DUNS Number: **148984107**
Taxpayer Identification Number (TIN): **208091013**

---

**The execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.**

---

The postsecondary educational institution listed above, referred to hereafter as the "Institution," and the United States Secretary of Education, referred to hereafter as the "Secretary," agree that the Institution may participate in those student financial assistance programs authorized by Title IV of the Higher Education Act of 1965, as amended (Title IV, HEA Programs) indicated under this Agreement and further agrees that such participation is subject to the terms and conditions set forth in this Agreement. As used in this Agreement, the term "Department" refers to the U.S. Department of Education.

### TEMPORARY PROVISIONAL PROGRAM PARTICIPATION AGREEMENT
### ISSUED UPON A CHANGE IN OWNERSHIP AND THE
### SUBMISSION OF A MATERIALLY COMPLETE APPLICATION

http://eligcert.ed.gov/eapp/ppa_doc?ope=031203&id=38835                    1/24/2013

This Agreement is issued as a result of the Institution (a) having undergone a change in ownership resulting in a change of control, and (b) having submitted, within the statutorily mandated time period, a materially complete application to the Department for approval of the change in ownership. The purpose for which the Department has issued this Agreement is to provide to students of the Institution continued access to Federal student financial aid for a limited period while the Institution obtains and submits supporting documentation that was not available at the time of the change in ownership.

This temporary reinstatement is subject to the same terms and conditions that were contained in the Program Participation Agreement that governed the Institution's participation in the Title IV, HEA programs prior to the change in ownership.

Prior to the expiration date of this Agreement on January 31, 2013 the Institution must submit to the Department the following supporting documentation:

(a) A same-day balance sheet, prepared in accordance with *Generally Accepted Accounting Principles* audited in accordance with *Generally Accepted Government Auditing Standards* which show the financial condition of the Institution immediately after the change in ownership.

(b) A copy of the approval of the change in ownership from the Institution's accrediting agency (if the document has not already been submitted to the Department); and

(c) A copy of the approval of the change in ownership from the State agency that authorizes the Institution to provide a program of postsecondary education (if the document has not already been submitted to the Department).

If the Institution provides the necessary documentation prior to the expiration of this Agreement, then the Secretary will extend the expiration date of this agreement on a month-to-month basis until a determination to the change in ownership is made on the application for approval of the change in ownership.

If the Institution demonstrates that it meets the statutory and regulatory requirements for reinstatement to participation in the Title IV, HEA programs, then the Secretary will enter into a new Provisional Program Participation Agreement with the Institution.

If the Institution does not provide the required documentation prior to the expiration date of this Agreement, this Agreement will expire on the stated expiration date without further action or notice, and an order to Stop Payment of Federal Funds will be issued.

## SCOPE OF COVERAGE

This Agreement applies to all locations of the Institution as stated on the most current ELIGIBILITY AND CERTIFICATION APPROVAL REPORT issued by the Department. This Agreement covers the Institution's eligibility to participate in each of the following listed Title IV, HEA programs, and incorporates by reference the regulations cited.

- **FEDERAL PELL GRANT PROGRAM,** 20 U.S.C. §§ 1070a *et seq.*; 34 C.F.R. Part 690.

- **FEDERAL FAMILY EDUCATION LOAN PROGRAM,** 20 U.S.C. §§ 1071 *et seq.*; 34 C.F.R. Part 682.

- **FEDERAL DIRECT STUDENT LOAN PROGRAM,** 20 U.S.C. §§ 1087a *et seq.*; 34 C.F.R. Part 685.

- **FEDERAL PERKINS LOAN PROGRAM,** 20 U.S.C. §§ 1087aa *et seq.*; 34 C.F.R. Part 674.

- **FEDERAL SUPPLEMENTAL EDUCATIONAL OPPORTUNITY GRANT PROGRAM,** 20 U.S.C. §§ 1070b *et seq.*; 34 C.F.R. Part 676.

- **FEDERAL WORK-STUDY PROGRAM,** 42 U.S.C. §§ 2751 *et seq.*; 34 C.F.R. Part 675.

- **ACADEMIC COMPETITIVENESS GRANT AND NATIONAL SCIENCE AND MATHEMATICS ACCESS TO RETAIN TALENT GRANT PROGRAMS,** 20 U.S.C. §§ 1070a-1 *et seq.*; 34 C.F.R. Part 691.

- **IRAQ AND AFGHANISTAN SERVICE GRANT,** 20 U.S.C. §§ 1070d *et seq.*

## PROVISIONAL CERTIFICATION

This provisional certification is granted for a limited period to permit the Institution to participate in the Title IV, HEA programs referenced in this Agreement. During the period of provisional certification, the participation of the Institution will be subject to revocation for cause. Cause for revocation includes, without limitation, a failure to comply with any provision set forth in this Agreement, a violation of Department regulations deemed material by the Department, or a material misrepresentation in the material submitted to the Department as part of the Institution's application process for this certification. The Department in its sole discretion may provide the Institution with an opportunity to cure any such failure, may place the Institution on reimbursement funding pending a decision regarding revocation of this Agreement by a designated Department official, or may suspend the participation of the Institution pending a decision by the Department regarding revocation of this Agreement. In the event the Department chooses to revoke this Agreement and the Institution's participation in the Title IV, HEA programs, the Institution will have the right to show cause why this Agreement should not be revoked by presenting its objections to the designated Department official in writing. The Institution agrees that this opportunity to show cause, and not the procedures in 34 C.F.R. 668 subpart G, shall be the sole administrative appeal regarding such revocation. The decision by the designated Department official will constitute the final agency action.

### Special Requirements for Substantial Changes Made During Term of Provisional Certification

Any institution provisionally certified must apply for and receive approval by the Secretary for expansion or of any substantial change (as hereinafter identified) before it may award, disburse or distribute Title IV, HEA funds based on the substantial change. Substantial changes generally include, but are not limited to: (a) establishment of an additional location; (b) increase in the level of academic offering beyond those listed in the Institution's Eligibility and Certification Approval Report (ECAR); (c) addition of any nondegree or short-term training program; or (d) addition of a degree program by a proprietary institution.

If the Institution applies for the Secretary's approval of a substantial change, the Institution must demonstrate that it has the financial and administrative resources necessary to assure the Institution's continued compliance with the standards of financial responsibility (34 C.F.R. 668.15) and administrative capability (34 C.F.R. 668.16).

## Reasons and Special Conditions of Provisional Certification

*Change in Ownership*

The Institution has undergone a change in ownership.

# GENERAL TERMS AND CONDITIONS

1. The Institution understands and agrees that it is subject to and will comply with the program statutes and implementing regulations for institutional eligibility as set forth in 34 C.F.R. Part 600 and for each Title IV, HEA program in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA, and the Student Assistance General Provisions regulations set forth in 34 C.F.R. Part 668.
*The recitation of any portion of the statute or regulations in this Agreement does not limit the Institution's obligation to comply with other applicable statutes and regulations.*

2.   a.   The Institution certifies that on the date it signs this Agreement, it has a drug abuse prevention program in operation that it has determined is accessible to any officer, employee, or student at the Institution.
     b.   The Institution certifies that on the date it signs this Agreement, it is in compliance with the disclosure requirements of Section 485(f) of the HEA (Campus Security Policy and Campus Crime Statistics).

3. The Institution agrees to comply with --
     a.   Title VI of the Civil Rights Act of 1964, as amended, and the implementing regulations, 34 C.F.R. Parts 100 and 101 (barring discrimination on the basis of race, color or national origin);
     b.   Title IX of the Education Amendments of 1972 and the implementing regulations, 34 C.F.R. Part 106 (barring discrimination on the basis of sex);
     c.   The Family Educational Rights and Privacy Act of 1974 and the implementing regulations, 34 C.F.R. Part 99;
     d.   Section 504 of the Rehabilitation Act of 1973 and the implementing regulations, 34 C.F.R. Part 104 (barring discrimination on the basis of physical handicap); and
     e.   The Age Discrimination Act of 1975 and the implementing regulations, 34 C.F.R. Part 110.
     f.   The Standards for Safeguarding Customer Information, 16 C.F.R. Part 314, issued by the Federal Trade Commission (FTC), as required by the Gramm-Leach-Bliley (GLB) Act, P.L. 106-102. These Standards are intended to ensure the security and confidentiality of customer records and information. The Secretary considers any breach to the security of student records and information as a demonstration of a potential lack of administrative capability as stated in 34 C.F.R. 668.16(c). Institutions are strongly encouraged to inform its students and the Department of any such breaches.

4. The Institution acknowledges that 34 C.F.R. Parts 602 and 667 require accrediting agencies, State regulatory bodies, and the Secretary to share information about institutions. The Institution agrees that the Secretary, any accrediting agency recognized by the Secretary, and any State regulatory body may share or report information to one another about the Institution without limitation.

Case 1:22-cv-01732-LAS   Document 12-1   Filed 03/24/23   Page 103 of 288

5. The Institution acknowledges that the HEA prohibits the Secretary from recognizing the accreditation of any institution of higher education unless that institution agrees to submit any dispute involving the final denial, withdrawal, or termination of accreditation to initial arbitration prior to any other legal action.

## SELECTED PROVISIONS FROM
## GENERAL PROVISIONS REGULATIONS, 34 C.F.R. PART 668.14

An institution's program participation agreement applies to each branch campus and other location of the institution that meets the applicable requirements of this part unless otherwise specified by the Secretary.

(b) By entering into a program participation agreement, an institution agrees that--

(1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in and in accordance with that program;

(2) As a fiduciary responsible for administering Federal funds, if the institution is permitted to request funds under a Title IV, HEA program advance payment method, the institution will time its requests for funds under the program to meet the institution's immediate Title IV, HEA program needs;

(3) It will not request from or charge any student a fee for processing or handling any application, form, or data required to determine a student's eligibility for, and amount of, Title IV, HEA program assistance;

(4) It will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV, HEA programs, together with assurances that the institution will provide, upon request and in a timely manner, information relating to the administrative capability and financial responsibility of the institution to--

(i) The Secretary;

(ii) A guaranty agency, as defined in 34 CFR part 682, that guarantees loans made under the Federal Stafford Loan and Federal PLUS programs for attendance at the institution or any of the institution's branch campuses or other locations;

(iii) The nationally recognized accrediting agency that accredits or preaccredits the institution or any of the institution's branch campuses, other locations, or educational programs;

(iv) The State agency that legally authorizes the institution and any branch campus or other location of the institution to provide postsecondary education; and

(v) In the case of a public postsecondary vocational educational institution that is approved by a State agency recognized for the approval of public postsecondary vocational education, that State agency;

(5) It will comply with the provisions of § 668.15 relating to factors of financial responsibility;

(6) It will comply with the provisions of § 668.16 relating to standards of administrative capability;

(7) It will submit reports to the Secretary and, in the case of an institution participating in the Federal Stafford Loan, Federal PLUS, or the Federal Perkins Loan Program, to holders of loans made to the institution's students under that program at such times and containing such information as the Secretary may reasonably require to carry out the purpose of the Title IV, HEA programs;

(8) It will not provide any statement to any student or certification to any lender in the case of an FFEL Program loan, or origination record to the Secretary in the case of a Direct Loan Program loan that qualifies the student or parent for a loan or loans in excess of the amount that the student or parent is eligible to borrow in accordance with sections 425(a), 428(a)(2), 428(b)(1) (A) and (B), 428B, 428H and 455(a) of the HEA;

(9) It will comply with the requirements of Subpart D of this part concerning institutional and financial assistance information for students and prospective students;

(10) In the case of an institution that advertises job placement rates as a means of attracting students to enroll in the institution, it will make available to prospective students, at or before the time that those students apply for enrollment--

(i) The most recent available data concerning employment statistics, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements; and

(ii) Relevant State licensing requirements of the State in which the institution is located for any job for which an educational program offered by the institution is designed to prepare those prospective students;

(11) In the case of an institution participating in the FFEL Program, the institution will inform all eligible borrowers, as defined in 34 CFR part 682, enrolled in the institution about the availability and eligibility of those borrowers for State grant assistance from the State in which the institution is located, and will inform borrowers from another State of the source for further information concerning State grant assistance from that State;

(12) It will provide the certifications described in paragraph (c) of this section;

(13) In the case of an institution whose students receive financial assistance pursuant to section 484(d) of the HEA, the institution will make available to those students a program proven successful in assisting students in obtaining the recognized equivalent of a high school diploma;

(14) It will not deny any form of Federal financial aid to any eligible student solely on the grounds that the student is participating in a program of study abroad approved for credit by the institution;

(15) (i) Except as provided under paragraph (b)(15)(ii) of this section, the institution will use a default management plan approved by the Secretary with regard to its administration of the FFEL or Direct Loan programs, or both for at least the first two years of its participation in those programs, if the institution --

(A) Is participating in the FFEL or Direct Loan programs for the first time; or

(B) Is an institution that has undergone a change of ownership that results in a change in control and is participating in the FFEL or Direct Loan programs.

(ii) The institution does not have to use an approved default management plan if --

(A) The institution, including its main campus and any branch campus, does not have a cohort default rate in excess of 10 percent; and

(B) The owner of the institution does not own and has not owned any other institution that had a cohort default rate in excess of 10 percent while that owner owned the institution.

(16) For a proprietary institution, the institution will derive at least 10 percent of its revenues for each fiscal year from sources other than Title IV, HEA program funds, as provided in § 668.28 (a) and (b), or be subject to sanctions described in § 668.28(c);

(17) The Secretary, guaranty agencies and lenders as defined in 34 CFR part 682, nationally recognized accrediting agencies, the Secretary of Veterans Affairs, State agencies recognized under 34 CFR part 603 for the approval of public postsecondary vocational education, and State agencies that legally authorize institutions and branch campuses or other locations of institutions to provide postsecondary education, have the authority to share with each other any information pertaining to the institution's eligibility for or participation in the Title IV, HEA programs or any information on fraud and abuse;

(i) Employ in a capacity that involves the administration of the Title IV, HEA programs or the receipt of funds under those programs, an individual who has been convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds, or has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(ii) Contract with an institution or third-party servicer that has been terminated under section 432 of the HEA for a reason involving the acquisition, use, or expenditure of Federal, State, or local government funds, or that has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds; or

(iii) Contract with or employ any individual, agency, or organization that has been, or whose officers or employees have been--

(A) Convicted of, or pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds; or

(B) Administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(19) It will complete, in a timely manner and to the satisfaction of the Secretary, surveys conducted as a part of the Integrated Postsecondary Education Data System (IPEDS) or any other Federal collection effort, as designated by the Secretary, regarding data on postsecondary institutions;

(20) In the case of an institution that is co-educational and has an intercollegiate athletic program, it will comply with the provisions of § 668.48;

(21) It will not impose any penalty, including, but not limited to, the assessment of late fees, the denial of access to classes, libraries, or other institutional facilities, or the requirement that the student borrow additional funds for which interest or other charges are assessed, on any student because of the student's inability to meet his or her financial obligations to the institution as a result of the delayed disbursement of the proceeds of a Title IV, HEA program loan due to compliance with statutory and regulatory requirements of or applicable to the Title IV, HEA programs, or delays attributable to the institution;

(22)(i) It will not provide any commission, bonus, or other incentive payment based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid, to any person or entity who is engaged in any student recruitment or admission activity, or in making decisions regarding the award of title IV, HEA program funds.

(A) The restrictions in paragraph (b)(22) of this section do not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal student assistance.

(B) For the purpose of paragraph (b)(22) of this section, an employee who receives multiple adjustments to compensation in a calendar year and is engaged in any student enrollment or admission activity or in making decisions regarding the award of title IV, HEA program funds is considered to have received such adjustments based upon success in securing enrollments or the award of financial aid if those adjustments create compensation that is based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid.

(ii) Notwithstanding paragraph (b)(22)(i) of this section, eligible institutions, organizations that are contractors to eligible institutions, and other entities may make--

(A) Merit-based adjustments to employee compensation provided that such adjustments are not based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid; and

(B) Profit-sharing payments so long as such payments are not provided to any person or entity engaged in student recruitment or admission activity or in making decisions regarding the award

of title IV, HEA program funds.

(iii) As used in paragraph (b)(22) of this section,

(A) *Commission, bonus, or other incentive payment* means a sum of money or something of value, other than a fixed salary or wages, paid to or given to a person or an entity for services rendered.

(B) *Securing enrollments or the award of financial aid* means activities that a person or entity engages in at any point in time through completion of an educational program for the purpose of the admission or matriculation of students for any period of time or the award of financial aid to students.

(1) These activities include contact in any form with a prospective student, such as, but not limited to--contact through preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution, attendance at such an appointment, or involvement in a prospective student's signing of an enrollment agreement or financial aid application.

(2) These activities do not include making a payment to a third party for the provision of student contact information for prospective students provided that such payment is not based on--

(i) Any additional conduct or action by the third party or the prospective students, such as participation in preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution or attendance at such an appointment, or the signing, or being involved in the signing, of a prospective student's enrollment agreement or financial aid application; or

(ii) The number of students (calculated at any point in time of an educational program) who apply for enrollment, are awarded financial aid, or are enrolled for any period of time, including through completion of an educational program.

(C) *Entity or person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid* means--

(1) With respect to an entity engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any institution or organization that undertakes the recruiting or the admitting of students or that makes decisions about and awards title IV, HEA program funds; and

(2) With respect to a person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any employee who undertakes recruiting or admitting of students or who makes decisions about and awards title IV, HEA program funds, and any higher level employee with responsibility for recruitment or admission of students, or making decisions about awarding title IV, HEA program funds.

(D) *Enrollment* means the admission or matriculation of a student into an eligible institution.

(23) It will meet the requirements established pursuant to Part H of Title IV of the HEA by the Secretary and nationally recognized accrediting agencies;

(24) It will comply with the requirements of § 668.22;

(25) It is liable for all--

(i) Improperly spent or unspent funds received under the Title IV, HEA programs, including any funds administered by a third-party servicer; and

(ii) Returns any title IV, HEA program funds that the institution or its servicer may be required to make;

(26) If the stated objectives of an educational program of the institution are to prepare a student for gainful employment in a recognized occupation, the institution will--

(i) Demonstrate a reasonable relationship between the length of the program and entry level requirements for the recognized occupation for which the program prepares the student. The Secretary considers the relationship to be reasonable if the number of clock hours provided in the

program does not exceed by more than 50 percent the minimum number of clock hours required for training in the recognized occupation for which the program prepares the student, as established by the State in which the program is offered, if the State has established such a requirement, or as established by any Federal agency; and

(ii) Establish the need for the training for the student to obtain employment in the recognized occupation for which the program prepares the student.

(27) In the case of an institution participating in a Title IV, HEA loan program, the institution --

(i) Will develop, publish, administer, and enforce a code of conduct with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs in accordance with 34 CFR 601.21; and

(ii) Must inform its officers, employees, and agents with responsibilities with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs annually of the provisions of the code required under paragraph (b)(27) of this section;

(28) For any year in which the institution has a preferred lender arrangement (as defined in 34 CFR 601.2(b)), it will at least annually compile, maintain, and make available for students attending the institution, and the families of such students, a list in print or other medium, of the specific lenders for loans made, insured, or guaranteed under Title IV, of the HEA or private education loans that the institution recommends, promotes, or endorses in accordance with such preferred lender arrangement. In making such a list, the institution must comply with the requirements in 34 CFR 682.212(h) and 34 CFR 601.10;

(29) (i) It will, upon the request of an enrolled or admitted student who is an applicant for a private education loan (as defined in 34 CFR part 601.2(b)), provide to the applicant the self-certification form required under 34 CFR 601.11(d) and the information required to complete the form, to the extent the institution possesses such information, including --

(A) The applicant's cost of attendance at the institution, as determined by the institution under part F of Title IV, of the HEA;

(B) The applicant's estimated financial assistance, including amounts of financial assistance used to replace the expected family contribution as determined by the institution in accordance with Title IV, for students who have completed the Free Application for Federal Student Aid; and

(C) The difference between the amounts under paragraphs (b)(29)(i)(A) and (29)(i)(B) of this section, as applicable.

(ii) It will, upon the request of the applicant, discuss with the applicant the availability of Federal, State, and institutional student financial aid;

(30) The institution --

(i) Has developed and implemented written plans to effectively combat the unauthorized distribution of copyrighted material by users of the institution's network, without unduly interfering with educational and research use of the network, that include --

(A) The use of one or more technology-based deterrents;

(B) Mechanisms for educating and informing its community about appropriate versus inappropriate use of copyrighted material, including that described in § 668.43(a)(10);

(C) Procedures for handling unauthorized distribution of copyrighted material, including disciplinary procedures; and

(D) Procedures for periodically reviewing the effectiveness of the plans to combat the unauthorized distribution of copyrighted materials by users of the institution's network using relevant assessment criteria. No particular technology measures are favored or required for inclusion in an institution's plans, and each institution retains the authority to determine what its particular plans for compliance with paragraph (b)(30) of this section will be, including those that prohibit content monitoring; and

(ii) Will, in consultation with the chief technology officer or other designated officer of the

institution--

(A) Periodically review the legal alternatives for downloading or otherwise acquiring copyrighted material;

(B) Make available the results of the review in paragraph (b)(30)(ii)(A) of this section to its students through a Web site or other means; and

(C) To the extent practicable, offer legal alternatives for downloading or otherwise acquiring copyrighted material, as determined by the institution; and

(31) The institution will submit a teach-out plan to its accrediting agency in compliance with 34 CFR 602.24(c), and the standards of the institution's accrediting agency upon the occurrence of any of the following events:

(i) The Secretary initiates the limitation, suspension, or termination of the participation of an institution in any Title IV, HEA program under 34 CFR 600.41 or subpart G of this part or initiates an emergency action under § 668.83.

(ii) The institution's accrediting agency acts to withdraw, terminate, or suspend the accreditation or preaccreditation of the institution.

(iii) The institution's State licensing or authorizing agency revokes the institution's license or legal authorization to provide an educational program.

(iv) The institution intends to close a location that provides 100 percent of at least one program.

(v) The institution otherwise intends to cease operations.

(c) In order to participate in any Title IV, HEA program (other than the LEAP and NEISP programs), the institution must certify that it--

(1) Has in operation a drug abuse prevention program that the institution has determined to be accessible to any officer, employee, or student at the institution; and

(2)(i) Has established a campus security policy in accordance with section 485(f) of the HEA; and

(ii) Has complied with the disclosure requirements of § 668.47 as required by section 485(f) of the HEA.

(d)(1) The institution, if located in a State to which section 4(b) of the National Voter Registration Act (42 U.S.C. 1973gg-2(b)) does not apply, will make a good faith effort to distribute a mail voter registration form, requested and received from the State, to each student enrolled in a degree or certificate program and physically in attendance at the institution, and to make those forms widely available to students at the institution.

(2) The institution must request the forms from the State 120 days prior to the deadline for registering to vote within the State. If an institution has not received a sufficient quantity of forms to fulfill this section from the State within 60 days prior to the deadline for registering to vote in the State, the institution is not liable for not meeting the requirements of this section during that election year.

(3) This paragraph applies to elections as defined in Section 301(1) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(1)), and includes the election for Governor or other chief executive within such State.

(e)(1) A program participation agreement becomes effective on the date that the Secretary signs the agreement.

(2) A new program participation agreement supersedes any prior program participation agreement between the Secretary and the institution.

(f)(1) Except as provided in paragraphs (g) and (h) of this section, the Secretary terminates a program participation agreement through the proceedings in subpart G of this part.

(2) An institution may terminate a program participation agreement.

(3) If the Secretary or the institution terminates a program participation agreement under

paragraph (f) of this section, the Secretary establishes the termination date.

(g) An institution's program participation agreement automatically expires on the date that--

(l) The institution changes ownership that results in a change in control as determined by the Secretary under 34 CFR part 600; or

(2) The institution's participation ends under the provisions of § 668.26(a)(1), (2), (4), or (7).

(h) An institution's program participation agreement no longer applies to or covers a location of the institution as of the date on which that location ceases to be a part of the participating institution.

## WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM

If an institution participates in the William D. Ford Federal Direct Loan (Direct Loan) Program, the institution and its representatives shall comply with the statute, guidelines, and regulations governing the Title IV, Part D, William D. Ford Federal Direct Loan Program as required by 20 U.S.C. §§ 1087a *et seq.* (Part C) and 34 C.F.R. Part 685.

The institution will:

1. Provide for the establishment and maintenance of a Direct Loan Program at the Institution that will:

   Identify eligible students who seek student financial assistance in accordance with Section 484 of the Higher Education Act of 1965, as amended (the HEA).

   Estimate the need of students as required under Title IV, Part F of the HEA.

   Provide a certification statement of eligibility for students to receive loans that will not exceed the annual or aggregate limits, except the Institution may exercise its authority, under exceptional circumstances identified by the Secretary, to refuse to certify a statement that permits a student to receive a loan, or certify a loan amount that is less than the student's determination of need, if the reason for such action is documented and provided in written form to a student.

   Establish a schedule for disbursement of loan proceeds to meet the requirements of Section 428G of the HEA.

   Provide timely and accurate information to the Secretary concerning 1) the status of borrowers while students are in attendance, any new information pertaining to the status of student borrowers of which the Institution becomes aware after the student leaves the Institution, and 2) the utilization of Federal funds under Title IV, Part D of the HEA at such times and in such manner as prescribed by the Secretary.

2. Comply with requirements established by the Secretary relating to student loan information with respect to the Direct Loan Program.

3. Provide that students at the Institution and their parents (with respect to such students) will be eligible to participate in the programs under Title IV, Part B of the HEA, Federal Family Education Loan programs, at the discretion of the Secretary for the period during which such Institution participates in the Direct Loan Program, except that a student or parent may not

receive loans under both Title IV, Part B and Part D of the HEA for the same period of enrollment.

4. Provide for the implementation of a quality assurance system, as established by the Secretary and developed in consultation with Institutions of higher education, to ensure that the Institution is complying with program requirements and meeting program objectives.

5. Provide that the Institution will not charge any fees of any kind, regardless of how they are described, to student or parent borrowers for loan application, or origination activities (if applicable), or the provision and processing of any information necessary for a student or parent to receive a loan under Title IV, Part D of the HEA.

6. Provide that the Institution will originate loans to eligible students and parents in accordance with the requirements of Title IV, Part D of the HEA and use funds advanced to it solely for that purpose (Option 2 only).

7. Provide that the note or evidence of obligation of the loan shall be the property of the Secretary (Options 2 and 1 only).

8. Comply with other provisions as the Secretary determines are necessary to protect the interest of the United States and to promote the purposes of Title IV, Part D of the HEA.

9. Accept responsibility and financial liability stemming from its failure to perform its functions under this Program Participation Agreement.

## CERTIFICATIONS REQUIRED FROM INSTITUTIONS

The Institution should refer to the regulations cited below. Signature on this Agreement provides for compliance with the certification requirements under 34 C.F.R. Part 82, "New Restrictions on Lobbying," 34 C.F.R Part 84, "Governmentwide Requirements for Drug-Free Workplace (Financial Assistance)," 34 C.F.R. Part 85, "Governmentwide Debarment and Suspension (Nonprocurement)," and 34 C.F.R. Part 86, "Drug and Alcohol Abuse Prevention." Breach of any of these certifications constitutes a breach of this Agreement.

## PART 1  CERTIFICATION REGARDING LOBBYING; DRUG-FREE WORKPLACE; DEBARMENT, SUSPENSION AND OTHER RESPONSIBILITY MATTERS; AND DRUG AND ALCOHOL ABUSE PREVENTION

### *1. Lobbying*

As required by Section 1352, Title 31 of the U.S. Code, and implemented at 34 C.F.R. Part 82, for persons entering into a Federal contract, grant or cooperative agreement over $100,000, as defined at 34 C.F.R. Part 82, Sections 82.105, and 82.110, the undersigned certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the

making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan or cooperative agreement, the undersigned shall complete and submit Standard Form - LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Institution shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants and contracts under grants, loans and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

### *2a. Drug-Free Workplace (Grantees Other Than Individuals)*

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart B, for grantees, as defined at 34 C.F.R. Part 84, Sections 84.200 through 84.230 -

The Institution certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a drug-free workplace statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about-

    (1) The dangers of drug abuse in the workplace;

    (2) The Institution's policy of maintaining a drug-free workplace;

    (3) Any available drug counseling, rehabilitation, and employee assistance programs; and

    (4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a);

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will -

    (1) Abide by the terms of the statement, and

    (2) Notify the employer in writing if he or she is convicted for a violation of a criminal drug statute occurring in the workplace no more than five calendar days after such conviction;

(e) Notifying the agency, in writing, within 10 calendar days after receiving notice under this subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant;

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted -

    (1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1972, as amended; or

    (2)

    Requiring such employee to participate satisfactorily in a drug abuse assistance or

rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

### 2b. Drug-Free Workplace (Grantees Who Are Individuals)

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart C, for recipients who are individuals, as defined at 34 C.F.R. Part 84, Section 84.300 -

1. As a condition of the grant, the Institution certifies that it will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity related to the award; and

2. If any officer or owner of the Institution is convicted of a criminal drug offense resulting from a violation occurring during the conduct of any award activity, the Institution will report the conviction, in writing, within 10 calendar days of the conviction, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant.

### 3. Debarment, Suspension, and Other Responsibility Matters

As required by Executive Order 12549, Debarment and Suspension, and implemented at 34 C.F.R. Part 85, for prospective participants in primary covered transactions as defined at 34 C.F.R. Part 85, Sections 85.105 and 85.110, the Institution certifies that it and its principals:

(a) Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any Federal department or agency;

(b) Have not within a three-year period preceding this application been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; violation of Federal or State antitrust statutes; commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, receiving stolen property, making false claims, or obstruction of justice; or commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects their present responsibility.

(c) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and

(d) Have not within a three-year period preceding this application had one or more public transactions (Federal, State, or local) terminated for cause or default.

### 4. Drug and Alcohol Abuse Prevention

As required by the Drug-Free Schools and Communities Act Amendments of 1989, which added section 1213 to the Higher Education Act, and implemented at 34 C.F.R. Part 86, the undersigned Institution certifies that it has adopted and implemented a drug prevention program for its students and employees that, at a minimum, includes--

1. The annual distribution in writing to each employee, and to each student who is taking one or more classes for any kind of academic credit except for continuing education units, regardless of the length of the student's program of study, of:

- Standards of conduct that clearly prohibit, at a minimum, the unlawful possession, use, or distribution of illicit drugs and alcohol by students and employees on its property or as part of any of its activities.
- A description of the applicable legal sanctions under local, State or Federal law for the unlawful possession or distribution of illicit drugs and alcohol.
- A description of the health risks associated with the use of illicit drugs and the abuse of alcohol.
- A description of any drug or alcohol counseling, treatment, or rehabilitation or re-entry programs that are available to employees or students.
- A clear statement that the Institution will impose disciplinary sanctions on students and employees (consistent with local, State and Federal law), and a description of those sanctions, up to and including expulsion or termination of employment and referral for prosecution, for violation of the standards of conduct. A disciplinary sanction may include the completion of an appropriate rehabilitation program.

2. A biennial review by the Institution of its program to:
- Determine its effectiveness and implement changes to the program if they are needed.
- Ensure that its disciplinary sanctions are consistently enforced.

## PART 2 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, INELIGIBILITY, AND VOLUNTARY EXCLUSION -- LOWER TIER COVERED TRANSACTIONS

**The Institution is to obtain the signatures of Lower Tier Contractors on reproduced copies of the certification below, and retain the signed certification(s) in the Institution's files.**

| CERTIFICATION BY LOWER TIER CONTRACTOR |
|---|
| (Before Completing Certification, Read Instructions for This Part 3, below) |

(1) The prospective lower tier participant certifies by submission of this proposal, that neither it nor its principals are presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal Department or Agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

| | |
|---|---|
| Name of Lower Tier Organization | PR/Award Number or Project Name |
| Name of Authorized Representative | Title of Authorized Representative |
| Signature of Authorized Representative | Date |

1. By signing and submitting this proposal, the prospective lower tier participant is providing the certification set out below.

2. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

3. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

4. The terms "covered transaction," "debarred," "suspended," "ineligible," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549. You may contact the person to whom this proposal is submitted for assistance in obtaining a copy of those regulations.

5. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

6. The prospective lower tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Ineligibility, and

Voluntary Exclusion--Lower Tier Covered Transactions," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

9. Except for transactions authorized under paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

**NOTE:** A completed copy of the "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion--Lower Tier Covered Transactions" form must be retained by the Institution. The original blank certification must be returned with the PPA.

PPA. OPE ID: 03120300. PPA Expiration Date: 01/31/2013                    Page 18 of 18

## IN WITNESS WHEREOF

the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Signature of Institution's
Chief Executive Officer: _____   Date: 1/25/13

Print Name and Title: _Eric S. Juhlin_
_CEO._

For the Secretary: _____   Date: 1/30/13
U.S. Department of Education



FEDERAL STUDENT AID ⧫START HERE. GO FURTHER.™

## UNITED STATES DEPARTMENT OF EDUCATION

### FEDERAL STUDENT AID
### SCHOOL ELIGIBILITY CHANNEL

# PROGRAM PARTICIPATION AGREEMENT
## [PROVISIONAL APPROVAL]

Effective Date of Approval: The date on which this Agreement is signed on behalf of the Secretary of Education

Approval Expiration Date: **December 31, 2019**

Reapplication Date: **September 30, 2019**

Name of Institution: **Stevens Henager College**

dba: **Independence University**

Address of Institution: **1350 West 1890 South**
**West Haven, UT 84401-1420**

OPE ID Number: **00367400**
DUNS Number: **830967790**
Taxpayer Identification Number (TIN): **208091013**

> **The execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.**

The postsecondary educational institution listed above, referred to hereafter as the "Institution," and the United States Secretary of Education, referred to hereafter as the "Secretary," agree that the Institution may participate in those student financial assistance programs authorized by Title IV of the Higher Education Act of 1965, as amended (Title IV, HEA Programs) indicated under this Agreement and further agrees that such participation is subject to the terms and conditions set forth in this Agreement. As used in this Agreement, the term "Department" refers to the U.S. Department of Education.

## SCOPE OF COVERAGE

This Agreement applies to all locations of the Institution as stated on the most current

ELIGIBILITY AND CERTIFICATION APPROVAL REPORT issued by the Department. This Agreement covers the Institution's eligibility to participate in each of the following listed Title IV, HEA programs, and incorporates by reference the regulations cited.

- **FEDERAL PELL GRANT PROGRAM,** 20 U.S.C. §§ 1070a *et seq.*; 34 C.F.R. Part 690.

- **FEDERAL FAMILY EDUCATION LOAN PROGRAM,** 20 U.S.C. §§ 1071 *et seq.*; 34 C.F.R. Part 682.

- **FEDERAL DIRECT STUDENT LOAN PROGRAM,** 20 U.S.C. §§ 1087a *et seq.*; 34 C.F.R. Part 685.

- **FEDERAL PERKINS LOAN PROGRAM,** 20 U.S.C. §§ 1087aa *et seq.*; 34 C.F.R. Part 674.

- **FEDERAL SUPPLEMENTAL EDUCATIONAL OPPORTUNITY GRANT PROGRAM,** 20 U.S.C. §§ 1070b *et seq.*; 34 C.F.R. Part 676.

- **FEDERAL WORK-STUDY PROGRAM,** 42 U.S.C. §§ 2751 *et seq.*; 34 C.F.R. Part 675.

- **ACADEMIC COMPETITIVENESS GRANT AND NATIONAL SCIENCE AND MATHEMATICS ACCESS TO RETAIN TALENT GRANT PROGRAMS,** 20 U.S.C. §§ 1070a-1 *et seq.*; 34 C.F.R. Part 691.

- **IRAQ AND AFGHANISTAN SERVICE GRANT,** 20 U.S.C. §§ 1070d *et seq.*

## PROVISIONAL CERTIFICATION

This provisional certification is granted for a limited period to permit the Institution to participate in the Title IV, HEA programs referenced in this Agreement. During the period of provisional certification, the participation of the Institution will be subject to revocation for cause. Cause for revocation includes, without limitation, a failure to comply with any provision set forth in this Agreement, a violation of Department regulations deemed material by the Department, or a material misrepresentation in the material submitted to the Department as part of the Institution's application process for this certification. The Department in its sole discretion may provide the Institution with an opportunity to cure any such failure, may place the Institution on reimbursement funding pending a decision regarding revocation of this Agreement by a designated Department official, or may suspend the participation of the Institution pending a decision by the Department regarding revocation of this Agreement. In the event the Department chooses to revoke this Agreement and the Institution's participation in the Title IV, HEA programs, the Institution will have the right to show cause why this Agreement should not be revoked by presenting its objections to the designated Department official in writing. The Institution agrees that this opportunity to show cause, and not the procedures in 34 C.F.R. 668 subpart G, shall be the sole administrative appeal regarding such revocation. The decision by the designated Department official will constitute the final agency action.

### Special Requirements for Substantial Changes Made During Term of Provisional Certification

Any institution provisionally certified must apply for and receive approval by the Secretary for expansion or of any substantial change (as hereinafter identified) before it may award, disburse or distribute Title IV, HEA funds based on the substantial change. Substantial changes generally include, but are not limited to: (a) establishment of an additional location; (b) increase in the level of academic offering beyond those listed in the Institution's Eligibility and Certification Approval Report (ECAR); or (c) addition of any educational program (including degree, nondegree, or short-term training programs).

If the Institution applies for the Secretary's approval of a substantial change, the Institution must demonstrate that it has the financial and administrative resources necessary to assure the Institution's continued compliance with the standards of financial responsibility (34 C.F.R. 668.15) and administrative capability (34 C.F.R. 668.16).

## Reasons and Special Conditions of Provisional Certification

### *Change in Ownership*

The Institution has undergone a change in ownership.

### *Funding Arrangement Other Than Advance, and Surety For Not Less Than 10% of Title IV, HEA Funds*

The institution does not meet the standards of financial responsibility as set forth in 34 CFR §668.171. Pursuant to 34 CFR §668.175(f) and as a condition of entering into the Program Participation Agreement (PPA) under Provisional Certification, the institution agrees (a) to participate in the Title IV, HEA programs without recourse to the Department's standard advance funding arrangement, and (b) to maintain an escrow account with the Department for $16,234,899 for the school group. The escrow account is based on a minimum amount of at least 10% of the Title IV, HEA program funds received by the institution during the last complete fiscal year for which figures are available or for the projected fiscal year during which the escrow account will be in place.

### *Divestiture Quarterly Updates*

The Colleges must provide quarterly updates to the Department's Multi-regional and Foreign School Participation Division ("MRFSPD") on the status of Mr. Carl Barney's divestiture of the real property on which the Institution has campuses. These updates should be provided on the last day of each quarter.

### *Nonprofit Board Requirements*

The Institution must provide evidence to the MRFSPD no later than March 1, 2019 that it is coming into compliance with the requirements of the Institution's accreditor, the Accrediting Commission for Career Schools and Colleges ("ACCSC") (with regard to board members for nonprofit organizations), and its plans to attain full compliance by ACCSC's deadline of July 1, 2019, unless the requirements and/or deadlines are modified by ACCSC, or ACCSC relieves the Institution of complying with the requirements now set forth in Section I (A)(1)(b) - Substantive Standards. The Institution must provide evidence to the MRPSPD no later than July 31, 2019 of its full compliance with the above-referenced nonprofit board requirements, unless the requirements are modified or ACCSC relieves the Institution from complying with them.

### *Application for Recertification*

Upon completion of the period of provisional certification, if the Institution wishes to apply for recertification to participate in the Title IV, HEA programs, the Institution must submit a completed Application for Approval to Participate in Federal Student Financial Aid Programs, together with all required supporting documentation, no later than September 30, 2019.

### *Grant or Denial of Full Certification*

12/17/2018                          PPA. OPE ID: 00367400. PPA Expiration Date: 12/31/2019

Notwithstanding any paragraph above, the provisional certification ends upon the Department's notification to the Institution of the Department's decision to grant or deny a six year certification to participate in the Title IV, HEA programs.

# GENERAL TERMS AND CONDITIONS

1. The Institution understands and agrees that it is subject to and will comply with the program statutes and implementing regulations for institutional eligibility as set forth in 34 C.F.R. Part 600 and for each Title IV, HEA program in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA, and the Student Assistance General Provisions regulations set forth in 34 C.F.R. Part 668.
*The recitation of any portion of the statute or regulations in this Agreement does not limit the Institution's obligation to comply with other applicable statutes and regulations.*

2.     a. The Institution certifies that on the date it signs this Agreement, it has a drug abuse prevention program in operation that it has determined is accessible to any officer, employee, or student at the Institution.
      b. The Institution certifies that on the date it signs this Agreement, it is in compliance with the disclosure requirements of Section 485(f) of the HEA (Campus Security Policy and Campus Crime Statistics).

3. The Institution agrees to comply with --
   a. Title VI of the Civil Rights Act of 1964, as amended, and the implementing regulations, 34 C.F.R. Parts 100 and 101 (barring discrimination on the basis of race, color or national origin);
   b. Title IX of the Education Amendments of 1972 and the implementing regulations, 34 C.F.R. Part 106 (barring discrimination on the basis of sex);
   c. The Family Educational Rights and Privacy Act of 1974 and the implementing regulations, 34 C.F.R. Part 99;
   d. Section 504 of the Rehabilitation Act of 1973 and the implementing regulations, 34 C.F.R. Part 104 (barring discrimination on the basis of physical handicap); and
   e. The Age Discrimination Act of 1975 and the implementing regulations, 34 C.F.R. Part 110.
   f. The Standards for Safeguarding Customer Information, 16 C.F.R. Part 314, issued by the Federal Trade Commission (FTC), as required by the Gramm-Leach-Bliley (GLB) Act, P.L. 106-102. These Standards are intended to ensure the security and confidentiality of customer records and information. The Secretary considers any breach to the security of student records and information as a demonstration of a potential lack of administrative capability as stated in 34 C.F.R. 668.16(c). Institutions are strongly encouraged to inform its students and the Department of any such breaches.

4. The Institution acknowledges that 34 C.F.R. Parts 602 and 667 require accrediting agencies, State regulatory bodies, and the Secretary to share information about institutions. The Institution agrees that the Secretary, any accrediting agency recognized by the Secretary, and any State regulatory body may share or report information to one another about the Institution without limitation.

5. The Institution acknowledges that the HEA prohibits the Secretary from recognizing the accreditation of any institution of higher education unless that institution agrees to submit any dispute involving the final denial, withdrawal, or termination of accreditation to initial arbitration prior to any other legal action.

**A120**

## SELECTED PROVISIONS FROM
## GENERAL PROVISIONS REGULATIONS, 34 C.F.R. PART 668.14

An institution's program participation agreement applies to each branch campus and other location of the institution that meets the applicable requirements of this part unless otherwise specified by the Secretary.

(b) By entering into a program participation agreement, an institution agrees that--

(1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in and in accordance with that program;

(2) As a fiduciary responsible for administering Federal funds, if the institution is permitted to request funds under a Title IV, HEA program advance payment method, the institution will time its requests for funds under the program to meet the institution's immediate Title IV, HEA program needs;

(3) It will not request from or charge any student a fee for processing or handling any application, form, or data required to determine a student's eligibility for, and amount of, Title IV, HEA program assistance;

(4) It will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV, HEA programs, together with assurances that the institution will provide, upon request and in a timely manner, information relating to the administrative capability and financial responsibility of the institution to--

(i) The Secretary;

(ii) A guaranty agency, as defined in 34 CFR part 682, that guarantees loans made under the Federal Stafford Loan and Federal PLUS programs for attendance at the institution or any of the institution's branch campuses or other locations;

(iii) The nationally recognized accrediting agency that accredits or preaccredits the institution or any of the institution's branch campuses, other locations, or educational programs;

(iv) The State agency that legally authorizes the institution and any branch campus or other location of the institution to provide postsecondary education; and

(v) In the case of a public postsecondary vocational educational institution that is approved by a State agency recognized for the approval of public postsecondary vocational education, that State agency;

(5) It will comply with the provisions of § 668.15 relating to factors of financial responsibility;

(6) It will comply with the provisions of § 668.16 relating to standards of administrative capability;

(7) It will submit reports to the Secretary and, in the case of an institution participating in the Federal Stafford Loan, Federal PLUS, or the Federal Perkins Loan Program, to holders of loans made to the institution's students under that program at such times and containing such information as the Secretary may reasonably require to carry out the purpose of the Title IV, HEA programs;

(8) It will not provide any statement to any student or certification to any lender in the case of an FFEL Program loan, or origination record to the Secretary in the case of a Direct Loan Program loan that qualifies the student or parent for a loan or loans in excess of the amount that the student or parent is eligible to borrow in accordance with sections 425(a), 428(a)(2), 428(b)(1)(A) and (B), 428B, 428H and 455(a) of the HEA;

(9) It will comply with the requirements of Subpart D of this part concerning institutional and financial assistance information for students and prospective students;

(10) In the case of an institution that advertises job placement rates as a means of attracting students

to enroll in the institution, it will make available to prospective students, at or before the time that those students apply for enrollment--

(i) The most recent available data concerning employment statistics, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements; and

(ii) Relevant State licensing requirements of the State in which the institution is located for any job for which an educational program offered by the institution is designed to prepare those prospective students;

(11) In the case of an institution participating in the FFEL Program, the institution will inform all eligible borrowers, as defined in 34 CFR part 682, enrolled in the institution about the availability and eligibility of those borrowers for State grant assistance from the State in which the institution is located, and will inform borrowers from another State of the source for further information concerning State grant assistance from that State;

(12) It will provide the certifications described in paragraph (c) of this section;

(13) In the case of an institution whose students receive financial assistance pursuant to section 484(d) of the HEA, the institution will make available to those students a program proven successful in assisting students in obtaining the recognized equivalent of a high school diploma;

(14) It will not deny any form of Federal financial aid to any eligible student solely on the grounds that the student is participating in a program of study abroad approved for credit by the institution;

(15) (i) Except as provided under paragraph (b)(15)(ii) of this section, the institution will use a default management plan approved by the Secretary with regard to its administration of the FFEL or Direct Loan programs, or both for at least the first two years of its participation in those programs, if the institution --

(A) Is participating in the FFEL or Direct Loan programs for the first time; or

(B) Is an institution that has undergone a change of ownership that results in a change in control and is participating in the FFEL or Direct Loan programs.

(ii) The institution does not have to use an approved default management plan if --

(A) The institution, including its main campus and any branch campus, does not have a cohort default rate in excess of 10 percent; and

(B) The owner of the institution does not own and has not owned any other institution that had a cohort default rate in excess of 10 percent while that owner owned the institution.

(16) For a proprietary institution, the institution will derive at least 10 percent of its revenues for each fiscal year from sources other than Title IV, HEA program funds, as provided in § 668.28(a) and (b), or be subject to sanctions described in § 668.28(c);

(17) The Secretary, guaranty agencies and lenders as defined in 34 CFR part 682, nationally recognized accrediting agencies, the Secretary of Veterans Affairs, State agencies recognized under 34 CFR part 603 for the approval of public postsecondary vocational education, and State agencies that legally authorize institutions and branch campuses or other locations of institutions to provide postsecondary education, have the authority to share with each other any information pertaining to the institution's eligibility for or participation in the Title IV, HEA programs or any information on fraud and abuse;

(18) It will not knowingly --

(i) Employ in a capacity that involves the administration of the Title IV, HEA programs or the receipt of funds under those programs, an individual who has been convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds, or has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(ii) Contract with an institution or third-party servicer that has been terminated under section 432 of the HEA for a reason involving the acquisition, use, or expenditure of Federal, State, or local government funds, or that has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds; or

(iii) Contract with or employ any individual, agency, or organization that has been, or whose officers or employees have been--

(A) Convicted of, or pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds; or

(B) Administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(19) It will complete, in a timely manner and to the satisfaction of the Secretary, surveys conducted as a part of the Integrated Postsecondary Education Data System (IPEDS) or any other Federal collection effort, as designated by the Secretary, regarding data on postsecondary institutions;

(20) In the case of an institution that is co-educational and has an intercollegiate athletic program, it will comply with the provisions of § 668.48;

(21) It will not impose any penalty, including, but not limited to, the assessment of late fees, the denial of access to classes, libraries, or other institutional facilities, or the requirement that the student borrow additional funds for which interest or other charges are assessed, on any student because of the student's inability to meet his or her financial obligations to the institution as a result of the delayed disbursement of the proceeds of a Title IV, HEA program loan due to compliance with statutory and regulatory requirements of or applicable to the Title IV, HEA programs, or delays attributable to the institution;

(22)(i) It will not provide any commission, bonus, or other incentive payment based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid, to any person or entity who is engaged in any student recruitment or admission activity, or in making decisions regarding the award of title IV, HEA program funds.

(A) The restrictions in paragraph (b)(22) of this section do not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal student assistance.

(B) For the purpose of paragraph (b)(22) of this section, an employee who receives multiple adjustments to compensation in a calendar year and is engaged in any student enrollment or admission activity or in making decisions regarding the award of title IV, HEA program funds is considered to have received such adjustments based upon success in securing enrollments or the award of financial aid if those adjustments create compensation that is based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid.

(ii) Notwithstanding paragraph (b)(22)(i) of this section, eligible institutions, organizations that are contractors to eligible institutions, and other entities may make--

(A) Merit-based adjustments to employee compensation provided that such adjustments are not based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid; and

(B) Profit-sharing payments so long as such payments are not provided to any person or entity engaged in student recruitment or admission activity or in making decisions regarding the award of title IV, HEA program funds.

(iii) As used in paragraph (b)(22) of this section,

(A) *Commission, bonus, or other incentive payment* means a sum of money or something of value, other than a fixed salary or wages, paid to or given to a person or an entity for services rendered.

(B) *Securing enrollments or the award of financial aid* means activities that a person or entity engages in at any point in time through completion of an educational program for the purpose of the admission or matriculation of students for any period of time or the award of financial aid to students.

(1) These activities include contact in any form with a prospective student, such as, but not limited to--contact through preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution, attendance at such an appointment, or involvement in a prospective student's signing of an enrollment agreement or financial aid application.

(2) These activities do not include making a payment to a third party for the provision of student contact information for prospective students provided that such payment is not based on--

(i) Any additional conduct or action by the third party or the prospective students, such as participation in preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution or attendance at such an appointment, or the signing, or being involved in the signing, of a prospective student's enrollment agreement or financial aid application; or

(ii) The number of students (calculated at any point in time of an educational program) who apply for enrollment, are awarded financial aid, or are enrolled for any period of time, including through completion of an educational program.

(C) *Entity or person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid* means--

(1) With respect to an entity engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any institution or organization that undertakes the recruiting or the admitting of students or that makes decisions about and awards title IV, HEA program funds; and

(2) With respect to a person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any employee who undertakes recruiting or admitting of students or who makes decisions about and awards title IV, HEA program funds, and any higher level employee with responsibility for recruitment or admission of students, or making decisions about awarding title IV, HEA program funds.

(D) *Enrollment* means the admission or matriculation of a student into an eligible institution.

(23) It will meet the requirements established pursuant to Part H of Title IV of the HEA by the Secretary and nationally recognized accrediting agencies;

(24) It will comply with the requirements of § 668.22;

(25) It is liable for all--

(i) Improperly spent or unspent funds received under the Title IV, HEA programs, including any funds administered by a third-party servicer; and

(ii) Returns any title IV, HEA program funds that the institution or its servicer may be required to make;

(26) If an educational program offered by the institution is required to prepare a student for gainful employment in a recognized occupation, the institution must--

(i) Demonstrate a reasonable relationship between the length of the program and entry level requirements for the recognized occupation for which the program prepares the student. The Secretary considers the relationship to be reasonable if the number of clock hours provided in the program does not exceed by more than 50 percent the minimum number of clock hours required for training in the recognized occupation for which the program prepares the student, as established by the State in which the institution is located, if the State has established such a requirement, or as established by any Federal agency;

(ii) Establish the need for the training for the student to obtain employment in the recognized occupation for which the program prepares the student; and

(iii) Provide for that program the certification required in § 668.414.

(27) In the case of an institution participating in a Title IV, HEA loan program, the institution --

(i) Will develop, publish, administer, and enforce a code of conduct with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs in accordance with 34 CFR 601.21; and

(ii) Must inform its officers, employees, and agents with responsibilities with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs annually of the provisions of the code required under paragraph (b)(27) of this section;

(28) For any year in which the institution has a preferred lender arrangement (as defined in 34 CFR

12/17/2018                              PPA. OPE ID: 00367400. PPA Expiration Date: 12/31/2019

601.2(b)), it will at least annually compile, maintain, and make available for students attending the institution, and the families of such students, a list in print or other medium, of the specific lenders for loans made, insured, or guaranteed under Title IV, of the HEA or private education loans that the institution recommends, promotes, or endorses in accordance with such preferred lender arrangement. In making such a list, the institution must comply with the requirements in 34 CFR 682.212(h) and 34 CFR 601.10;

(29) (i) It will, upon the request of an enrolled or admitted student who is an applicant for a private education loan (as defined in 34 CFR part 601.2(b)), provide to the applicant the self-certification form required under 34 CFR 601.11(d) and the information required to complete the form, to the extent the institution possesses such information, including --

(A) The applicant's cost of attendance at the institution, as determined by the institution under part F of Title IV, of the HEA;

(B) The applicant's estimated financial assistance, including amounts of financial assistance used to replace the expected family contribution as determined by the institution in accordance with Title IV, for students who have completed the Free Application for Federal Student Aid; and

(C) The difference between the amounts under paragraphs (b)(29)(i)(A) and (29)(i)(B) of this section, as applicable.

(ii) It will, upon the request of the applicant, discuss with the applicant the availability of Federal, State, and institutional student financial aid;

(30) The institution --

(i) Has developed and implemented written plans to effectively combat the unauthorized distribution of copyrighted material by users of the institution's network, without unduly interfering with educational and research use of the network, that include --

(A) The use of one or more technology-based deterrents;

(B) Mechanisms for educating and informing its community about appropriate versus inappropriate use of copyrighted material, including that described in § 668.43(a)(10);

(C) Procedures for handling unauthorized distribution of copyrighted material, including disciplinary procedures; and

(D) Procedures for periodically reviewing the effectiveness of the plans to combat the unauthorized distribution of copyrighted materials by users of the institution's network using relevant assessment criteria. No particular technology measures are favored or required for inclusion in an institution's plans, and each institution retains the authority to determine what its particular plans for compliance with paragraph (b)(30) of this section will be, including those that prohibit content monitoring; and

(ii) Will, in consultation with the chief technology officer or other designated officer of the institution--

(A) Periodically review the legal alternatives for downloading or otherwise acquiring copyrighted material;

(B) Make available the results of the review in paragraph (b)(30)(ii)(A) of this section to its students through a Web site or other means; and

(C) To the extent practicable, offer legal alternatives for downloading or otherwise acquiring copyrighted material, as determined by the institution; and

(31) The institution will submit a teach-out plan to its accrediting agency in compliance with 34 CFR 602.24(c), and the standards of the institution's accrediting agency upon the occurrence of any of the following events:

(i) The Secretary initiates the limitation, suspension, or termination of the participation of an institution in any Title IV, HEA program under 34 CFR 600.41 or subpart G of this part or initiates an emergency action under § 668.83.

(ii) The institution's accrediting agency acts to withdraw, terminate, or suspend the accreditation or preaccreditation of the institution.

(iii) The institution's State licensing or authorizing agency revokes the institution's license or legal

12/17/2018                    PPA. OPE ID: 00367400. PPA Expiration Date: 12/31/2019

authorization to provide an educational program.

(iv) The institution intends to close a location that provides 100 percent of at least one program.

(v) The institution otherwise intends to cease operations.

(c) In order to participate in any Title IV, HEA program (other than the LEAP and NEISP programs), the institution must certify that it--

(1) Has in operation a drug abuse prevention program that the institution has determined to be accessible to any officer, employee, or student at the institution; and

(2)(i) Has established a campus security policy in accordance with section 485(f) of the HEA; and

(ii) Has complied with the disclosure requirements of § 668.47 as required by section 485(f) of the HEA.

(d)(1) The institution, if located in a State to which section 4(b) of the National Voter Registration Act (42 U.S.C. 1973gg-2(b)) does not apply, will make a good faith effort to distribute a mail voter registration form, requested and received from the State, to each student enrolled in a degree or certificate program and physically in attendance at the institution, and to make those forms widely available to students at the institution.

(2) The institution must request the forms from the State 120 days prior to the deadline for registering to vote within the State. If an institution has not received a sufficient quantity of forms to fulfill this section from the State within 60 days prior to the deadline for registering to vote in the State, the institution is not liable for not meeting the requirements of this section during that election year.

(3) This paragraph applies to elections as defined in Section 301(1) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(1)), and includes the election for Governor or other chief executive within such State.

(e)(1) A program participation agreement becomes effective on the date that the Secretary signs the agreement.

(2) A new program participation agreement supersedes any prior program participation agreement between the Secretary and the institution.

(f)(1) Except as provided in paragraphs (g) and (h) of this section, the Secretary terminates a program participation agreement through the proceedings in subpart G of this part.

(2) An institution may terminate a program participation agreement.

(3) If the Secretary or the institution terminates a program participation agreement under paragraph (f) of this section, the Secretary establishes the termination date.

(g) An institution's program participation agreement automatically expires on the date that--

(l) The institution changes ownership that results in a change in control as determined by the Secretary under 34 CFR part 600; or

(2) The institution's participation ends under the provisions of § 668.26(a)(1), (2), (4), or (7).

(h) An institution's program participation agreement no longer applies to or covers a location of the institution as of the date on which that location ceases to be a part of the participating institution.

## WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM

If an institution participates in the William D. Ford Federal Direct Loan (Direct Loan) Program, the institution and its representatives shall comply with the statute, guidelines, and regulations governing the Title IV, Part D, William D. Ford Federal Direct Loan Program as required by 20 U.S.C. §§ 1087a *et seq.* (Part C) and 34 C.F.R. Part 685.

The institution will:

1. Provide for the establishment and maintenance of a Direct Loan Program at the Institution that

will:

Identify eligible students who seek student financial assistance in accordance with Section 484 of the Higher Education Act of 1965, as amended (the HEA).

Estimate the need of students as required under Title IV, Part F of the HEA.

Provide a certification statement of eligibility for students to receive loans that will not exceed the annual or aggregate limits, except the Institution may exercise its authority, under exceptional circumstances identified by the Secretary, to refuse to certify a statement that permits a student to receive a loan, or certify a loan amount that is less than the student's determination of need, if the reason for such action is documented and provided in written form to a student.

Establish a schedule for disbursement of loan proceeds to meet the requirements of Section 428G of the HEA.

Provide timely and accurate information to the Secretary concerning 1) the status of borrowers while students are in attendance, any new information pertaining to the status of student borrowers of which the Institution becomes aware after the student leaves the Institution, and 2) the utilization of Federal funds under Title IV, Part D of the HEA at such times and in such manner as prescribed by the Secretary.

2. Comply with requirements established by the Secretary relating to student loan information with respect to the Direct Loan Program.

3. Provide that students at the Institution and their parents (with respect to such students) will be eligible to participate in the programs under Title IV, Part B of the HEA, Federal Family Education Loan programs, at the discretion of the Secretary for the period during which such Institution participates in the Direct Loan Program, except that a student or parent may not receive loans under both Title IV, Part B and Part D of the HEA for the same period of enrollment.

4. Provide for the implementation of a quality assurance system, as established by the Secretary and developed in consultation with Institutions of higher education, to ensure that the Institution is complying with program requirements and meeting program objectives.

5. Provide that the Institution will not charge any fees of any kind, regardless of how they are described, to student or parent borrowers for loan application, or origination activities (if applicable), or the provision and processing of any information necessary for a student or parent to receive a loan under Title IV, Part D of the HEA.

6. Provide that the Institution will originate loans to eligible students and parents in accordance with the requirements of Title IV, Part D of the HEA and use funds advanced to it solely for that purpose (Option 2 only).

7. Provide that the note or evidence of obligation of the loan shall be the property of the Secretary (Options 2 and 1 only).

8. Comply with other provisions as the Secretary determines are necessary to protect the interest of the United States and to promote the purposes of Title IV, Part D of the HEA.

12/17/2018                         PPA. OPE ID: 00367400. PPA Expiration Date: 12/31/2019

9. Accept responsibility and financial liability stemming from its failure to perform its functions under this Program Participation Agreement.

## CERTIFICATIONS REQUIRED FROM INSTITUTIONS

The Institution should refer to the regulations cited below. Signature on this Agreement provides for compliance with the certification requirements under 34 C.F.R. Part 82, "New Restrictions on Lobbying," 34 C.F.R Part 84, "Governmentwide Requirements for Drug-Free Workplace (Financial Assistance)," 34 C.F.R. Part 85, "Governmentwide Debarment and Suspension (Nonprocurement)," and 34 C.F.R. Part 86, "Drug and Alcohol Abuse Prevention." Breach of any of these certifications constitutes a breach of this Agreement.

## PART 1 CERTIFICATION REGARDING LOBBYING; DRUG-FREE WORKPLACE; DEBARMENT, SUSPENSION AND OTHER RESPONSIBILITY MATTERS; AND DRUG AND ALCOHOL ABUSE PREVENTION

### *1. Lobbying*

As required by Section 1352, Title 31 of the U.S. Code, and implemented at 34 C.F.R. Part 82, for persons entering into a Federal contract, grant or cooperative agreement over $100,000, as defined at 34 C.F.R. Part 82, Sections 82.105, and 82.110, the undersigned certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan or cooperative agreement, the undersigned shall complete and submit Standard Form - LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Institution shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants and contracts under grants, loans and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

### *2a. Drug-Free Workplace (Grantees Other Than Individuals)*

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart B, for grantees, as defined at 34 C.F.R. Part 84, Sections 84.200 through 84.230 -

The Institution certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a drug-free workplace statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about-

(1) The dangers of drug abuse in the workplace;

(2) The Institution's policy of maintaining a drug-free workplace;

(3) Any available drug counseling, rehabilitation, and employee assistance programs; and

(4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a);

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will -

(1) Abide by the terms of the statement, and

(2) Notify the employer in writing if he or she is convicted for a violation of a criminal drug statute occurring in the workplace no more than five calendar days after such conviction;

(e) Notifying the agency, in writing, within 10 calendar days after receiving notice under this subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant;

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted -

(1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1972, as amended; or

(2) Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

## 2b. Drug-Free Workplace (Grantees Who Are Individuals)

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart C, for recipients who are individuals, as defined at 34 C.F.R. Part 84, Section 84.300 -

1. As a condition of the grant, the Institution certifies that it will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity related to the award; and

2. If any officer or owner of the Institution is convicted of a criminal drug offense resulting from a violation occurring during the conduct of any award activity, the Institution will report the conviction, in writing, within 10 calendar days of the conviction, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant.

## 3. Debarment, Suspension, and Other Responsibility Matters

As required by Executive Order 12549, Debarment and Suspension, and implemented at 34 C.F.R. Part 85, for prospective participants in primary covered transactions as defined at 34 C.F.R. Part 85, Sections 85.105 and 85.110, the Institution certifies that it and its principals:

(a) Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any Federal department or agency;

12/17/2018                    PPA. OPE ID: 00367400. PPA Expiration Date: 12/31/2019

(b) Have not within a three-year period preceding this application been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; violation of Federal or State antitrust statutes; commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, receiving stolen property, making false claims, or obstruction of justice; or commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects their present responsibility.

(c) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and

(d) Have not within a three-year period preceding this application had one or more public transactions (Federal, State, or local) terminated for cause or default.

### *4. Drug and Alcohol Abuse Prevention*

As required by the Drug-Free Schools and Communities Act Amendments of 1989, which added section 1213 to the Higher Education Act, and implemented at 34 C.F.R. Part 86, the undersigned Institution certifies that it has adopted and implemented a drug prevention program for its students and employees that, at a minimum, includes--

1. The annual distribution in writing to each employee, and to each student who is taking one or more classes for any kind of academic credit except for continuing education units, regardless of the length of the student's program of study, of:

   - Standards of conduct that clearly prohibit, at a minimum, the unlawful possession, use, or distribution of illicit drugs and alcohol by students and employees on its property or as part of any of its activities.
   - A description of the applicable legal sanctions under local, State or Federal law for the unlawful possession or distribution of illicit drugs and alcohol.
   - A description of the health risks associated with the use of illicit drugs and the abuse of alcohol.
   - A description of any drug or alcohol counseling, treatment, or rehabilitation or re-entry programs that are available to employees or students.
   - A clear statement that the Institution will impose disciplinary sanctions on students and employees (consistent with local, State and Federal law), and a description of those sanctions, up to and including expulsion or termination of employment and referral for prosecution, for violation of the standards of conduct. A disciplinary sanction may include the completion of an appropriate rehabilitation program.

2. A biennial review by the Institution of its program to:

   - Determine its effectiveness and implement changes to the program if they are needed.
   - Ensure that its disciplinary sanctions are consistently enforced.

12/17/2018                    PPA. OPE ID: 00367400. PPA Expiration Date: 12/31/2019

## PART 2 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, INELIGIBILITY, AND VOLUNTARY EXCLUSION -- LOWER TIER COVERED TRANSACTIONS

**The Institution is to obtain the signatures of Lower Tier Contractors on reproduced copies of the certification below, and retain the signed certification(s) in the Institution's files.**

---

### CERTIFICATION BY LOWER TIER CONTRACTOR
**(Before Completing Certification, Read Instructions for This Part 3, below)**

(1) The prospective lower tier participant certifies by submission of this proposal, that neither it nor its principals are presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal Department or Agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

| | |
|---|---|
| Name of Lower Tier Organization | PR/Award Number or Project Name |
| Name of Authorized Representative | Title of Authorized Representative |
| Signature of Authorized Representative | Date |

---

1. By signing and submitting this proposal, the prospective lower tier participant is providing the certification set out below.

2. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

3. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

4. The terms "covered transaction," "debarred," "suspended," "ineligible," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549. You may contact the person to whom this proposal is submitted for assistance in obtaining a copy of those regulations.

5. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

6. The prospective lower tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Ineligibility, and

Voluntary Exclusion--Lower Tier Covered Transactions," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

9. Except for transactions authorized under paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

**NOTE:** A completed copy of the "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion--Lower Tier Covered Transactions" form must be retained by the Institution. The original blank certification must be returned with the PPA.

## PART 3 CERTIFICATION REGARDING GAINFUL EMPLOYMENT PROGRAMS

A list of the reported Title IV eligible educational programs that the institution offers that are required to prepare students for gainful employment in a recognized occupation ("gainful employment programs") is included as part of the Eligibility and Certification Approval Report (ECAR) that is a part of this Program Participation Agreement. By signing this Program Participation Agreement, the institution certifies that:

1. the list of gainful employment programs it offers is accurate and complete;

2. each of the gainful employment programs is approved by a recognized accrediting agency or is otherwise included in the institution's accreditation by its recognized accrediting agency;

3. each of the gainful employment programs it offers is programmatically accredited, if such accreditation is required by a Federal governmental entity or a State where the institution or one of its additional locations is required to obtain State approval pursuant to 34 C.F.R. §600.9;

4. each gainful employment program in a State where the institution or one of its additional locations is located satisfies the licensure or certification requirements that are needed for a student who completes the gainful employment program to qualify to take any licensure or certification exam in that State that is needed for the student to practice or find employment in an occupation that the gainful employment program prepares the student to enter; and

5. for a gainful employment program for which the institution is establishing initial eligibility for Title IV, HEA program funds, the program is not substantially similar to a program offered by the institution that in the prior three years, became ineligible for Title IV, HEA program funds under the debt-to-earnings rates measure or was failing, or in the zone with respect to, the debt-to-earnings rates measure and was voluntarily discontinued by the institution.

## IN WITNESS WHEREOF

the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Signature of Institution's
Chief Executive Officer: _____    Date: 12-18-2018

Print Name and Title:    Eric S. Juhlin
                         CHIEF EXECUTIVE OFFICER

For the Secretary: _____    Date: 12/18/2018
U.S. Department of Education

**A133**

12/17/2018                    PPA. OPE ID: 02110800. PPA Expiration Date: 12/31/2019



FEDERAL STUDENT AID ⁄ START HERE. GO FURTHER.™

## UNITED STATES DEPARTMENT OF EDUCATION

### FEDERAL STUDENT AID
### SCHOOL ELIGIBILITY CHANNEL

# PROGRAM PARTICIPATION AGREEMENT
## [PROVISIONAL APPROVAL]

Effective Date of Approval: The date on which this Agreement is signed on behalf of the Secretary of Education

Approval Expiration Date: **December 31, 2019**

Reapplication Date: **September 30, 2019**

Name of Institution: **California College San Diego**

Address of Institution: **6602 Convoy Court
Suite 100
San Diego, CA 92111-1009**

OPE ID Number: **02110800**

DUNS Number: **626397678**

Taxpayer Identification Number (TIN): **208091013**

> **The execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.**

The postsecondary educational institution listed above, referred to hereafter as the "Institution," and the United States Secretary of Education, referred to hereafter as the "Secretary," agree that the Institution may participate in those student financial assistance programs authorized by Title IV of the Higher Education Act of 1965, as amended (Title IV, HEA Programs) indicated under this Agreement and further agrees that such participation is subject to the terms and conditions set forth in this Agreement. As used in this Agreement, the term "Department" refers to the U.S. Department of Education.

## SCOPE OF COVERAGE

This Agreement applies to all locations of the Institution as stated on the most current

12/17/2018                              PPA. OPE ID: 02110800. PPA Expiration Date: 12/31/2019

ELIGIBILITY AND CERTIFICATION APPROVAL REPORT issued by the Department. This Agreement covers the Institution's eligibility to participate in each of the following listed Title IV, HEA programs, and incorporates by reference the regulations cited.

- **FEDERAL PELL GRANT PROGRAM,** 20 U.S.C. §§ 1070a *et seq.*; 34 C.F.R. Part 690.

- **FEDERAL FAMILY EDUCATION LOAN PROGRAM,** 20 U.S.C. §§ 1071 *et seq.*; 34 C.F.R. Part 682.

- **FEDERAL DIRECT STUDENT LOAN PROGRAM,** 20 U.S.C. §§ 1087a *et seq.*; 34 C.F.R. Part 685.

- **FEDERAL SUPPLEMENTAL EDUCATIONAL OPPORTUNITY GRANT PROGRAM,** 20 U.S.C. §§ 1070b *et seq.*; 34 C.F.R. Part 676.

- **FEDERAL WORK-STUDY PROGRAM,** 42 U.S.C. §§ 2751 *et seq.*; 34 C.F.R. Part 675.

- **ACADEMIC COMPETITIVENESS GRANT AND NATIONAL SCIENCE AND MATHEMATICS ACCESS TO RETAIN TALENT GRANT PROGRAMS,** 20 U.S.C. §§ 1070a-1 *et seq.*; 34 C.F.R. Part 691.

- **IRAQ AND AFGHANISTAN SERVICE GRANT,** 20 U.S.C. §§ 1070d *et seq.*

## PROVISIONAL CERTIFICATION

This provisional certification is granted for a limited period to permit the Institution to participate in the Title IV, HEA programs referenced in this Agreement. During the period of provisional certification, the participation of the Institution will be subject to revocation for cause. Cause for revocation includes, without limitation, a failure to comply with any provision set forth in this Agreement, a violation of Department regulations deemed material by the Department, or a material misrepresentation in the material submitted to the Department as part of the Institution's application process for this certification. The Department in its sole discretion may provide the Institution with an opportunity to cure any such failure, may place the Institution on reimbursement funding pending a decision regarding revocation of this Agreement by a designated Department official, or may suspend the participation of the Institution pending a decision by the Department regarding revocation of this Agreement. In the event the Department chooses to revoke this Agreement and the Institution's participation in the Title IV, HEA programs, the Institution will have the right to show cause why this Agreement should not be revoked by presenting its objections to the designated Department official in writing. The Institution agrees that this opportunity to show cause, and not the procedures in 34 C.F.R. 668 subpart G, shall be the sole administrative appeal regarding such revocation. The decision by the designated Department official will constitute the final agency action.

**Special Requirements for Substantial Changes Made During Term of Provisional Certification**

Any institution provisionally certified must apply for and receive approval by the Secretary for expansion or of any substantial change (as hereinafter identified) before it may award, disburse or distribute Title IV, HEA funds based on the substantial change. Substantial changes generally include, but are not limited to: (a) establishment of an additional location; (b) increase in the level of academic offering beyond those listed in the Institution's Eligibility and Certification Approval Report (ECAR); or (c) addition of any educational program (including degree, nondegree, or short-term training programs).

If the Institution applies for the Secretary's approval of a substantial change, the Institution must demonstrate that it has the financial and administrative resources necessary to assure the Institution's

continued compliance with the standards of financial responsibility (34 C.F.R. 668.15) and administrative capability (34 C.F.R. 668.16).

## Reasons and Special Conditions of Provisional Certification

### Change in Ownership

The Institution has undergone a change in ownership.

### Funding Arrangement Other Than Advance, and Surety For Not Less Than 10% of Title IV, HEA Funds

The institution does not meet the standards of financial responsibility as set forth in 34 CFR §668.171. Pursuant to 34 CFR §668.175(f) and as a condition of entering into the Program Participation Agreement (PPA) under Provisional Certification, the institution agrees (a) to participate in the Title IV, HEA programs without recourse to the Department's standard advance funding arrangement, and (b) to maintain an escrow account with the Department for $16,234,899 for the school group. The escrow account is based on a minimum amount of at least 10% of the Title IV, HEA program funds received by the institution during the last complete fiscal year for which figures are available or for the projected fiscal year during which the escrow account will be in place.

### Divestiture Quarterly Updates

The Colleges must provide quarterly updates to the Department's Multi-regional and Foreign School Participation Division ("MRFSPD") on the status of Mr. Carl Barney's divestiture of the real property on which the Institution has campuses. These updates should be provided on the last day of each quarter.

### Nonprofit Board Requirements

The Institution must provide evidence to the MRFSPD no later than March 1, 2019 that it is coming into compliance with the requirements of the Institution's accreditor, the Accrediting Commission for Career Schools and Colleges ("ACCSC") (with regard to board members for nonprofit organizations), and its plans to attain full compliance by ACCSC's deadline of July 1, 2019, unless the requirements and/or deadlines are modified by ACCSC, or ACCSC relieves the Institution of complying with the requirements now set forth in Section I (A)(1)(b) - Substantive Standards. The Institution must provide evidence to the MRPSPD no later than July 31, 2019 of its full compliance with the above-referenced nonprofit board requirements, unless the requirements are modified or ACCSC relieves the Institution from complying with them.

### Application for Recertification

Upon completion of the period of provisional certification, if the Institution wishes to apply for recertification to participate in the Title IV, HEA programs, the Institution must submit a completed Application for Approval to Participate in Federal Student Financial Aid Programs, together with all required supporting documentation, no later than September 30, 2019.

### Grant or Denial of Full Certification

Notwithstanding any paragraph above, the provisional certification ends upon the Department's

notification to the Institution of the Department's decision to grant or deny a six year certification to participate in the Title IV, HEA programs.

# GENERAL TERMS AND CONDITIONS

1. The Institution understands and agrees that it is subject to and will comply with the program statutes and implementing regulations for institutional eligibility as set forth in 34 C.F.R. Part 600 and for each Title IV, HEA program in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA, and the Student Assistance General Provisions regulations set forth in 34 C.F.R. Part 668.
*The recitation of any portion of the statute or regulations in this Agreement does not limit the Institution's obligation to comply with other applicable statutes and regulations.*

2.  a. The Institution certifies that on the date it signs this Agreement, it has a drug abuse prevention program in operation that it has determined is accessible to any officer, employee, or student at the Institution.
    b. The Institution certifies that on the date it signs this Agreement, it is in compliance with the disclosure requirements of Section 485(f) of the HEA (Campus Security Policy and Campus Crime Statistics).

3. The Institution agrees to comply with --
    a. Title VI of the Civil Rights Act of 1964, as amended, and the implementing regulations, 34 C.F.R. Parts 100 and 101 (barring discrimination on the basis of race, color or national origin);
    b. Title IX of the Education Amendments of 1972 and the implementing regulations, 34 C.F.R. Part 106 (barring discrimination on the basis of sex);
    c. The Family Educational Rights and Privacy Act of 1974 and the implementing regulations, 34 C.F.R. Part 99;
    d. Section 504 of the Rehabilitation Act of 1973 and the implementing regulations, 34 C.F.R. Part 104 (barring discrimination on the basis of physical handicap); and
    e. The Age Discrimination Act of 1975 and the implementing regulations, 34 C.F.R. Part 110.
    f. The Standards for Safeguarding Customer Information, 16 C.F.R. Part 314, issued by the Federal Trade Commission (FTC), as required by the Gramm-Leach-Bliley (GLB) Act, P.L. 106-102. These Standards are intended to ensure the security and confidentiality of customer records and information. The Secretary considers any breach to the security of student records and information as a demonstration of a potential lack of administrative capability as stated in 34 C.F.R. 668.16(c). Institutions are strongly encouraged to inform its students and the Department of any such breaches.

4. The Institution acknowledges that 34 C.F.R. Parts 602 and 667 require accrediting agencies, State regulatory bodies, and the Secretary to share information about institutions. The Institution agrees that the Secretary, any accrediting agency recognized by the Secretary, and any State regulatory body may share or report information to one another about the Institution without limitation.

5. The Institution acknowledges that the HEA prohibits the Secretary from recognizing the accreditation of any institution of higher education unless that institution agrees to submit any dispute involving the final denial, withdrawal, or termination of accreditation to initial arbitration prior to any other legal action.

## SELECTED PROVISIONS FROM

12/17/2018                    PPA. OPE ID: 02110800. PPA Expiration Date: 12/31/2019

## GENERAL PROVISIONS REGULATIONS, 34 C.F.R. PART 668.14

An institution's program participation agreement applies to each branch campus and other location of the institution that meets the applicable requirements of this part unless otherwise specified by the Secretary.

(b) By entering into a program participation agreement, an institution agrees that--

(1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in and in accordance with that program;

(2) As a fiduciary responsible for administering Federal funds, if the institution is permitted to request funds under a Title IV, HEA program advance payment method, the institution will time its requests for funds under the program to meet the institution's immediate Title IV, HEA program needs;

(3) It will not request from or charge any student a fee for processing or handling any application, form, or data required to determine a student's eligibility for, and amount of, Title IV, HEA program assistance;

(4) It will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV, HEA programs, together with assurances that the institution will provide, upon request and in a timely manner, information relating to the administrative capability and financial responsibility of the institution to--

(i) The Secretary;

(ii) A guaranty agency, as defined in 34 CFR part 682, that guarantees loans made under the Federal Stafford Loan and Federal PLUS programs for attendance at the institution or any of the institution's branch campuses or other locations;

(iii) The nationally recognized accrediting agency that accredits or preaccredits the institution or any of the institution's branch campuses, other locations, or educational programs;

(iv) The State agency that legally authorizes the institution and any branch campus or other location of the institution to provide postsecondary education; and

(v) In the case of a public postsecondary vocational educational institution that is approved by a State agency recognized for the approval of public postsecondary vocational education, that State agency;

(5) It will comply with the provisions of § 668.15 relating to factors of financial responsibility;

(6) It will comply with the provisions of § 668.16 relating to standards of administrative capability;

(7) It will submit reports to the Secretary and, in the case of an institution participating in the Federal Stafford Loan, Federal PLUS, or the Federal Perkins Loan Program, to holders of loans made to the institution's students under that program at such times and containing such information as the Secretary may reasonably require to carry out the purpose of the Title IV, HEA programs;

(8) It will not provide any statement to any student or certification to any lender in the case of an FFEL Program loan, or origination record to the Secretary in the case of a Direct Loan Program loan that qualifies the student or parent for a loan or loans in excess of the amount that the student or parent is eligible to borrow in accordance with sections 425(a), 428(a)(2), 428(b)(1)(A) and (B), 428B, 428H and 455(a) of the HEA;

(9) It will comply with the requirements of Subpart D of this part concerning institutional and financial assistance information for students and prospective students;

(10) In the case of an institution that advertises job placement rates as a means of attracting students to enroll in the institution, it will make available to prospective students, at or before the time that

**A138**

those students apply for enrollment--

(i) The most recent available data concerning employment statistics, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements; and

(ii) Relevant State licensing requirements of the State in which the institution is located for any job for which an educational program offered by the institution is designed to prepare those prospective students;

(11) In the case of an institution participating in the FFEL Program, the institution will inform all eligible borrowers, as defined in 34 CFR part 682, enrolled in the institution about the availability and eligibility of those borrowers for State grant assistance from the State in which the institution is located, and will inform borrowers from another State of the source for further information concerning State grant assistance from that State;

(12) It will provide the certifications described in paragraph (c) of this section;

(13) In the case of an institution whose students receive financial assistance pursuant to section 484(d) of the HEA, the institution will make available to those students a program proven successful in assisting students in obtaining the recognized equivalent of a high school diploma;

(14) It will not deny any form of Federal financial aid to any eligible student solely on the grounds that the student is participating in a program of study abroad approved for credit by the institution;

(15) (i) Except as provided under paragraph (b)(15)(ii) of this section, the institution will use a default management plan approved by the Secretary with regard to its administration of the FFEL or Direct Loan programs, or both for at least the first two years of its participation in those programs, if the institution --

(A).Is participating in the FFEL or Direct Loan programs for the first time; or

(B) Is an institution that has undergone a change of ownership that results in a change in control and is participating in the FFEL or Direct Loan programs.

(ii) The institution does not have to use an approved default management plan if --

(A) The institution, including its main campus and any branch campus, does not have a cohort default rate in excess of 10 percent; and

(B) The owner of the institution does not own and has not owned any other institution that had a cohort default rate in excess of 10 percent while that owner owned the institution.

(16) For a proprietary institution, the institution will derive at least 10 percent of its revenues for each fiscal year from sources other than Title IV, HEA program funds, as provided in § 668.28(a) and (b), or be subject to sanctions described in § 668.28(c);

(17) The Secretary, guaranty agencies and lenders as defined in 34 CFR part 682, nationally recognized accrediting agencies, the Secretary of Veterans Affairs, State agencies recognized under 34 CFR part 603 for the approval of public postsecondary vocational education, and State agencies that legally authorize institutions and branch campuses or other locations of institutions to provide postsecondary education, have the authority to share with each other any information pertaining to the institution's eligibility for or participation in the Title IV, HEA programs or any information on fraud and abuse;

(18) It will not knowingly --

(i) Employ in a capacity that involves the administration of the Title IV, HEA programs or the receipt of funds under those programs, an individual who has been convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds, or has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(ii) Contract with an institution or third-party servicer that has been terminated under section 432 of the HEA for a reason involving the acquisition, use, or expenditure of Federal, State, or local government funds, or that has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds; or

(iii) Contract with or employ any individual, agency, or organization that has been, or whose officers

or employees have been--

(A) Convicted of, or pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds; or

(B) Administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(19) It will complete, in a timely manner and to the satisfaction of the Secretary, surveys conducted as a part of the Integrated Postsecondary Education Data System (IPEDS) or any other Federal collection effort, as designated by the Secretary, regarding data on postsecondary institutions;

(20) In the case of an institution that is co-educational and has an intercollegiate athletic program, it will comply with the provisions of § 668.48;

(21) It will not impose any penalty, including, but not limited to, the assessment of late fees, the denial of access to classes, libraries, or other institutional facilities, or the requirement that the student borrow additional funds for which interest or other charges are assessed, on any student because of the student's inability to meet his or her financial obligations to the institution as a result of the delayed disbursement of the proceeds of a Title IV, HEA program loan due to compliance with statutory and regulatory requirements of or applicable to the Title IV, HEA programs, or delays attributable to the institution;

(22)(i) It will not provide any commission, bonus, or other incentive payment based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid, to any person or entity who is engaged in any student recruitment or admission activity, or in making decisions regarding the award of title IV, HEA program funds.

(A) The restrictions in paragraph (b)(22) of this section do not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal student assistance.

(B) For the purpose of paragraph (b)(22) of this section, an employee who receives multiple adjustments to compensation in a calendar year and is engaged in any student enrollment or admission activity or in making decisions regarding the award of title IV, HEA program funds is considered to have received such adjustments based upon success in securing enrollments or the award of financial aid if those adjustments create compensation that is based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid.

(ii) Notwithstanding paragraph (b)(22)(i) of this section, eligible institutions, organizations that are contractors to eligible institutions, and other entities may make--

(A) Merit-based adjustments to employee compensation provided that such adjustments are not based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid; and

(B) Profit-sharing payments so long as such payments are not provided to any person or entity engaged in student recruitment or admission activity or in making decisions regarding the award of title IV, HEA program funds.

(iii) As used in paragraph (b)(22) of this section,

(A) *Commission, bonus, or other incentive payment* means a sum of money or something of value, other than a fixed salary or wages, paid to or given to a person or an entity for services rendered.

(B) *Securing enrollments or the award of financial aid* means activities that a person or entity engages in at any point in time through completion of an educational program for the purpose of the admission or matriculation of students for any period of time or the award of financial aid to students.

(1) These activities include contact in any form with a prospective student, such as, but not limited to--contact through preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution, attendance at such an appointment, or involvement in a prospective student's signing of an enrollment agreement or financial aid application.

(2) These activities do not include making a payment to a third party for the provision of student

contact information for prospective students provided that such payment is not based on--

(i) Any additional conduct or action by the third party or the prospective students, such as participation in preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution or attendance at such an appointment, or the signing, or being involved in the signing, of a prospective student's enrollment agreement or financial aid application; or

(ii) The number of students (calculated at any point in time of an educational program) who apply for enrollment, are awarded financial aid, or are enrolled for any period of time, including through completion of an educational program.

(C) *Entity or person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid* means--

(1) With respect to an entity engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any institution or organization that undertakes the recruiting or the admitting of students or that makes decisions about and awards title IV, HEA program funds; and

(2) With respect to a person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any employee who undertakes recruiting or admitting of students or who makes decisions about and awards title IV, HEA program funds, and any higher level employee with responsibility for recruitment or admission of students, or making decisions about awarding title IV, HEA program funds.

(D) *Enrollment* means the admission or matriculation of a student into an eligible institution.

(23) It will meet the requirements established pursuant to Part H of Title IV of the HEA by the Secretary and nationally recognized accrediting agencies;

(24) It will comply with the requirements of § 668.22;

(25) It is liable for all--

(i) Improperly spent or unspent funds received under the Title IV, HEA programs, including any funds administered by a third-party servicer; and

(ii) Returns any title IV, HEA program funds that the institution or its servicer may be required to make;

(26) If an educational program offered by the institution is required to prepare a student for gainful employment in a recognized occupation, the institution must--

(i) Demonstrate a reasonable relationship between the length of the program and entry level requirements for the recognized occupation for which the program prepares the student. The Secretary considers the relationship to be reasonable if the number of clock hours provided in the program does not exceed by more than 50 percent the minimum number of clock hours required for training in the recognized occupation for which the program prepares the student, as established by the State in which the institution is located, if the State has established such a requirement, or as established by any Federal agency;

(ii) Establish the need for the training for the student to obtain employment in the recognized occupation for which the program prepares the student; and

(iii) Provide for that program the certification required in § 668.414.

(27) In the case of an institution participating in a Title IV, HEA loan program, the institution --

(i) Will develop, publish, administer, and enforce a code of conduct with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs in accordance with 34 CFR 601.21; and

(ii) Must inform its officers, employees, and agents with responsibilities with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs annually of the provisions of the code required under paragraph (b)(27) of this section;

(28) For any year in which the institution has a preferred lender arrangement (as defined in 34 CFR 601.2(b)), it will at least annually compile, maintain, and make available for students attending the

institution, and the families of such students, a list in print or other medium, of the specific lenders for loans made, insured, or guaranteed under Title IV, of the HEA or private education loans that the institution recommends, promotes, or endorses in accordance with such preferred lender arrangement. In making such a list, the institution must comply with the requirements in 34 CFR 682.212(h) and 34 CFR 601.10;

(29) (i) It will, upon the request of an enrolled or admitted student who is an applicant for a private education loan (as defined in 34 CFR part 601.2(b)), provide to the applicant the self-certification form required under 34 CFR 601.11(d) and the information required to complete the form, to the extent the institution possesses such information, including --

(A) The applicant's cost of attendance at the institution, as determined by the institution under part F of Title IV, of the HEA;

(B) The applicant's estimated financial assistance, including amounts of financial assistance used to replace the expected family contribution as determined by the institution in accordance with Title IV, for students who have completed the Free Application for Federal Student Aid; and

(C) The difference between the amounts under paragraphs (b)(29)(i)(A) and (29)(i)(B) of this section, as applicable.

(ii) It will, upon the request of the applicant, discuss with the applicant the availability of Federal, State, and institutional student financial aid;

(30) The institution --

(i) Has developed and implemented written plans to effectively combat the unauthorized distribution of copyrighted material by users of the institution's network, without unduly interfering with educational and research use of the network, that include --

(A) The use of one or more technology-based deterrents;

(B) Mechanisms for educating and informing its community about appropriate versus inappropriate use of copyrighted material, including that described in § 668.43(a)(10);

(C) Procedures for handling unauthorized distribution of copyrighted material, including disciplinary procedures; and

(D) Procedures for periodically reviewing the effectiveness of the plans to combat the unauthorized distribution of copyrighted materials by users of the institution's network using relevant assessment criteria. No particular technology measures are favored or required for inclusion in an institution's plans, and each institution retains the authority to determine what its particular plans for compliance with paragraph (b)(30) of this section will be, including those that prohibit content monitoring; and

(ii) Will, in consultation with the chief technology officer or other designated officer of the institution--

(A) Periodically review the legal alternatives for downloading or otherwise acquiring copyrighted material;

(B) Make available the results of the review in paragraph (b)(30)(ii)(A) of this section to its students through a Web site or other means; and

(C) To the extent practicable, offer legal alternatives for downloading or otherwise acquiring copyrighted material, as determined by the institution; and

(31) The institution will submit a teach-out plan to its accrediting agency in compliance with 34 CFR 602.24(c), and the standards of the institution's accrediting agency upon the occurrence of any of the following events:

(i) The Secretary initiates the limitation, suspension, or termination of the participation of an institution in any Title IV, HEA program under 34 CFR 600.41 or subpart G of this part or initiates an emergency action under § 668.83.

(ii) The institution's accrediting agency acts to withdraw, terminate, or suspend the accreditation or preaccreditation of the institution.

(iii) The institution's State licensing or authorizing agency revokes the institution's license or legal authorization to provide an educational program.

(iv) The institution intends to close a location that provides 100 percent of at least one program.

(v) The institution otherwise intends to cease operations.

(c) In order to participate in any Title IV, HEA program (other than the LEAP and NEISP programs), the institution must certify that it--

(1) Has in operation a drug abuse prevention program that the institution has determined to be accessible to any officer, employee, or student at the institution; and

(2)(i) Has established a campus security policy in accordance with section 485(f) of the HEA; and

(ii) Has complied with the disclosure requirements of § 668.47 as required by section 485(f) of the HEA.

(d)(1) The institution, if located in a State to which section 4(b) of the National Voter Registration Act (42 U.S.C. 1973gg-2(b)) does not apply, will make a good faith effort to distribute a mail voter registration form, requested and received from the State, to each student enrolled in a degree or certificate program and physically in attendance at the institution, and to make those forms widely available to students at the institution.

(2) The institution must request the forms from the State 120 days prior to the deadline for registering to vote within the State. If an institution has not received a sufficient quantity of forms to fulfill this section from the State within 60 days prior to the deadline for registering to vote in the State, the institution is not liable for not meeting the requirements of this section during that election year.

(3) This paragraph applies to elections as defined in Section 301(1) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(1)), and includes the election for Governor or other chief executive within such State.

(e)(1) A program participation agreement becomes effective on the date that the Secretary signs the agreement.

(2) A new program participation agreement supersedes any prior program participation agreement between the Secretary and the institution.

(f)(1) Except as provided in paragraphs (g) and (h) of this section, the Secretary terminates a program participation agreement through the proceedings in subpart G of this part.

(2) An institution may terminate a program participation agreement.

(3) If the Secretary or the institution terminates a program participation agreement under paragraph (f) of this section, the Secretary establishes the termination date.

(g) An institution's program participation agreement automatically expires on the date that--

(l) The institution changes ownership that results in a change in control as determined by the Secretary under 34 CFR part 600; or

(2) The institution's participation ends under the provisions of § 668.26(a)(1), (2), (4), or (7).

(h) An institution's program participation agreement no longer applies to or covers a location of the institution as of the date on which that location ceases to be a part of the participating institution.

## WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM

If an institution participates in the William D. Ford Federal Direct Loan (Direct Loan) Program, the institution and its representatives shall comply with the statute, guidelines, and regulations governing the Title IV, Part D, William D. Ford Federal Direct Loan Program as required by 20 U.S.C. §§ 1087a *et seq.* (Part C) and 34 C.F.R. Part 685.

The institution will:

1. Provide for the establishment and maintenance of a Direct Loan Program at the Institution that will:

12/17/2018                    PPA. OPE ID: 02110800. PPA Expiration Date: 12/31/2019

Identify eligible students who seek student financial assistance in accordance with Section 484 of the Higher Education Act of 1965, as amended (the HEA).

Estimate the need of students as required under Title IV, Part F of the HEA.

Provide a certification statement of eligibility for students to receive loans that will not exceed the annual or aggregate limits, except the Institution may exercise its authority, under exceptional circumstances identified by the Secretary, to refuse to certify a statement that permits a student to receive a loan, or certify a loan amount that is less than the student's determination of need, if the reason for such action is documented and provided in written form to a student.

Establish a schedule for disbursement of loan proceeds to meet the requirements of Section 428G of the HEA.

Provide timely and accurate information to the Secretary concerning 1) the status of borrowers while students are in attendance, any new information pertaining to the status of student borrowers of which the Institution becomes aware after the student leaves the Institution, and 2) the utilization of Federal funds under Title IV, Part D of the HEA at such times and in such manner as prescribed by the Secretary.

2. Comply with requirements established by the Secretary relating to student loan information with respect to the Direct Loan Program.

3. Provide that students at the Institution and their parents (with respect to such students) will be eligible to participate in the programs under Title IV, Part B of the HEA, Federal Family Education Loan programs, at the discretion of the Secretary for the period during which such Institution participates in the Direct Loan Program, except that a student or parent may not receive loans under both Title IV, Part B and Part D of the HEA for the same period of enrollment.

4. Provide for the implementation of a quality assurance system, as established by the Secretary and developed in consultation with Institutions of higher education, to ensure that the Institution is complying with program requirements and meeting program objectives.

5. Provide that the Institution will not charge any fees of any kind, regardless of how they are described, to student or parent borrowers for loan application, or origination activities (if applicable), or the provision and processing of any information necessary for a student or parent to receive a loan under Title IV, Part D of the HEA.

6. Provide that the Institution will originate loans to eligible students and parents in accordance with the requirements of Title IV, Part D of the HEA and use funds advanced to it solely for that purpose (Option 2 only).

7. Provide that the note or evidence of obligation of the loan shall be the property of the Secretary (Options 2 and 1 only).

8. Comply with other provisions as the Secretary determines are necessary to protect the interest of the United States and to promote the purposes of Title IV, Part D of the HEA.

9. Accept responsibility and financial liability stemming from its failure to perform its functions

12/17/2018                          PPA. OPE ID: 02110800. PPA Expiration Date: 12/31/2019

under this Program Participation Agreement.

# CERTIFICATIONS REQUIRED FROM INSTITUTIONS

The Institution should refer to the regulations cited below. Signature on this Agreement provides for compliance with the certification requirements under 34 C.F.R. Part 82, "New Restrictions on Lobbying," 34 C.F.R Part 84, "Governmentwide Requirements for Drug-Free Workplace (Financial Assistance)," 34 C.F.R. Part 85, "Governmentwide Debarment and Suspension (Nonprocurement)," and 34 C.F.R. Part 86, "Drug and Alcohol Abuse Prevention." Breach of any of these certifications constitutes a breach of this Agreement.

## PART 1 CERTIFICATION REGARDING LOBBYING; DRUG-FREE WORKPLACE; DEBARMENT, SUSPENSION AND OTHER RESPONSIBILITY MATTERS; AND DRUG AND ALCOHOL ABUSE PREVENTION

### *1. Lobbying*

As required by Section 1352, Title 31 of the U.S. Code, and implemented at 34 C.F.R. Part 82, for persons entering into a Federal contract, grant or cooperative agreement over $100,000, as defined at 34 C.F.R. Part 82, Sections 82.105, and 82.110, the undersigned certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan or cooperative agreement, the undersigned shall complete and submit Standard Form - LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Institution shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants and contracts under grants, loans and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

### *2a. Drug-Free Workplace (Grantees Other Than Individuals)*

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart B, for grantees, as defined at 34 C.F.R. Part 84, Sections 84.200 through 84.230 -

The Institution certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a drug-free workplace statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about-

(1) The dangers of drug abuse in the workplace;

(2) The Institution's policy of maintaining a drug-free workplace;

(3) Any available drug counseling, rehabilitation, and employee assistance programs; and

(4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a);

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will -

(1) Abide by the terms of the statement, and

(2) Notify the employer in writing if he or she is convicted for a violation of a criminal drug statute occurring in the workplace no more than five calendar days after such conviction;

(e) Notifying the agency, in writing, within 10 calendar days after receiving notice under this subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant;

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted -

(1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1972, as amended; or

(2) Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

### *2b. Drug-Free Workplace (Grantees Who Are Individuals)*

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart C, for recipients who are individuals, as defined at 34 C.F.R. Part 84, Section 84.300 -

1. As a condition of the grant, the Institution certifies that it will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity related to the award; and

2. If any officer or owner of the Institution is convicted of a criminal drug offense resulting from a violation occurring during the conduct of any award activity, the Institution will report the conviction, in writing, within 10 calendar days of the conviction, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant.

### *3. Debarment, Suspension, and Other Responsibility Matters*

As required by Executive Order 12549, Debarment and Suspension, and implemented at 34 C.F.R. Part 85, for prospective participants in primary covered transactions as defined at 34 C.F.R. Part 85, Sections 85.105 and 85.110, the Institution certifies that it and its principals:

(a) Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any Federal department or agency;

(b) Have not within a three-year period preceding this application been convicted of or had a civil

12/17/2018                           PPA. OPE ID: 02110800. PPA Expiration Date: 12/31/2019

judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; violation of Federal or State antitrust statutes; commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, receiving stolen property, making false claims, or obstruction of justice; or commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects their present responsibility.

(c) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and

(d) Have not within a three-year period preceding this application had one or more public transactions (Federal, State, or local) terminated for cause or default.

### *4. Drug and Alcohol Abuse Prevention*

As required by the Drug-Free Schools and Communities Act Amendments of 1989, which added section 1213 to the Higher Education Act, and implemented at 34 C.F.R. Part 86, the undersigned Institution certifies that it has adopted and implemented a drug prevention program for its students and employees that, at a minimum, includes--

1. The annual distribution in writing to each employee, and to each student who is taking one or more classes for any kind of academic credit except for continuing education units, regardless of the length of the student's program of study, of:

   - Standards of conduct that clearly prohibit, at a minimum, the unlawful possession, use, or distribution of illicit drugs and alcohol by students and employees on its property or as part of any of its activities.
   - A description of the applicable legal sanctions under local, State or Federal law for the unlawful possession or distribution of illicit drugs and alcohol.
   - A description of the health risks associated with the use of illicit drugs and the abuse of alcohol.
   - A description of any drug or alcohol counseling, treatment, or rehabilitation or re-entry programs that are available to employees or students.
   - A clear statement that the Institution will impose disciplinary sanctions on students and employees (consistent with local, State and Federal law), and a description of those sanctions, up to and including expulsion or termination of employment and referral for prosecution, for violation of the standards of conduct. A disciplinary sanction may include the completion of an appropriate rehabilitation program.

2. A biennial review by the Institution of its program to:

   - Determine its effectiveness and implement changes to the program if they are needed.
   - Ensure that its disciplinary sanctions are consistently enforced.

12/17/2018                              PPA. OPE ID: 02110800. PPA Expiration Date: 12/31/2019

## PART 2 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, INELIGIBILITY, AND VOLUNTARY EXCLUSION -- LOWER TIER COVERED TRANSACTIONS

**The Institution is to obtain the signatures of Lower Tier Contractors on reproduced copies of the certification below, and retain the signed certification(s) in the Institution's files.**

---

### CERTIFICATION BY LOWER TIER CONTRACTOR
#### (Before Completing Certification, Read Instructions for This Part 3, below)

(1) The prospective lower tier participant certifies by submission of this proposal, that neither it nor its principals are presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal Department or Agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

---

Name of Lower Tier Organization                     PR/Award Number or Project Name

---

Name of Authorized Representative                   Title of Authorized Representative

---

Signature of Authorized Representative              Date

---

1. By signing and submitting this proposal, the prospective lower tier participant is providing the certification set out below.

2. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

3. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

4. The terms "covered transaction," "debarred," "suspended," "ineligible," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549. You may contact the person to whom this proposal is submitted for assistance in obtaining a copy of those regulations.

5. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

6. The prospective lower tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Ineligibility, and

Voluntary Exclusion--Lower Tier Covered Transactions," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

9. Except for transactions authorized under paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

**NOTE:** A completed copy of the "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion--Lower Tier Covered Transactions" form must be retained by the Institution. The original blank certification must be returned with the PPA.

## PART 3 CERTIFICATION REGARDING GAINFUL EMPLOYMENT PROGRAMS

A list of the reported Title IV eligible educational programs that the institution offers that are required to prepare students for gainful employment in a recognized occupation ("gainful employment programs") is included as part of the Eligibility and Certification Approval Report (ECAR) that is a part of this Program Participation Agreement. By signing this Program Participation Agreement, the institution certifies that:

1. the list of gainful employment programs it offers is accurate and complete;

2. each of the gainful employment programs is approved by a recognized accrediting agency or is otherwise included in the institution's accreditation by its recognized accrediting agency;

3. each of the gainful employment programs it offers is programmatically accredited, if such accreditation is required by a Federal governmental entity or a State where the institution or one of its additional locations is required to obtain State approval pursuant to 34 C.F.R. §600.9;

4. each gainful employment program in a State where the institution or one of its additional locations is located satisfies the licensure or certification requirements that are needed for a student who completes the gainful employment program to qualify to take any licensure or certification exam in that State that is needed for the student to practice or find employment in an occupation that the gainful employment program prepares the student to enter; and

5. for a gainful employment program for which the institution is establishing initial eligibility for Title IV, HEA program funds, the program is not substantially similar to a program offered by the institution that in the prior three years, became ineligible for Title IV, HEA program funds under the debt-to-earnings rates measure or was failing, or in the zone with respect to, the debt-to-earnings rates measure and was voluntarily discontinued by the institution.

12/17/2018                    PPA, OPE ID: 02110800, PPA Expiration Date: 12/31/2019

## IN WITNESS WHEREOF

the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Signature of Institution's
Chief Executive Officer: _____ Date: 12-18-2018

Print Name and Title: Eric S. Juhlin

CHIEF EXECUTIVE officer

For the Secretary: _____ Date: 12/19/2018
U.S. Department of Education

**A150**



FEDERAL STUDENT AID ▬▬START HERE. GO FURTHER."

## UNITED STATES DEPARTMENT OF EDUCATION

### FEDERAL STUDENT AID
### SCHOOL ELIGIBILITY CHANNEL

# PROGRAM PARTICIPATION AGREEMENT
## [PROVISIONAL APPROVAL]

Effective Date of Approval: The date on which this Agreement is signed on behalf of the Secretary of Education

Approval Expiration Date: **December 31, 2019**

Reapplication Date: **September 30, 2019**

Name of Institution: **CollegeAmerica Denver**

dba: **CollegeAmerica**

Address of Institution: **1385 South Colorado Boulevard
5th Floor
Denver, CO 80222-3380**

OPE ID Number: **02594300**

DUNS Number: **080241568**

Taxpayer Identification Number (TIN): **208091013**

> **The execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.**

The postsecondary educational institution listed above, referred to hereafter as the "Institution," and the United States Secretary of Education, referred to hereafter as the "Secretary," agree that the Institution may participate in those student financial assistance programs authorized by Title IV of the Higher Education Act of 1965, as amended (Title IV, HEA Programs) indicated under this Agreement and further agrees that such participation is subject to the terms and conditions set forth in this Agreement. As used in this Agreement, the term "Department" refers to the U.S. Department of Education.

### SCOPE OF COVERAGE

This Agreement applies to all locations of the Institution as stated on the most current ELIGIBILITY AND CERTIFICATION APPROVAL REPORT issued by the Department. This Agreement covers the Institution's eligibility to participate in each of the following listed Title IV, HEA programs, and incorporates by reference the regulations cited.

- **FEDERAL PELL GRANT PROGRAM,** 20 U.S.C. §§ 1070a *et seq.*; 34 C.F.R. Part 690.

- **FEDERAL FAMILY EDUCATION LOAN PROGRAM,** 20 U.S.C. §§ 1071 *et seq.*; 34 C.F.R. Part 682.

- **FEDERAL DIRECT STUDENT LOAN PROGRAM,** 20 U.S.C. §§ 1087a *et seq.*; 34 C.F.R. Part 685.

- **FEDERAL PERKINS LOAN PROGRAM,** 20 U.S.C. §§ 1087aa *et seq.*; 34 C.F.R. Part 674.

- **FEDERAL SUPPLEMENTAL EDUCATIONAL OPPORTUNITY GRANT PROGRAM,** 20 U.S.C. §§ 1070b *et seq.*; 34 C.F.R. Part 676.

- **FEDERAL WORK-STUDY PROGRAM,** 42 U.S.C. §§ 2751 *et seq.*; 34 C.F.R. Part 675.

- **ACADEMIC COMPETITIVENESS GRANT AND NATIONAL SCIENCE AND MATHEMATICS ACCESS TO RETAIN TALENT GRANT PROGRAMS,** 20 U.S.C. §§ 1070a-1 *et seq.*; 34 C.F.R. Part 691.

- **IRAQ AND AFGHANISTAN SERVICE GRANT,** 20 U.S.C. §§ 1070d *et seq.*

## PROVISIONAL CERTIFICATION

This provisional certification is granted for a limited period to permit the Institution to participate in the Title IV, HEA programs referenced in this Agreement. During the period of provisional certification, the participation of the Institution will be subject to revocation for cause. Cause for revocation includes, without limitation, a failure to comply with any provision set forth in this Agreement, a violation of Department regulations deemed material by the Department, or a material misrepresentation in the material submitted to the Department as part of the Institution's application process for this certification. The Department in its sole discretion may provide the Institution with an opportunity to cure any such failure, may place the Institution on reimbursement funding pending a decision regarding revocation of this Agreement by a designated Department official, or may suspend the participation of the Institution pending a decision by the Department regarding revocation of this Agreement. In the event the Department chooses to revoke this Agreement and the Institution's participation in the Title IV, HEA programs, the Institution will have the right to show cause why this Agreement should not be revoked by presenting its objections to the designated Department official in writing. The Institution agrees that this opportunity to show cause, and not the procedures in 34 C.F.R. 668 subpart G, shall be the sole administrative appeal regarding such revocation. The decision by the designated Department official will constitute the final agency action.

**Special Requirements for Substantial Changes Made During Term of Provisional Certification**

Any institution provisionally certified must apply for and receive approval by the Secretary for expansion or of any substantial change (as hereinafter identified) before it may award, disburse or distribute Title IV, HEA funds based on the substantial change. Substantial changes generally include, but are not limited to: (a) establishment of an additional location; (b) increase in the level of academic offering beyond those listed in the Institution's Eligibility and Certification Approval Report (ECAR); or (c) addition of any educational program (including degree, nondegree, or short-term training programs).

12/17/2018                          PPA. OPE ID: 02594300. PPA Expiration Date: 12/31/2019

If the Institution applies for the Secretary's approval of a substantial change, the Institution must demonstrate that it has the financial and administrative resources necessary to assure the Institution's continued compliance with the standards of financial responsibility (34 C.F.R. 668.15) and administrative capability (34 C.F.R. 668.16).

## Reasons and Special Conditions of Provisional Certification

### Change in Ownership

The Institution has undergone a change in ownership.

### Funding Arrangement Other Than Advance, and Surety For Not Less Than 10% of Title IV, HEA Funds

The institution does not meet the standards of financial responsibility as set forth in 34 CFR §668.171. Pursuant to 34 CFR §668.175(f) and as a condition of entering into the Program Participation Agreement (PPA) under Provisional Certification, the institution agrees (a) to participate in the Title IV, HEA programs without recourse to the Department's standard advance funding arrangement, and (b) to maintain an escrow account with the Department for $16,234,899 for the school group. The escrow account is based on a minimum amount of at least 10% of the Title IV, HEA program funds received by the institution during the last complete fiscal year for which figures are available or for the projected fiscal year during which the escrow account will be in place.

### Divestiture Quarterly Updates

The Colleges must provide quarterly updates to the Department's Multi-regional and Foreign School Participation Division ("MRFSPD") on the status of Mr. Carl Barney's divestiture of the real property on which the Institution has campuses. These updates should be provided on the last day of each quarter.

### Nonprofit Board Requirements

The Institution must provide evidence to the MRFSPD no later than March 1, 2019 that it is coming into compliance with the requirements of the Institution's accreditor, the Accrediting Commission for Career Schools and Colleges ("ACCSC") (with regard to board members for nonprofit organizations), and its plans to attain full compliance by ACCSC's deadline of July 1, 2019, unless the requirements and/or deadlines are modified by ACCSC, or ACCSC relieves the Institution of complying with the requirements now set forth in Section I (A)(1)(b) - Substantive Standards. The Institution must provide evidence to the MRPSPD no later than July 31, 2019 of its full compliance with the above-referenced nonprofit board requirements, unless the requirements are modified or ACCSC relieves the Institution from complying with them.

### Application for Recertification

Upon completion of the period of provisional certification, if the Institution wishes to apply for recertification to participate in the Title IV, HEA programs, the Institution must submit a completed Application for Approval to Participate in Federal Student Financial Aid Programs, together with all required supporting documentation, no later than September 30, 2019.

*Grant or Denial of Full Certification*

Notwithstanding any paragraph above, the provisional certification ends upon the Department's notification to the Institution of the Department's decision to grant or deny a six year certification to participate in the Title IV, HEA programs.

# GENERAL TERMS AND CONDITIONS

1. The Institution understands and agrees that it is subject to and will comply with the program statutes and implementing regulations for institutional eligibility as set forth in 34 C.F.R. Part 600 and for each Title IV, HEA program in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA, and the Student Assistance General Provisions regulations set forth in 34 C.F.R. Part 668.
*The recitation of any portion of the statute or regulations in this Agreement does not limit the Institution's obligation to comply with other applicable statutes and regulations.*

2.     a. The Institution certifies that on the date it signs this Agreement, it has a drug abuse prevention program in operation that it has determined is accessible to any officer, employee, or student at the Institution.
     b. The Institution certifies that on the date it signs this Agreement, it is in compliance with the disclosure requirements of Section 485(f) of the HEA (Campus Security Policy and Campus Crime Statistics).

3. The Institution agrees to comply with --
     a. Title VI of the Civil Rights Act of 1964, as amended, and the implementing regulations, 34 C.F.R. Parts 100 and 101 (barring discrimination on the basis of race, color or national origin);
     b. Title IX of the Education Amendments of 1972 and the implementing regulations, 34 C.F.R. Part 106 (barring discrimination on the basis of sex);
     c. The Family Educational Rights and Privacy Act of 1974 and the implementing regulations, 34 C.F.R. Part 99;
     d. Section 504 of the Rehabilitation Act of 1973 and the implementing regulations, 34 C.F.R. Part 104 (barring discrimination on the basis of physical handicap); and
     e. The Age Discrimination Act of 1975 and the implementing regulations, 34 C.F.R. Part 110.
     f. The Standards for Safeguarding Customer Information, 16 C.F.R. Part 314, issued by the Federal Trade Commission (FTC), as required by the Gramm-Leach-Bliley (GLB) Act, P.L. 106-102. These Standards are intended to ensure the security and confidentiality of customer records and information. The Secretary considers any breach to the security of student records and information as a demonstration of a potential lack of administrative capability as stated in 34 C.F.R. 668.16(c). Institutions are strongly encouraged to inform its students and the Department of any such breaches.

4. The Institution acknowledges that 34 C.F.R. Parts 602 and 667 require accrediting agencies, State regulatory bodies, and the Secretary to share information about institutions. The Institution agrees that the Secretary, any accrediting agency recognized by the Secretary, and any State regulatory body may share or report information to one another about the Institution without limitation.

5. The Institution acknowledges that the HEA prohibits the Secretary from recognizing the accreditation of any institution of higher education unless that institution agrees to submit any dispute involving the final denial, withdrawal, or termination of accreditation to initial arbitration prior to any other legal action.

12/17/2018                    PPA. OPE ID: 02594300. PPA Expiration Date: 12/31/2019

## SELECTED PROVISIONS FROM
## GENERAL PROVISIONS REGULATIONS, 34 C.F.R. PART 668.14

An institution's program participation agreement applies to each branch campus and other location of the institution that meets the applicable requirements of this part unless otherwise specified by the Secretary.

(b) By entering into a program participation agreement, an institution agrees that--

(1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in and in accordance with that program;

(2) As a fiduciary responsible for administering Federal funds, if the institution is permitted to request funds under a Title IV, HEA program advance payment method, the institution will time its requests for funds under the program to meet the institution's immediate Title IV, HEA program needs;

(3) It will not request from or charge any student a fee for processing or handling any application, form, or data required to determine a student's eligibility for, and amount of, Title IV, HEA program assistance;

(4) It will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV, HEA programs, together with assurances that the institution will provide, upon request and in a timely manner, information relating to the administrative capability and financial responsibility of the institution to--

(i) The Secretary;

(ii) A guaranty agency, as defined in 34 CFR part 682, that guarantees loans made under the Federal Stafford Loan and Federal PLUS programs for attendance at the institution or any of the institution's branch campuses or other locations;

(iii) The nationally recognized accrediting agency that accredits or preaccredits the institution or any of the institution's branch campuses, other locations, or educational programs;

(iv) The State agency that legally authorizes the institution and any branch campus or other location of the institution to provide postsecondary education; and

(v) In the case of a public postsecondary vocational educational institution that is approved by a State agency recognized for the approval of public postsecondary vocational education, that State agency;

(5) It will comply with the provisions of § 668.15 relating to factors of financial responsibility;

(6) It will comply with the provisions of § 668.16 relating to standards of administrative capability;

(7) It will submit reports to the Secretary and, in the case of an institution participating in the Federal Stafford Loan, Federal PLUS, or the Federal Perkins Loan Program, to holders of loans made to the institution's students under that program at such times and containing such information as the Secretary may reasonably require to carry out the purpose of the Title IV, HEA programs;

(8) It will not provide any statement to any student or certification to any lender in the case of an FFEL Program loan, or origination record to the Secretary in the case of a Direct Loan Program loan that qualifies the student or parent for a loan or loans in excess of the amount that the student or parent is eligible to borrow in accordance with sections 425(a), 428(a)(2), 428(b)(1)(A) and (B), 428B, 428H and 455(a) of the HEA;

(9) It will comply with the requirements of Subpart D of this part concerning institutional and financial assistance information for students and prospective students;

(10) In the case of an institution that advertises job placement rates as a means of attracting students to enroll in the institution, it will make available to prospective students, at or before the time that those students apply for enrollment--

(i) The most recent available data concerning employment statistics, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements; and

(ii) Relevant State licensing requirements of the State in which the institution is located for any job for which an educational program offered by the institution is designed to prepare those prospective students;

(11) In the case of an institution participating in the FFEL Program, the institution will inform all eligible borrowers, as defined in 34 CFR part 682, enrolled in the institution about the availability and eligibility of those borrowers for State grant assistance from the State in which the institution is located, and will inform borrowers from another State of the source for further information concerning State grant assistance from that State;

(12) It will provide the certifications described in paragraph (c) of this section;

(13) In the case of an institution whose students receive financial assistance pursuant to section 484(d) of the HEA, the institution will make available to those students a program proven successful in assisting students in obtaining the recognized equivalent of a high school diploma;

(14) It will not deny any form of Federal financial aid to any eligible student solely on the grounds that the student is participating in a program of study abroad approved for credit by the institution;

(15) (i) Except as provided under paragraph (b)(15)(ii) of this section, the institution will use a default management plan approved by the Secretary with regard to its administration of the FFEL or Direct Loan programs, or both for at least the first two years of its participation in those programs, if the institution --

(A) Is participating in the FFEL or Direct Loan programs for the first time; or

(B) Is an institution that has undergone a change of ownership that results in a change in control and is participating in the FFEL or Direct Loan programs.

(ii) The institution does not have to use an approved default management plan if --

(A) The institution, including its main campus and any branch campus, does not have a cohort default rate in excess of 10 percent; and

(B) The owner of the institution does not own and has not owned any other institution that had a cohort default rate in excess of 10 percent while that owner owned the institution.

(16) For a proprietary institution, the institution will derive at least 10 percent of its revenues for each fiscal year from sources other than Title IV, HEA program funds, as provided in § 668.28(a) and (b), or be subject to sanctions described in § 668.28(c);

(17) The Secretary, guaranty agencies and lenders as defined in 34 CFR part 682, nationally recognized accrediting agencies, the Secretary of Veterans Affairs, State agencies recognized under 34 CFR part 603 for the approval of public postsecondary vocational education, and State agencies that legally authorize institutions and branch campuses or other locations of institutions to provide postsecondary education, have the authority to share with each other any information pertaining to the institution's eligibility for or participation in the Title IV, HEA programs or any information on fraud and abuse;

(18) It will not knowingly --

(i) Employ in a capacity that involves the administration of the Title IV, HEA programs or the receipt of funds under those programs, an individual who has been convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds, or has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(ii) Contract with an institution or third-party servicer that has been terminated under section 432 of the HEA for a reason involving the acquisition, use, or expenditure of Federal, State, or local

government funds, or that has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds; or

(iii) Contract with or employ any individual, agency, or organization that has been, or whose officers or employees have been--

(A) Convicted of, or pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds; or

(B) Administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(19) It will complete, in a timely manner and to the satisfaction of the Secretary, surveys conducted as a part of the Integrated Postsecondary Education Data System (IPEDS) or any other Federal collection effort, as designated by the Secretary, regarding data on postsecondary institutions;

(20) In the case of an institution that is co-educational and has an intercollegiate athletic program, it will comply with the provisions of § 668.48;

(21) It will not impose any penalty, including, but not limited to, the assessment of late fees, the denial of access to classes, libraries, or other institutional facilities, or the requirement that the student borrow additional funds for which interest or other charges are assessed, on any student because of the student's inability to meet his or her financial obligations to the institution as a result of the delayed disbursement of the proceeds of a Title IV, HEA program loan due to compliance with statutory and regulatory requirements of or applicable to the Title IV, HEA programs, or delays attributable to the institution;

(22)(i) It will not provide any commission, bonus, or other incentive payment based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid, to any person or entity who is engaged in any student recruitment or admission activity, or in making decisions regarding the award of title IV, HEA program funds.

(A) The restrictions in paragraph (b)(22) of this section do not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal student assistance.

(B) For the purpose of paragraph (b)(22) of this section, an employee who receives multiple adjustments to compensation in a calendar year and is engaged in any student enrollment or admission activity or in making decisions regarding the award of title IV, HEA program funds is considered to have received such adjustments based upon success in securing enrollments or the award of financial aid if those adjustments create compensation that is based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid.

(ii) Notwithstanding paragraph (b)(22)(i) of this section, eligible institutions, organizations that are contractors to eligible institutions, and other entities may make--

(A) Merit-based adjustments to employee compensation provided that such adjustments are not based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid; and

(B) Profit-sharing payments so long as such payments are not provided to any person or entity engaged in student recruitment or admission activity or in making decisions regarding the award of title IV, HEA program funds.

(iii) As used in paragraph (b)(22) of this section,

(A) *Commission, bonus, or other incentive payment* means a sum of money or something of value, other than a fixed salary or wages, paid to or given to a person or an entity for services rendered.

(B) *Securing enrollments or the award of financial aid* means activities that a person or entity engages in at any point in time through completion of an educational program for the purpose of the admission or matriculation of students for any period of time or the award of financial aid to students.

(1) These activities include contact in any form with a prospective student, such as, but not limited to--contact through preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution, attendance at such an appointment, or

involvement in a prospective student's signing of an enrollment agreement or financial aid application.

(2) These activities do not include making a payment to a third party for the provision of student contact information for prospective students provided that such payment is not based on--

(i) Any additional conduct or action by the third party or the prospective students, such as participation in preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution or attendance at such an appointment, or the signing, or being involved in the signing, of a prospective student's enrollment agreement or financial aid application; or

(ii) The number of students (calculated at any point in time of an educational program) who apply for enrollment, are awarded financial aid, or are enrolled for any period of time, including through completion of an educational program.

(C) *Entity or person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid* means--

(1) With respect to an entity engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any institution or organization that undertakes the recruiting or the admitting of students or that makes decisions about and awards title IV, HEA program funds; and

(2) With respect to a person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any employee who undertakes recruiting or admitting of students or who makes decisions about and awards title IV, HEA program funds, and any higher level employee with responsibility for recruitment or admission of students, or making decisions about awarding title IV, HEA program funds.

(D) *Enrollment* means the admission or matriculation of a student into an eligible institution.

(23) It will meet the requirements established pursuant to Part H of Title IV of the HEA by the Secretary and nationally recognized accrediting agencies;

(24) It will comply with the requirements of § 668.22;

(25) It is liable for all--

(i) Improperly spent or unspent funds received under the Title IV, HEA programs, including any funds administered by a third-party servicer; and

(ii) Returns any title IV, HEA program funds that the institution or its servicer may be required to make;

(26) If an educational program offered by the institution is required to prepare a student for gainful employment in a recognized occupation, the institution must--

(i) Demonstrate a reasonable relationship between the length of the program and entry level requirements for the recognized occupation for which the program prepares the student. The Secretary considers the relationship to be reasonable if the number of clock hours provided in the program does not exceed by more than 50 percent the minimum number of clock hours required for training in the recognized occupation for which the program prepares the student, as established by the State in which the institution is located, if the State has established such a requirement, or as established by any Federal agency;

(ii) Establish the need for the training for the student to obtain employment in the recognized occupation for which the program prepares the student; and

(iii) Provide for that program the certification required in § 668.414.

(27) In the case of an institution participating in a Title IV, HEA loan program, the institution --

(i) Will develop, publish, administer, and enforce a code of conduct with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs in accordance with 34 CFR 601.21; and

(ii) Must inform its officers, employees, and agents with responsibilities with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs annually of the provisions of the code

required under paragraph (b)(27) of this section;

(28) For any year in which the institution has a preferred lender arrangement (as defined in 34 CFR 601.2(b)), it will at least annually compile, maintain, and make available for students attending the institution, and the families of such students, a list in print or other medium, of the specific lenders for loans made, insured, or guaranteed under Title IV, of the HEA or private education loans that the institution recommends, promotes, or endorses in accordance with such preferred lender arrangement. In making such a list, the institution must comply with the requirements in 34 CFR 682.212(h) and 34 CFR 601.10;

(29) (i) It will, upon the request of an enrolled or admitted student who is an applicant for a private education loan (as defined in 34 CFR part 601.2(b)), provide to the applicant the self-certification form required under 34 CFR 601.11(d) and the information required to complete the form, to the extent the institution possesses such information, including --

(A) The applicant's cost of attendance at the institution, as determined by the institution under part F of Title IV, of the HEA;

(B) The applicant's estimated financial assistance, including amounts of financial assistance used to replace the expected family contribution as determined by the institution in accordance with Title IV, for students who have completed the Free Application for Federal Student Aid; and

(C) The difference between the amounts under paragraphs (b)(29)(i)(A) and (29)(i)(B) of this section, as applicable.

(ii) It will, upon the request of the applicant, discuss with the applicant the availability of Federal, State, and institutional student financial aid;

(30) The institution --

(i) Has developed and implemented written plans to effectively combat the unauthorized distribution of copyrighted material by users of the institution's network, without unduly interfering with educational and research use of the network, that include --

(A) The use of one or more technology-based deterrents;

(B) Mechanisms for educating and informing its community about appropriate versus inappropriate use of copyrighted material, including that described in § 668.43(a)(10);

(C) Procedures for handling unauthorized distribution of copyrighted material, including disciplinary procedures; and

(D) Procedures for periodically reviewing the effectiveness of the plans to combat the unauthorized distribution of copyrighted materials by users of the institution's network using relevant assessment criteria. No particular technology measures are favored or required for inclusion in an institution's plans, and each institution retains the authority to determine what its particular plans for compliance with paragraph (b)(30) of this section will be, including those that prohibit content monitoring; and

(ii) Will, in consultation with the chief technology officer or other designated officer of the institution--

(A) Periodically review the legal alternatives for downloading or otherwise acquiring copyrighted material;

(B) Make available the results of the review in paragraph (b)(30)(ii)(A) of this section to its students through a Web site or other means; and

(C) To the extent practicable, offer legal alternatives for downloading or otherwise acquiring copyrighted material, as determined by the institution; and

(31) The institution will submit a teach-out plan to its accrediting agency in compliance with 34 CFR 602.24(c), and the standards of the institution's accrediting agency upon the occurrence of any of the following events:

(i) The Secretary initiates the limitation, suspension, or termination of the participation of an institution in any Title IV, HEA program under 34 CFR 600.41 or subpart G of this part or initiates an emergency action under § 668.83.

(ii) The institution's accrediting agency acts to withdraw, terminate, or suspend the accreditation or

preaccreditation of the institution.

(iii) The institution's State licensing or authorizing agency revokes the institution's license or legal authorization to provide an educational program.

(iv) The institution intends to close a location that provides 100 percent of at least one program.

(v) The institution otherwise intends to cease operations.

(c) In order to participate in any Title IV, HEA program (other than the LEAP and NEISP programs), the institution must certify that it--

(1) Has in operation a drug abuse prevention program that the institution has determined to be accessible to any officer, employee, or student at the institution; and

(2)(i) Has established a campus security policy in accordance with section 485(f) of the HEA; and

(ii) Has complied with the disclosure requirements of § 668.47 as required by section 485(f) of the HEA.

(d)(1) The institution, if located in a State to which section 4(b) of the National Voter Registration Act (42 U.S.C. 1973gg-2(b)) does not apply, will make a good faith effort to distribute a mail voter registration form, requested and received from the State, to each student enrolled in a degree or certificate program and physically in attendance at the institution, and to make those forms widely available to students at the institution.

(2) The institution must request the forms from the State 120 days prior to the deadline for registering to vote within the State. If an institution has not received a sufficient quantity of forms to fulfill this section from the State within 60 days prior to the deadline for registering to vote in the State, the institution is not liable for not meeting the requirements of this section during that election year.

(3) This paragraph applies to elections as defined in Section 301(1) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(1)), and includes the election for Governor or other chief executive within such State.

(e)(1) A program participation agreement becomes effective on the date that the Secretary signs the agreement.

(2) A new program participation agreement supersedes any prior program participation agreement between the Secretary and the institution.

(f)(1) Except as provided in paragraphs (g) and (h) of this section, the Secretary terminates a program participation agreement through the proceedings in subpart G of this part.

(2) An institution may terminate a program participation agreement.

(3) If the Secretary or the institution terminates a program participation agreement under paragraph (f) of this section, the Secretary establishes the termination date.

(g) An institution's program participation agreement automatically expires on the date that--

(l) The institution changes ownership that results in a change in control as determined by the Secretary under 34 CFR part 600; or

(2) The institution's participation ends under the provisions of § 668.26(a)(1), (2), (4), or (7).

(h) An institution's program participation agreement no longer applies to or covers a location of the institution as of the date on which that location ceases to be a part of the participating institution.

## WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM

If an institution participates in the William D. Ford Federal Direct Loan (Direct Loan) Program, the institution and its representatives shall comply with the statute, guidelines, and regulations governing the Title IV, Part D, William D. Ford Federal Direct Loan Program as required by 20 U.S.C. §§ 1087a *et seq.* (Part C) and 34 C.F.R. Part 685.

The institution will:

1. Provide for the establishment and maintenance of a Direct Loan Program at the Institution that will:

   Identify eligible students who seek student financial assistance in accordance with Section 484 of the Higher Education Act of 1965, as amended (the HEA).

   Estimate the need of students as required under Title IV, Part F of the HEA.

   Provide a certification statement of eligibility for students to receive loans that will not exceed the annual or aggregate limits, except the Institution may exercise its authority, under exceptional circumstances identified by the Secretary, to refuse to certify a statement that permits a student to receive a loan, or certify a loan amount that is less than the student's determination of need, if the reason for such action is documented and provided in written form to a student.

   Establish a schedule for disbursement of loan proceeds to meet the requirements of Section 428G of the HEA.

   Provide timely and accurate information to the Secretary concerning 1) the status of borrowers while students are in attendance, any new information pertaining to the status of student borrowers of which the Institution becomes aware after the student leaves the Institution, and 2) the utilization of Federal funds under Title IV, Part D of the HEA at such times and in such manner as prescribed by the Secretary.

2. Comply with requirements established by the Secretary relating to student loan information with respect to the Direct Loan Program.

3. Provide that students at the Institution and their parents (with respect to such students) will be eligible to participate in the programs under Title IV, Part B of the HEA, Federal Family Education Loan programs, at the discretion of the Secretary for the period during which such Institution participates in the Direct Loan Program, except that a student or parent may not receive loans under both Title IV, Part B and Part D of the HEA for the same period of enrollment.

4. Provide for the implementation of a quality assurance system, as established by the Secretary and developed in consultation with Institutions of higher education, to ensure that the Institution is complying with program requirements and meeting program objectives.

5. Provide that the Institution will not charge any fees of any kind, regardless of how they are described, to student or parent borrowers for loan application, or origination activities (if applicable), or the provision and processing of any information necessary for a student or parent to receive a loan under Title IV, Part D of the HEA.

6. Provide that the Institution will originate loans to eligible students and parents in accordance with the requirements of Title IV, Part D of the HEA and use funds advanced to it solely for that purpose (Option 2 only).

7. Provide that the note or evidence of obligation of the loan shall be the property of the Secretary (Options 2 and 1 only).

8. Comply with other provisions as the Secretary determines are necessary to protect the interest of

12/17/2018                    PPA. OPE ID: 02594300. PPA Expiration Date: 12/31/2019

the United States and to promote the purposes of Title IV, Part D of the HEA.

9. Accept responsibility and financial liability stemming from its failure to perform its functions under this Program Participation Agreement.

## CERTIFICATIONS REQUIRED FROM INSTITUTIONS

The Institution should refer to the regulations cited below. Signature on this Agreement provides for compliance with the certification requirements under 34 C.F.R. Part 82, "New Restrictions on Lobbying," 34 C.F.R Part 84, "Governmentwide Requirements for Drug-Free Workplace (Financial Assistance)," 34 C.F.R. Part 85, "Governmentwide Debarment and Suspension (Nonprocurement)," and 34 C.F.R. Part 86, "Drug and Alcohol Abuse Prevention." Breach of any of these certifications constitutes a breach of this Agreement.

## PART 1 CERTIFICATION REGARDING LOBBYING; DRUG-FREE WORKPLACE; DEBARMENT, SUSPENSION AND OTHER RESPONSIBILITY MATTERS; AND DRUG AND ALCOHOL ABUSE PREVENTION

### *1. Lobbying*

As required by Section 1352, Title 31 of the U.S. Code, and implemented at 34 C.F.R. Part 82, for persons entering into a Federal contract, grant or cooperative agreement over $100,000, as defined at 34 C.F.R. Part 82, Sections 82.105, and 82.110, the undersigned certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan or cooperative agreement, the undersigned shall complete and submit Standard Form - LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Institution shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants and contracts under grants, loans and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

### *2a. Drug-Free Workplace (Grantees Other Than Individuals)*

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart B, for grantees, as defined at 34 C.F.R. Part 84, Sections 84.200 through 84.230 -

The Institution certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a drug-free workplace statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's

workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about-

　　(1) The dangers of drug abuse in the workplace;

　　(2) The Institution's policy of maintaining a drug-free workplace;

　　(3) Any available drug counseling, rehabilitation, and employee assistance programs; and

　　(4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a);

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will -

　　(1) Abide by the terms of the statement, and

　　(2) Notify the employer in writing if he or she is convicted for a violation of a criminal drug statute occurring in the workplace no more than five calendar days after such conviction;

(e) Notifying the agency, in writing, within 10 calendar days after receiving notice under this subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant;

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted -

　　(1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1972, as amended; or

　　(2) Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

### 2b. Drug-Free Workplace (Grantees Who Are Individuals)

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart C, for recipients who are individuals, as defined at 34 C.F.R. Part 84, Section 84.300 -

1. As a condition of the grant, the Institution certifies that it will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity related to the award; and

2. If any officer or owner of the Institution is convicted of a criminal drug offense resulting from a violation occurring during the conduct of any award activity, the Institution will report the conviction, in writing, within 10 calendar days of the conviction, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant.

### 3. Debarment, Suspension, and Other Responsibility Matters

As required by Executive Order 12549, Debarment and Suspension, and implemented at 34 C.F.R. Part 85, for prospective participants in primary covered transactions as defined at 34 C.F.R. Part 85, Sections 85.105 and 85.110, the Institution certifies that it and its principals:

(a) Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any Federal department or agency;

(b) Have not within a three-year period preceding this application been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; violation of Federal or State antitrust statutes; commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, receiving stolen property, making false claims, or obstruction of justice; or commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects their present responsibility.

(c) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and

(d) Have not within a three-year period preceding this application had one or more public transactions (Federal, State, or local) terminated for cause or default.

### *4. Drug and Alcohol Abuse Prevention*

As required by the Drug-Free Schools and Communities Act Amendments of 1989, which added section 1213 to the Higher Education Act, and implemented at 34 C.F.R. Part 86, the undersigned Institution certifies that it has adopted and implemented a drug prevention program for its students and employees that, at a minimum, includes--

1. The annual distribution in writing to each employee, and to each student who is taking one or more classes for any kind of academic credit except for continuing education units, regardless of the length of the student's program of study, of:
   - Standards of conduct that clearly prohibit, at a minimum, the unlawful possession, use, or distribution of illicit drugs and alcohol by students and employees on its property or as part of any of its activities.
   - A description of the applicable legal sanctions under local, State or Federal law for the unlawful possession or distribution of illicit drugs and alcohol.
   - A description of the health risks associated with the use of illicit drugs and the abuse of alcohol.
   - A description of any drug or alcohol counseling, treatment, or rehabilitation or re-entry programs that are available to employees or students.
   - A clear statement that the Institution will impose disciplinary sanctions on students and employees (consistent with local, State and Federal law), and a description of those sanctions, up to and including expulsion or termination of employment and referral for prosecution, for violation of the standards of conduct. A disciplinary sanction may include the completion of an appropriate rehabilitation program.

2. A biennial review by the Institution of its program to:
   - Determine its effectiveness and implement changes to the program if they are needed.
   - Ensure that its disciplinary sanctions are consistently enforced.

12/17/2018                              PPA. OPE ID: 02594300. PPA Expiration Date: 12/31/2019

## PART 2 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, INELIGIBILITY, AND VOLUNTARY EXCLUSION -- LOWER TIER COVERED TRANSACTIONS

**The Institution is to obtain the signatures of Lower Tier Contractors on reproduced copies of the certification below, and retain the signed certification(s) in the Institution's files.**

---

**CERTIFICATION BY LOWER TIER CONTRACTOR**
**(Before Completing Certification, Read Instructions for This Part 3, below)**

(1) The prospective lower tier participant certifies by submission of this proposal, that neither it nor its principals are presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal Department or Agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

Name of Lower Tier Organization

PR/Award Number or Project Name

Name of Authorized Representative

Title of Authorized Representative

Signature of Authorized Representative

Date

---

1. By signing and submitting this proposal, the prospective lower tier participant is providing the certification set out below.

2. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

3. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

4. The terms "covered transaction," "debarred," "suspended," "ineligible," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549. You may contact the person to whom this proposal is submitted for assistance in obtaining a copy of those regulations.

5. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

6. The prospective lower tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Ineligibility, and

Voluntary Exclusion--Lower Tier Covered Transactions," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

9. Except for transactions authorized under paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

**NOTE:** A completed copy of the "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion--Lower Tier Covered Transactions" form must be retained by the Institution. The original blank certification must be returned with the PPA.

## PART 3 CERTIFICATION REGARDING GAINFUL EMPLOYMENT PROGRAMS

A list of the reported Title IV eligible educational programs that the institution offers that are required to prepare students for gainful employment in a recognized occupation ("gainful employment programs") is included as part of the Eligibility and Certification Approval Report (ECAR) that is a part of this Program Participation Agreement. By signing this Program Participation Agreement, the institution certifies that:

1. the list of gainful employment programs it offers is accurate and complete;

2. each of the gainful employment programs is approved by a recognized accrediting agency or is otherwise included in the institution's accreditation by its recognized accrediting agency;

3. each of the gainful employment programs it offers is programmatically accredited, if such accreditation is required by a Federal governmental entity or a State where the institution or one of its additional locations is required to obtain State approval pursuant to 34 C.F.R. §600.9;

4. each gainful employment program in a State where the institution or one of its additional locations is located satisfies the licensure or certification requirements that are needed for a student who completes the gainful employment program to qualify to take any licensure or certification exam in that State that is needed for the student to practice or find employment in an occupation that the gainful employment program prepares the student to enter; and

5. for a gainful employment program for which the institution is establishing initial eligibility for Title IV, HEA program funds, the program is not substantially similar to a program offered by the institution that in the prior three years, became ineligible for Title IV, HEA program funds under the debt-to-earnings rates measure or was failing, or in the zone with respect to, the debt-to-earnings rates measure and was voluntarily discontinued by the institution.

12/17/2018                    PPA. OPE ID: 02594300. PPA Expiration Date: 12/31/2019

## IN WITNESS WHEREOF

the parties hereto have caused this **Agreement** to be executed by their duly authorized representatives.

Signature of Institution's
Chief Executive Officer: _____ Date: 12 - 18 - 2018

Print Name and Title:  ERIC S. JUHLIN
                       CHIEF EXECUTIVE OFFICER

For the Secretary:  _____ Date: 12/14/2018
U.S. Department of Education



FEDERAL STUDENT AID ▓▓▓ START HERE. GO FURTHER.™

## UNITED STATES DEPARTMENT OF EDUCATION

### FEDERAL STUDENT AID
### SCHOOL ELIGIBILITY CHANNEL

# PROGRAM PARTICIPATION AGREEMENT
## [PROVISIONAL APPROVAL]

Effective Date of Approval: The date on which this Agreement is signed on behalf of the Secretary of Education

Approval Expiration Date: **December 31, 2019**

Reapplication Date: **September 30, 2019**

Name of Institution: **CollegeAmerica - Flagstaff**

Address of Institution: **399 South Malpais**
**2nd Floor**
**Flagstaff, AZ 86001-3936**

OPE ID Number: **03120300**
DUNS Number: **148984107**
Taxpayer Identification Number (TIN): **208091013**

> **The execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.**

The postsecondary educational institution listed above, referred to hereafter as the "Institution," and the United States Secretary of Education, referred to hereafter as the "Secretary," agree that the Institution may participate in those student financial assistance programs authorized by Title IV of the Higher Education Act of 1965, as amended (Title IV, HEA Programs) indicated under this Agreement and further agrees that such participation is subject to the terms and conditions set forth in this Agreement. As used in this Agreement, the term "Department" refers to the U.S. Department of Education.

## SCOPE OF COVERAGE

This Agreement applies to all locations of the Institution as stated on the most current

ELIGIBILITY AND CERTIFICATION APPROVAL REPORT issued by the Department. This Agreement covers the Institution's eligibility to participate in each of the following listed Title IV, HEA programs, and incorporates by reference the regulations cited.

- **FEDERAL PELL GRANT PROGRAM,** 20 U.S.C. §§ 1070a *et seq.*; 34 C.F.R. Part 690.

- **FEDERAL FAMILY EDUCATION LOAN PROGRAM,** 20 U.S.C. §§ 1071 *et seq.*; 34 C.F.R. Part 682.

- **FEDERAL DIRECT STUDENT LOAN PROGRAM,** 20 U.S.C. §§ 1087a *et seq.*; 34 C.F.R. Part 685.

- **FEDERAL PERKINS LOAN PROGRAM,** 20 U.S.C. §§ 1087aa *et seq.*; 34 C.F.R. Part 674.

- **FEDERAL SUPPLEMENTAL EDUCATIONAL OPPORTUNITY GRANT PROGRAM,** 20 U.S.C. §§ 1070b *et seq.*; 34 C.F.R. Part 676.

- **FEDERAL WORK-STUDY PROGRAM,** 42 U.S.C. §§ 2751 *et seq.*; 34 C.F.R. Part 675.

- **ACADEMIC COMPETITIVENESS GRANT AND NATIONAL SCIENCE AND MATHEMATICS ACCESS TO RETAIN TALENT GRANT PROGRAMS,** 20 U.S.C. §§ 1070a-1 *et seq.*; 34 C.F.R. Part 691.

- **IRAQ AND AFGHANISTAN SERVICE GRANT,** 20 U.S.C. §§ 1070d *et seq.*

## PROVISIONAL CERTIFICATION

This provisional certification is granted for a limited period to permit the Institution to participate in the Title IV, HEA programs referenced in this Agreement. During the period of provisional certification, the participation of the Institution will be subject to revocation for cause. Cause for revocation includes, without limitation, a failure to comply with any provision set forth in this Agreement, a violation of Department regulations deemed material by the Department, or a material misrepresentation in the material submitted to the Department as part of the Institution's application process for this certification. The Department in its sole discretion may provide the Institution with an opportunity to cure any such failure, may place the Institution on reimbursement funding pending a decision regarding revocation of this Agreement by a designated Department official, or may suspend the participation of the Institution pending a decision by the Department regarding revocation of this Agreement. In the event the Department chooses to revoke this Agreement and the Institution's participation in the Title IV, HEA programs, the Institution will have the right to show cause why this Agreement should not be revoked by presenting its objections to the designated Department official in writing. The Institution agrees that this opportunity to show cause, and not the procedures in 34 C.F.R. 668 subpart G, shall be the sole administrative appeal regarding such revocation. The decision by the designated Department official will constitute the final agency action.

### Special Requirements for Substantial Changes Made During Term of Provisional Certification

Any institution provisionally certified must apply for and receive approval by the Secretary for expansion or of any substantial change (as hereinafter identified) before it may award, disburse or distribute Title IV, HEA funds based on the substantial change. Substantial changes generally include, but are not limited to: (a) establishment of an additional location; (b) increase in the level of academic offering beyond those listed in the Institution's Eligibility and Certification Approval Report (ECAR); or (c) addition of any educational program (including degree, nondegree, or short-term training programs).

12/17/2018                    PPA, OPE ID: 03120300. PPA Expiration Date: 12/31/2019

If the Institution applies for the Secretary's approval of a substantial change, the Institution must demonstrate that it has the financial and administrative resources necessary to assure the Institution's continued compliance with the standards of financial responsibility (34 C.F.R. 668.15) and administrative capability (34 C.F.R. 668.16).

## Reasons and Special Conditions of Provisional Certification

### Change in Ownership

The Institution has undergone a change in ownership.

### Funding Arrangement Other Than Advance, and Surety For Not Less Than 10% of Title IV, HEA Funds

The institution does not meet the standards of financial responsibility as set forth in 34 CFR §668.171. Pursuant to 34 CFR §668.175(f) and as a condition of entering into the Program Participation Agreement (PPA) under Provisional Certification, the institution agrees (a) to participate in the Title IV, HEA programs without recourse to the Department's standard advance funding arrangement, and (b) to maintain an escrow account with the Department for $16,234,899 for the school group. The escrow account is based on a minimum amount of at least 10% of the Title IV, HEA program funds received by the institution during the last complete fiscal year for which figures are available or for the projected fiscal year during which the escrow account will be in place.

### Divestiture Quarterly Updates

The Colleges must provide quarterly updates to the Department's Multi-regional and Foreign School Participation Division ("MRFSPD") on the status of Mr. Carl Barney's divestiture of the real property on which the Institution has campuses. These updates should be provided on the last day of each quarter.

### Nonprofit Board Requirements

The Institution must provide evidence to the MRFSPD no later than March 1, 2019 that it is coming into compliance with the requirements of the Institution's accreditor, the Accrediting Commission for Career Schools and Colleges ("ACCSC") (with regard to board members for nonprofit organizations), and its plans to attain full compliance by ACCSC's deadline of July 1, 2019, unless the requirements and/or deadlines are modified by ACCSC, or ACCSC relieves the Institution of complying with the requirements now set forth in Section I (A)(1)(b) - Substantive Standards. The Institution must provide evidence to the MRPSPD no later than July 31, 2019 of its full compliance with the above-referenced nonprofit board requirements, unless the requirements are modified or ACCSC relieves the Institution from complying with them.

### Application for Recertification

Upon completion of the period of provisional certification, if the Institution wishes to apply for recertification to participate in the Title IV, HEA programs, the Institution must submit a completed Application for Approval to Participate in Federal Student Financial Aid Programs, together with all required supporting documentation, no later than September 30, 2019.

PPA. OPE ID: 03120300. PPA Expiration Date: 12/31/2019

*Grant or Denial of Full Certification*

Notwithstanding any paragraph above, the provisional certification ends upon the Department's notification to the Institution of the Department's decision to grant or deny a six year certification to participate in the Title IV, HEA programs.

# GENERAL TERMS AND CONDITIONS

1. The Institution understands and agrees that it is subject to and will comply with the program statutes and implementing regulations for institutional eligibility as set forth in 34 C.F.R. Part 600 and for each Title IV, HEA program in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA, and the Student Assistance General Provisions regulations set forth in 34 C.F.R. Part 668. *The recitation of any portion of the statute or regulations in this Agreement does not limit the Institution's obligation to comply with other applicable statutes and regulations.*

2.   a. The Institution certifies that on the date it signs this Agreement, it has a drug abuse prevention program in operation that it has determined is accessible to any officer, employee, or student at the Institution.
   b. The Institution certifies that on the date it signs this Agreement, it is in compliance with the disclosure requirements of Section 485(f) of the HEA (Campus Security Policy and Campus Crime Statistics).

3. The Institution agrees to comply with --
   a. Title VI of the Civil Rights Act of 1964, as amended, and the implementing regulations, 34 C.F.R. Parts 100 and 101 (barring discrimination on the basis of race, color or national origin);
   b. Title IX of the Education Amendments of 1972 and the implementing regulations, 34 C.F.R. Part 106 (barring discrimination on the basis of sex);
   c. The Family Educational Rights and Privacy Act of 1974 and the implementing regulations, 34 C.F.R. Part 99;
   d. Section 504 of the Rehabilitation Act of 1973 and the implementing regulations, 34 C.F.R. Part 104 (barring discrimination on the basis of physical handicap); and
   e. The Age Discrimination Act of 1975 and the implementing regulations, 34 C.F.R. Part 110.
   f. The Standards for Safeguarding Customer Information, 16 C.F.R. Part 314, issued by the Federal Trade Commission (FTC), as required by the Gramm-Leach-Bliley (GLB) Act, P.L. 106-102. These Standards are intended to ensure the security and confidentiality of customer records and information. The Secretary considers any breach to the security of student records and information as a demonstration of a potential lack of administrative capability as stated in 34 C.F.R. 668.16(c). Institutions are strongly encouraged to inform its students and the Department of any such breaches.

4. The Institution acknowledges that 34 C.F.R. Parts 602 and 667 require accrediting agencies, State regulatory bodies, and the Secretary to share information about institutions. The Institution agrees that the Secretary, any accrediting agency recognized by the Secretary, and any State regulatory body may share or report information to one another about the Institution without limitation.

5. The Institution acknowledges that the HEA prohibits the Secretary from recognizing the accreditation of any institution of higher education unless that institution agrees to submit any dispute involving the final denial, withdrawal, or termination of accreditation to initial arbitration prior to any other legal action.

4/17

## SELECTED PROVISIONS FROM
## GENERAL PROVISIONS REGULATIONS, 34 C.F.R. PART 668.14

An institution's program participation agreement applies to each branch campus and other location of the institution that meets the applicable requirements of this part unless otherwise specified by the Secretary.

(b) By entering into a program participation agreement, an institution agrees that--

(1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in and in accordance with that program;

(2) As a fiduciary responsible for administering Federal funds, if the institution is permitted to request funds under a Title IV, HEA program advance payment method, the institution will time its requests for funds under the program to meet the institution's immediate Title IV, HEA program needs;

(3) It will not request from or charge any student a fee for processing or handling any application, form, or data required to determine a student's eligibility for, and amount of, Title IV, HEA program assistance;

(4) It will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV, HEA programs, together with assurances that the institution will provide, upon request and in a timely manner, information relating to the administrative capability and financial responsibility of the institution to--

(i) The Secretary;

(ii) A guaranty agency, as defined in 34 CFR part 682, that guarantees loans made under the Federal Stafford Loan and Federal PLUS programs for attendance at the institution or any of the institution's branch campuses or other locations;

(iii) The nationally recognized accrediting agency that accredits or preaccredits the institution or any of the institution's branch campuses, other locations, or educational programs;

(iv) The State agency that legally authorizes the institution and any branch campus or other location of the institution to provide postsecondary education; and

(v) In the case of a public postsecondary vocational educational institution that is approved by a State agency recognized for the approval of public postsecondary vocational education, that State agency;

(5) It will comply with the provisions of § 668.15 relating to factors of financial responsibility;

(6) It will comply with the provisions of § 668.16 relating to standards of administrative capability;

(7) It will submit reports to the Secretary and, in the case of an institution participating in the Federal Stafford Loan, Federal PLUS, or the Federal Perkins Loan Program, to holders of loans made to the institution's students under that program at such times and containing such information as the Secretary may reasonably require to carry out the purpose of the Title IV, HEA programs;

(8) It will not provide any statement to any student or certification to any lender in the case of an FFEL Program loan, or origination record to the Secretary in the case of a Direct Loan Program loan that qualifies the student or parent for a loan or loans in excess of the amount that the student or parent is eligible to borrow in accordance with sections 425(a), 428(a)(2), 428(b)(1)(A) and (B), 428B, 428H and 455(a) of the HEA;

(9) It will comply with the requirements of Subpart D of this part concerning institutional and financial assistance information for students and prospective students;

(10) In the case of an institution that advertises job placement rates as a means of attracting students to enroll in the institution, it will make available to prospective students, at or before the time that those students apply for enrollment--

(i) The most recent available data concerning employment statistics, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements; and

(ii) Relevant State licensing requirements of the State in which the institution is located for any job for which an educational program offered by the institution is designed to prepare those prospective students;

(11) In the case of an institution participating in the FFEL Program, the institution will inform all eligible borrowers, as defined in 34 CFR part 682, enrolled in the institution about the availability and eligibility of those borrowers for State grant assistance from the State in which the institution is located, and will inform borrowers from another State of the source for further information concerning State grant assistance from that State;

(12) It will provide the certifications described in paragraph (c) of this section;

(13) In the case of an institution whose students receive financial assistance pursuant to section 484(d) of the HEA, the institution will make available to those students a program proven successful in assisting students in obtaining the recognized equivalent of a high school diploma;

(14) It will not deny any form of Federal financial aid to any eligible student solely on the grounds that the student is participating in a program of study abroad approved for credit by the institution;

(15) (i) Except as provided under paragraph (b)(15)(ii) of this section, the institution will use a default management plan approved by the Secretary with regard to its administration of the FFEL or Direct Loan programs, or both for at least the first two years of its participation in those programs, if the institution --

(A) Is participating in the FFEL or Direct Loan programs for the first time; or

(B) Is an institution that has undergone a change of ownership that results in a change in control and is participating in the FFEL or Direct Loan programs.

(ii) The institution does not have to use an approved default management plan if --

(A) The institution, including its main campus and any branch campus, does not have a cohort default rate in excess of 10 percent; and

(B) The owner of the institution does not own and has not owned any other institution that had a cohort default rate in excess of 10 percent while that owner owned the institution.

(16) For a proprietary institution, the institution will derive at least 10 percent of its revenues for each fiscal year from sources other than Title IV, HEA program funds, as provided in § 668.28(a) and (b), or be subject to sanctions described in § 668.28(c);

(17) The Secretary, guaranty agencies and lenders as defined in 34 CFR part 682, nationally recognized accrediting agencies, the Secretary of Veterans Affairs, State agencies recognized under 34 CFR part 603 for the approval of public postsecondary vocational education, and State agencies that legally authorize institutions and branch campuses or other locations of institutions to provide postsecondary education, have the authority to share with each other any information pertaining to the institution's eligibility for or participation in the Title IV, HEA programs or any information on fraud and abuse;

(18) It will not knowingly --

(i) Employ in a capacity that involves the administration of the Title IV, HEA programs or the receipt of funds under those programs, an individual who has been convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds, or has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(ii) Contract with an institution or third-party servicer that has been terminated under section 432 of the HEA for a reason involving the acquisition, use, or expenditure of Federal, State, or local

government funds, or that has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds; or

(iii) Contract with or employ any individual, agency, or organization that has been, or whose officers or employees have been--

(A) Convicted of, or pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds; or

(B) Administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(19) It will complete, in a timely manner and to the satisfaction of the Secretary, surveys conducted as a part of the Integrated Postsecondary Education Data System (IPEDS) or any other Federal collection effort, as designated by the Secretary, regarding data on postsecondary institutions;

(20) In the case of an institution that is co-educational and has an intercollegiate athletic program, it will comply with the provisions of § 668.48;

(21) It will not impose any penalty, including, but not limited to, the assessment of late fees, the denial of access to classes, libraries, or other institutional facilities, or the requirement that the student borrow additional funds for which interest or other charges are assessed, on any student because of the student's inability to meet his or her financial obligations to the institution as a result of the delayed disbursement of the proceeds of a Title IV, HEA program loan due to compliance with statutory and regulatory requirements of or applicable to the Title IV, HEA programs, or delays attributable to the institution;

(22)(i) It will not provide any commission, bonus, or other incentive payment based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid, to any person or entity who is engaged in any student recruitment or admission activity, or in making decisions regarding the award of title IV, HEA program funds.

(A) The restrictions in paragraph (b)(22) of this section do not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal student assistance.

(B) For the purpose of paragraph (b)(22) of this section, an employee who receives multiple adjustments to compensation in a calendar year and is engaged in any student enrollment or admission activity or in making decisions regarding the award of title IV, HEA program funds is considered to have received such adjustments based upon success in securing enrollments or the award of financial aid if those adjustments create compensation that is based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid.

(ii) Notwithstanding paragraph (b)(22)(i) of this section, eligible institutions, organizations that are contractors to eligible institutions, and other entities may make--

(A) Merit-based adjustments to employee compensation provided that such adjustments are not based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid; and

(B) Profit-sharing payments so long as such payments are not provided to any person or entity engaged in student recruitment or admission activity or in making decisions regarding the award of title IV, HEA program funds.

(iii) As used in paragraph (b)(22) of this section,

(A) *Commission, bonus, or other incentive payment* means a sum of money or something of value, other than a fixed salary or wages, paid to or given to a person or an entity for services rendered.

(B) *Securing enrollments or the award of financial aid* means activities that a person or entity engages in at any point in time through completion of an educational program for the purpose of the admission or matriculation of students for any period of time or the award of financial aid to students.

(1) These activities include contact in any form with a prospective student, such as, but not limited to--contact through preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution, attendance at such an appointment, or

involvement in a prospective student's signing of an enrollment agreement or financial aid application.

(2) These activities do not include making a payment to a third party for the provision of student contact information for prospective students provided that such payment is not based on--

(i) Any additional conduct or action by the third party or the prospective students, such as participation in preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution or attendance at such an appointment, or the signing, or being involved in the signing, of a prospective student's enrollment agreement or financial aid application; or

(ii) The number of students (calculated at any point in time of an educational program) who apply for enrollment, are awarded financial aid, or are enrolled for any period of time, including through completion of an educational program.

(C) *Entity or person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid* means--

(1) With respect to an entity engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any institution or organization that undertakes the recruiting or the admitting of students or that makes decisions about and awards title IV, HEA program funds; and

(2) With respect to a person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any employee who undertakes recruiting or admitting of students or who makes decisions about and awards title IV, HEA program funds, and any higher level employee with responsibility for recruitment or admission of students, or making decisions about awarding title IV, HEA program funds.

(D) *Enrollment* means the admission or matriculation of a student into an eligible institution.

(23) It will meet the requirements established pursuant to Part H of Title IV of the HEA by the Secretary and nationally recognized accrediting agencies;

(24) It will comply with the requirements of § 668.22;

(25) It is liable for all--

(i) Improperly spent or unspent funds received under the Title IV, HEA programs, including any funds administered by a third-party servicer; and

(ii) Returns any title IV, HEA program funds that the institution or its servicer may be required to make;

(26) If an educational program offered by the institution is required to prepare a student for gainful employment in a recognized occupation, the institution must--

(i) Demonstrate a reasonable relationship between the length of the program and entry level requirements for the recognized occupation for which the program prepares the student. The Secretary considers the relationship to be reasonable if the number of clock hours provided in the program does not exceed by more than 50 percent the minimum number of clock hours required for training in the recognized occupation for which the program prepares the student, as established by the State in which the institution is located, if the State has established such a requirement, or as established by any Federal agency;

(ii) Establish the need for the training for the student to obtain employment in the recognized occupation for which the program prepares the student; and

(iii) Provide for that program the certification required in § 668.414.

(27) In the case of an institution participating in a Title IV, HEA loan program, the institution --

(i) Will develop, publish, administer, and enforce a code of conduct with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs in accordance with 34 CFR 601.21; and·

(ii) Must inform its officers, employees, and agents with responsibilities with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs annually of the provisions of the code

required under paragraph (b)(27) of this section;

(28) For any year in which the institution has a preferred lender arrangement (as defined in 34 CFR 601.2(b)), it will at least annually compile, maintain, and make available for students attending the institution, and the families of such students, a list in print or other medium, of the specific lenders for loans made, insured, or guaranteed under Title IV, of the HEA or private education loans that the institution recommends, promotes, or endorses in accordance with such preferred lender arrangement. In making such a list, the institution must comply with the requirements in 34 CFR 682.212(h) and 34 CFR 601.10;

(29) (i) It will, upon the request of an enrolled or admitted student who is an applicant for a private education loan (as defined in 34 CFR part 601.2(b)), provide to the applicant the self-certification form required under 34 CFR 601.11(d) and the information required to complete the form, to the extent the institution possesses such information, including --

(A) The applicant's cost of attendance at the institution, as determined by the institution under part F of Title IV, of the HEA;

(B) The applicant's estimated financial assistance, including amounts of financial assistance used to replace the expected family contribution as determined by the institution in accordance with Title IV, for students who have completed the Free Application for Federal Student Aid; and

(C) The difference between the amounts under paragraphs (b)(29)(i)(A) and (29)(i)(B) of this section, as applicable.

(ii) It will, upon the request of the applicant, discuss with the applicant the availability of Federal, State, and institutional student financial aid;

(30) The institution --

(i) Has developed and implemented written plans to effectively combat the unauthorized distribution of copyrighted material by users of the institution's network, without unduly interfering with educational and research use of the network, that include --

(A).The use of one or more technology-based deterrents;

(B) Mechanisms for educating and informing its community about appropriate versus inappropriate use of copyrighted material, including that described in § 668.43(a)(10);

(C) Procedures for handling unauthorized distribution of copyrighted material, including disciplinary procedures; and

(D).Procedures for periodically reviewing the effectiveness of the plans to combat the unauthorized distribution of copyrighted materials by users of the institution's network using relevant assessment criteria. No particular technology measures are favored or required for inclusion in an institution's plans, and each institution retains the authority to determine what its particular plans for compliance with paragraph (b)(30) of this section will be, including those that prohibit content monitoring; and

(ii) Will, in consultation with the chief technology officer or other designated officer of the institution--

(A) Periodically review the legal alternatives for downloading or otherwise acquiring copyrighted material;

(B) Make available the results of the review in paragraph (b)(30)(ii)(A) of this section to its students through a Web site or other means; and

(C) To the extent practicable, offer legal alternatives for downloading or otherwise acquiring copyrighted material, as determined by the institution; and

(31) The institution will submit a teach-out plan to its accrediting agency in compliance with 34 CFR 602.24(c), and the standards of the institution's accrediting agency upon the occurrence of any of the following events:

(i) The Secretary initiates the limitation, suspension, or termination of the participation of an institution in any Title IV, HEA program under 34 CFR 600.41 or subpart G of this part or initiates an emergency action under § 668.83.

(ii) The institution's accrediting agency acts to withdraw, terminate, or suspend the accreditation or

preaccreditation of the institution.

(iii) The institution's State licensing or authorizing agency revokes the institution's license or legal authorization to provide an educational program.

(iv) The institution intends to close a location that provides 100 percent of at least one program.

(v) The institution otherwise intends to cease operations.

(c) In order to participate in any Title IV, HEA program (other than the LEAP and NEISP programs), the institution must certify that it--

(1) Has in operation a drug abuse prevention program that the institution has determined to be accessible to any officer, employee, or student at the institution; and

(2)(i) Has established a campus security policy in accordance with section 485(f) of the HEA; and

(ii) Has complied with the disclosure requirements of § 668.47 as required by section 485(f) of the HEA.

(d)(1) The institution, if located in a State to which section 4(b) of the National Voter Registration Act (42 U.S.C. 1973gg-2(b)) does not apply, will make a good faith effort to distribute a mail voter registration form, requested and received from the State, to each student enrolled in a degree or certificate program and physically in attendance at the institution, and to make those forms widely available to students at the institution.

(2) The institution must request the forms from the State 120 days prior to the deadline for registering to vote within the State. If an institution has not received a sufficient quantity of forms to fulfill this section from the State within 60 days prior to the deadline for registering to vote in the State, the institution is not liable for not meeting the requirements of this section during that election year.

(3) This paragraph applies to elections as defined in Section 301(1) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(1)), and includes the election for Governor or other chief executive within such State.

(e)(1) A program participation agreement becomes effective on the date that the Secretary signs the agreement.

(2) A new program participation agreement supersedes any prior program participation agreement between the Secretary and the institution.

(f)(1) Except as provided in paragraphs (g) and (h) of this section, the Secretary terminates a program participation agreement through the proceedings in subpart G of this part.

(2) An institution may terminate a program participation agreement.

(3) If the Secretary or the institution terminates a program participation agreement under paragraph (f) of this section, the Secretary establishes the termination date.

(g) An institution's program participation agreement automatically expires on the date that--

(I) The institution changes ownership that results in a change in control as determined by the Secretary under 34 CFR part 600; or

(2) The institution's participation ends under the provisions of § 668.26(a)(1), (2), (4), or (7).

(h) An institution's program participation agreement no longer applies to or covers a location of the institution as of the date on which that location ceases to be a part of the participating institution.

## WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM

If an institution participates in the William D. Ford Federal Direct Loan (Direct Loan) Program, the institution and its representatives shall comply with the statute, guidelines, and regulations governing the Title IV, Part D, William D. Ford Federal Direct Loan Program as required by 20 U.S.C. §§ 1087a *et seq.* (Part C) and 34 C.F.R. Part 685.

The institution will:

12/17/2018                                    PPA. OPE ID: 03120300. PPA Expiration Date: 12/31/2019

1. Provide for the establishment and maintenance of a Direct Loan Program at the Institution that will:

     Identify eligible students who seek student financial assistance in accordance with Section 484 of the Higher Education Act of 1965, as amended (the HEA).

     Estimate the need of students as required under Title IV, Part F of the HEA.

     Provide a certification statement of eligibility for students to receive loans that will not exceed the annual or aggregate limits, except the Institution may exercise its authority, under exceptional circumstances identified by the Secretary, to refuse to certify a statement that permits a student to receive a loan, or certify a loan amount that is less than the student's determination of need, if the reason for such action is documented and provided in written form to a student.

     Establish a schedule for disbursement of loan proceeds to meet the requirements of Section 428G of the HEA.

     Provide timely and accurate information to the Secretary concerning 1) the status of borrowers while students are in attendance, any new information pertaining to the status of student borrowers of which the Institution becomes aware after the student leaves the Institution, and 2) the utilization of Federal funds under Title IV, Part D of the HEA at such times and in such manner as prescribed by the Secretary.

2. Comply with requirements established by the Secretary relating to student loan information with respect to the Direct Loan Program.

3. Provide that students at the Institution and their parents (with respect to such students) will be eligible to participate in the programs under Title IV, Part B of the HEA, Federal Family Education Loan programs, at the discretion of the Secretary for the period during which such Institution participates in the Direct Loan Program, except that a student or parent may not receive loans under both Title IV, Part B and Part D of the HEA for the same period of enrollment.

4. Provide for the implementation of a quality assurance system, as established by the Secretary and developed in consultation with Institutions of higher education, to ensure that the Institution is complying with program requirements and meeting program objectives.

5. Provide that the Institution will not charge any fees of any kind, regardless of how they are described, to student or parent borrowers for loan application, or origination activities (if applicable), or the provision and processing of any information necessary for a student or parent to receive a loan under Title IV, Part D of the HEA.

6. Provide that the Institution will originate loans to eligible students and parents in accordance with the requirements of Title IV, Part D of the HEA and use funds advanced to it solely for that purpose (Option 2 only).

7. Provide that the note or evidence of obligation of the loan shall be the property of the Secretary (Options 2 and 1 only).

8. Comply with other provisions as the Secretary determines are necessary to protect the interest of

**A178**

12/17/2018                    PPA. OPE ID: 03120300. PPA Expiration Date: 12/31/2019

the United States and to promote the purposes of Title IV, Part D of the HEA.

9. Accept responsibility and financial liability stemming from its failure to perform its functions under this Program Participation Agreement.

## CERTIFICATIONS REQUIRED FROM INSTITUTIONS

The Institution should refer to the regulations cited below. Signature on this Agreement provides for compliance with the certification requirements under 34 C.F.R. Part 82, "New Restrictions on Lobbying," 34 C.F.R Part 84, "Governmentwide Requirements for Drug-Free Workplace (Financial Assistance)," 34 C.F.R. Part 85, "Governmentwide Debarment and Suspension (Nonprocurement)," and 34 C.F.R. Part 86, "Drug and Alcohol Abuse Prevention." Breach of any of these certifications constitutes a breach of this Agreement.

## PART 1 CERTIFICATION REGARDING LOBBYING; DRUG-FREE WORKPLACE; DEBARMENT, SUSPENSION AND OTHER RESPONSIBILITY MATTERS; AND DRUG AND ALCOHOL ABUSE PREVENTION

### *1. Lobbying*

As required by Section 1352, Title 31 of the U.S. Code, and implemented at 34 C.F.R. Part 82, for persons entering into a Federal contract, grant or cooperative agreement over $100,000, as defined at 34 C.F.R. Part 82, Sections 82.105, and 82.110, the undersigned certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan or cooperative agreement, the undersigned shall complete and submit Standard Form - LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Institution shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants and contracts under grants, loans and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

### *2a. Drug-Free Workplace (Grantees Other Than Individuals)*

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart B, for grantees, as defined at 34 C.F.R. Part 84, Sections 84.200 through 84.230 -

The Institution certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a drug-free workplace statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's

12/17/2018                          PPA. OPE ID: 03120300. PPA Expiration Date: 12/31/2019

workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about-

(1) The dangers of drug abuse in the workplace;

(2) The Institution's policy of maintaining a drug-free workplace;

(3) Any available drug counseling, rehabilitation, and employee assistance programs; and

(4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a);

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will -

(1) Abide by the terms of the statement, and

(2) Notify the employer in writing if he or she is convicted for a violation of a criminal drug statute occurring in the workplace no more than five calendar days after such conviction;

(e) Notifying the agency, in writing, within 10 calendar days after receiving notice under this subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant;

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted -

(1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1972, as amended; or

(2) Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

### 2b. Drug-Free Workplace (Grantees Who Are Individuals)

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart C, for recipients who are individuals, as defined at 34 C.F.R. Part 84, Section 84.300 -

1. As a condition of the grant, the Institution certifies that it will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity related to the award; and

2. If any officer or owner of the Institution is convicted of a criminal drug offense resulting from a violation occurring during the conduct of any award activity, the Institution will report the conviction, in writing, within 10 calendar days of the conviction, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant.

### 3. Debarment, Suspension, and Other Responsibility Matters

As required by Executive Order 12549, Debarment and Suspension, and implemented at 34 C.F.R. Part 85, for prospective participants in primary covered transactions as defined at 34 C.F.R. Part 85, Sections 85.105 and 85.110, the Institution certifies that it and its principals:

(a) Are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any Federal department or agency;

(b) Have not within a three-year period preceding this application been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; violation of Federal or State antitrust statutes; commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, receiving stolen property, making false claims, or obstruction of justice; or commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects their present responsibility.

(c) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and

(d) Have not within a three-year period preceding this application had one or more public transactions (Federal, State, or local) terminated for cause or default.


## *4. Drug and Alcohol Abuse Prevention*

As required by the Drug-Free Schools and Communities Act Amendments of 1989, which added section 1213 to the Higher Education Act, and implemented at 34 C.F.R. Part 86, the undersigned Institution certifies that it has adopted and implemented a drug prevention program for its students and employees that, at a minimum, includes--

1. The annual distribution in writing to each employee, and to each student who is taking one or more classes for any kind of academic credit except for continuing education units, regardless of the length of the student's program of study, of:
   - Standards of conduct that clearly prohibit, at a minimum, the unlawful possession, use, or distribution of illicit drugs and alcohol by students and employees on its property or as part of any of its activities.
   - A description of the applicable legal sanctions under local, State or Federal law for the unlawful possession or distribution of illicit drugs and alcohol.
   - A description of the health risks associated with the use of illicit drugs and the abuse of alcohol.
   - A description of any drug or alcohol counseling, treatment, or rehabilitation or re-entry programs that are available to employees or students.
   - A clear statement that the Institution will impose disciplinary sanctions on students and employees (consistent with local, State and Federal law), and a description of those sanctions, up to and including expulsion or termination of employment and referral for prosecution, for violation of the standards of conduct. A disciplinary sanction may include the completion of an appropriate rehabilitation program.

2. A biennial review by the Institution of its program to:
   - Determine its effectiveness and implement changes to the program if they are needed.
   - Ensure that its disciplinary sanctions are consistently enforced.

## PART 2 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, INELIGIBILITY, AND VOLUNTARY EXCLUSION -- LOWER TIER COVERED TRANSACTIONS

**The Institution is to obtain the signatures of Lower Tier Contractors on reproduced copies of the certification below, and retain the signed certification(s) in the Institution's files.**

---

**CERTIFICATION BY LOWER TIER CONTRACTOR**
**(Before Completing Certification, Read Instructions for This Part 3, below)**

(1) The prospective lower tier participant certifies by submission of this proposal, that neither it nor its principals are presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal Department or Agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

| | |
|---|---|
| Name of Lower Tier Organization | PR/Award Number or Project Name |
| Name of Authorized Representative | Title of Authorized Representative |
| Signature of Authorized Representative | Date |

---

1. By signing and submitting this proposal, the prospective lower tier participant is providing the certification set out below.

2. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

3. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

4. The terms "covered transaction," "debarred," "suspended," "ineligible," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549. You may contact the person to whom this proposal is submitted for assistance in obtaining a copy of those regulations.

5. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

6. The prospective lower tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Ineligibility, and

Voluntary Exclusion--Lower Tier Covered Transactions," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, ineligible, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

9. Except for transactions authorized under paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, ineligible, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

**NOTE:** A completed copy of the "Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion--Lower Tier Covered Transactions" form must be retained by the Institution. The original blank certification must be returned with the PPA.

## PART 3 CERTIFICATION REGARDING GAINFUL EMPLOYMENT PROGRAMS

A list of the reported Title IV eligible educational programs that the institution offers that are required to prepare students for gainful employment in a recognized occupation ("gainful employment programs") is included as part of the Eligibility and Certification Approval Report (ECAR) that is a part of this Program Participation Agreement. By signing this Program Participation Agreement, the institution certifies that:

1. the list of gainful employment programs it offers is accurate and complete;

2. each of the gainful employment programs is approved by a recognized accrediting agency or is otherwise included in the institution's accreditation by its recognized accrediting agency;

3. each of the gainful employment programs it offers is programmatically accredited, if such accreditation is required by a Federal governmental entity or a State where the institution or one of its additional locations is required to obtain State approval pursuant to 34 C.F.R. §600.9;

4. each gainful employment program in a State where the institution or one of its additional locations is located satisfies the licensure or certification requirements that are needed for a student who completes the gainful employment program to qualify to take any licensure or certification exam in that State that is needed for the student to practice or find employment in an occupation that the gainful employment program prepares the student to enter; and

5. for a gainful employment program for which the institution is establishing initial eligibility for Title IV, HEA program funds, the program is not substantially similar to a program offered by the institution that in the prior three years, became ineligible for Title IV, HEA program funds under the debt-to-earnings rates measure or was failing, or in the zone with respect to, the debt-to-earnings rates measure and was voluntarily discontinued by the institution.

12/17/2018                    PPA. OPE ID: 03120300. PPA Expiration Date: 12/31/2019

## IN WITNESS WHEREOF

the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Signature of Institution's
Chief Executive Officer: _____ Date: *12-18-2018*

Print Name and Title: *ERIC S. JUHLIN*
*CHIEF EXECUTIVE OFFICER*


For the Secretary: _____ Date: *12/19/2018*
U.S. Department of Education

# EXHIBIT
# 6



R E C E I V E D

NOV 1 3 2012

POWERS, PYLES, SUTTER &
VERVILLE PC

November 2, 2012

Mr. Stanley A. Freeman
Powers Pyles Sutter & Verville PC
Attorneys at Law
1501 M Street, NW, Seventh Floor
Washington, DC 20005

Certified Mail
Return Receipt Requested
#: 7007 0710 0001 0674 6125

RE:  College America Change in Ownership
     OPE ID: 00367400
     OPE ID: 02594300
     OPE ID: 03120300
     OPE ID: 02110800

Dear Mr. Freeman:

The San Francisco/Seattle and Chicago/Denver School Participation Divisions (SPDs) have
reviewed your October 2, 2012 letter, and the financial statements of the Center for Excellence in
Higher Education, Inc., concerning the planned changes to the corporate ownership of Title IV
participating institutions collectively known as College America.  In order to provide the
information requested in your letter, and to evaluate the effects of this change in ownership, we
need additional documentation/information, as noted below:

A.  Additional information on the financial statements of the Center for Excellence in Higher
    Education, Inc. (CEHE) -
    1)  Please disclose the individuals/entities that constitute the related party transaction note.
    2)  Provide related party disclosures in compliance with 34 C.F.R. § 668.23(d).
    3)  Disclose the individuals/entities that constitute donors.
    4)  Disclose the individuals/entities that provide the in-kind contributions.
    5)  Disclose the individuals/entities that provide the pledges.
    6)  Provide a detailed description of any security for the pledges.  If the security is not in
        CEHE's possession, please provide a description of the security and also provide the
        filing date of any security agreement with a local government.
    7)  Please indicate if the pledges are from related parties.
    8)  Indicate if the pledges are secured.

B.  Additional information for the change in ownership -
    1)  Disclose all investors, both current and potential, with regard to the change in ownership.
    2)  Provide a copy of CEHE's 501(c)(3) status documents from the Internal Revenue Service.
    3)  Provide a list of paid staff for the periods covered by the audit/financial statements.
    4)  Provide a detailed narrative of what CEHE has done as an entity for the period
        covered by the audit/financial statements.

**Federal Student Aid** | PROUD SPONSOR of
An OFFICE of the U.S. DEPARTMENT of EDUCATION | the AMERICAN MIND™

50 Beale Street, Suite 9800, San Francisco, CA 94105-1863
StudentAid.gov

Exhibit 6 - 001

Mr. Stanley A. Freeman
College America Change in Ownership
Page 2 of 3

5) Provide monthly financial statements for the period covered by the audit/financial statements.
6) Disclose the individuals/entities that comprise CEHE's board of directors.
7) If the State has approved this conversion/change in ownership, please provide a copy of the approval.  This includes all state entities required to approve the transaction, including state government agencies in all states in which the schools are located.
8) Provide a copy of CEHE's articles of incorporation and by-laws.
9) Provide a copy of all contracts/agreements CEHE is currently a party to.
10) Provide a detailed description or copy of any draft contracts/agreements that may be entered into as a result of the conversion/change in ownership.
11) Please indicate if CEHE will be operating the four institutions involved in the proposed change in ownership or if there will be a management agreement with another entity.
12) Provide a copy of or a detailed description of the planned payment arrangements associated with the loans necessary to consummate the transaction of the change in ownership.
13) Please inform us whether the change in ownership will include merging all four institutions into one OPE ID number or if each institution will retain its current separate institutional status.
14) If CEHE plans to exercise operational control over the schools, will the articles of incorporation be amended to include the operation of postsecondary institutions?
15) If CEHE does not plan to exercise operational control over the schools, are they merely holding an ownership interest in them as an investment, while the schools retain their own corporate identities?

The documentation specified above should be sent to the following addresses:

1. Mr. Mike Fuller, Financial Analyst
   U.S. Department of Education
   Federal Student Aid
   San Francisco/Seattle School Participation Division
   915 Second Avenue, Suite 390
   Seattle, WA  98174

2. Ms. Marion Peak, Financial Analyst
   U.S. Department of Education
   Federal Student Aid
   Chicago/Denver School Participation Division
   1244 Speer Blvd., Suite 201
   Denver, CO 80204-3518

Exhibit 6 - 002

**A187**

Mr. Stanley A. Freeman
College America Change in Ownership
Page 3 of 3

In answer to your questions about a required Letter of Credit (LOC) and provisional conditions to be included in the Program Participation Agreement (PPA), please note that we are unable to commit to specific terms until we have reviewed all applications and supporting documents related to the transaction.

If you have any questions or need further assistance, please email Mike Fuller, Financial Analyst, at michael.fuller@ed.gov or Marion Peak, Financial Analyst, at marion.peak@ed.gov. Please also include Gayle Palumbo at gayle.palumbo@ed.gov and Kerry O'Brien at kerry.o'brien@ed.gov on all email correspondence.

Sincerely,

Martina Fernandez-Rosario
Division Director
San Francisco/Seattle School Participation Division

Exhibit 6 - 003

# EXHIBIT 11

| From: | U.S. Department of Education - Federal Student Aid |
|-------|---------------------------------------------------|
| To: | Eric Juhlin |
| Cc: | Sonia Martinez |
| Subject: | Title IV Reporting Requirement Not Met |
| Date: | Saturday, August 29, 2015 12:02:37 PM |



August 29, 2015
Mr Eric S Juhlin
CollegeAmerica Denver
1385 South Colorado Boulevard
Suite A512
Denver, CO 80222

Dear  Mr Eric S Juhlin:

The purpose of this letter is to inform you of your institution's failure to report information on its Gainful Employment (GE) programs to the Department of Education's National Student Loan Data System (NSLDS) by the required reporting deadline date of July 31, 2015.

Regulations published in the Federal Register on October 31, 2014 became effective on July 1, 2015. [See the Gainful Employment link on the Home Page of our "Information for Financial Aid Professionals" (IFAP) web site at www.ifap.ed.gov.] Included in those regulations at 34 CFR 668.411 is a provision that institutions report certain data to NSLDS for all of the institution's students who received Title IV federal financial aid funds for enrollment in a GE program during the 2008-2009 through the 2013-2014 award years. GE programs that have required medical or dental residencies must also report data for the 2007-2008 award year. See Gainful Employment Electronic Announcement #53 on IFAP for information on which academic programs are GE programs under the regulations.

NSLDS implemented the functionality to allow institutions to report information for your institution's GE programs to NSLDS on February 11, 2015. Gainful Employment Electronic Announcements #51 and #52, both of which are posted to IFAP, provide detailed information on reporting record layouts and submission options.

Failure to comply with all applicable regulatory requirements, including the requirement to report GE program information to NSLDS, is an indication that your institution lacks the administrative capability to participate in the Title IV student financial assistance programs. Such a determination could result in your institution being subject to one or more sanctions, including loss of its eligibility to participate in the federal student aid programs. Whether, and how severe an institution's sanctions will be, is partially dependent on how quickly the institution becomes compliant by properly reporting GE information to NSLDS. Therefore, your institution must report its GE information without any further delay.

In Gainful Employment Electronic Announcement #59, posted to IFAP on August 20, we provided instructions for using the NSLDS GE Program Tracking List page within NSLDS. If you believe that NSLDS reporting is not required for one or more of the programs indicated on the GE Program Tracking page, you must inform us by updating the GE Program Tracking page for the program and selecting one of the following reasons from the "Status Reason"

Exhibit 11 - 001

drop-down.

- No students enrolled in GE program
- Program was not Title IV eligible in award year
- Other (Additional information is required)

We note that institutions frequently enter into contractual arrangements with other organizations to fulfill institutional obligations with respect to the Title IV federal student financial assistance programs. If your institution has entered into an arrangement to have its regulatory obligation to report GE information to NSLDS met by a third-party, we remind you of the regulations at 34 CFR 668.25, which include a provision that the institution remains liable for any omission or error by its third-party servicers.

If you or your staff have questions about NSLDS, contact the NSLDS Customer Support Center at 800/999-8219. You can also contact Customer Support by e-mail at nslds@ed.gov.

Should you or your staff have any questions about the information in this letter, please send an e-mail to GE-Missing-Data@ed.gov.

Sincerely,

Jeff Baker, Director
Policy Liaison and Implementation

CC: Ms Sonia Martinez, Financial Aid Director

Exhibit 11 - 002

**From:**      GE-Missing-Data
**To:**        Eric Juhlin
**Subject:**   Thank You
**Date:**      Saturday, August 29, 2015 12:20:31 PM

Thank you for recent submission to the Gainful Employment Missing Information mailbox. This message confirms that we have received your E-Mail.

Your submission will be reviewed and a response will be provided.

Thank you for contacting the U.S. Department of Education's
Federal Student Aid.

Exhibit 11 - 003

**A192**

# EXHIBIT 10



March 15, 2016

Mr. Eric Juhlin                                     Certified Mail Return Receipt Requested
Chief Executive Officer                            Domestic Return Receipt:
Center for Excellence in Higher Education           7012 1640 0000 0216 6776
4021 South 700 East
Suite 400
Salt Lake City UT, 84107-9923

Re:    Document Request
OPEID:     00367400 – Stevens Henager College
           02110800 – California College San Diego
           02594300 – CollegeAmerica Denver
           03120300 – CollegeAmerica – Flagstaff

Dear Mr. Juhlin:

This is in response to your email request (1) for a meeting to discuss new developments with
respect to CEHE's change in accreditors, and (2) to gain access to CEHE's applications which
are currently not available to CEHE for update entries.  You state you did not receive a response
to your February 24th and February 29th emails which conveyed those requests to us.  Please
note that I responded by email to you on March 3rd (email string attached above) that access to
CEHE's applications had been opened on that day for CEHE to make any changes that are
needed to bring the applications up to date.  I noted that that access would remain open until you
re-submit the applications to the Department, or for five days.  I checked the applications on
March 9th.  The applications were closed, but no changes had been made to them.

Frequently when an accrediting agency conducts a review at a school during a time when the
school has an open application with the Department, the agency wants to see that the school is
reporting information to the Department that agrees with the information that the school has
provided the agency.  As none of these applications have been updated since 2014, I expect that
various data elements in the applications will have to be refreshed.  Consequently, we are glad to
open the access to CEHE's applications to allow CEHE to bring the applications up to date.  As



500 West Madison Street, Suite 1576
Chicago, Illinois  60661

Exhibit 10 - 001

**A194**

the system allows at most a five day window to make any updates, please alert me when you are ready to make the updates, and I will again open the access for you.

You also requested a meeting to discuss new developments.  We don't believe that a meeting at this time would be productive as all we can report to you is that the applications are still under review.  During the course of the review we determined that certain items require additional information or actions from CEHE:

Stevens Henager, Lehi, UT location OPE 003674-08 is currently shown as an eligible location in our record (PEPS), and CEHE has applied for continued eligibility for this location on the current eapp.  However, there is no current accreditor approval for this location.  Also, CEHE does not list this location on its current web site.  Please clarify for us the current status of this location.

Stevens Henager, Ogden UT location, has never been Title IV eligible, and CEHE has not applied for eligibility for this location in the current eapp.  Also, it is not listed on the current accreditation record as supplied by ACCSC.  However, the school's web site shows this location as an active location, including a listing of available programs and contact information for this location.   Please clarify for us the current status of this location.  If this location is currently, or has been in the past, an active Title IV participating location, please supply accreditation documents or records that reflect its accreditation status for the periods during which it has been a Title IV participating location.

Stevens Henager, Layton UT location, OPE 003674-07 is currently Title IV eligible.  CEHE has applied for continued eligibility on the current eapp.  The school's web site shows it as an active location, including a listing of available programs and contact information for this location.  However, it is not showing as an accredited location on the current accreditor's record as supplied by ACCSC.  An accreditation letter from 2011 shows that it was previously accredited as a "satellite campus" of the Ogden UT location, which has never been Title IV approved.  CEHE must supply documentation to show that it was appropriately accredited as an additional location during the period that Title IV aid has been disbursed to students in that location.  CEHE must also resolve the Layton Campuses eligibility in relation to the Ogden Campus.

CollegeAmerica – Denver, South Colorado Springs location, OPE 025943-04 is currently Title IV approved in PEPS.  It is also state and accreditor approved.  CEHE has applied for continued eligibility for this location in its current eapp.  However, this location is not shown on CEHE'S web site.  Please clarify for us the current status of this location.

In addition, we also reviewed the schools' required Gainful Employment disclosures, and the required posting of certain policies, procedures and consumer information.  An earlier review of the CEHE schools' web sites showed that each of the schools had posted a significant amount of this information on their respective web sites.  However, a more recent review showed that this information has been deleted from the schools' web sites.  During the period when the applications have been pending, these institutions have remained for-profit institutions for Title IV program purposes, and continue to be subject to the Gainful Employment disclosure requirements and the requirement to post specific policies, procedures and consumer

Exhibit 10 - 002

A195

information.  The CEHE institutions must reinstate this information immediately to support their continued participation in the Title IV programs.

Furthermore, in support of the continuing review of CEHE's applications, the Department requests that CEHE provide copies of certain documents and information concerning the relationship that individuals in senior leadership positions in CEHE or in the schools have with other organizations that provide services to CEHE and/or the schools.  In particular, the Related Party Transactions note in the FYE 2013 and the FYE 2014 financial statements for CEHE identified a member of the board of directors as having the following interests:

- Owner and operator of real estate leasing companies from which CEHE leases some campus facilities;
- Owner of a company which provides accounting services to CEHE;
- Owner of a company which provides consulting services to CEHE.

The FYE 2014 financial statements also disclosed in Note 4 that CEHE factored an accounts receivable portfolio with a credit agency.  Please identify whether a CEHE board member, senior manager or sole member of CEHE has an ownership or other interest in this credit agency.  If so, please provide details as to the nature of such interest including compensation and/or management control of the credit agency.

Please send copies of any contracts or agreements that CEHE or any of its schools has with these companies.  Also, identify the member of the board that is referenced in this note, and provide the compensation that that person receives from each of these companies.  Also, please identify whether any other member of the board of directors, senior manager or sole member of CEHE has received or is currently receiving compensation from any of these companies, and whether that compensation is contingent upon the company's business with CEHE.
In addition, if CEHE has any services agreement with any party, or has a note or other debt instrument with any party, whether or not such party/parties are a member of the board of CEHE, a senior manager of CEHE, or a member of CEHE, please provide those agreements and notes, together with any appendices.

In addition, please provide a copy of CEHE's conflict of interest policy, and an explanation as to whether and how any of these relationships is in compliance with that policy.

Furthermore, if any CEHE board members, senior managers or the sole member have relationships with other entities that do business with CEHE and/or its schools, please provide the same details for those relationships as well.

Please address your response to me directly at:

Federal Student Aid
Chicago/Denver School Participation Division
500 W. Madison St., Suite 1576
Chicago, Il  60661
Attn:  Earl Flurkey

Exhibit 10 - 003

**A196**

If you have any questions, you can call me at 312-730-1521.  Thank you for your prompt attention to this matter.

Sincerely,

Earl Flurkey
Compliance Manager

Exhibit 10 - 004

A197

# EXHIBIT
# 9



August 11, 2016

Eric Juhlin                                      Certified Mail
Chief Executive Officer                          Return Receipt Requested
Center for Excellence in Higher Education        7012 1640 0000 0217 1312
4021 South 700 East, Suite 400
Salt Lake City, Utah 84107

      Re:    **Decision on Change of Ownership for:**
             **Stevens Henager College, OPE 003674**
             **CollegeAmerica Denver, OPE 025943**
             **CollegeAmerica Arizona, OPE 031203**
             **California College San Diego, OPE 021108**

Dear President Juhlin:

      The Chicago/Denver School Participation Division of the U.S. Department of Education
("Department") has reviewed The Center for Excellence in Higher Education's ("CEHE")
application for approval of a change in ownership or structure for the above named schools. This
application results from a transaction that occurred as of December 27, 2012 ("the Transaction"),
as further described below. Each of the above named schools ("the Colleges") submitted an
electronic application ("eapp") for Change in Ownership by November 7, 2012 (California
College of San Diego submitted their eapp on October 22, 2012). Temporary Provisional
Program Participation Agreements were effective as of January 1, 2013, and extended for an
initial one month period until January 31, 2013. Since the Colleges provided materially
complete applications timely, their provisional participation has been extended on a month-to-
month basis under their status as for-profit institutions since January 31, 2013 while the
Department has evaluated the applications as provided in 34 C.F.R. 600.20(h).

      CEHE was established as an Indiana public benefit corporation in December 2006, and
was issued a 501(c)(3) tax exemption by the IRS. CEHE was established "to promote excellence
in higher education by working with philanthropists and others interested in reforming American
colleges and universities. Education reform, for these purposes, is defined as increasing access,
reducing costs, and improving the quality of higher education with the goal to make universities,
schools, departments and ultimately individual faculty members accountable for the quality and
effectiveness of their work." CEHE 2015 Audited Financial Statements, Note 1. Prior to the
Transaction, CEHE had operated for approximately six years without being engaged in
delivering educational programs. As a result of the Transaction, the Companies (and thereby the

Federal Student Aid
An OFFICE of the U.S. DEPARTMENT of EDUCATION

830 First St., N.E. Washington, D.C. 20202
StudentAid.gov

Exhibit 9 - 001
Redacted

Colleges) were merged into CEHE, and CEHE was transformed into an entity primarily delivering educational services. The Colleges have petitioned the Department to recognize their conversion to nonprofit status for the purposes of administration and oversight of their participation in the Title IV Student Financial Assistance programs, based on CEHE's 501(c)(3) exempt status which had been approved by the IRS many years prior to the Transaction.[1]

When an institution experiences a change of ownership that results in a change of control, the institution's existing participation expires on that date. 34 C.F.R. §§ 668.14(g)(1), 668.26(a)(5). Institutions that provide a timely notice of a change of ownership and a materially complete application may continue to participate in the federal student aid programs authorized pursuant to Title IV of the Higher Education Act of 1965, as amended, 20 U.S.C. §1070 et seq. ("Title IV, HEA programs") under a temporary provisional program participation agreement which includes the same terms and conditions that were in effect prior to the change of ownership. 34 C.F.R. § 600.20(h).

This letter sets out the Department's decision concerning CEHE's requested approvals for the change of ownership and change to nonprofit status. As explained below, the Department is denying the applications with respect to recognizing the Colleges as nonprofit institutions for purposes of Title IV, HEA programs. The Department has enclosed new provisional program participation agreements ("PPAs") to approve the Colleges as for-profit entities for purposes of the Title IV, HEA programs. The Colleges will need to sign and return these new PPAs to the Department for counter-signature for the Colleges to continue participating in Title IV beyond the end of this month. The existing temporary PPAs will expire on August 31, 2016, as provided in 34 C.F.R. §600.20(h). If the Colleges do not enter into the new PPAs by that date, the Colleges will no longer be certified to participate in Title IV, HEA programs.

I.   **THE DEPARTMENT EMPLOYS A THREE-PRONG TEST FOR DETERMINING AN INSTITUTION'S NONPROFIT STATUS, INCLUDING AN INDEPENDENT EVALUATION OF ECONOMIC BENEFIT AND CONTROL**

The Department regulations identify certain covered transactions for an institution that constitute a change of ownership that require the institution to apply and obtain approval from the Department to continue participating in the Title IV, HEA programs. These include instances where an institution is sold, merged with one or more eligible institutions, experiences a change in the owner of the controlling stock, has a transfer of assets that comprise a substantial portion of the educational business of the institution, or has a change in status as a for-profit, nonprofit, or public institution. 34 C.F.R. § 600.31(d). To establish eligibility and to continue participation in the Title IV, HEA programs, an institution must demonstrate to the Department that, after the change, the institution qualifies to be certified to participate under 34 C.F.R. Part 668, Subpart B pursuant 34 C.F.R. § 600.31(a)(3)(ii).



Redacted

Exhibit 9 - 002
Redacted

**A200**

Because the Colleges have applied to be considered nonprofit institutions, they must meet the Department's test for eligibility. The Department regulations define a nonprofit institution as an institution that:

> (i) Is owned and operated by one or more nonprofit corporations or associations, no part of the net earnings of which benefits any private shareholder or individual;

> (ii) Is legally authorized to operate as a nonprofit organization by each State in which it is physically located; and

> (iii) Is determined by the Internal Revenue Service to be an organization to which contributions are tax deductible under 26 U.S.C. §501(c)(3) of the Internal Revenue Code (26 U.S.C. § 501(c)(3)).

34 C.F.R. §600.2. A state authorization and IRS determination do not themselves confer nonprofit status for Title IV purposes. The Department must make an independent determination that the institution is "owned and operated by one or more nonprofit corporations or associations, no part of the net earnings of which benefits any private shareholder or individual."

CEHE provided documents and records in support of its application, and the Department requested additional documents and information in the course of its review.[2] Having reviewed the information provided by CEHE, the Department is denying the request to approve the Colleges' change to nonprofit status for participation in the Title IV, HEA programs. CEHE's acquisition of the Colleges did not present the traditional situation where an institution is acquired by a new owner and the former owner no longer plays a role in the continued operation of the institution. In the acquisition here, the Transaction was structured so that the Trust retained the benefit of a continued stream of Title IV revenues, and Mr. Barney obtained significant control of CEHE, and by extension, retained control of the Colleges.

For these reasons, the Department has determined that the Colleges do not meet the required definitional elements set forth in 34 C.F.R. § 600.2. Of particular concern are the following: that the financing of the Transaction results in financial benefit which inures to Mr. Barney's beneficial interests via the Trust; that lease payments to entities controlled by Mr. Barney provide additional economic benefit to him; and that Mr. Barney has retained control of the Colleges through his role Redacted as the sole member, Redacted Redacted and as Board Chairman of CEHE's Board.

---

[2] In response to the Department's request for additional information on June 13, 2016, CEHE provided information and documents on June 29, 2016, and notified the Department that it was designating all of the documents produced in response to the Department's June 13, 2016 request as privileged and confidential, asserting that they consisted of trade secrets and commercial or financial information. The Department advised CEHE that the Department's determination with regard to the designation and public release of the documents and information would be governed by the Department's responsibilities under the Freedom of Information Act. CEHE had provided documents prior to the June 29th submission that were also marked "Confidential."

3

Exhibit 9 - 003
Redacted

A201

## II. THE TRANSACTION WAS STRUCTURED SO THAT THE COLLEGES' TITLE IV FUNDING WOULD CONTINUE TO BENEFIT THE CARL BARNEY LIVING TRUST, JUST AS IT HAD BEFORE THE MERGER

34 C.F.R. § 600.2 provides, in the definition of "nonprofit," that "no part of the net earnings [shall] benefit any private shareholder or individual."  The Transaction that resulted in the change of the Colleges' ownership was structured in such a way that an income stream of over $400 million was intended to continue to flow to the Carl Barney Living Trust ("the Trust"), the former owner of the Colleges, just as an income stream flowed to the Trust while the Colleges operated in a for-profit status.

The Transaction was effectuated through the merger of the entities that owned and operated the Colleges and an affiliated service company into CEHE (*i.e.,* Stevens-Henager, Inc. ("SH"), CollegeAmerica Denver, Inc. ("CAD"), CollegeAmerica Arizona, Inc. ("CAA"), California College San Diego, Inc. ("CCSD"), and CollegeAmerica Services, Inc. ("CASI")). SH, CAD, CAA, CCSD and CASI are hereinafter collectively referred to as "the Companies," or with reference to an individual entity as "the Company."  *See* CEHE 2012 Audited Financial Statements at Note 1. Before the Transaction, the Companies were all individually owned by the Trust, and Carl Barney is the Trustee of the Trust.  The Companies were merged into CEHE pursuant to individual merger agreements (hereinafter collectively referred to as the "Merger Agreements," or individually by their entity names).  The parties to the various Merger Agreements are CEHE as "Purchaser," the individual Companies, and the Trust as "Stockholder" of the Companies.  *See* CEHE 2012 Audited Financial Statements at Note 6.  The Merger Agreements for CASI, SH, and CAA provide for a total aggregate maximum merger consideration of $431,000,000 as of December 27, 2012. [Redacted] [Redacted] To finance the Transaction, [Redacted] the Trust purchased two notes from CEHE in the aggregate amount of $431,000,000 ("Term Note A" and "Term Note B")[3] *See* CEHE 2012 Audited Financial Statements at Note 8.

[Redacted]

The Transaction was approved [Redacted] on December 27, 2012. [Redacted] there is no evidence that CEHE [Redacted] conducted any valuation of the Colleges before entering into the Merger Agreement and resulting financing which obligated CEHE to $431,000,000 in indebtedness to the Trust with  $419,000,000 of that amount representing goodwill. [Redacted]

[Redacted]

---

[3] Term Note A was in the amount of $200,000,000; Term Note B was in the amount of $231,000,000.

4

Exhibit 9 - 004
Redacted

**A202**



Redacted the equity of SH, CAA and CASI Redacted was sold, and as discussed below Redacted Mr. Barney indeed placed restrictions on CEHE; by Negative Covenants set forth in the Redacted Contingent Note Agreement; Redacted Redacted Mr. Barney's control over CEHE was exercised as a CEHE member and CEHE Board Chair, and through the Trust as lender under various financing instruments (*i.e.,* Redacted the Contingent Note Agreement, and a series of notes Redacted .

5

Exhibit 9 - 005
Redacted

**A203**

As set forth above, the Transaction was financed ███████ whereby CEHE executed Term Notes A and B (collectively, the "Term Notes") effective as of December 31, 2012. The Notes provided for the accrual and quarterly payment of interest at the rate of 1% per annum ("Fixed Rate"), ███████ *See* CEHE 2012 Audited Financial Statements at Note 8. Significantly, the Notes also required quarterly mandatory prepayments of the greater of 75% of the Excess Cash Flow[4] of CEHE, or 10% of CEHE's total revenues. ███████ Term Note A matured the earlier of December 31, 2017, or the first fiscal year in which CEHE has at least $50,000,000 Change in Net Assets ███████ Term Note B matured the earlier of December 31, 2019, or the first fiscal year in which CEHE has at least $75,000,000 Change in Net Assets ███████ *See* CEHE 2012 Audited Financial Statements at Note 8; CEHE 2015 Audited Financial Statements at Note 7.

Payments to the Trust under the Notes are essentially based on the excess of revenues over expenses -- the same way as net income in a for-profit entity. Instead of this excess being retained and allocated to CEHE's mission as would be expected in a nonprofit,[5] the excess is distributed to the Trust under the guise of Note payments. In the notes to CEHE's December 31, 2012 financial statements, CEHE identified its "future minimum principal payments" to the Trust as follows:

<div style="margin-left: 4em;">

2013- $32 million
2014- $36 million
2015- $40 million
2016- $44 million
2017- $48 million
By December 2019 - $231 million

</div>

*See* CEHE 2012 Audited Financial Statements at Note 8. ███████

---

[4] ███████ Redacted

[5] The websites for each of the Colleges includes the following explanation of the Colleges' nonprofit status: "Nonprofit Difference – Learn how a nonprofit college benefits you -- What does it mean to be a nonprofit college? In essence, it means that [College] can put your needs and your goals first. It means that *we can invest your tuition in your success and the success of your fellow students*. It means that we're uniquely set up to help you gain the competitive advantage in today's job market because we can focus on you, the student." (Emphasis added). While suggesting to students that their tuition is exclusively being used for educational services, the Colleges fail to mention that a portion of the tuition revenue is being paid to the Trust under the Notes.

Exhibit 9 - 006
Redacted

Subsequent to the closing of the Transaction in December 2012, and with the agreement of the Trust, CEHE's obligation to the Trust under the Notes was modified [Redacted]. On March 17, 2015, [Redacted] to cancel the [Redacted] the Term Notes, and to replace those instruments with a Contingent Note Agreement ("CNA") and Contingent Notes A and B.  The CNA and the related Contingent Notes were executed effective as of March 23, 2015 and March 31, 2015 respectively.  *See* CEHE 2015 Audited Financial Statements at Note 7.  Pursuant to the CNA, the Note payments remained conditioned on CEHE's Excess Cash Flow, and eliminated the alternative calculation based on 10% of revenues, as well as the accrual and payment of interest.  CNA at 4, 6 and ¶2.5.1 (75% of CEHE's Excess Cash Flow each quarter). [Redacted]

[Redacted]

The CNA also contained a series of Negative Covenants, [Redacted]  *See* CNA at ¶¶5.1-5.12.  CEHE did not notify the Department of this significant debt restructuring with the Trust even though CEHE's application for the change of ownership for the original transaction was still under review.

CEHE's obligation for payments to the Trust was further modified in November 2015. CEHE 2015 Audited Financial Statements at Note 7. [Redacted]

[Redacted]

[Redacted] on November 6, 2015, [Redacted]

[Redacted]

[Redacted] Contingent Note B was cancelled and Contingent Note A was restated and reduced to $75,000,000.  Restated Contingent Note A [Red act] imposed the Fixed Rate [Redacted] interest accrual and quarterly payments, and retained the mandatory quarterly payments based on 75% of CEHE's Excess Cash Flows. CEHE 2015 Audited Financial Statements at Note 7. [Redacted]

[Redacted]

[Redacted]  The note may have been written down to reduce long-term debt to improve the

_____

6 [Redacted]
[Redacted]

7

Exhibit 9 - 007
Redacted

A205

Colleges' composite score calculations under the Department's financial responsibility ratios[7] or because the CEHE Board and Mr. Barney recognized that CEHE would not be able to satisfy the remaining obligation under the two notes. In either case, the significant reduction suggests that the initial consideration of $431,000,000 (and the corresponding indebtedness) was highly inflated. ▓Redacted▓

▓Redacted▓

    The Department has determined that the payments under the Term, Contingent, and Restated Contingent Notes, which ▓Redacted▓ are essentially profit distributions to the Trust – substantially the same as it received when it was the sole shareholder of the Companies. The payment structure using contingent cash flow from the institutions' operating income, in combination with the continuing control exercised by Mr. Barney, is evidence of an entity that has not transitioned. ▓Redacted▓ the Restated Contingent Note, ▓Redacted▓ further demonstrates that the primary benefit of the Transaction was to be enrichment of the Trust. As such, this "Excess Cash" stream of income to benefit the Trust, in combination with the control exercised by Mr. Barney, precludes the Colleges from qualifying to participate in Title IV, HEA programs as nonprofit institutions under the Department's regulations.

    Another element of economic benefit flows to Mr. Barney as a result of nine lease agreements between the Colleges and real estate entities owned or controlled by Mr. Barney. At the time of the Transaction, seven of those leases were already in place, with lease expiration dates ranging from 2015 to 2020. As set forth in the Colleges' and CEHE's audited financial statements for the relevant years, the campus leases provided the following stream of income to Mr. Barney's affiliated real estate companies during the period 2010-2015:

2010 - $3,485,000
2011 - $4,323,000
2012 - $4,643,584 (presumably, this amount is primarily, if not entirely, for payments prior to the Transaction)
2013 - $5,097,509
2014 - $5,962,535
2015 - $3,458,226



Redacted

---

[7] In May 2015, CEHE was instructed to submit a Letter of Credit to the Department based upon CEHE's failed financial composite score calculated under the Department's financial responsibility regulations. Ultimately, CEHE posted cash (in three separate installments) in lieu of the LOC. CEHE's 2015 Audited Financial Statements (at Note 7) reflect that CEHE executed three promissory notes which were issued in June 2015 ($9 million), September 2015 ($2 million) and December 2015 ($5 million), all including 5% interest payable quarterly and the notes mature in January 2017. These notes are payable to ▓Redacted▓ and presumably relate to the security requirement imposed by the Department.

8

Exhibit 9 - 008
Redacted

A206

Redacted

### III.   MR. BARNEY'S CONTINUING AND MULTIPLE CEHE ROLES DEMONSTRATE THAT THE COLLEGES CONTINUE TO BE SUBSTANTIALLY CONTROLLED BY MR. BARNEY

Mr. Barney is a CEHE member, he is Chairman of its Board, and he is a surety resource. Through the Trust and [Redacted], he is CEHE's principal lender. Through affiliated real estate companies, he is landlord for several of the Colleges' campuses. As noted above, the Department's decision to approve the change of ownership to CEHE but deny the request to change the Colleges' status to nonprofit is based in part on this continuing control by Mr. Barney following the Transaction. *See* 34 C.F.R. § 600.31 (definition of "control"). Thus, the Colleges do not currently meet the Department requirement of being "owned and operated" by a nonprofit (34 C.F.R. § 600.2) because the Trust enjoys both an income stream and effective control through Mr. Barney's continuing involvement. As described below, this control is and has been effectuated through [Redacted] the CNA, the leases, [Redacted] as well as Mr. Barney's roles as lender (through the Trust), member, Board Chair, and landlord. Although Mr. Barney's control may have been reduced through certain later events, [Redacted] Mr. Barney's current control is still significant.

Ensuring Mr. Barney's ongoing control was an integral part of the Transaction from its inception. This is not surprising given the small size of CEHE in comparison to the Colleges, and the financing that was facilitated and provided by Mr. Barney. [Redacted]

Redacted

Redacted the CNA) included Negative Covenants which restricted CEHE's authority to manage its operations in areas which require the Trust's consent, providing further control for Mr. Barney as Trustee of the Trust. *See*

Redacted

---
[8] Redacted

Exhibit 9 - 009
Redacted

Redacted

Redacted

Redacted

In addition, [Redacted] funds so CEHE could satisfy the financial responsibility surety triggered by the Colleges' failing composite score calculations. All of these controls remain in place, [Redacted]

Redacted

Thus, Mr. Barney, both individually and through the Trust, continues to exert significant control over CEHE's management and operations, and accordingly, the Department has determined that it is not operated by a nonprofit organization as required under 34 C.F.R. § 600.2.

## IV.   THE COLLEGES' CHANGE OF OWNERSHIP IS APPROVED WITHOUT APPROVAL OF NONPROFIT STATUS

The Department is approving the change of ownership from the Trust to CEHE, and approves the Colleges as for-profit institutions for purposes of their continued participation in the Title IV, HEA programs. CEHE may request approval for nonprofit status for the Colleges when it applies for recertification in the future, and the Department will continue to evaluate the relationship between CEHE and its former owner in connection with such a request. The for-profit status for the CEHE Colleges is for purposes of their participation in the Title IV, HEA programs. The Department does not take a position with respect to CEHE's non-profit 501(c)(3) status with the Internal Revenue Service.

The temporary PPAs under which the Colleges have been operating since the change of ownership in December 2012 continued the prior approval for those Colleges to participate under a for-profit status. The for-profit status for the continued participation of the Colleges is

10

Exhibit 9 - 010
Redacted

A208

therefore unchanged.  CEHE is reminded that the Colleges must meet the Title IV, HEA reporting and program eligibility requirements applicable to for-profit institutions, including the 90/10 eligibility requirements described in 34 C.F.R. §668.28 and the gainful employment program requirements set out in 34 C.F.R. Subpart Q.  CEHE must also submit the gainful employment certifications required under 34 C.F.R.§414 for all of its certificate and degree programs that it would like to continue to have included in its federal student aid participation. These certifications must be submitted no later than the date CEHE returns the signed PPAs.

For the reasons set out above, the Department is denying the applications from CEHE for the four Colleges to participate in the Title IV, HEA programs as non-profit institutions.  The temporary approvals for the Colleges will expire at the end of this month.  The Department has included with this letter the provisional PPAs for the four Colleges.  If CEHE wants the Colleges to continue to participate in Title IV, HEA programs without interruption, the PPAs should be signed and returned to the Department no later than August 31, 2016 for counter-signature.

The basis for this determination and the facts upon which it is based have been set out above.  If CEHE has additional factual information about the above-referenced agreements and arrangements that it believes the Department should consider, CEHE should submit a request for reconsideration to this office that identifies those facts within 10 days of the date of this letter. The request should identify the relevant portions of the documents already provided to the Department, and include any additional documents that have not already been provided to the Department.  Please note that a request for reconsideration will not stay the expiration of the temporary approvals which expire on August 31, 2016.

Please contact Earl Flurkey (312-730-1521) if you have any questions regarding the content of this letter.

Sincerely,

Douglas Parrott
Division Director

Enclosures:
Stevens Henager College (OPE 003674) Program Participation Agreement
CollegeAmerica Denver (OPE 025943) Program Participation Agreement
CollegeAmerica Arizona (OPE 031203) Program Participation Agreement
California College San Diego (OPE 021108) Program Participation Agreement

cc:

Stevens Henager College
CollegeAmerica Denver
CollegeAmerica Arizona
California College of San Diego
Accrediting Commission of Career Schools and Colleges

11

Exhibit 9 - 011
Redacted

5/8/2020                              PPA  OPE ID: 02594300  PPA Expiration Date: 03/31/2021



FEDERAL STUDENT AID     START HERE. GO FURTHER.

## UNITED STATES DEPARTMENT OF EDUCATION

## FEDERAL STUDENT AID
## SCHOOL ELIGIBILITY SERVICE GROUP

# PROGRAM PARTICIPATION AGREEMENT
## [PROVISIONAL APPROVAL]

| | |
|---|---|
| Effective Date of Approval: | The date on which this Agreement is signed on behalf of the Secretary of Education |
| Approval Expiration Date: | **March 31, 2021** |
| Reapplication Date: | **December 31, 2020** |
| Name of Institution: | **CollegeAmerica Denver** |
| dba: | **CollegeAmerica** |
| Address of Institution: | **1385 South Colorado Boulevard** |
| | **5th Floor** |
| | **Denver, CO 80222-3380** |

OPE ID Number: **02594300**

DUNS Number: **080241568**

Taxpayer Identification Number (TIN): **208091013**

> **The execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.**

The postsecondary educational institution listed above, referred to hereafter as the "Institution," and the United States Secretary of Education, referred to hereafter as the "Secretary," agree that the Institution may participate in those student financial assistance programs authorized by Title IV of the Higher Education Act of 1965, as amended (Title IV, HEA Programs) indicated under this Agreement and further agrees that such participation is subject to the Institution's compliance with the terms and conditions set forth in this Agreement. As used in this Agreement, the term "Department" refers to the U.S. Department of Education.

## SCOPE OF COVERAGE

This Agreement applies to all locations of the Institution as stated on the most current ELIGIBILITY AND CERTIFICATION APPROVAL REPORT issued by the Department. This Agreement covers the Institution's eligibility to participate in each of the following listed Title IV, HEA programs, and incorporates by reference the regulations cited.

- **FEDERAL PELL GRANT PROGRAM**, 20 U.S.C. §§ 1070a *et seq*.; 34 C.F.R. Part 690.

- **FEDERAL FAMILY EDUCATION LOAN PROGRAM**, 20 U.S.C. §§ 1071 *et seq*.; 34 C.F.R. Part 682.

- **FEDERAL DIRECT STUDENT LOAN PROGRAM**, 20 U.S.C. §§ 1087a *et seq*.; 34 C.F.R. Part 685.

- **FEDERAL PERKINS LOAN PROGRAM**, 20 U.S.C. §§ 1087aa *et seq*.; 34 C.F.R. Part 674.

- **FEDERAL SUPPLEMENTAL EDUCATIONAL OPPORTUNITY GRANT PROGRAM**, 20 U.S.C. §§ 1070b *et seq*.; 34 C.F.R. Part 676.

- **IRAQ AND AFGHANISTAN SERVICE GRANT**, 20 U.S.C. §§ 1070h *et seq*.

## PROVISIONAL CERTIFICATION

This provisional certification is granted for a limited period to permit the Institution to participate in the Title IV, HEA programs referenced in this Agreement. During the period of provisional certification, the participation of the Institution will be subject to revocation for cause. Cause for revocation may include, but is not limited to, a failure to comply with any provision set forth in this Agreement, a violation of Department regulations deemed material by the Department, or a material misrepresentation in the material submitted to the Department as part of the Institution's application process for this certification. In the event the Department chooses to revoke this Agreement and the Institution's participation in the Title IV, HEA programs, the Institution will have the right to show cause why this Agreement should not be revoked by presenting its objections in writing to the designated Department reconsideration official. The Institution agrees that this opportunity to show cause by a request for reconsideration of the Department's revocation decision, and not the procedures in 34 C.F.R. Part 668, Subpart G, shall be the sole administrative appeal regarding such revocation. The decision by the designated Department reconsideration official will constitute the final agency action.

### Special Requirements for Substantial Changes Made During Term of Provisional Certification

Any institution provisionally certified must apply for and receive approval by the Secretary for expansion or of any substantial change (as hereinafter identified) before it may award, disburse or distribute Title IV, HEA funds based on the substantial change. Substantial changes generally include, but are not limited to: (a) establishment of an additional location; (b) increase in the level of academic offering beyond those listed in the Institution's Eligibility and Certification Approval Report (ECAR); or (c) addition of any educational program (including degree, nondegree, or short-term training programs).

If the Institution applies for the Secretary's approval of a substantial change, the Institution must demonstrate that it has the financial and administrative resources necessary to assure the Institution's continued compliance with the standards of financial responsibility (34 C.F.R. § 668.15 and 34 C.F.R. Part 668, Subpart L) and administrative capability (34 C.F.R. § 668.16).

### Reasons and Special Conditions of Provisional Certification

### *New Degree Program at Public or Private Non-Profit*

In addition to the expansions and substantial changes identified above under Special Requirements for Substantial Changes Made During Term of Provisional Certification, as a provisionally certified public or private non-profit institution, the institution must also apply for and receive approval by the Secretary for the addition of any degree programs.

### *Funding Arrangement Other Than Advance, and Surety For Not Less Than 10% of Title IV, HEA Funds*

The institution does not meet the standards of financial responsibility as set forth in 34 CFR §668.171. Pursuant to 34 CFR §668.175(f) and as a condition of entering into the Program Participation Agreement (PPA) under Provisional Certification, the institution agrees (a) to participate in the Title IV, HEA programs without recourse to the Department's standard advance funding arrangement, and (b) to maintain an escrow account with the Department for $16,234,899 for the school group. The escrow account is based on a minimum amount of at least 10% of the Title IV, HEA program funds received by the institution during the last complete fiscal year for which figures are available or for the projected fiscal year during which the escrow account will be in place.

### *Application for Recertification*

Upon completion of the period of provisional certification, if the Institution wishes to apply for recertification to participate in the Title IV, HEA programs, the Institution must submit a completed Application for Approval to Participate in Federal Student Financial Aid Programs, together with all required supporting documentation, no later than December 31, 2020.

### *Grant or Denial of Full Certification*

Notwithstanding any paragraph above, the provisional certification ends upon the Department's notification to the Institution of the Department's decision to grant or deny a six year certification to participate in the Title IV, HEA programs.

# GENERAL TERMS AND CONDITIONS

1. The Institution understands and agrees that it is subject to and will comply with, as they become effective, the program statutes and implementing regulations for institutional eligibility as set forth in 34 C.F.R. Part 600 and for each Title IV, HEA program in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA, and the Student Assistance General Provisions regulations set forth in 34 C.F.R. Part 668. **The recitation of any portion of the statute or regulations in this Agreement does not limit the Institution's obligation to comply with other applicable statutes and regulations.**

2.     a. The Institution certifies that on the date it signs this Agreement, it has adopted and implemented the drug prevention program described in 34 C.F.R. § 86.100.
    b. The Institution certifies that on the date it signs this Agreement, it is in compliance with the disclosure requirements of Section 485(f) of the HEA (Campus Security Policy and Campus Crime Statistics).

3. The Institution agrees to comply with --

a. Title VI of the Civil Rights Act of 1964, as amended, and the implementing regulations, 34 C.F.R. Parts 100 and 101 (nondiscrimination on the basis of race, color or national origin);

b. Title IX of the Education Amendments of 1972 and the implementing regulations, 34 C.F.R. Part 106 (nondiscrimination on the basis of sex);

c. The Family Educational Rights and Privacy Act of 1974 and the implementing regulations, 34 C.F.R. Part 99;

d. Section 504 of the Rehabilitation Act of 1973 and the implementing regulations, 34 C.F.R. Part 104 (nondiscrimination on the basis of disability); and

e. The Age Discrimination Act of 1975 and the implementing regulations, 34 C.F.R. Part 110.

f. The Standards for Safeguarding Customer Information, 16 C.F.R. Part 314, issued by the Federal Trade Commission (FTC), as required by the Gramm-Leach-Bliley (GLB) Act, P.L. 106-102. These Standards are intended to ensure the security and confidentiality of customer records and information. The Secretary considers any breach to the security of student records and information as a demonstration of a potential lack of administrative capability as stated in 34 C.F.R. § 668.16(c). Institutions are strongly encouraged to inform its students of any such breaches. Institutions are required, pursuant to the Student Aid Internet Gateway (SAIG) Agreement, to notify the Department of any suspected data breaches.

4. The Institution acknowledges that 34 C.F.R. Parts 602 and 668 require accrediting agencies, State regulatory bodies, and the Secretary to share information about institutions. The Institution agrees that the Secretary, any accrediting agency recognized by the Secretary, and any State regulatory body may share or report information to one another about the Institution without limitation.

5. The Institution acknowledges that the HEA prohibits the Secretary from recognizing the accreditation of any institution of higher education unless that institution agrees to submit any dispute involving the final denial, withdrawal, or termination of accreditation to initial arbitration prior to any other legal action.

6. The Institution acknowledges that the Department is obligated to take appropriate measures in order to safeguard its systems and information as well as borrowers' personally identifiable information (PII) as required under Federal law, including but not limited to the requirements in the Privacy Act (see 5 U.S.C. § 552a(e)), E-Government Act of 2002 (see 44 U.S.C. § 3544), the Family Educational Rights and Privacy Act of 1974 (FERPA) (20 U.S.C. § 1232g; 34 C.F.R. Part 99), Federal Information Security Modernization Act (FISMA) of 2014 (44 U.S.C. § 3551, et seq.), and OMB Circular No. A-130. If the Institution has a cyber security incident that may negatively affect the Department's systems, the Department may terminate the Institution's access to the Department's systems. Access will be reconnected when the Department determines that the Institution has resolved any cyber security concerns and vulnerabilities to the Department's satisfaction.

7. The Institution acknowledges that any person who knowingly and willfully commits, or attempts to commit, any criminal action described in 20 U.S.C. § 1097, shall be subject to the penalties described therein.

## SELECTED PROVISIONS FROM
## GENERAL PROVISIONS REGULATIONS, 34 C.F.R. § 668.14

An institution's program participation agreement applies to each branch campus and other location of the institution that meets the applicable requirements of this part unless otherwise specified by the Secretary.

(b) By entering into a program participation agreement, an institution agrees that--

(1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in and in accordance with that program;

(2) As a fiduciary responsible for administering Federal funds, if the institution is permitted to request funds under a Title IV, HEA program advance payment method, the institution will time its requests for funds under the program to meet the institution's immediate Title IV, HEA program needs;

(3) It will not request from or charge any student a fee for processing or handling any application, form, or data required to determine a student's eligibility for, and amount of, Title IV, HEA program assistance;

(4) It will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV, HEA programs, together with assurances that the institution will provide, upon request and in a timely manner, information relating to the administrative capability and financial responsibility of the institution to--

(i) The Secretary;

(ii) A guaranty agency, as defined in 34 C.F.R. Part 682, that guarantees loans made under the Federal Stafford Loan and Federal PLUS programs for attendance at the institution or any of the institution's branch campuses or other locations;

(iii) The nationally recognized accrediting agency that accredits or preaccredits the institution or any of the institution's branch campuses, other locations, or educational programs;

(iv) The State agency that legally authorizes the institution and any branch campus or other location of the institution to provide postsecondary education; and

(v) In the case of a public postsecondary vocational educational institution that is approved by a State agency recognized for the approval of public postsecondary vocational education, that State agency;

(5) It will comply with the provisions of 34 C.F.R. § 668.15 relating to factors of financial responsibility;

(6) It will comply with the provisions of 34 C.F.R. § 668.16 relating to standards of administrative capability;

(7) It will submit reports to the Secretary and, in the case of an institution participating in the Federal Stafford Loan, Federal PLUS, or the Federal Perkins Loan Program, to holders of loans made to the institution's students under that program at such times and containing such information as the Secretary may reasonably require to carry out the purpose of the Title IV, HEA programs;

(8) It will not provide any statement to any student or certification to any lender in the case of an FFEL Program loan, or origination record to the Secretary in the case of a Direct Loan Program loan that qualifies the student or parent for a loan or loans in excess of the amount that the student or parent is eligible to borrow in accordance with sections 425(a), 428(a)(2), 428(b)(1)(A) and (B), 428B, 428H and 455(a) of the HEA;

(9) It will comply with the requirements of Subpart D of this part concerning institutional and financial assistance information for students and prospective students;

(10) In the case of an institution that advertises job placement rates as a means of attracting students to enroll in the institution, it will make available to prospective students, at or before the time that those students apply for enrollment--

(i) The most recent available data concerning employment statistics, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements; and

(ii) Relevant State licensing requirements of the State in which the institution is located for any job

for which an educational program offered by the institution is designed to prepare those prospective students.

(11) In the case of an institution participating in the FFEL Program, the institution will inform all eligible borrowers, as defined in 34 C.F.R. Part 682, enrolled in the institution about the availability and eligibility of those borrowers for State grant assistance from the State in which the institution is located, and will inform borrowers from another State of the source of further information concerning State grant assistance from that State;

(12) It will provide the certifications described in paragraph (c) of this section;

(13) In the case of an institution whose students receive financial assistance pursuant to section 484(d) of the HEA, the institution will make available to those students a program proven successful in assisting students in obtaining the recognized equivalent of a high school diploma;

(14) It will not deny any form of Federal financial aid to any eligible student solely on the grounds that the student is participating in a program of study abroad approved for credit by the institution;

(15) (i) Except as provided under paragraph (b)(15)(ii) of this section, the institution will use a default management plan approved by the Secretary with regard to its administration of the FFEL or Direct Loan programs, or both for at least the first two years of its participation in those programs, if the institution --

(A) Is participating in the FFEL or Direct Loan programs for the first time; or

(B) Is an institution that has undergone a change of ownership that results in a change in control and is participating in the FFEL or Direct Loan programs.

(ii) The institution does not have to use an approved default management plan if --

(A) The institution, including its main campus and any branch campus, does not have a cohort default rate in excess of 10 percent; and

(B) The owner of the institution does not own and has not owned any other institution that had a cohort default rate in excess of 10 percent while that owner owned the institution.

(16) For a proprietary institution, the institution will derive at least 10 percent of its revenues for each fiscal year from sources other than Title IV, HEA program funds, as provided in 34 C.F.R. § 668.28(a) and (b), or be subject to sanctions described in 34 C.F.R. § 668.28(c);

(17) The Secretary, guaranty agencies and lenders as defined in 34 C.F.R. Part 682, nationally recognized accrediting agencies, the Secretary of Veterans Affairs, State agencies recognized under 34 C.F.R. Part 603 for the approval of public postsecondary vocational education, and State agencies that legally authorize institutions and branch campuses or other locations of institutions to provide postsecondary education, have the authority to share with each other any information pertaining to the institution's eligibility for or participation in the Title IV, HEA programs or any information on fraud and abuse;

(18) It will not knowingly --

(i) Employ in a capacity that involves the administration of the Title IV, HEA programs or the receipt of funds under those programs, an individual who has been convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds, or has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(ii) Contract with an institution or third-party servicer that has been terminated under section 432 of the HEA for a reason involving the acquisition, use, or expenditure of Federal, State, or local government funds, or that has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds; or

(iii) Contract with or employ any individual, agency, or organization that has been, or whose officers or employees have been--

(A) Convicted of, or pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds; or

(B) Administratively or judicially determined to have committed fraud or any other material

violation of law involving Federal, State, or local government funds;

(19) It will complete, in a timely manner and to the satisfaction of the Secretary, surveys conducted as a part of the Integrated Postsecondary Education Data System (IPEDS) or any other Federal collection effort, as designated by the Secretary, regarding data on postsecondary institutions;

(20) In the case of an institution that is co-educational and has an intercollegiate athletic program, it will comply with the provisions of 34 C.F.R. § 668.48;

(21) It will not impose any penalty, including, but not limited to, the assessment of late fees, the denial of access to classes, libraries, or other institutional facilities, or the requirement that the student borrow additional funds for which interest or other charges are assessed, on any student because of the student's inability to meet his or her financial obligations to the institution as a result of the delayed disbursement of the proceeds of a Title IV, HEA program loan due to compliance with statutory and regulatory requirements of or applicable to the Title IV, HEA programs, or delays attributable to the institution;

(22) (i) It will not provide any commission, bonus, or other incentive payment based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid, to any person or entity who is engaged in any student recruitment or admission activity, or in making decisions regarding the award of Title IV, HEA program funds.

(A) The restrictions in paragraph (b)(22) of this section do not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal student assistance.

(B) For the purpose of paragraph (b)(22) of this section, an employee who receives multiple adjustments to compensation in a calendar year and is engaged in any student enrollment or admission activity or in making decisions regarding the award of Title IV, HEA program funds is considered to have received such adjustments based upon success in securing enrollments or the award of financial aid if those adjustments create compensation that is based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid.

(ii) Notwithstanding paragraph (b)(22)(i) of this section, eligible institutions, organizations that are contractors to eligible institutions, and other entities may make--

(A) Merit-based adjustments to employee compensation provided that such adjustments are not based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid; and

(B) Profit-sharing payments so long as such payments are not provided to any person or entity engaged in student recruitment or admission activity or in making decisions regarding the award of Title IV, HEA program funds.

(iii) As used in paragraph (b)(22) of this section,

(A) *Commission, bonus, or other incentive payment* means a sum of money or something of value, other than a fixed salary or wages, paid to or given to a person or an entity for services rendered.

(B) *Securing enrollments or the award of financial aid* means activities that a person or entity engages in at any point in time through completion of an educational program for the purpose of the admission or matriculation of students for any period of time or the award of financial aid to students.

(1) These activities include contact in any form with a prospective student, such as, but not limited to--contact through preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution, attendance at such an appointment, or involvement in a prospective student's signing of an enrollment agreement or financial aid application.

(2) These activities do not include making a payment to a third party for the provision of student contact information for prospective students provided that such payment is not based on--

(i) Any additional conduct or action by the third party or the prospective students, such as participation in preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution or attendance at such an appointment, or the

5/8/2020                    PPA OPE ID: 02594300   PPA Expiration Date: 03/31/2021

signing, or being involved in the signing, of a prospective student's enrollment agreement or financial aid application; or

(ii) The number of students (calculated at any point in time of an educational program) who apply for enrollment, are awarded financial aid, or are enrolled for any period of time, including through completion of an educational program.

(C) *Entity or person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid* means--

(1) With respect to an entity engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any institution or organization that undertakes the recruiting or the admitting of students or that makes decisions about and awards Title IV, HEA program funds; and

(2) With respect to a person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any employee who undertakes recruiting or admitting of students or who makes decisions about and awards Title IV, HEA program funds, and any higher level employee with responsibility for recruitment or admission of students, or making decisions about awarding Title IV, HEA program funds.

(D) *Enrollment* means the admission or matriculation of a student into an eligible institution.

(23) It will meet the requirements established pursuant to Part H of Title IV of the HEA by the Secretary and nationally recognized accrediting agencies;

(24) It will comply with the requirements of 34 C.F.R. § 668.22;

(25) It is liable for all--

(i) Improperly spent or unspent funds received under the Title IV, HEA programs, including any funds administered by a third-party servicer; and

(ii) Returns of Title IV, HEA program funds that the institution or its servicer may be required to make;

(26) If an educational program offered by the institution is required to prepare a student for gainful employment in a recognized occupation, the institution must--

(i) Demonstrate a reasonable relationship between the length of the program and entry level requirements for the recognized occupation for which the program prepares the student. The Secretary considers the relationship to be reasonable if the number of clock hours provided in the program does not exceed by more than 50 percent the minimum number of clock hours required for training in the recognized occupation for which the program prepares the student, as established by the State in which the institution is located, if the State has established such a requirement, or as established by any Federal agency;

(ii) Establish the need for the training for the student to obtain employment in the recognized occupation for which the program prepares the student; and

(iii) Provide for that program the certification required in 34 C.F.R. § 668.414.

(27) In the case of an institution participating in a Title IV, HEA loan program, the institution --

(i) Will develop, publish, administer, and enforce a code of conduct with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs in accordance with 34 C.F.R. § 601.21; and

(ii) Must inform its officers, employees, and agents with responsibilities with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs annually of the provisions of the code required under paragraph (b)(27) of this section;

(28) For any year in which the institution has a preferred lender arrangement (as defined in 34 C.F.R. § 601.2(b)), it will at least annually compile, maintain, and make available for students attending the institution, and the families of such students, a list in print or other medium, of the specific lenders for loans made, insured, or guaranteed under Title IV, of the HEA or private education loans that the institution recommends, promotes, or endorses in accordance with such

preferred lender arrangement. In making such a list, the institution must comply with the requirements in 34 C.F.R. § 682.212(h) and 34 C.F.R. § 601.10;

(29) (i) It will, upon the request of an enrolled or admitted student who is an applicant for a private education loan (as defined in 34 C.F.R. § 601.2(b)), provide to the applicant the self-certification form required under 34 C.F.R. § 601.11(d) and the information required to complete the form, to the extent the institution possesses such information, including --

(A) The applicant's cost of attendance at the institution, as determined by the institution under Part F of Title IV of the HEA;

(B) The applicant's estimated financial assistance, including amounts of financial assistance used to replace the expected family contribution as determined by the institution in accordance with Title IV, for students who have completed the Free Application for Federal Student Aid; and

(C) The difference between the amounts under paragraphs (b)(29)(i)(A) and (29)(i)(B) of this section, as applicable.

(ii) It will, upon the request of the applicant, discuss with the applicant the availability of Federal, State, and institutional student financial aid;

(30) The institution --

(i) Has developed and implemented written plans to effectively combat the unauthorized distribution of copyrighted material by users of the institution's network, without unduly interfering with educational and research use of the network, that include --

(A) The use of one or more technology-based deterrents;

(B) Mechanisms for educating and informing its community about appropriate versus inappropriate use of copyrighted material, including that described in 34 C.F.R. § 668.43(a)(10);

(C) Procedures for handling unauthorized distribution of copyrighted material, including disciplinary procedures; and

(D) Procedures for periodically reviewing the effectiveness of the plans to combat the unauthorized distribution of copyrighted materials by users of the institution's network using relevant assessment criteria. No particular technology measures are favored or required for inclusion in an institution's plans, and each institution retains the authority to determine what its particular plans for compliance with paragraph (b)(30) of this section will be, including those that prohibit content monitoring; and

(ii) Will, in consultation with the chief technology officer or other designated officer of the institution--

(A) Periodically review the legal alternatives for downloading or otherwise acquiring copyrighted material;

(B) Make available the results of the review in paragraph (b)(30)(ii)(A) of this section to its students through a Web site or other means; and

(C) To the extent practicable, offer legal alternatives for downloading or otherwise acquiring copyrighted material, as determined by the institution; and

(31) The institution will submit a teach-out plan to its accrediting agency in compliance with 34 C.F.R. § 602.24(c), and the standards of the institution's accrediting agency upon the occurrence of any of the following events:

(i) The Secretary initiates the limitation, suspension, or termination of the participation of an institution in any Title IV, HEA program under 34 C.F.R. § 600.41 or Subpart G of this part or initiates an emergency action under 34 C.F.R. § 668.83;

(ii) The institution's accrediting agency acts to withdraw, terminate, or suspend the accreditation or preaccreditation of the institution;

(iii) The institution's State licensing or authorizing agency revokes the institution's license or legal authorization to provide an educational program;

(iv) The institution intends to close a location that provides 100 percent of at least one program;

(v) The institution otherwise intends to cease operations; and

(32) The institution will provide all enrolled students with a closed school discharge application and a written disclosure, describing the benefits and consequences of a closed school discharge as an alternative to completing their educational program through a teach-out agreement, as defined in 34 C.F.R. § 602.3, immediately upon submitting a teach-out plan after the occurrence of any of the following events:

(i) The initiation by the Secretary of an action under 34 C.F.R. § 600.41 or Subpart G of this part or the initiation of an emergency action under 34 C.F.R. § 668.83, to terminate the participation of an institution in any Title IV, HEA program.

(ii) The occurrence of any of the events in paragraph (b)(31)(ii) through (v) of this section.

(c) In order to participate in any Title IV, HEA program (other than the LEAP and NEISP programs), the institution must certify that it--

(1) Has in operation a drug abuse prevention program that the institution has determined to be accessible to any officer, employee, or student at the institution; and

(2) (i) Has established a campus security policy in accordance with section 485(f) of the HEA; and

(ii) Has complied with the disclosure requirements of 34 C.F.R. § 668.47 as required by section 485(f) of the HEA.

(d) (1) The institution, if located in a State to which section 4(b) of the National Voter Registration Act (42 U.S.C. 1973gg-2(b)) does not apply, will make a good faith effort to distribute a mail voter registration form, requested and received from the State, to each student enrolled in a degree or certificate program and physically in attendance at the institution, and to make those forms widely available to students at the institution.

(2) The institution must request the forms from the State 120 days prior to the deadline for registering to vote within the State. If an institution has not received a sufficient quantity of forms to fulfill this section from the State within 60 days prior to the deadline for registering to vote in the State, the institution is not liable for not meeting the requirements of this section during that election year.

(3) This paragraph applies to elections as defined in Section 301(1) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(1)), and includes the election for Governor or other chief executive within such State.

(e) (1) A program participation agreement becomes effective on the date that the Secretary signs the agreement.

(2) A new program participation agreement supersedes any prior program participation agreement between the Secretary and the institution.

(f) (1) Except as provided in paragraphs (g) and (h) of this section, the Secretary terminates a program participation agreement through the proceedings in Subpart G of this part.

(2) An institution may terminate a program participation agreement.

(3) If the Secretary or the institution terminates a program participation agreement under paragraph (f) of this section, the Secretary establishes the termination date.

(g) An institution's program participation agreement automatically expires on the date that--

(1) The institution changes ownership that results in a change in control as determined by the Secretary under 34 C.F.R. Part 600; or

(2) The institution's participation ends under the provisions of 34 C.F.R. § 668.26(a)(1), (2), (4), or (7).

(h) An institution's program participation agreement no longer applies to or covers a location of the institution as of the date on which that location ceases to be a part of the participating institution.

## WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM

If an institution participates in the William D. Ford Federal Direct Loan (Direct Loan) Program, the

5/8/2020                    PPA, OPE ID: 02594300, PPA Expiration Date: 03/31/2021

institution and its representatives shall comply with, as they become effective, the statute, guidelines, and regulations governing the Title IV, Part D, William D. Ford Federal Direct Loan Program as required by 20 U.S.C. §§ 1087a *et seq.* (Part C) and 34 C.F.R. Part 685.

The institution will:

1.  Provide for the establishment and maintenance of a Direct Loan Program at the institution under which the institution will:

    Identify eligible students who seek student financial assistance in accordance with Section 484 of the HEA.

    Estimate the need of students as required under Title IV, Part F of the HEA.

    Provide a certification statement of eligibility for students to receive loans that will not exceed the annual or aggregate limits, except the institution may exercise its authority, under exceptional circumstances identified by the Secretary, to refuse to certify a statement that permits a student to receive a loan, or certify a loan amount that is less than the student's determination of need, if the reason for such action is documented and provided in written form to a student.

    Establish a schedule for disbursement of loan proceeds to meet the requirements of Section 428G of the HEA.

    Provide timely and accurate information to the Secretary concerning 1) the status of borrowers while students are in attendance, 2) any new information pertaining to the status of student borrowers of which the institution becomes aware after the student leaves the institution, and 3) the utilization of Federal funds under Title IV, Part D of the HEA at such times and in such manner as prescribed by the Secretary.

2.  Comply with requirements established by the Secretary relating to student loan information with respect to the Direct Loan Program.

3.  Provide that students at the institution and their parents (with respect to such students) will be eligible to participate in the programs under Title IV, Part B of the HEA, Federal Family Education Loan programs, at the discretion of the Secretary for the period during which such institution participates in the Direct Loan Program, except that a student or parent may not receive loans under both Title IV, Part B and Part D of the HEA for the same period of enrollment.

4.  Implement a quality assurance system, as established by the Secretary and developed in consultation with institutions of higher education, to ensure that the institution is complying with program requirements and meeting program objectives.

5.  Not charge any fees of any kind, regardless of how they are described, to student or parent borrowers for loan application, or origination activities (if applicable), or the provision and processing of any information necessary for a student or parent to receive a loan under Title IV, Part D of the HEA.

6.  Originate loans to eligible students and parents in accordance with the requirements of Title IV, Part D of the HEA and use funds advanced to it solely for that purpose.

7.  Provide that the note or evidence of obligation of the loan shall be the property of the Secretary.

8.  Comply with the provisions regarding student claims and disputes of 34 C.F.R. § 685.300(d) (borrower defense claims in an internal dispute process). (e) (class action bans). (f) (predispute arbitration agreements). (g) (submission of arbitral records). (h) (submission of judicial records). and (i) (definitions).

9.  Comply with other provisions as the Secretary determines are necessary to protect the interest of the United States and to promote the purposes of Title IV, Part D of the HEA.

10. Accept responsibility and financial liability stemming from its failure to perform its functions under this Program Participation Agreement.

## CERTIFICATIONS REQUIRED FROM INSTITUTIONS

The Institution should refer to the regulations cited below. Signature on this Agreement provides for compliance with, as they become effective, the certification requirements under 34 C.F.R. Part 82, "New Restrictions on Lobbying." 34 C.F.R Part 84, "Governmentwide Requirements for Drug-Free Workplace (Financial Assistance)." 2 C.F.R. Part 180, Subpart C. "OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)." 2 C.F.R. Part 3485. "Nonprocurement Debarment and Suspension," and 34 C.F.R. Part 86, "Drug and Alcohol Abuse Prevention." Breach of any of these certifications constitutes a breach of this Agreement.

## PART 1 CERTIFICATION REGARDING LOBBYING; DRUG-FREE WORKPLACE; DEBARMENT, SUSPENSION AND OTHER RESPONSIBILITY MATTERS; AND DRUG AND ALCOHOL ABUSE PREVENTION

### 1. Lobbying

As required by Section 1352, Title 31 of the U.S. Code, and implemented at 34 C.F.R. Part 82, for persons entering into a Federal contract, grant or cooperative agreement over $100,000, as defined at 34 C.F.R. Part 82, §§ 82.105 and 82.110, the undersigned certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan or cooperative agreement, the undersigned shall complete and submit Standard Form - LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Institution shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants and contracts under

5/8/2020                    PPA, OPE ID: 02594300, PPA Expiration Date: 03/31/2021

grants, loans and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

### 2a. Drug-Free Workplace (Grantees Other Than Individuals)

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart B, for grantees, as defined at 34 C.F.R. Part 84, §§ 84.200 through 84.230 -

The Institution certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a drug-free workplace statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about-

    (1) The dangers of drug abuse in the workplace;

    (2) The Institution's policy of maintaining a drug-free workplace;

    (3) Any available drug counseling, rehabilitation, and employee assistance programs; and

    (4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a);

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will -

    (1) Abide by the terms of the statement, and

    (2) Notify the employer in writing if he or she is convicted for a violation of a criminal drug statute occurring in the workplace no more than five calendar days after such conviction;

(e) Notifying the agency, in writing, within 10 calendar days after receiving notice under this subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant;

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted -

    (1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1972, as amended; or

    (2) Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

### 2b. Drug-Free Workplace (Grantees Who Are Individuals)

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart C, for recipients who are individuals, as defined at 34 C.F.R. Part 84, § 84.300 -

1. As a condition of the grant, the Institution certifies that it will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity related to the award; and

2. If any officer or owner of the Institution is convicted of a criminal drug offense resulting from a

violation occurring during the conduct of any award activity, the Institution will report the conviction, in writing, within 10 calendar days of the conviction, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant.

### 3. Debarment, Suspension, and Other Responsibility Matters

As required by Executive Order 12549, Debarment and Suspension, and implemented at 2 C.F.R. Part 180, for prospective participants in primary covered transactions as defined at 2 C.F.R. Part 180, §§ 180.200 and 180.210, the Institution certifies that it and its principals (per 2 C.F.R. § 180.335):

(a) Are not presently debarred, suspended, proposed for debarment, voluntarily excluded, or disqualified;

(b) Have not within a three-year period preceding this application been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; violation of Federal or State antitrust statutes, including those proscribing price fixing between competitors, allocation of customers between competitors, and bid rigging; commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, receiving stolen property, making false claims, or obstruction of justice; or commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects their present responsibility;

(c) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and

(d) Have not within a three-year period preceding this application had one or more public transactions (Federal, State, or local) terminated for cause or default.

### 4. Drug and Alcohol Abuse Prevention

As required by the Drug-Free Schools and Communities Act Amendments of 1989, which added section 1213 to the Higher Education Act, and implemented at 34 C.F.R. Part 86, the undersigned Institution certifies that it has adopted and implemented a drug prevention program for its students and employees that, at a minimum, includes--

1. The annual distribution in writing to each employee, and to each student who is taking one or more classes for any kind of academic credit except for continuing education units, regardless of the length of the student's program of study, of:

   * Standards of conduct that clearly prohibit, at a minimum, the unlawful possession, use, or distribution of illicit drugs and alcohol by students and employees on its property or as part of any of its activities.
   * A description of the applicable legal sanctions under local, State or Federal law for the unlawful possession or distribution of illicit drugs and alcohol.
   * A description of the health risks associated with the use of illicit drugs and the abuse of alcohol.
   * A description of any drug or alcohol counseling, treatment, or rehabilitation or re-entry programs that are available to employees or students.
   * A clear statement that the Institution will impose disciplinary sanctions on students and employees (consistent with local, State and Federal law), and a description of those sanctions, up to and including expulsion or termination of employment and referral for

5/8/2020                    PPA  OPE ID: 02594300  PPA Expiration Date: 03/31/2021

prosecution, for violation of the standards of conduct. A disciplinary sanction may include the completion of an appropriate rehabilitation program.

2. A biennial review by the Institution of its program to:

- Determine its effectiveness and implement changes to the program if they are needed.
- Ensure that its disciplinary sanctions are consistently enforced.

5/8/2020                          PPA_OPE ID: 02594300_PPA Expiration Date: 03/31/2021

## PART 2 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, DISQUALIFICATION, AND VOLUNTARY EXCLUSION -- LOWER TIER COVERED TRANSACTIONS

**The Institution is to obtain the signatures of Lower Tier Contractors on reproduced copies of the certification below, and retain the signed certification(s) in the Institution's files.**

---

### CERTIFICATION BY LOWER TIER CONTRACTOR
**(Before Completing Certification, Read Instructions for This Part, below)**

(1) The prospective lower tier participant certifies by submission of this proposal, that neither it nor its principals are presently debarred, suspended, proposed for debarment, voluntarily excluded, or disqualified from participation in this transaction by any Federal Department or Agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

| | |
|---|---|
| Name of Lower Tier Organization | PR/Award Number or Project Name |
| Name of Authorized Representative | Title of Authorized Representative |
| Signature of Authorized Representative | Date |

---

1. By signing and submitting this proposal, the prospective lower tier participant is providing the certification set out below.

2. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

3. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

4. The terms "covered transaction," "debarred," "suspended," "disqualified," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549. You may contact the person to whom this proposal is submitted for assistance in obtaining a copy of those regulations.

5. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

6. The prospective lower tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Disqualification, and

**A225**

5/8/2020                                    PPA OPE ID: 02594300. PPA Expiration Date: 03/31/2021

Voluntary Exclusion--Lower Tier Covered Transactions," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, disqualified, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

9. Except for transactions authorized under paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, disqualified, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

**NOTE:** A completed copy of the "Certification Regarding Debarment, Suspension, Disqualification and Voluntary Exclusion--Lower Tier Covered Transactions" form must be retained by the Institution. The original blank certification must be returned with the PPA.

## IN WITNESS WHEREOF

the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Signature of Institution's
Chief Executive Officer: _____  Date: 5.7.2020

Print Name and Title:   ERIC C. JUHLIN

 CHIEF  EXECUTIVE  OFFICER

For the Secretary:   _____  Date: 5/29/2020
U.S. Department of Education

5/8/2020                    PPA: OPE ID: 02110800: PPA Expiration Date: 03/31/2021



FEDERAL STUDENT AID    ⊯START HERE. GO FURTHER."

## UNITED STATES DEPARTMENT OF EDUCATION

### FEDERAL STUDENT AID
### SCHOOL ELIGIBILITY SERVICE GROUP

# PROGRAM PARTICIPATION AGREEMENT
## [PROVISIONAL APPROVAL]

Effective Date of Approval: The date on which this Agreement is signed on behalf of the Secretary of Education

Approval Expiration Date: **March 31, 2021**

Reapplication Date: **December 31, 2020**

Name of Institution: **California College San Diego**

Address of Institution: **6602 Convoy Court**
**Suite 100**
**San Diego, CA 92111-1009**

OPE ID Number: **02110800**
DUNS Number: **626397678**
Taxpayer Identification Number (TIN): **208091013**

> **The execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.**

The postsecondary educational institution listed above, referred to hereafter as the "Institution," and the United States Secretary of Education, referred to hereafter as the "Secretary," agree that the Institution may participate in those student financial assistance programs authorized by Title IV of the Higher Education Act of 1965, as amended (Title IV, HEA Programs) indicated under this Agreement and further agrees that such participation is subject to the Institution's compliance with the terms and conditions set forth in this Agreement. As used in this Agreement, the term "Department" refers to the U.S. Department of Education.

## SCOPE OF COVERAGE

This Agreement applies to all locations of the Institution as stated on the most current

ELIGIBILITY AND CERTIFICATION APPROVAL REPORT issued by the Department. This Agreement covers the Institution's eligibility to participate in each of the following listed Title IV, HEA programs, and incorporates by reference the regulations cited.

- **FEDERAL PELL GRANT PROGRAM,** 20 U.S.C. §§ 1070a *et seq.*; 34 C.F.R. Part 690.

- **FEDERAL FAMILY EDUCATION LOAN PROGRAM,** 20 U.S.C. §§ 1071 *et seq.*; 34 C.F.R. Part 682.

- **FEDERAL DIRECT STUDENT LOAN PROGRAM,** 20 U.S.C. §§ 1087a *et seq.*; 34 C.F.R. Part 685.

- **FEDERAL SUPPLEMENTAL EDUCATIONAL OPPORTUNITY GRANT PROGRAM,** 20 U.S.C. §§ 1070b *et seq.*; 34 C.F.R. Part 676.

- **IRAQ AND AFGHANISTAN SERVICE GRANT,** 20 U.S.C. §§ 1070h *et seq.*

## PROVISIONAL CERTIFICATION

This provisional certification is granted for a limited period to permit the Institution to participate in the Title IV, HEA programs referenced in this Agreement. During the period of provisional certification, the participation of the Institution will be subject to revocation for cause. Cause for revocation may include, but is not limited to, a failure to comply with any provision set forth in this Agreement, a violation of Department regulations deemed material by the Department, or a material misrepresentation in the material submitted to the Department as part of the Institution's application process for this certification. In the event the Department chooses to revoke this Agreement and the Institution's participation in the Title IV, HEA programs, the Institution will have the right to show cause why this Agreement should not be revoked by presenting its objections in writing to the designated Department reconsideration official. The Institution agrees that this opportunity to show cause by a request for reconsideration of the Department's revocation decision, and not the procedures in 34 C.F.R. Part 668, Subpart G, shall be the sole administrative appeal regarding such revocation. The decision by the designated Department reconsideration official will constitute the final agency action.

### Special Requirements for Substantial Changes Made During Term of Provisional Certification

Any institution provisionally certified must apply for and receive approval by the Secretary for expansion or of any substantial change (as hereinafter identified) before it may award, disburse or distribute Title IV, HEA funds based on the substantial change. Substantial changes generally include, but are not limited to: (a) establishment of an additional location; (b) increase in the level of academic offering beyond those listed in the Institution's Eligibility and Certification Approval Report (ECAR); or (c) addition of any educational program (including degree, nondegree, or short-term training programs).

If the Institution applies for the Secretary's approval of a substantial change, the Institution must demonstrate that it has the financial and administrative resources necessary to assure the Institution's continued compliance with the standards of financial responsibility (34 C.F.R. § 668.15 and 34 C.F.R. Part 668, Subpart L) and administrative capability (34 C.F.R. § 668.16).

### Reasons and Special Conditions of Provisional Certification

*New Degree Program at Public or Private Non-Profit*

In addition to the expansions and substantial changes identified above under Special Requirements for Substantial Changes Made During Term of Provisional Certification, as a provisionally certified public or private non-profit institution, the institution must also apply for and receive approval by the Secretary for the addition of any degree programs.

### *Funding Arrangement Other Than Advance, and Surety For Not Less Than 10% of Title IV, HEA Funds*

The institution does not meet the standards of financial responsibility as set forth in 34 CFR §668.171. Pursuant to 34 CFR §668.175(f) and as a condition of entering into the Program Participation Agreement (PPA) under Provisional Certification, the institution agrees (a) to participate in the Title IV, HEA programs without recourse to the Department's standard advance funding arrangement, and (b) to maintain an escrow account with the Department for $16,234,899 for the school group. The escrow account is based on a minimum amount of at least 10% of the Title IV, HEA program funds received by the institution during the last complete fiscal year for which figures are available or for the projected fiscal year during which the escrow account will be in place.

### *Application for Recertification*

Upon completion of the period of provisional certification, if the Institution wishes to apply for recertification to participate in the Title IV, HEA programs, the Institution must submit a completed Application for Approval to Participate in Federal Student Financial Aid Programs, together with all required supporting documentation, no later than December 31, 2020.

### *Grant or Denial of Full Certification*

Notwithstanding any paragraph above, the provisional certification ends upon the Department's notification to the Institution of the Department's decision to grant or deny a six year certification to participate in the Title IV, HEA programs.

# GENERAL TERMS AND CONDITIONS

1. The Institution understands and agrees that it is subject to and will comply with, as they become effective, the program statutes and implementing regulations for institutional eligibility as set forth in 34 C.F.R. Part 600 and for each Title IV, HEA program in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA, and the Student Assistance General Provisions regulations set forth in 34 C.F.R. Part 668. *The recitation of any portion of the statute or regulations in this Agreement does not limit the Institution's obligation to comply with other applicable statutes and regulations.*

2.  a. The Institution certifies that on the date it signs this Agreement, it has adopted and implemented the drug prevention program described in 34 C.F.R. § 86.100.
    b. The Institution certifies that on the date it signs this Agreement, it is in compliance with the disclosure requirements of Section 485(f) of the HEA (Campus Security Policy and Campus Crime Statistics).

3. The Institution agrees to comply with --
    a. Title VI of the Civil Rights Act of 1964, as amended, and the implementing regulations, 34 C.F.R. Parts 100 and 101 (nondiscrimination on the basis of race, color or national origin);

5/8/2020                    PPA  OPE ID  02110800  PPA Expiration Date  03/31/2021

b. Title IX of the Education Amendments of 1972 and the implementing regulations, 34 C.F.R. Part 106 (nondiscrimination on the basis of sex);

c. The Family Educational Rights and Privacy Act of 1974 and the implementing regulations, 34 C.F.R. Part 99;

d. Section 504 of the Rehabilitation Act of 1973 and the implementing regulations, 34 C.F.R. Part 104 (nondiscrimination on the basis of disability); and

e. The Age Discrimination Act of 1975 and the implementing regulations, 34 C.F.R. Part 110.

f. The Standards for Safeguarding Customer Information, 16 C.F.R. Part 314, issued by the Federal Trade Commission (FTC), as required by the Gramm-Leach-Bliley (GLB) Act, P.L. 106-102. These Standards are intended to ensure the security and confidentiality of customer records and information. The Secretary considers any breach to the security of student records and information as a demonstration of a potential lack of administrative capability as stated in 34 C.F.R. § 668.16(c). Institutions are strongly encouraged to inform its students of any such breaches. Institutions are required, pursuant to the Student Aid Internet Gateway (SAIG) Agreement, to notify the Department of any suspected data breaches.

4. The Institution acknowledges that 34 C.F.R. Parts 602 and 668 require accrediting agencies, State regulatory bodies, and the Secretary to share information about institutions. The Institution agrees that the Secretary, any accrediting agency recognized by the Secretary, and any State regulatory body may share or report information to one another about the Institution without limitation.

5. The Institution acknowledges that the HEA prohibits the Secretary from recognizing the accreditation of any institution of higher education unless that institution agrees to submit any dispute involving the final denial, withdrawal, or termination of accreditation to initial arbitration prior to any other legal action.

6. The Institution acknowledges that the Department is obligated to take appropriate measures in order to safeguard its systems and information as well as borrowers' personally identifiable information (PII) as required under Federal law, including but not limited to the requirements in the Privacy Act (*see* 5 U.S.C. § 552a(e)), E-Government Act of 2002 (*see* 44 U.S.C. § 3544), the Family Educational Rights and Privacy Act of 1974 (FERPA) (20 U.S.C. § 1232g; 34 C.F.R. Part 99), Federal Information Security Modernization Act (FISMA) of 2014 (44 U.S.C. § 3551, *et seq.*), and OMB Circular No. A-130. If the Institution has a cyber security incident that may negatively affect the Department's systems, the Department may terminate the Institution's access to the Department's systems. Access will be reconnected when the Department determines that the Institution has resolved any cyber security concerns and vulnerabilities to the Department's satisfaction.

7. The Institution acknowledges that any person who knowingly and willfully commits, or attempts to commit, any criminal action described in 20 U.S.C. § 1097, shall be subject to the penalties described therein.

## SELECTED PROVISIONS FROM
## GENERAL PROVISIONS REGULATIONS, 34 C.F.R. § 668.14

An institution's program participation agreement applies to each branch campus and other location of the institution that meets the applicable requirements of this part unless otherwise specified by the Secretary.

(b) By entering into a program participation agreement, an institution agrees that--

(1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special

arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in and in accordance with that program;

(2) As a fiduciary responsible for administering Federal funds, if the institution is permitted to request funds under a Title IV, HEA program advance payment method, the institution will time its requests for funds under the program to meet the institution's immediate Title IV, HEA program needs;

(3) It will not request from or charge any student a fee for processing or handling any application, form, or data required to determine a student's eligibility for, and amount of, Title IV, HEA program assistance;

(4) It will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV, HEA programs, together with assurances that the institution will provide, upon request and in a timely manner, information relating to the administrative capability and financial responsibility of the institution to--

(i) The Secretary;

(ii) A guaranty agency, as defined in 34 C.F.R. Part 682, that guarantees loans made under the Federal Stafford Loan and Federal PLUS programs for attendance at the institution or any of the institution's branch campuses or other locations;

(iii) The nationally recognized accrediting agency that accredits or preaccredits the institution or any of the institution's branch campuses, other locations, or educational programs;

(iv) The State agency that legally authorizes the institution and any branch campus or other location of the institution to provide postsecondary education; and

(v) In the case of a public postsecondary vocational educational institution that is approved by a State agency recognized for the approval of public postsecondary vocational education, that State agency;

(5) It will comply with the provisions of 34 C.F.R. § 668.15 relating to factors of financial responsibility;

(6) It will comply with the provisions of 34 C.F.R. § 668.16 relating to standards of administrative capability;

(7) It will submit reports to the Secretary and, in the case of an institution participating in the Federal Stafford Loan, Federal PLUS, or the Federal Perkins Loan Program, to holders of loans made to the institution's students under that program at such times and containing such information as the Secretary may reasonably require to carry out the purpose of the Title IV, HEA programs;

(8) It will not provide any statement to any student or certification to any lender in the case of an FFEL Program loan, or origination record to the Secretary in the case of a Direct Loan Program loan that qualifies the student or parent for a loan or loans in excess of the amount that the student or parent is eligible to borrow in accordance with sections 425(a), 428(a)(2), 428(b)(1)(A) and (B), 428B, 428H and 455(a) of the HEA;

(9) It will comply with the requirements of Subpart D of this part concerning institutional and financial assistance information for students and prospective students;

(10) In the case of an institution that advertises job placement rates as a means of attracting students to enroll in the institution, it will make available to prospective students, at or before the time that those students apply for enrollment--

(i) The most recent available data concerning employment statistics, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements; and

(ii) Relevant State licensing requirements of the State in which the institution is located for any job for which an educational program offered by the institution is designed to prepare those prospective students;

(11) In the case of an institution participating in the FFEL Program, the institution will inform all eligible borrowers, as defined in 34 C.F.R. Part 682, enrolled in the institution about the availability and eligibility of those borrowers for State grant assistance from the State in which the institution is located, and will inform borrowers from another State of the source of further information concerning State grant assistance from that State;

(12) It will provide the certifications described in paragraph (c) of this section;

(13) In the case of an institution whose students receive financial assistance pursuant to section 484(d) of the HEA, the institution will make available to those students a program proven successful in assisting students in obtaining the recognized equivalent of a high school diploma;

(14) It will not deny any form of Federal financial aid to any eligible student solely on the grounds that the student is participating in a program of study abroad approved for credit by the institution;

(15) (i) Except as provided under paragraph (b)(15)(ii) of this section, the institution will use a default management plan approved by the Secretary with regard to its administration of the FFEL or Direct Loan programs, or both for at least the first two years of its participation in those programs, if the institution --

(A) Is participating in the FFEL or Direct Loan programs for the first time; or

(B) Is an institution that has undergone a change of ownership that results in a change in control and is participating in the FFEL or Direct Loan programs.

(ii) The institution does not have to use an approved default management plan if --

(A) The institution, including its main campus and any branch campus, does not have a cohort default rate in excess of 10 percent; and

(B) The owner of the institution does not own and has not owned any other institution that had a cohort default rate in excess of 10 percent while that owner owned the institution.

(16) For a proprietary institution, the institution will derive at least 10 percent of its revenues for each fiscal year from sources other than Title IV, HEA program funds, as provided in 34 C.F.R. § 668.28(a) and (b), or be subject to sanctions described in 34 C.F.R. § 668.28(c);

(17) The Secretary, guaranty agencies and lenders as defined in 34 C.F.R. Part 682, nationally recognized accrediting agencies, the Secretary of Veterans Affairs, State agencies recognized under 34 C.F.R. Part 603 for the approval of public postsecondary vocational education, and State agencies that legally authorize institutions and branch campuses or other locations of institutions to provide postsecondary education, have the authority to share with each other any information pertaining to the institution's eligibility for or participation in the Title IV, HEA programs or any information on fraud and abuse;

(18) It will not knowingly --

(i) Employ in a capacity that involves the administration of the Title IV, HEA programs or the receipt of funds under those programs, an individual who has been convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds, or has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(ii) Contract with an institution or third-party servicer that has been terminated under section 432 of the HEA for a reason involving the acquisition, use, or expenditure of Federal, State, or local government funds, or that has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds; or

(iii) Contract with or employ any individual, agency, or organization that has been, or whose officers or employees have been--

(A) Convicted of, or pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds; or

(B) Administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(19) It will complete, in a timely manner and to the satisfaction of the Secretary, surveys conducted

as a part of the Integrated Postsecondary Education Data System (IPEDS) or any other Federal collection effort, as designated by the Secretary, regarding data on postsecondary institutions;

(20) In the case of an institution that is co-educational and has an intercollegiate athletic program, it will comply with the provisions of 34 C.F.R. § 668.48;

(21) It will not impose any penalty, including, but not limited to, the assessment of late fees, the denial of access to classes, libraries, or other institutional facilities, or the requirement that the student borrow additional funds for which interest or other charges are assessed, on any student because of the student's inability to meet his or her financial obligations to the institution as a result of the delayed disbursement of the proceeds of a Title IV, HEA program loan due to compliance with statutory and regulatory requirements of or applicable to the Title IV, HEA programs, or delays attributable to the institution;

(22) (i) It will not provide any commission, bonus, or other incentive payment based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid, to any person or entity who is engaged in any student recruitment or admission activity, or in making decisions regarding the award of Title IV, HEA program funds.

(A) The restrictions in paragraph (b)(22) of this section do not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal student assistance.

(B) For the purpose of paragraph (b)(22) of this section, an employee who receives multiple adjustments to compensation in a calendar year and is engaged in any student enrollment or admission activity or in making decisions regarding the award of Title IV, HEA program funds is considered to have received such adjustments based upon success in securing enrollments or the award of financial aid if those adjustments create compensation that is based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid.

(ii) Notwithstanding paragraph (b)(22)(i) of this section, eligible institutions, organizations that are contractors to eligible institutions, and other entities may make--

(A) Merit-based adjustments to employee compensation provided that such adjustments are not based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid; and

(B) Profit-sharing payments so long as such payments are not provided to any person or entity engaged in student recruitment or admission activity or in making decisions regarding the award of Title IV, HEA program funds.

(iii) As used in paragraph (b)(22) of this section,

(A) *Commission, bonus, or other incentive payment* means a sum of money or something of value, other than a fixed salary or wages, paid to or given to a person or an entity for services rendered.

(B) *Securing enrollments or the award of financial aid* means activities that a person or entity engages in at any point in time through completion of an educational program for the purpose of the admission or matriculation of students for any period of time or the award of financial aid to students.

(1) These activities include contact in any form with a prospective student, such as, but not limited to--contact through preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution, attendance at such an appointment, or involvement in a prospective student's signing of an enrollment agreement or financial aid application.

(2) These activities do not include making a payment to a third party for the provision of student contact information for prospective students provided that such payment is not based on--

(i) Any additional conduct or action by the third party or the prospective students, such as participation in preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution or attendance at such an appointment, or the signing, or being involved in the signing, of a prospective student's enrollment agreement or financial aid application; or

(ii) The number of students (calculated at any point in time of an educational program) who apply

for enrollment, are awarded financial aid, or are enrolled for any period of time, including through completion of an educational program.

(C) *Entity or person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid* means--

(1) With respect to an entity engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any institution or organization that undertakes the recruiting or the admitting of students or that makes decisions about and awards Title IV, HEA program funds; and

(2) With respect to a person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any employee who undertakes recruiting or admitting of students or who makes decisions about and awards Title IV, HEA program funds, and any higher level employee with responsibility for recruitment or admission of students, or making decisions about awarding Title IV, HEA program funds.

(D) *Enrollment* means the admission or matriculation of a student into an eligible institution.

(23) It will meet the requirements established pursuant to Part H of Title IV of the HEA by the Secretary and nationally recognized accrediting agencies;

(24) It will comply with the requirements of 34 C.F.R. § 668.22;

(25) It is liable for all--

(i) Improperly spent or unspent funds received under the Title IV, HEA programs, including any funds administered by a third-party servicer; and

(ii) Returns of Title IV, HEA program funds that the institution or its servicer may be required to make;

(26) If an educational program offered by the institution is required to prepare a student for gainful employment in a recognized occupation, the institution must--

(i) Demonstrate a reasonable relationship between the length of the program and entry level requirements for the recognized occupation for which the program prepares the student. The Secretary considers the relationship to be reasonable if the number of clock hours provided in the program does not exceed by more than 50 percent the minimum number of clock hours required for training in the recognized occupation for which the program prepares the student, as established by the State in which the institution is located, if the State has established such a requirement, or as established by any Federal agency;

(ii) Establish the need for the training for the student to obtain employment in the recognized occupation for which the program prepares the student; and

(iii) Provide for that program the certification required in 34 C.F.R. § 668.414.

(27) In the case of an institution participating in a Title IV, HEA loan program, the institution --

(i) Will develop, publish, administer, and enforce a code of conduct with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs in accordance with 34 C.F.R. § 601.21; and

(ii) Must inform its officers, employees, and agents with responsibilities with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs annually of the provisions of the code required under paragraph (b)(27) of this section;

(28) For any year in which the institution has a preferred lender arrangement (as defined in 34 C.F.R. § 601.2(b)), it will at least annually compile, maintain, and make available for students attending the institution, and the families of such students, a list in print or other medium, of the specific lenders for loans made, insured, or guaranteed under Title IV, of the HEA or private education loans that the institution recommends, promotes, or endorses in accordance with such preferred lender arrangement. In making such a list, the institution must comply with the requirements in 34 C.F.R. § 682.212(h) and 34 C.F.R. § 601.10;

(29) (i) It will, upon the request of an enrolled or admitted student who is an applicant for a private education loan (as defined in 34 C.F.R. § 601.2(b)), provide to the applicant the self-certification

form required under 34 C.F.R. § 601.11(d) and the information required to complete the form, to the extent the institution possesses such information, including --

(A) The applicant's cost of attendance at the institution, as determined by the institution under Part F of Title IV, of the HEA;

(B) The applicant's estimated financial assistance, including amounts of financial assistance used to replace the expected family contribution as determined by the institution in accordance with Title IV, for students who have completed the Free Application for Federal Student Aid; and

(C) The difference between the amounts under paragraphs (b)(29)(i)(A) and (29)(i)(B) of this section, as applicable.

(ii) It will, upon the request of the applicant, discuss with the applicant the availability of Federal, State, and institutional student financial aid;

(30) The institution --

(i) Has developed and implemented written plans to effectively combat the unauthorized distribution of copyrighted material by users of the institution's network, without unduly interfering with educational and research use of the network, that include --

(A) The use of one or more technology-based deterrents;

(B) Mechanisms for educating and informing its community about appropriate versus inappropriate use of copyrighted material, including that described in 34 C.F.R. § 668.43(a)(10);

(C) Procedures for handling unauthorized distribution of copyrighted material, including disciplinary procedures; and

(D) Procedures for periodically reviewing the effectiveness of the plans to combat the unauthorized distribution of copyrighted materials by users of the institution's network using relevant assessment criteria. No particular technology measures are favored or required for inclusion in an institution's plans, and each institution retains the authority to determine what its particular plans for compliance with paragraph (b)(30) of this section will be, including those that prohibit content monitoring; and

(ii) Will, in consultation with the chief technology officer or other designated officer of the institution--

(A) Periodically review the legal alternatives for downloading or otherwise acquiring copyrighted material;

(B) Make available the results of the review in paragraph (b)(30)(ii)(A) of this section to its students through a Web site or other means; and

(C) To the extent practicable, offer legal alternatives for downloading or otherwise acquiring copyrighted material, as determined by the institution; and

(31) The institution will submit a teach-out plan to its accrediting agency in compliance with 34 C.F.R. § 602.24(c), and the standards of the institution's accrediting agency upon the occurrence of any of the following events:

(i) The Secretary initiates the limitation, suspension, or termination of the participation of an institution in any Title IV, HEA program under 34 C.F.R. § 600.41 or Subpart G of this part or initiates an emergency action under 34 C.F.R. § 668.83.

(ii) The institution's accrediting agency acts to withdraw, terminate, or suspend the accreditation or preaccreditation of the institution.

(iii) The institution's State licensing or authorizing agency revokes the institution's license or legal authorization to provide an educational program.

(iv) The institution intends to close a location that provides 100 percent of at least one program.

(v) The institution otherwise intends to cease operations; and

(32) The institution will provide all enrolled students with a closed school discharge application and a written disclosure, describing the benefits and consequences of a closed school discharge as an alternative to completing their educational program through a teach-out agreement, as defined in 34

5/8/2020     PPA. OPE ID: 02110800. PPA Expiration Date: 03/31/2021

C.F.R. § 602.3, immediately upon submitting a teach-out plan after the occurrence of any of the following events:

(i) The initiation by the Secretary of an action under 34 C.F.R. § 600.41 or Subpart G of this part or the initiation of an emergency action under 34 C.F.R. § 668.83, to terminate the participation of an institution in any Title IV, HEA program.

(ii) The occurrence of any of the events in paragraph (b)(31)(ii) through (v) of this section.

(c) In order to participate in any Title IV, HEA program (other than the LEAP and NEISP programs), the institution must certify that it--

(1) Has in operation a drug abuse prevention program that the institution has determined to be accessible to any officer, employee, or student at the institution; and

(2) (i) Has established a campus security policy in accordance with section 485(f) of the HEA; and

(ii) Has complied with the disclosure requirements of 34 C.F.R. § 668.47 as required by section 485(f) of the HEA.

(d) (1) The institution, if located in a State to which section 4(b) of the National Voter Registration Act (42 U.S.C. 1973gg-2(b)) does not apply, will make a good faith effort to distribute a mail voter registration form, requested and received from the State, to each student enrolled in a degree or certificate program and physically in attendance at the institution, and to make those forms widely available to students at the institution.

(2) The institution must request the forms from the State 120 days prior to the deadline for registering to vote within the State. If an institution has not received a sufficient quantity of forms to fulfill this section from the State within 60 days prior to the deadline for registering to vote in the State, the institution is not liable for not meeting the requirements of this section during that election year.

(3) This paragraph applies to elections as defined in Section 301(1) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(1)), and includes the election for Governor or other chief executive within such State.

(e) (1) A program participation agreement becomes effective on the date that the Secretary signs the agreement.

(2) A new program participation agreement supersedes any prior program participation agreement between the Secretary and the institution.

(f) (1) Except as provided in paragraphs (g) and (h) of this section, the Secretary terminates a program participation agreement through the proceedings in Subpart G of this part.

(2) An institution may terminate a program participation agreement.

(3) If the Secretary or the institution terminates a program participation agreement under paragraph (f) of this section, the Secretary establishes the termination date.

(g) An institution's program participation agreement automatically expires on the date that--

(1) The institution changes ownership that results in a change in control as determined by the Secretary under 34 C.F.R. Part 600; or

(2) The institution's participation ends under the provisions of 34 C.F.R. § 668.26(a)(1), (2), (4), or (7).

(h) An institution's program participation agreement no longer applies to or covers a location of the institution as of the date on which that location ceases to be a part of the participating institution.

## WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM

If an institution participates in the William D. Ford Federal Direct Loan (Direct Loan) Program, the institution and its representatives shall comply with, as they become effective, the statute, guidelines, and regulations governing the Title IV, Part D, William D. Ford Federal Direct Loan Program as required by 20 U.S.C. §§ 1087a *et seq.* (Part C) and 34 C.F.R. Part 685.

The institution will:

1. Provide for the establishment and maintenance of a Direct Loan Program at the institution under which the institution will:

   Identify eligible students who seek student financial assistance in accordance with Section 484 of the HEA.

   Estimate the need of students as required under Title IV, Part F of the HEA.

   Provide a certification statement of eligibility for students to receive loans that will not exceed the annual or aggregate limits, except the institution may exercise its authority, under exceptional circumstances identified by the Secretary, to refuse to certify a statement that permits a student to receive a loan, or certify a loan amount that is less than the student's determination of need, if the reason for such action is documented and provided in written form to a student.

   Establish a schedule for disbursement of loan proceeds to meet the requirements of Section 428G of the HEA.

   Provide timely and accurate information to the Secretary concerning 1) the status of borrowers while students are in attendance, 2) any new information pertaining to the status of student borrowers of which the institution becomes aware after the student leaves the institution, and 3) the utilization of Federal funds under Title IV, Part D of the HEA at such times and in such manner as prescribed by the Secretary.

2. Comply with requirements established by the Secretary relating to student loan information with respect to the Direct Loan Program.

3. Provide that students at the institution and their parents (with respect to such students) will be eligible to participate in the programs under Title IV, Part B of the HEA, Federal Family Education Loan programs, at the discretion of the Secretary for the period during which such institution participates in the Direct Loan Program, except that a student or parent may not receive loans under both Title IV, Part B and Part D of the HEA for the same period of enrollment.

4. Implement a quality assurance system, as established by the Secretary and developed in consultation with institutions of higher education, to ensure that the institution is complying with program requirements and meeting program objectives.

5. Not charge any fees of any kind, regardless of how they are described, to student or parent borrowers for loan application, or origination activities (if applicable), or the provision and processing of any information necessary for a student or parent to receive a loan under Title IV, Part D of the HEA.

6. Originate loans to eligible students and parents in accordance with the requirements of Title IV, Part D of the HEA and use funds advanced to it solely for that purpose.

7. Provide that the note or evidence of obligation of the loan shall be the property of the Secretary.

5/8/2020                          PPA OPE ID: 02110800, PPA Expiration Date: 03/31/2021

8. Comply with the provisions regarding student claims and disputes of 34 C.F.R. § 685.300(d) (borrower defense claims in an internal dispute process), (e) (class action bans), (f) (predispute arbitration agreements), (g) (submission of arbitral records), (h) (submission of judicial records), and (i) (definitions).

9. Comply with other provisions as the Secretary determines are necessary to protect the interest of the United States and to promote the purposes of Title IV, Part D of the HEA.

10. Accept responsibility and financial liability stemming from its failure to perform its functions under this Program Participation Agreement.

## CERTIFICATIONS REQUIRED FROM INSTITUTIONS

The Institution should refer to the regulations cited below. Signature on this Agreement provides for compliance with, as they become effective, the certification requirements under 34 C.F.R. Part 82, "New Restrictions on Lobbying," 34 C.F.R. Part 84, "Governmentwide Requirements for Drug-Free Workplace (Financial Assistance)," 2 C.F.R. Part 180, Subpart C, "OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)," 2 C.F.R. Part 3485, "Nonprocurement Debarment and Suspension," and 34 C.F.R. Part 86, "Drug and Alcohol Abuse Prevention." Breach of any of these certifications constitutes a breach of this Agreement.

## PART 1 CERTIFICATION REGARDING LOBBYING; DRUG-FREE WORKPLACE; DEBARMENT, SUSPENSION AND OTHER RESPONSIBILITY MATTERS; AND DRUG AND ALCOHOL ABUSE PREVENTION

### 1. Lobbying

As required by Section 1352, Title 31 of the U.S. Code, and implemented at 34 C.F.R. Part 82, for persons entering into a Federal contract, grant or cooperative agreement over $100,000, as defined at 34 C.F.R. Part 82, §§ 82.105 and 82.110, the undersigned certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan or cooperative agreement, the undersigned shall complete and submit Standard Form - LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Institution shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants and contracts under grants, loans and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

## 2a. Drug-Free Workplace (Grantees Other Than Individuals)

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart B, for grantees, as defined at 34 C.F.R. Part 84, §§ 84.200 through 84.230 -

The Institution certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a drug-free workplace statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about-

    (1) The dangers of drug abuse in the workplace;

    (2) The Institution's policy of maintaining a drug-free workplace;

    (3) Any available drug counseling, rehabilitation, and employee assistance programs; and

    (4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a);

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will -

    (1) Abide by the terms of the statement, and

    (2) Notify the employer in writing if he or she is convicted for a violation of a criminal drug statute occurring in the workplace no more than five calendar days after such conviction;

(e) Notifying the agency, in writing, within 10 calendar days after receiving notice under this subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant;

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted -

    (1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1972, as amended; or

    (2) Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

## 2b. Drug-Free Workplace (Grantees Who Are Individuals)

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart C, for recipients who are individuals, as defined at 34 C.F.R. Part 84, § 84.300 -

1. As a condition of the grant, the Institution certifies that it will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity related to the award; and

2. If any officer or owner of the Institution is convicted of a criminal drug offense resulting from a violation occurring during the conduct of any award activity, the Institution will report the conviction, in writing, within 10 calendar days of the conviction, to: Director, Grants and

Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant.

### 3. Debarment, Suspension, and Other Responsibility Matters

As required by Executive Order 12549, Debarment and Suspension, and implemented at 2 C.F.R. Part 180, for prospective participants in primary covered transactions as defined at 2 C.F.R. Part 180, §§ 180.200 and 180.210, the Institution certifies that it and its principals (per 2 C.F.R. § 180.335):

(a) Are not presently debarred, suspended, proposed for debarment, voluntarily excluded, or disqualified;

(b) Have not within a three-year period preceding this application been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; violation of Federal or State antitrust statutes, including those proscribing price fixing between competitors, allocation of customers between competitors, and bid rigging; commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, receiving stolen property, making false claims, or obstruction of justice; or commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects their present responsibility;

(c) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and

(d) Have not within a three-year period preceding this application had one or more public transactions (Federal, State, or local) terminated for cause or default.

### 4. Drug and Alcohol Abuse Prevention

As required by the Drug-Free Schools and Communities Act Amendments of 1989, which added section 1213 to the Higher Education Act, and implemented at 34 C.F.R. Part 86, the undersigned Institution certifies that it has adopted and implemented a drug prevention program for its students and employees that, at a minimum, includes--

1. The annual distribution in writing to each employee, and to each student who is taking one or more classes for any kind of academic credit except for continuing education units, regardless of the length of the student's program of study, of:

   - Standards of conduct that clearly prohibit, at a minimum, the unlawful possession, use, or distribution of illicit drugs and alcohol by students and employees on its property or as part of any of its activities.
   - A description of the applicable legal sanctions under local, State or Federal law for the unlawful possession or distribution of illicit drugs and alcohol.
   - A description of the health risks associated with the use of illicit drugs and the abuse of alcohol.
   - A description of any drug or alcohol counseling, treatment, or rehabilitation or re-entry programs that are available to employees or students.
   - A clear statement that the Institution will impose disciplinary sanctions on students and employees (consistent with local, State and Federal law), and a description of those sanctions, up to and including expulsion or termination of employment and referral for prosecution, for violation of the standards of conduct. A disciplinary sanction may include the completion of an appropriate rehabilitation program.

**A241**

2. A biennial review by the Institution of its program to:

- Determine its effectiveness and implement changes to the program if they are needed.
- Ensure that its disciplinary sanctions are consistently enforced.

## PART 2 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, DISQUALIFICATION, AND VOLUNTARY EXCLUSION -- LOWER TIER COVERED TRANSACTIONS

**The Institution is to obtain the signatures of Lower Tier Contractors on reproduced copies of the certification below, and retain the signed certification(s) in the Institution's files.**

| CERTIFICATION BY LOWER TIER CONTRACTOR |
|---|
| (Before Completing Certification, Read Instructions for This Part, below) |

(1) The prospective lower tier participant certifies by submission of this proposal, that neither it nor its principals are presently debarred, suspended, proposed for debarment, voluntarily excluded, or disqualified from participation in this transaction by any Federal Department or Agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

| | |
|---|---|
| Name of Lower Tier Organization | PR/Award Number or Project Name |
| Name of Authorized Representative | Title of Authorized Representative |
| Signature of Authorized Representative | Date |

1. By signing and submitting this proposal, the prospective lower tier participant is providing the certification set out below.

2. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

3. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

4. The terms "covered transaction," "debarred," "suspended," "disqualified," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549. You may contact the person to whom this proposal is submitted for assistance in obtaining a copy of those regulations.

5. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

6. The prospective lower tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Disqualification, and

Voluntary Exclusion--Lower Tier Covered Transactions," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, disqualified, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

9. Except for transactions authorized under paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, disqualified, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

**NOTE:** A completed copy of the "Certification Regarding Debarment, Suspension, Disqualification and Voluntary Exclusion--Lower Tier Covered Transactions" form must be retained by the Institution. The original blank certification must be returned with the PPA.

## IN WITNESS WHEREOF

the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Signature of Institution's
Chief Executive Officer: _____          Date: 5.7.2020

Print Name and Title:   ERIC S. JUHLIN

                        CHIEF EXECUTIVE OFFICER


For the Secretary:      _____          Date: 5/29/2020
U.S. Department of Education

5/8/2020                    PPA, OPE ID: 03120300, PPA Expiration Date: 03/31/2021



FEDERAL STUDENT AID    START HERE. GO FURTHER.

## UNITED STATES DEPARTMENT OF EDUCATION

### FEDERAL STUDENT AID
### SCHOOL ELIGIBILITY SERVICE GROUP

# PROGRAM PARTICIPATION AGREEMENT
## [PROVISIONAL APPROVAL]

Effective Date of Approval: The date on which this Agreement is signed on behalf of the Secretary of Education

Approval Expiration Date: **March 31, 2021**

Reapplication Date: **December 31, 2020**

Name of Institution: **CollegeAmerica - Flagstaff**

Address of Institution: **399 South Malpais
2nd Floor
Flagstaff, AZ 86001-3936**

OPE ID Number: **03120300**

DUNS Number: **148984107**

Taxpayer Identification Number (TIN): **208091013**

> **The execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.**

The postsecondary educational institution listed above, referred to hereafter as the "Institution," and the United States Secretary of Education, referred to hereafter as the "Secretary," agree that the Institution may participate in those student financial assistance programs authorized by Title IV of the Higher Education Act of 1965, as amended (Title IV, HEA Programs) indicated under this Agreement and further agrees that such participation is subject to the Institution's compliance with the terms and conditions set forth in this Agreement. As used in this Agreement, the term "Department" refers to the U.S. Department of Education.

### SCOPE OF COVERAGE

This Agreement applies to all locations of the Institution as stated on the most current

ELIGIBILITY AND CERTIFICATION APPROVAL REPORT issued by the Department. This Agreement covers the Institution's eligibility to participate in each of the following listed Title IV, HEA programs, and incorporates by reference the regulations cited.

- **FEDERAL PELL GRANT PROGRAM,** 20 U.S.C. §§ 1070a et seq.; 34 C.F.R. Part 690.

- **FEDERAL FAMILY EDUCATION LOAN PROGRAM,** 20 U.S.C. §§ 1071 et seq.; 34 C.F.R. Part 682.

- **FEDERAL DIRECT STUDENT LOAN PROGRAM,** 20 U.S.C. §§ 1087a et seq.; 34 C.F.R. Part 685.

- **FEDERAL PERKINS LOAN PROGRAM,** 20 U.S.C. §§ 1087aa et seq.; 34 C.F.R. Part 674.

- **FEDERAL SUPPLEMENTAL EDUCATIONAL OPPORTUNITY GRANT PROGRAM,** 20 U.S.C. §§ 1070b et seq.; 34 C.F.R. Part 676.

- **IRAQ AND AFGHANISTAN SERVICE GRANT,** 20 U.S.C. §§ 1070h et seq.

## PROVISIONAL CERTIFICATION

This provisional certification is granted for a limited period to permit the Institution to participate in the Title IV, HEA programs referenced in this Agreement. During the period of provisional certification, the participation of the Institution will be subject to revocation for cause. Cause for revocation may include, but is not limited to, a failure to comply with any provision set forth in this Agreement, a violation of Department regulations deemed material by the Department, or a material misrepresentation in the material submitted to the Department as part of the Institution's application process for this certification. In the event the Department chooses to revoke this Agreement and the Institution's participation in the Title IV, HEA programs, the Institution will have the right to show cause why this Agreement should not be revoked by presenting its objections in writing to the designated Department reconsideration official. The Institution agrees that this opportunity to show cause by a request for reconsideration of the Department's revocation decision, and not the procedures in 34 C.F.R. Part 668, Subpart G, shall be the sole administrative appeal regarding such revocation. The decision by the designated Department reconsideration official will constitute the final agency action.

**Special Requirements for Substantial Changes Made During Term of Provisional Certification**

Any institution provisionally certified must apply for and receive approval by the Secretary for expansion or of any substantial change (as hereinafter identified) before it may award, disburse or distribute Title IV, HEA funds based on the substantial change. Substantial changes generally include, but are not limited to: (a) establishment of an additional location; (b) increase in the level of academic offering beyond those listed in the Institution's Eligibility and Certification Approval Report (ECAR); or (c) addition of any educational program (including degree, nondegree, or short-term training programs).

If the Institution applies for the Secretary's approval of a substantial change, the Institution must demonstrate that it has the financial and administrative resources necessary to assure the Institution's continued compliance with the standards of financial responsibility (34 C.F.R. § 668.15 and 34 C.F.R. Part 668, Subpart L) and administrative capability (34 C.F.R. § 668.16).

## Reasons and Special Conditions of Provisional Certification

*New Degree Program at Public or Private Non-Profit*

In addition to the expansions and substantial changes identified above under Special Requirements for Substantial Changes Made During Term of Provisional Certification, as a provisionally certified public or private non-profit institution, the institution must also apply for and receive approval by the Secretary for the addition of any degree programs.

*Funding Arrangement Other Than Advance, and Surety For Not Less Than 10% of Title IV, HEA Funds*

The institution does not meet the standards of financial responsibility as set forth in 34 CFR §668.171. Pursuant to 34 CFR §668.175(f) and as a condition of entering into the Program Participation Agreement (PPA) under Provisional Certification, the institution agrees (a) to participate in the Title IV, HEA programs without recourse to the Department's standard advance funding arrangement, and (b) to maintain an escrow account with the Department for $16,234,899 for the school group. The escrow account is based on a minimum amount of at least 10% of the Title IV, HEA program funds received by the institution during the last complete fiscal year for which figures are available or for the projected fiscal year during which the escrow account will be in place.

*Application for Recertification*

Upon completion of the period of provisional certification, if the Institution wishes to apply for recertification to participate in the Title IV, HEA programs, the Institution must submit a completed Application for Approval to Participate in Federal Student Financial Aid Programs, together with all required supporting documentation, no later than December 31, 2020.

*Grant or Denial of Full Certification*

Notwithstanding any paragraph above, the provisional certification ends upon the Department's notification to the Institution of the Department's decision to grant or deny a six year certification to participate in the Title IV, HEA programs.

# GENERAL TERMS AND CONDITIONS

1. The Institution understands and agrees that it is subject to and will comply with, as they become effective, the program statutes and implementing regulations for institutional eligibility as set forth in 34 C.F.R. Part 600 and for each Title IV, HEA program in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA, and the Student Assistance General Provisions regulations set forth in 34 C.F.R. Part 668. *The recitation of any portion of the statute or regulations in this Agreement does not limit the Institution's obligation to comply with other applicable statutes and regulations.*

2.    a. The Institution certifies that on the date it signs this Agreement, it has adopted and implemented the drug prevention program described in 34 C.F.R. § 86.100.
      b. The Institution certifies that on the date it signs this Agreement, it is in compliance with the disclosure requirements of Section 485(f) of the HEA (Campus Security Policy and Campus Crime Statistics).

3. The Institution agrees to comply with --
      a. Title VI of the Civil Rights Act of 1964, as amended, and the implementing regulations, 34

C.F.R. Parts 100 and 101 (nondiscrimination on the basis of race, color or national origin);

b. Title IX of the Education Amendments of 1972 and the implementing regulations, 34 C.F.R. Part 106 (nondiscrimination on the basis of sex);

c. The Family Educational Rights and Privacy Act of 1974 and the implementing regulations, 34 C.F.R. Part 99;

d. Section 504 of the Rehabilitation Act of 1973 and the implementing regulations, 34 C.F.R. Part 104 (nondiscrimination on the basis of disability); and

e. The Age Discrimination Act of 1975 and the implementing regulations, 34 C.F.R. Part 110.

f. The Standards for Safeguarding Customer Information, 16 C.F.R. Part 314, issued by the Federal Trade Commission (FTC), as required by the Gramm-Leach-Bliley (GLB) Act, P.L. 106-102. These Standards are intended to ensure the security and confidentiality of customer records and information. The Secretary considers any breach to the security of student records and information as a demonstration of a potential lack of administrative capability as stated in 34 C.F.R. § 668.16(c). Institutions are strongly encouraged to inform its students of any such breaches. Institutions are required, pursuant to the Student Aid Internet Gateway (SAIG) Agreement, to notify the Department of any suspected data breaches.

4. The Institution acknowledges that 34 C.F.R. Parts 602 and 668 require accrediting agencies, State regulatory bodies, and the Secretary to share information about institutions. The Institution agrees that the Secretary, any accrediting agency recognized by the Secretary, and any State regulatory body may share or report information to one another about the Institution without limitation.

5. The Institution acknowledges that the HEA prohibits the Secretary from recognizing the accreditation of any institution of higher education unless that institution agrees to submit any dispute involving the final denial, withdrawal, or termination of accreditation to initial arbitration prior to any other legal action.

6. The Institution acknowledges that the Department is obligated to take appropriate measures in order to safeguard its systems and information as well as borrowers' personally identifiable information (PII) as required under Federal law, including but not limited to the requirements in the Privacy Act (*see* 5 U.S.C. § 552a(e)), E-Government Act of 2002 (*see* 44 U.S.C. § 3544), the Family Educational Rights and Privacy Act of 1974 (FERPA) (20 U.S.C. § 1232g; 34 C.F.R. Part 99), Federal Information Security Modernization Act (FISMA) of 2014 (44 U.S.C. § 3551, *et seq.*), and OMB Circular No. A-130. If the Institution has a cyber security incident that may negatively affect the Department's systems, the Department may terminate the Institution's access to the Department's systems. Access will be reconnected when the Department determines that the Institution has resolved any cyber security concerns and vulnerabilities to the Department's satisfaction.

7. The Institution acknowledges that any person who knowingly and willfully commits, or attempts to commit, any criminal action described in 20 U.S.C. § 1097, shall be subject to the penalties described therein.

## SELECTED PROVISIONS FROM
## GENERAL PROVISIONS REGULATIONS, 34 C.F.R. § 668.14

An institution's program participation agreement applies to each branch campus and other location of the institution that meets the applicable requirements of this part unless otherwise specified by the Secretary.

(b) By entering into a program participation agreement, an institution agrees that--

(1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable

regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in and in accordance with that program;

(2) As a fiduciary responsible for administering Federal funds, if the institution is permitted to request funds under a Title IV, HEA program advance payment method, the institution will time its requests for funds under the program to meet the institution's immediate Title IV, HEA program needs;

(3) It will not request from or charge any student a fee for processing or handling any application, form, or data required to determine a student's eligibility for, and amount of, Title IV, HEA program assistance;

(4) It will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV, HEA programs, together with assurances that the institution will provide, upon request and in a timely manner, information relating to the administrative capability and financial responsibility of the institution to--

(i) The Secretary;

(ii) A guaranty agency, as defined in 34 C.F.R. Part 682, that guarantees loans made under the Federal Stafford Loan and Federal PLUS programs for attendance at the institution or any of the institution's branch campuses or other locations;

(iii) The nationally recognized accrediting agency that accredits or preaccredits the institution or any of the institution's branch campuses, other locations, or educational programs;

(iv) The State agency that legally authorizes the institution and any branch campus or other location of the institution to provide postsecondary education; and

(v) In the case of a public postsecondary vocational educational institution that is approved by a State agency recognized for the approval of public postsecondary vocational education, that State agency;

(5) It will comply with the provisions of 34 C.F.R. § 668.15 relating to factors of financial responsibility;

(6) It will comply with the provisions of 34 C.F.R. § 668.16 relating to standards of administrative capability;

(7) It will submit reports to the Secretary and, in the case of an institution participating in the Federal Stafford Loan, Federal PLUS, or the Federal Perkins Loan Program, to holders of loans made to the institution's students under that program at such times and containing such information as the Secretary may reasonably require to carry out the purpose of the Title IV, HEA programs;

(8) It will not provide any statement to any student or certification to any lender in the case of an FFEL Program loan, or origination record to the Secretary in the case of a Direct Loan Program loan that qualifies the student or parent for a loan or loans in excess of the amount that the student or parent is eligible to borrow in accordance with sections 425(a), 428(a)(2), 428(b)(1)(A) and (B), 428B, 428H and 455(a) of the HEA;

(9) It will comply with the requirements of Subpart D of this part concerning institutional and financial assistance information for students and prospective students;

(10) In the case of an institution that advertises job placement rates as a means of attracting students to enroll in the institution, it will make available to prospective students, at or before the time that those students apply for enrollment--

(i) The most recent available data concerning employment statistics, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements; and

(ii) Relevant State licensing requirements of the State in which the institution is located for any job for which an educational program offered by the institution is designed to prepare those prospective

students;

(11) In the case of an institution participating in the FFEL Program, the institution will inform all eligible borrowers, as defined in 34 C.F.R. Part 682, enrolled in the institution about the availability and eligibility of those borrowers for State grant assistance from the State in which the institution is located, and will inform borrowers from another State of the source of further information concerning State grant assistance from that State;

(12) It will provide the certifications described in paragraph (c) of this section;

(13) In the case of an institution whose students receive financial assistance pursuant to section 484(d) of the HEA, the institution will make available to those students a program proven successful in assisting students in obtaining the recognized equivalent of a high school diploma;

(14) It will not deny any form of Federal financial aid to any eligible student solely on the grounds that the student is participating in a program of study abroad approved for credit by the institution;

(15) (i) Except as provided under paragraph (b)(15)(ii) of this section, the institution will use a default management plan approved by the Secretary with regard to its administration of the FFEL or Direct Loan programs, or both for at least the first two years of its participation in those programs, if the institution --

(A) Is participating in the FFEL or Direct Loan programs for the first time; or

(B) Is an institution that has undergone a change of ownership that results in a change in control and is participating in the FFEL or Direct Loan programs.

(ii) The institution does not have to use an approved default management plan if --

(A) The institution, including its main campus and any branch campus, does not have a cohort default rate in excess of 10 percent; and

(B) The owner of the institution does not own and has not owned any other institution that had a cohort default rate in excess of 10 percent while that owner owned the institution.

(16) For a proprietary institution, the institution will derive at least 10 percent of its revenues for each fiscal year from sources other than Title IV, HEA program funds, as provided in 34 C.F.R. § 668.28(a) and (b), or be subject to sanctions described in 34 C.F.R. § 668.28(c);

(17) The Secretary, guaranty agencies and lenders as defined in 34 C.F.R. Part 682, nationally recognized accrediting agencies, the Secretary of Veterans Affairs, State agencies recognized under 34 C.F.R. Part 603 for the approval of public postsecondary vocational education, and State agencies that legally authorize institutions and branch campuses or other locations of institutions to provide postsecondary education, have the authority to share with each other any information pertaining to the institution's eligibility for or participation in the Title IV, HEA programs or any information on fraud and abuse;

(18) It will not knowingly --

(i) Employ in a capacity that involves the administration of the Title IV, HEA programs or the receipt of funds under those programs, an individual who has been convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds, or has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(ii) Contract with an institution or third-party servicer that has been terminated under section 432 of the HEA for a reason involving the acquisition, use, or expenditure of Federal, State, or local government funds, or that has been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds; or

(iii) Contract with or employ any individual, agency, or organization that has been, or whose officers or employees have been--

(A) Convicted of, or pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds; or

(B) Administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(19) It will complete, in a timely manner and to the satisfaction of the Secretary, surveys conducted as a part of the Integrated Postsecondary Education Data System (IPEDS) or any other Federal collection effort, as designated by the Secretary, regarding data on postsecondary institutions;

(20) In the case of an institution that is co-educational and has an intercollegiate athletic program, it will comply with the provisions of 34 C.F.R. § 668.48;

(21) It will not impose any penalty, including, but not limited to, the assessment of late fees, the denial of access to classes, libraries, or other institutional facilities, or the requirement that the student borrow additional funds for which interest or other charges are assessed, on any student because of the student's inability to meet his or her financial obligations to the institution as a result of the delayed disbursement of the proceeds of a Title IV, HEA program loan due to compliance with statutory and regulatory requirements of or applicable to the Title IV, HEA programs, or delays attributable to the institution;

(22) (i) It will not provide any commission, bonus, or other incentive payment based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid, to any person or entity who is engaged in any student recruitment or admission activity, or in making decisions regarding the award of Title IV, HEA program funds.

(A) The restrictions in paragraph (b)(22) of this section do not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal student assistance.

(B) For the purpose of paragraph (b)(22) of this section, an employee who receives multiple adjustments to compensation in a calendar year and is engaged in any student enrollment or admission activity or in making decisions regarding the award of Title IV, HEA program funds is considered to have received such adjustments based upon success in securing enrollments or the award of financial aid if those adjustments create compensation that is based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid.

(ii) Notwithstanding paragraph (b)(22)(i) of this section, eligible institutions, organizations that are contractors to eligible institutions, and other entities may make--

(A) Merit-based adjustments to employee compensation provided that such adjustments are not based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid; and

(B) Profit-sharing payments so long as such payments are not provided to any person or entity engaged in student recruitment or admission activity or in making decisions regarding the award of Title IV, HEA program funds.

(iii) As used in paragraph (b)(22) of this section,

(A) *Commission, bonus, or other incentive payment* means a sum of money or something of value, other than a fixed salary or wages, paid to or given to a person or an entity for services rendered.

(B) *Securing enrollments or the award of financial aid* means activities that a person or entity engages in at any point in time through completion of an educational program for the purpose of the admission or matriculation of students for any period of time or the award of financial aid to students.

(1) These activities include contact in any form with a prospective student, such as, but not limited to--contact through preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution, attendance at such an appointment, or involvement in a prospective student's signing of an enrollment agreement or financial aid application.

(2) These activities do not include making a payment to a third party for the provision of student contact information for prospective students provided that such payment is not based on--

(i) Any additional conduct or action by the third party or the prospective students, such as participation in preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution or attendance at such an appointment, or the signing, or being involved in the signing, of a prospective student's enrollment agreement or financial aid application; or

(ii) The number of students (calculated at any point in time of an educational program) who apply for enrollment, are awarded financial aid, or are enrolled for any period of time, including through completion of an educational program.

(C) *Entity or person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid* means--

(1) With respect to an entity engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any institution or organization that undertakes the recruiting or the admitting of students or that makes decisions about and awards Title IV, HEA program funds; and

(2) With respect to a person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any employee who undertakes recruiting or admitting of students or who makes decisions about and awards Title IV, HEA program funds, and any higher level employee with responsibility for recruitment or admission of students, or making decisions about awarding Title IV, HEA program funds.

(D) *Enrollment* means the admission or matriculation of a student into an eligible institution.

(23) It will meet the requirements established pursuant to Part H of Title IV of the HEA by the Secretary and nationally recognized accrediting agencies;

(24) It will comply with the requirements of 34 C.F.R. § 668.22;

(25) It is liable for all--

(i) Improperly spent or unspent funds received under the Title IV, HEA programs, including any funds administered by a third-party servicer; and

(ii) Returns of Title IV, HEA program funds that the institution or its servicer may be required to make;

(26) If an educational program offered by the institution is required to prepare a student for gainful employment in a recognized occupation, the institution must--

(i) Demonstrate a reasonable relationship between the length of the program and entry level requirements for the recognized occupation for which the program prepares the student. The Secretary considers the relationship to be reasonable if the number of clock hours provided in the program does not exceed by more than 50 percent the minimum number of clock hours required for training in the recognized occupation for which the program prepares the student, as established by the State in which the institution is located, if the State has established such a requirement, or as established by any Federal agency;

(ii) Establish the need for the training for the student to obtain employment in the recognized occupation for which the program prepares the student; and

(iii) Provide for that program the certification required in 34 C.F.R. § 668.414.

(27) In the case of an institution participating in a Title IV, HEA loan program, the institution --

(i) Will develop, publish, administer, and enforce a code of conduct with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs in accordance with 34 C.F.R. § 601.21; and

(ii) Must inform its officers, employees, and agents with responsibilities with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs annually of the provisions of the code required under paragraph (b)(27) of this section;

(28) For any year in which the institution has a preferred lender arrangement (as defined in 34 C.F.R. § 601.2(b)), it will at least annually compile, maintain, and make available for students attending the institution, and the families of such students, a list in print or other medium, of the specific lenders for loans made, insured, or guaranteed under Title IV, of the HEA or private education loans that the institution recommends, promotes, or endorses in accordance with such preferred lender arrangement. In making such a list, the institution must comply with the requirements in 34 C.F.R. § 682.212(h) and 34 C.F.R. § 601.10;

(29) (i) It will, upon the request of an enrolled or admitted student who is an applicant for a private

education loan (as defined in 34 C.F.R. § 601.2(b)), provide to the applicant the self-certification form required under 34 C.F.R. § 601.11(d) and the information required to complete the form, to the extent the institution possesses such information, including --

(A) The applicant's cost of attendance at the institution, as determined by the institution under Part F of Title IV, of the HEA;

(B) The applicant's estimated financial assistance, including amounts of financial assistance used to replace the expected family contribution as determined by the institution in accordance with Title IV, for students who have completed the Free Application for Federal Student Aid; and

(C) The difference between the amounts under paragraphs (b)(29)(i)(A) and (29)(i)(B) of this section, as applicable.

(ii) It will, upon the request of the applicant, discuss with the applicant the availability of Federal, State, and institutional student financial aid;

(30) The institution --

(i) Has developed and implemented written plans to effectively combat the unauthorized distribution of copyrighted material by users of the institution's network, without unduly interfering with educational and research use of the network, that include --

(A) The use of one or more technology-based deterrents;

(B) Mechanisms for educating and informing its community about appropriate versus inappropriate use of copyrighted material, including that described in 34 C.F.R. § 668.43(a)(10);

(C) Procedures for handling unauthorized distribution of copyrighted material, including disciplinary procedures; and

(D) Procedures for periodically reviewing the effectiveness of the plans to combat the unauthorized distribution of copyrighted materials by users of the institution's network using relevant assessment criteria. No particular technology measures are favored or required for inclusion in an institution's plans, and each institution retains the authority to determine what its particular plans for compliance with paragraph (b)(30) of this section will be, including those that prohibit content monitoring; and

(ii) Will, in consultation with the chief technology officer or other designated officer of the institution--

(A) Periodically review the legal alternatives for downloading or otherwise acquiring copyrighted material;

(B) Make available the results of the review in paragraph (b)(30)(ii)(A) of this section to its students through a Web site or other means; and

(C) To the extent practicable, offer legal alternatives for downloading or otherwise acquiring copyrighted material, as determined by the institution; and

(31) The institution will submit a teach-out plan to its accrediting agency in compliance with 34 C.F.R. § 602.24(c), and the standards of the institution's accrediting agency upon the occurrence of any of the following events:

(i) The Secretary initiates the limitation, suspension, or termination of the participation of an institution in any Title IV, HEA program under 34 C.F.R. § 600.41 or Subpart G of this part or initiates an emergency action under 34 C.F.R. § 668.83.

(ii) The institution's accrediting agency acts to withdraw, terminate, or suspend the accreditation or preaccreditation of the institution.

(iii) The institution's State licensing or authorizing agency revokes the institution's license or legal authorization to provide an educational program.

(iv) The institution intends to close a location that provides 100 percent of at least one program.

(v) The institution otherwise intends to cease operations; and

(32) The institution will provide all enrolled students with a closed school discharge application and a written disclosure, describing the benefits and consequences of a closed school discharge as an alternative to completing their educational program through a teach-out agreement, as defined in 34

C.F.R. § 602.3, immediately upon submitting a teach-out plan after the occurrence of any of the following events:

(i) The initiation by the Secretary of an action under 34 C.F.R. § 600.41 or Subpart G of this part or the initiation of an emergency action under 34 C.F.R. § 668.83, to terminate the participation of an institution in any Title IV, HEA program.

(ii) The occurrence of any of the events in paragraph (b)(31)(ii) through (v) of this section.

(c) In order to participate in any Title IV, HEA program (other than the LEAP and NEISP programs), the institution must certify that it--

(1) Has in operation a drug abuse prevention program that the institution has determined to be accessible to any officer, employee, or student at the institution; and

(2) (i) Has established a campus security policy in accordance with section 485(f) of the HEA; and

(ii) Has complied with the disclosure requirements of 34 C.F.R. § 668.47 as required by section 485(f) of the HEA.

(d) (1) The institution, if located in a State to which section 4(b) of the National Voter Registration Act (42 U.S.C. 1973gg-2(b)) does not apply, will make a good faith effort to distribute a mail voter registration form, requested and received from the State, to each student enrolled in a degree or certificate program and physically in attendance at the institution, and to make those forms widely available to students at the institution.

(2) The institution must request the forms from the State 120 days prior to the deadline for registering to vote within the State. If an institution has not received a sufficient quantity of forms to fulfill this section from the State within 60 days prior to the deadline for registering to vote in the State, the institution is not liable for not meeting the requirements of this section during that election year.

(3) This paragraph applies to elections as defined in Section 301(1) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(1)), and includes the election for Governor or other chief executive within such State.

(e) (1) A program participation agreement becomes effective on the date that the Secretary signs the agreement.

(2) A new program participation agreement supersedes any prior program participation agreement between the Secretary and the institution.

(f) (1) Except as provided in paragraphs (g) and (h) of this section, the Secretary terminates a program participation agreement through the proceedings in Subpart G of this part.

(2) An institution may terminate a program participation agreement.

(3) If the Secretary or the institution terminates a program participation agreement under paragraph (f) of this section, the Secretary establishes the termination date.

(g) An institution's program participation agreement automatically expires on the date that--

(1) The institution changes ownership that results in a change in control as determined by the Secretary under 34 C.F.R. Part 600; or

(2) The institution's participation ends under the provisions of 34 C.F.R. § 668.26(a)(1), (2), (4), or (7).

(h) An institution's program participation agreement no longer applies to or covers a location of the institution as of the date on which that location ceases to be a part of the participating institution.

## WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM

If an institution participates in the William D. Ford Federal Direct Loan (Direct Loan) Program, the institution and its representatives shall comply with, as they become effective, the statute, guidelines, and regulations governing the Title IV, Part D, William D. Ford Federal Direct Loan Program as required by 20 U.S.C. §§ 1087a *et seq.* (Part C) and 34 C.F.R. Part 685.

The institution will:

1. Provide for the establishment and maintenance of a Direct Loan Program at the institution under which the institution will:

   Identify eligible students who seek student financial assistance in accordance with Section 484 of the HEA.

   Estimate the need of students as required under Title IV, Part F of the HEA.

   Provide a certification statement of eligibility for students to receive loans that will not exceed the annual or aggregate limits, except the institution may exercise its authority, under exceptional circumstances identified by the Secretary, to refuse to certify a statement that permits a student to receive a loan, or certify a loan amount that is less than the student's determination of need, if the reason for such action is documented and provided in written form to a student.

   Establish a schedule for disbursement of loan proceeds to meet the requirements of Section 428G of the HEA.

   Provide timely and accurate information to the Secretary concerning 1) the status of borrowers while students are in attendance, 2) any new information pertaining to the status of student borrowers of which the institution becomes aware after the student leaves the institution, and 3) the utilization of Federal funds under Title IV, Part D of the HEA at such times and in such manner as prescribed by the Secretary.

2. Comply with requirements established by the Secretary relating to student loan information with respect to the Direct Loan Program.

3. Provide that students at the institution and their parents (with respect to such students) will be eligible to participate in the programs under Title IV, Part B of the HEA, Federal Family Education Loan programs, at the discretion of the Secretary for the period during which such institution participates in the Direct Loan Program, except that a student or parent may not receive loans under both Title IV, Part B and Part D of the HEA for the same period of enrollment.

4. Implement a quality assurance system, as established by the Secretary and developed in consultation with institutions of higher education, to ensure that the institution is complying with program requirements and meeting program objectives.

5. Not charge any fees of any kind, regardless of how they are described, to student or parent borrowers for loan application, or origination activities (if applicable), or the provision and processing of any information necessary for a student or parent to receive a loan under Title IV, Part D of the HEA.

6. Originate loans to eligible students and parents in accordance with the requirements of Title IV, Part D of the HEA and use funds advanced to it solely for that purpose.

7. Provide that the note or evidence of obligation of the loan shall be the property of the Secretary.

5/8/2020                    PPA OPE ID: 03120300  PPA Expiration Date: 03/31/2021

8. Comply with the provisions regarding student claims and disputes of 34 C.F.R. § 685.300(d) (borrower defense claims in an internal dispute process), (e) (class action bans), (f) (predispute arbitration agreements), (g) (submission of arbitral records), (h) (submission of judicial records), and (i) (definitions).

9. Comply with other provisions as the Secretary determines are necessary to protect the interest of the United States and to promote the purposes of Title IV, Part D of the HEA.

10. Accept responsibility and financial liability stemming from its failure to perform its functions under this Program Participation Agreement.

## CERTIFICATIONS REQUIRED FROM INSTITUTIONS

The Institution should refer to the regulations cited below. Signature on this Agreement provides for compliance with, as they become effective, the certification requirements under 34 C.F.R. Part 82, "New Restrictions on Lobbying," 34 C.F.R Part 84, "Governmentwide Requirements for Drug-Free Workplace (Financial Assistance)," 2 C.F.R. Part 180, Subpart C, "OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)," 2 C.F.R. Part 3485, "Nonprocurement Debarment and Suspension," and 34 C.F.R. Part 86, "Drug and Alcohol Abuse Prevention." Breach of any of these certifications constitutes a breach of this Agreement.

## PART 1 CERTIFICATION REGARDING LOBBYING; DRUG-FREE WORKPLACE; DEBARMENT, SUSPENSION AND OTHER RESPONSIBILITY MATTERS; AND DRUG AND ALCOHOL ABUSE PREVENTION

### *1. Lobbying*

As required by Section 1352, Title 31 of the U.S. Code, and implemented at 34 C.F.R. Part 82, for persons entering into a Federal contract, grant or cooperative agreement over $100,000, as defined at 34 C.F.R. Part 82, §§ 82.105 and 82.110, the undersigned certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan or cooperative agreement, the undersigned shall complete and submit Standard Form - LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Institution shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants and contracts under grants, loans and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

## 2a. Drug-Free Workplace (Grantees Other Than Individuals)

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart B, for grantees, as defined at 34 C.F.R. Part 84, §§ 84.200 through 84.230 -

The Institution certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a drug-free workplace statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about-

    (1) The dangers of drug abuse in the workplace;

    (2) The Institution's policy of maintaining a drug-free workplace;

    (3) Any available drug counseling, rehabilitation, and employee assistance programs; and

    (4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a);

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will -

    (1) Abide by the terms of the statement, and

    (2) Notify the employer in writing if he or she is convicted for a violation of a criminal drug statute occurring in the workplace no more than five calendar days after such conviction;

(e) Notifying the agency, in writing, within 10 calendar days after receiving notice under this subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant;

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted -

    (1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1972, as amended; or

    (2) Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

## 2b. Drug-Free Workplace (Grantees Who Are Individuals)

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart C, for recipients who are individuals, as defined at 34 C.F.R. Part 84, § 84.300 -

1. As a condition of the grant, the Institution certifies that it will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity related to the award; and

2. If any officer or owner of the Institution is convicted of a criminal drug offense resulting from a violation occurring during the conduct of any award activity, the Institution will report the conviction, in writing, within 10 calendar days of the conviction, to: Director, Grants and

Contracts Service. U.S. Department of Education. 400 Maryland Avenue. S.W.. Washington. DC 20202. Notice shall include the identification number(s) of each affected grant.

### 3. Debarment, Suspension, and Other Responsibility Matters

As required by Executive Order 12549. Debarment and Suspension. and implemented at 2 C.F.R. Part 180. for prospective participants in primary covered transactions as defined at 2 C.F.R. Part 180. §§ 180.200 and 180.210. the Institution certifies that it and its principals (per 2 C.F.R. § 180.335):

(a) Are not presently debarred. suspended. proposed for debarment. voluntarily excluded. or disqualified;

(b) Have not within a three-year period preceding this application been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; violation of Federal or State antitrust statutes. including those proscribing price fixing between competitors. allocation of customers between competitors. and bid rigging; commission of embezzlement. theft. forgery. bribery. falsification or destruction of records. making false statements. tax evasion. receiving stolen property. making false claims. or obstruction of justice; or commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects their present responsibility.

(c) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal. State. or local) with commission of any of the offenses enumerated in paragraph (b) of this certification: and

(d) Have not within a three-year period preceding this application had one or more public transactions (Federal. State. or local) terminated for cause or default.

### 4. Drug and Alcohol Abuse Prevention

As required by the Drug-Free Schools and Communities Act Amendments of 1989. which added section 1213 to the Higher Education Act. and implemented at 34 C.F.R. Part 86. the undersigned Institution certifies that it has adopted and implemented a drug prevention program for its students and employees that, at a minimum, includes--

1. The annual distribution in writing to each employee, and to each student who is taking one or more classes for any kind of academic credit except for continuing education units, regardless of the length of the student's program of study, of:

   - Standards of conduct that clearly prohibit, at a minimum. the unlawful possession. use. or distribution of illicit drugs and alcohol by students and employees on its property or as part of any of its activities.
   - A description of the applicable legal sanctions under local. State or Federal law for the unlawful possession or distribution of illicit drugs and alcohol.
   - A description of the health risks associated with the use of illicit drugs and the abuse of alcohol.
   - A description of any drug or alcohol counseling. treatment. or rehabilitation or re-entry programs that are available to employees or students.
   - A clear statement that the Institution will impose disciplinary sanctions on students and employees (consistent with local. State and Federal law). and a description of those sanctions. up to and including expulsion or termination of employment and referral for prosecution. for violation of the standards of conduct. A disciplinary sanction may include the completion of an appropriate rehabilitation program.

5/8/2020   PPA  OPE ID  03120300. PPA Expiration Date  03/31/2021

2. A biennial review by the Institution of its program to:

- Determine its effectiveness and implement changes to the program if they are needed.
- Ensure that its disciplinary sanctions are consistently enforced.

## PART 2 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, DISQUALIFICATION, AND VOLUNTARY EXCLUSION -- LOWER TIER COVERED TRANSACTIONS

**The Institution is to obtain the signatures of Lower Tier Contractors on reproduced copies of the certification below, and retain the signed certification(s) in the Institution's files.**

### CERTIFICATION BY LOWER TIER CONTRACTOR
**(Before Completing Certification, Read Instructions for This Part, below)**

(1) The prospective lower tier participant certifies by submission of this proposal, that neither it nor its principals are presently debarred, suspended, proposed for debarment, voluntarily excluded, or disqualified from participation in this transaction by any Federal Department or Agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

| | |
|---|---|
| Name of Lower Tier Organization | PR/Award Number or Project Name |
| Name of Authorized Representative | Title of Authorized Representative |
| Signature of Authorized Representative | Date |

1. By signing and submitting this proposal, the prospective lower tier participant is providing the certification set out below.

2. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

3. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

4. The terms "covered transaction," "debarred," "suspended," "disqualified," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549. You may contact the person to whom this proposal is submitted for assistance in obtaining a copy of those regulations.

5. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

6. The prospective lower tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Disqualification, and

5/8/2020                     PPA  OPE ID: 03120300  PPA Expiration Date: 03/31/2021

Voluntary Exclusion--Lower Tier Covered Transactions," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, disqualified, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

9. Except for transactions authorized under paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, disqualified, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

**NOTE:** A completed copy of the "Certification Regarding Debarment, Suspension, Disqualification and Voluntary Exclusion--Lower Tier Covered Transactions" form must be retained by the Institution. The original blank certification must be returned with the PPA.

## IN WITNESS WHEREOF

the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Signature of Institution's
Chief Executive Officer: _____    Date: 5 . 7. 2020

Print Name and Title:    ERIC  S . JUHLIN

                         CHIEF  EXECUTIVE  OFFICER

For the Secretary:       _____    Date: 5/29/2020
U.S. Department of Education

    

September 21, 2020

Mr. Andrew Lawrence
Closed School Analyst
United States Department of Education, FSA
830 First Street, NE
Washington, DC 20202-5340

**SENT VIA EMAIL TO: Andrew.lawrence@ed.gov**

**SUBJECT:    Closure of CollegeAmerica Denver (OPE ID 02594300)**

Dear Mr. Lawrence,

I am in receipt of your September 15, 2020 email (and letter) requesting information relative to the closure of CollegeAmerica Denver (Denver, CO) and its additional locations in Ft. Collins, CO and Colorado Springs, CO.

As planned, CollegeAmerica Denver and its two additional locations ceased delivering instruction as of September 13, 2020.  CollegeAmerica Denver's owner, Center for Excellence in Higher Education ("CEHE"), initially provided advance notice and communication of the planned closure to the Department, the college's accreditor (ACCSC), and the Colorado Division of Private Occupational Schools in June 2020.  And on July 23, 2020, you provided CEHE with a letter acknowledging that the Department had been notified of CollegeAmerica Denver's pending closure.

On or about June 16, 2020, CollegeAmerica Denver notified all of its active students (at the three locations) that the college would cease delivering instruction on September 13, 2020.  All active students were provided options that included, transferring to Independence University to complete their degree programs, or rejecting the transfer options and receiving a return of all Title IV federal student loan the students had received for their current enrollment at CollegeAmerica along with a refund of any monies that the student had paid for their current enrollment.  Attached as Exhibit 1 is a copy of the June 2020 Notice provided to all active CollegeAmerica Denver students.  As of *August 10, 2020*, here is the data on the options selected by CollegeAmerica students:

| CAMPUS | TOTAL POLULATION | Students Who Selected TO TRANSFER to Independence University | Students Who Selected NOT TO TRANSFER and Receive a Refund/Return of Loan Funds |
|---|---|---|---|
| Denver | 13 | 8 | 5 |
| Ft. Collins | 26 | 10 | 16 |
| C. Springs | 20 | 9 | 11 |

In your September 15, 2020 letter, you requested that CollegeAmerica Denver, "*provide a concise response to each question below*."  Attached as Exhibit 2 is CollegeAmerica Denver's response to these items.

If you require any additional information from CollegeAmerica Denver or CEHE, please don't hesitate to contact me directly.

Sincerely,

Eric Juhlin
CEHE Chairman and CEO
Eric.juhlin@collegeamerica.edu
801-622-1555 office

    

# Important Notice to Students

As you know, your college ceased accepting new students back in September 2019. While the college's plan was to finish out all students at the campus, in light of declining population, COVID-19 disruptions, uncertainty as to when ground instruction can resume, and the necessary shift to online instruction, CEHE has decided to officially close the Fort Collins, Denver, Colorado Springs, Idaho Falls, Logan, Provo, and St. George Campuses on September 13, 2020.

We understand how upsetting this decision may be. However, we want you to know that your ability to graduate is very important to us and we will do everything we can to help you complete your program, graduate, and receive your degree.  We are providing the following information and options for you to consider:

1. The official "end of instruction" date will be September 13, 2020. Any student who can finish on or before that date will be unaffected by this action.

2. CEHE will continue to provide all students with official transcripts, scheduling, and Career Services through and after the closure.

3. The college is providing students with the following options (*you will be asked to choose one of these options*):

**Option 1:    TRANSFER to Independence University (CEHE's online college) to complete your degree program.**

We will transfer all of your completed credits to Independence University (IU), and you can complete your degree online at IU without interruption.  **IU will give you a 30% Tuition Grant (a 30% reduction in your tuition) for any remaining tuition cost to complete your degree program**.  You will become an IU student and be eligible for all the IU resources including, Scheduling, Student Services, Tutoring, and Career Services job search assistance upon graduation.

**Option 2:    TRANSFER to the Stevens-Henager College campus in Murray, UT. or Ogden, UT. (*this is only available to students at the Logan, UT. or Orem, UT. campuses)*.**

We will transfer all of your completed credits and you can complete your degree program at the Ogden, UT., or Murray, UT., Stevens-Henager College campus without interruption. **The college will give you a 30% Tuition Grant (a 30% reduction in your tuition) for any remaining tuition cost to complete your degree program.** You will be eligible for all the campus resources including, Scheduling, Student Services, Tutoring, and Career Services job search assistance.

**Option 3:    DO NOT TRANSFER and receive a full refund of all student loan debt and cash payments made to the college for your current enrollment.**

If you do not want to transfer, CEHE will refund/return all Title IV Student Loan Funds (directly to your lender) that you have received since you began your current enrollment at the college. CEHE will also refund/return to you any cash payments that you have made to the college since you began your current enrollment at the college. CEHE will also write-off or eliminate any loan balance you may have through the college's EduPlan loan program. In other words, you will have $0.00 account balance with the college.

CollegeAmerica Denver
OPE ID: 02594300
Page 3 of 5

Request for Additional Information for Closed School/Location

## PART I – ELIGIBLE PROGRAMS

1. Was at least 50 percent of an eligible program ever taught at the above site(s)?

   ☒Yes     ☐No   ☐ do not know. *If no, proceed to Part II.*

   If yes, please explain.  CollegeAmerica Denver (and each of its additional locations) offered 100% of several degree programs at each location.

2. Was more than one program offered at the location at the time it closed?

   ☒Yes     ☐No   ☐ do not know.

3. If the above location is an additional location, were the programs taught at the location(s) above the same programs that were taught at the main campus?

   ☒Yes     ☐No   ☐ do not know.

## PART II – STUDENT ARRANGEMENTS
*34 C.F.R. § 602.24(C) – ADDITIONAL PROCEDURES CERTAIN INSTITUTIONAL ACCREDITORS MUST HAVE (TEACH-OUT PLANS AND AGREEMENTS); 34 CFR 668.14(B)(31) TEACH-OUT PLAN; 34 CFR 600.2 TEACH-OUT PLAN DEFINITION; 34 CFR 600.32(D) ELIGIBILITY OF ADDITIONAL LOCATIONS FOR TEACH-OUT PURPOSES*

4. Did all of the students complete their program of study prior to, or on the last date of, educational instruction?   ☐Yes ☒No  ☐ do not know.

   If no, what arrangements have been made to assist students in finding reasonable opportunities to complete their education without additional charges? (e.g., teach-outs, transfers)?

   Please see Exhibit 1 attached to this response.  All CollegeAmerica Denver students were offered an opportunity to transfer 100% of their earned credits to CEHE's other college, Independence University.  Independence University offered the same programs and students from CollegeAmerica Denver were offered an opportunity to transfer to Independence University to complete their programs.  Any student who chose to transfer to Independence University would not incur any additional charges, in fact, they would receive a 30% discount on any remaining tuition charges incurred at Independence University (relative to the tuition charges that were in place at their closing campus).

## PART III – RECORD RETENTION
*34 C.F.R. § 668.24 RECORD RETENTION AND EXAMINATIONS.; 34 C.F.R. § 674.19(D)(2) – FEDERAL PERKINS LOAN PROGRAM FISCAL PROCEDURES AND RECORDS, RECORDS AND REPORTING*

5. What arrangements have been made to store the academic and/or financial aid records/transcripts?



830 1st Street, NE, Washington, DC 20202
StudentAid.gov

### Request for Additional Information for Closed School/Location

CollegeAmerica Denver's owner, Center for Excellence in Higher Education ("CEHE"), has a comprehensive Student Information System ("SIS") and all of a student's academic, transcript, and financial aid records are maintained and stored in the SIS (which is backed up offsite at a separate data center).

In addition to the electronic storage and backup of all financial aid, transcript, and academic records, CollegeAmerica Denver (and its additional locations) have transferred any retained or remaining paper records that existed to the CEHE headquarters in Salt Lake City, Utah.

Provide the address where the records will be stored.

The electronic records in the SIS are maintained and backed up at CEHE's datacenter in Salt Lake City, UT. Any remaining paper records are maintained at CEHE's corporate offices at 4021 South 700 East, Suite 400, Salt Lake City, UT. 84107.

---

**PART IV – CLOSED SCHOOL DISCHARGE**
*34 C.F.R. §685.214 CLOSED SCHOOL DISCHARGE; 34 C.F.R. §682.402 DEATH, DISABILITY, CLOSED SCHOOL, FALSE CERTIFICATION, UNPAID REFUNDS, AND BANKRUPTCY PAYMENTS.*

---

6. The official closure date closure date is the date that the school ceases to provide educational instruction in all programs. When was the last date (Month, Day, Year) that the school provided educational instruction in any program at the location(s)?
September 13, 2020.

7. Did the school pay into a tuition recovery fund, purchase a private insurance policy, or have a bond, that might assist students who did not complete their program in the recovery of some of their tuition costs? ☒Yes   ☐No

If yes, provide a copy of the bond or policy and/or citation to the authority establishing the tuition recovery fund and enter the amount here:

Each of CollegeAmerica Denver's campuses in Colorado were required to have in place an Irrevocable Standby Letter of Credit to the Colorado Division of Private Occupational Schools ("DPOS") as part of the State's licensure requirements. Attached as Exhibit 3 is a copy of the Irrevocable Standby Letter of Credit for CollegeAmerica Denver's Denver campus, Ft. Collins campus, and Colorado Springs campus. It is important to note that each year, the DPOS has a policy and procedure to adjust (up or down) the amount of an institution's Standby Letter of Credit based upon that institution's prior year calculation for Maximum Pre-Paid Unearned Tuition (per DPOS rules).

Therefore, the amounts of each institution's Standby Letter of Credit may have been adjusted (up or down) each year. As of September 2020, the current year's amount for the existing Standby Letter of Credit with the DPOS for each CollegeAmerica Denver campus are as follows:

CollegeAmerica Denver – Denver Campus: $235,070.00

CollegeAmerica Denver – Ft. Collins Campus: $101,130.00

Federal **Student** Aid
*An OFFICE of the U.S. DEPARTMENT of EDUCATION*

## Request for Additional Information for Closed School/Location

CollegeAmerica Denver – Colorado Springs Campus: $431,472.00

8.  Do you know of any litigation pending by a student or students against the school based on the closure, or of any payments made by or on behalf of the school or its owners to students based on the closure?     ☐Yes   ☒No

9.  Do you have any information and/or documentation about:
    a.  students participating in a teach-out? ☒Yes  ☐No
    b.  students in attendance, or on an approved leave of absence within the 120 days preceding closure? ☒Yes      ☐No
    c.  students and who transferred within the 120 days preceding closure including the name of the school? ☐Yes   ☒No
    d.  reasons for any dismissals within the 120 days preceding closure? ☒Yes   ☐No

    If you answered "yes" to any of the above, attach supporting documentation.

    Please see Exhibit 4 which has the information for the items above where we responded "YES".

10. Has the school filed for bankruptcy? ☐Yes      ☒No
    If yes, provide the following and any additional information:

    **Date Filed:** Click here to enter text.

    **Court:** Click here to enter text.

    **Case Number:** Click here to enter text.







**International Banking Department**
**460 Sierra Madre Villa Avenue,**
**Pasadena, CA 91107**
Attention: Standby Letters of Credit Section
Telephone No. (626) 974-1227, (626) 974-1221

Amendment No. 3 to Irrevocable
Standby Letter of Credit No. SB42297

Date:  August 26, 2016

(Page 1 of 2)

BENEFICIARY:
DIVISION/BOARD OF PRIVATE OCCUPATIONAL SCHOOLS
COLORADO  DEPARTMENT OF HIGHER EDUCATION
1560 BROADWAY, SUITE 1600
DENVER, CO  80202
(303)866-2723

APPLICANT:
CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC.
DBA COLLEGE AMERICA DENVER
(DENVER CAMPUS)
1385 SOUTH COLORADO BOULEVARD, 5TH FLOOR,
DENVER, CO 80222

## AMENDMENT  NO.  3

Ladies/Gentlemen:

Please be advised that we hereby amend our Irrevocable Standby Letter of Credit Number
SB42297 in favor of the above beneficiary for account of Center for Excellence in Higher
Education, Inc. dba College America Denver (Denver Campus) as follows:

1.  Standby Letter of Credit is decreased by Two Thousand Five Hundred Fifty Three  U.S.
    Dollars and 00/100. (USD2,553.00) to a new aggregate amount of USD384,438.00

All other terms and conditions remain unchanged.

Chan Yuk Wah Wong
Vice President/Intl Operations Manager

Michael Au
Assistant Vice President



*Partnership Banking®*

Amendment No. 3 to Irrevocable Standby Letter of Credit No. SB42297     (Page 2 of 2)

**SPECIAL INSTRUCTIONS TO BENEFICIARY:**
**Please sign and return immediately by courier service the attached copy of this amendment with your original signature signifying your consent thereto or rejection thereof.**

Consent by:                                Rejected by:

_____             _____
DIVISION/BOARD OF PRIVATE OCCUPATIONAL SCHOOLS
COLORADO  DEPARTMENT OF HIGHER EDUCATION

460 SIERRA MADRE VILLA AVENUE, PASADENA, CA 91107
www.cbank.com
SBA PREFERRED LENDER | MEMBER FDIC | EQUAL HOUSING LENDER

A271



*Partnership Banking®*



**International Banking Department**
**460 Sierra Madre Villa Avenue,**
**Pasadena, CA 91107**
Attention: Standby Letters of Credit Section
Telephone No. (626) 974-1227, (626) 974-1221

Amendment No. 3 to Irrevocable
Standby Letter of Credit No. SB42298

Date:  August 26, 2016

(Page 1 of 2)

BENEFICIARY:
DIVISION/BOARD OF PRIVATE OCCUPATIONAL SCHOOLS
COLORADO  DEPARTMENT OF HIGHER EDUCATION
1560 BROADWAY, SUITE 1600
DENVER, CO  80202
(303)866-2723

APPLICANT:
CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC.
DBA COLLEGE AMERICA DENVER
(FORT COLLINS CAMPUS)
4601 SOUTH MASON
FORT COLLINS, CO  80525
(818)227-1803

### AMENDMENT  NO.  3

Ladies/Gentlemen:

Please be advised that we hereby amend our Irrevocable Standby Letter of Credit Number
SB42298 in favor of the above beneficiary for account of Center for Excellence in Higher
Education, Inc. dba College America Denver (Fort Collins Campus) as follows:

1. Standby Letter of Credit is decreased by One Hundred Thousand Four Hundred and Six
   U.S. Dollars and 00/100. (USD100,406.00) to a new aggregate amount of USD43,587.00.

All other terms and conditions remain unchanged.

Chan Yuk Wah Wong
Vice President/Intl Operations Manager

Michael Au
Assistant Vice President

460 SIERRA MADRE VILLA AVENUE, PASADENA, CA 91107
www.cbank.com
SBA PREFERRED LENDER | MEMBER FDIC | EQUAL HOUSING LENDER

**A272**



Partnership Banking®

Amendment No. 3 to Irrevocable Standby Letter of Credit No. SB42298      (Page 2 of 2)

**SPECIAL INSTRUCTIONS TO BENEFICIARY**:
**Please sign and return immediately by courier service the attached copy of this amendment with your original signature signifying your consent thereto or rejection thereof.**

Consent by:                                        Rejected by:

_____        _____
DIVISION/BOARD OF PRIVATE OCCUPATIONAL SCHOOLS
COLORADO  DEPARTMENT OF HIGHER EDUCATION

460 SIERRA MADRE VILLA AVENUE, PASADENA, CA 91107
www.cbank.com
SBA PREFERRED LENDER | MEMBER FDIC | EQUAL HOUSING LENDER

**A273**



*Partnership Banking®*

460 Sierra Madre Villa Avenue,
PASADENA, CA 91107
International Banking Department
Attention: Standby Letters of Credit Section
Telephone No.:  (626) 974-1221, (626) 974-1227

(PAGE 1 OF 4)

DATE:  MARCH 25, 2015

IRREVOCABLE STANDBY LETTER OF CREDIT NUMBER: SB-42332

TO: DIVISION/BOARD OF PRIVATE OCCUPATIONAL SCHOOLS

COLORADO DEPARTMENT OF HIGHER EDUCATION

1560 BROADWAY, SUITE 1600

DENVER, CO 80202

(303) 866-2723

**IRREVOCABLE LETTER OF CREDIT
TO
THE DIVISION/BOARD OF PRIVATE OCCUPATIONAL SCHOOLS
COLORADO DEPARTMENT OF HIGHER EDUCATION**

DOCUMENTARY CREDIT NUMBER:  SB-42332
DATE OF ISSUE:        MARCH 25, 2015

**BENEFICIARY**:    DIVISION/BOARD OF PRIVATE OCCUPATIONAL SCHOOLS

COLORADO DEPARTMENT OF HIGHER EDUCATION

1560 BROADWAY, SUITE 1600

DENVER, CO 80202

(303) 866-2723

**APPLICANT/OWNER**:  CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC.

DBA COLLEGE AMERICA DENVER

(COLORADO SPRINGS AND SOUTH COLORADO SPRINGS

CAMPUSES)

2020 N. ACADEMY BLVD., SUITE 1,

COLORADO SPRINGS, CO 80909


**EXPIRY DATE AND PLACE**:   APRIL 30, 2016
                    AT OUR COUNTER

460 SIERRA MADRE VILLA AVENUE, PASADENA, CA 91107
www.cbank.com
SBA PREFERRED LENDER | MEMBER FDIC | EQUAL HOUSING LENDER 🏠

A274



## COMMUNITY BANK
*Partnership Banking*®

STANDBY LETTER OF CREDIT NUMBER:  SB-42332                    (PAGE 2 OF 4)

AVAILABLE WITH:                COMMUNITY BANK,
                               INTERNATIONAL BANKING DEPARTMENT
                               PASADENA, CALIFORNIA

**AMOUNT:**    USD602, 351.00
               (UNITED STATES SIX HUNDRED TWO THOUSAND THREE HUNDRED FIFTY
               ONE AND NO/100 DOLLARS ONLY)

-------------------------------------------------------------------------------------------------

THIS IRREVOCABLE LETTER OF CREDIT NO. SB-42332  IS ISSUED TO THE
DIVISION/BOARD OF PRIVATE OCCUPATIONAL SCHOOLS ("DIVISION"), COLORADO
DEPARTMENT OF HIGHER EDUCATION IN LIEU OF THE SURETY BOND REQUIRED TO BE
FILED BY THE APPLICANT/OWNER, AS REQUIRED BY SECTIONS 11-35-101, 12-59-106 AND
12-59-115, C.R.S.

THE UNDERSIGNED HEREBY ESTABLISHES ITS IRREVOCABLE LETTER OF CREDIT, NO.
SB-42332 IN YOUR FAVOR AVAILABLE BY YOUR DRAFTS DRAWN ON US AT SIGHT FOR
ANY SUM OR SUMS NOT EXCEEDING IN TOTAL $602,351.00 (SIX HUNDRED TWO
THOUSAND THREE HUNDRED FIFTY ONE  AND NO/100 UNITED STATES DOLLARS), FOR
THE ACCOUNT OF CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC. DBA
COLLEGE AMERICA DENVER ( COLORADO SPRINGS AND SOUTH COLORADO SPRINGS
CAMPUSES)

DRAFTS MUST BE ACCOMPANIED BY:

I.   A NOTARIZED WRITTEN STATEMENT FROM AN AUTHORIZED OFFICIAL OF THE
     BENEFICIARY STATING, "I_____, HEREBY CERTIFY THAT I
     AM A REPRESENTATIVE OF THE DIVISION/BOARD OF PRIVATE OCCUPATIONAL
     SCHOOLS, COLORADO DEPARTMENT OF HIGHER EDUCATION, AUTHORIZED TO
     EXECUTE THIS STATEMENT AND CERTIFY THAT CENTER FOR EXCELLENCE IN
     HIGHER EDUCATION, INC. DBA  COLLEGE AMERICA DENVER  (COLORADO
     SPRINGS AND SOUTH COLORADO SPRINGS CAMPUSES)  HAS FAILED TO MEET
     ITS STATUTORY OBLIGATION AS REQUIRED BY 12-59-101 ET SEQ., OF THE
     COLORADO REVISED STATUTES AND HEREBY MAKES DEMAND OF PAYMENT IN
     THE AMOUNT OF
     $ _____ (AMOUNT IN WORDS AND XX/100 UNITED STATES DOLLARS)
     UNDER LETTER OF CREDIT NO. SB-42332.  I FURTHER CERTIFY THAT THE
     DRAWING IS IN ACCORDANCE WITH SECTIONS 11-35-101 AND 12-59-115, OF
     THE COLORADO REVISED STATUTES TO INDEMNIFY STUDENTS OF THE CENTER
     FOR EXCELLENCE IN HIGHER EDUCATION, INC. DBA COLLEGE AMERICA
     DENVER (COLORADO SPRINGS AND SOUTH COLORADO SPRINGS CAMPUSES)
     FOR LOSS OF TUITION AND FEES CONDITIONED TO PROVIDE INDEMNIFICATION

460 SIERRA MADRE VILLA AVENUE, PASADENA, CA 91107
www.cbank.com
SBA PREFERRED LENDER | MEMBER FDIC | EQUAL HOUSING LENDER

**A275**



## COMMUNITY BANK
*Partnership Banking®*

STANDBY LETTER OF CREDIT NUMBER:  SB-42332                     (PAGE 3 OF 4)

    TO ANY STUDENT OR ENROLLEE OR TO ANY PARENT OR GUARDIAN OF SUCH STUDENT OR ENROLLEE DETERMINED BY THE BOARD OF PRIVATE OCCUPATIONAL SCHOOLS TO HAVE SUFFERED LOSS OF TUITION OR ANY FEES AS A RESULT OF ANY ACT OR PRACTICE THAT IS A VIOLATION OF ANY MINIMUM STANDARD AS SET FORTH IN 12-59-106 OF THE COLORADO REVISED STATUTES OR ANY CRITERION ESTABLISHED PURSUANT THERETO BY THE SCHOOL OR ITS AGENTS AND TO PROVIDE TRAIN OUT OR REFUND TO STUDENTS ENROLLED IN THE SCHOOL IF IT SHOULD BE CEASED TO OPERATE.

2. DRAWINGHEREUNDER MUST BE ACCOMPANIED BY THE ORIGINAL LETTER OF CREDIT AND ANY AMENDMENTS THERETO.

THE IRREVOCABLE LETTER OF CREDIT SHALL EXPIRE ON APRIL 30, 2016.

NO AMENDMENTS TO THIS LETTER OF CREDIT SHALL BE MADE UNLESS THE UNDERSIGNED HAS RECEIVED AGREED TO SUCH AMENDMENTS.

THE EXPIRATION DATE SHALL BE EXTENDED AUTOMATICALLY FOR A PERIOD OF ONE YEAR AND EXPIRE ON APRIL 30, 2016 AND ON EACH SUCCESSIVE EXPIRATION DATE, UNLESS, AT LEAST SIXTY (60) DAYS PRIOR TO THE EXPIRATION DATE, THE UNDERSIGNED NOTIFIES THE DIVISION AND THE APPLICANT/OWNER BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED THAT THE UNDERSIGNED WILL NOT EXTEND THIS LETTER OF CREDIT BEYOND THE CURRENT EXPIRATION DATE. SAID RELEASE SHALL NOT DISCHARGE OR OTHERWISE AFFECT ANY CLAIM FILED BY ANY STUDENT OR ENROLLEE OR HIS OR HER PARENT OR GUARDIAN FOR LOSS OF TUITION OR ANY FEES THAT OCCURRED WHILE SAID IRREVOCABLE LETTER OF CREDIT WAS IN EFFECT OR WHICH OCCURRED UNDER ANY NOTE OR CONTRACT EXECUTED DURING ANY PERIOD OF TIME WHEN SAID IRREVOCABLE LETTER OF CREDIT WAS IN EFFECTS EXCEPT, WHEN ANOTHER BOND OR IRREVOCABLE LETTER OF CREDIT OR ACCEPTABLE BOND ALTERNATIVE IS FILED IN THE LIKE AMOUNT AND PROVIDES INDEMNIFICATION FOR ANY LOSS.

THE FOREGOING DOCUMENTS MAY BE PRESENTED ONE OR MORE TIMES, UNTIL THE AGGREGATE AMOUNT AUTHORIZED HEREIN HAS BEEN DRAWN.  WE SHALL NOTE PARTIAL DRAWS ON THIS LETTER OF CREDIT, WHICH SHALL BE RETURNED BY US TO YOU.

THIS LETTER OF CREDIT SETS FORTH IN FULL THE TERMS OF OUR UNDERTAKING, AND SUCH UNDERTAKING SHALL NOT BE IN ANY WAY MODIFIED OR INTERPRETED BY REFERENCE TO OTHER DOCUMENTS EXCEPT FOR ANY AMENDMENT HERETO AGREED TO BY YOU AND BY US.



*Partnership Banking®*

STANDBY LETTER OF CREDIT NUMBER:  SB-42332                    (PAGE 4 OF 4)

THIS LETTER OF CREDIT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF COLORADO AND IS SUBJECT TO THE MOST RECENT EDITION OF THE UNIFORM CUSTOMS AND PRACTICE FOR DOCUMENTARY CREDITS PUBLISHED BY THE INTERNATIONAL CHAMBER OF COMMERCE. THE FORUM FOR ALL DISPUTES REGARDING THIS LETTER OF CREDIT SHALL BE THE DISTRICT COURT FOR THE COUNTY OF DENVER, STATE OF COLORADO.

WE UNCONDITIONALLY AND IRREVOCABLY AGREE TO HONOR AND PAY THE AMOUNT OF A DRAFT IF DRAWN AND PRESENTED WITH A DRAWING CERTIFICATE, AND OTHERWISE IN COMPLIANCE WITH THE TERMS OF THIS LETTER OF CREDIT ON OR BEFORE THE EXPIRATION DATE.

THIS IRREVOCABLE LETTER OF CREDIT IS NON-TRANSFERABLE.

THE UNDERSIGNED, COMMUNITY BANK, HEREBY AGREES WITH THE DRAWERS, ENDORSERS, AND BONA FIDE HOLDERS THAT ALL DRAFTS DRAWN UNDER AND IN COMPLIANCE WITH THE TERMS OF THE IRREVOCABLE LETTER OF CREDIT WILL BE DULY HONORED UPON PRESENTATION TO OUR OFFICE AT 460 SIERRA MADRE VILLA AVENUE, PASADENA, CA 91107 ATTN: INTERNATIONAL BANKING DEPARTMENT STANDBY LETTER OF CREDIT UNIT.

COMMUNITY BANK,
INTERNATIONAL BANKING DEPARTMENT
460 SIERRA MADRE VILLA AVENUE,
PASADENA, CA 91107

BY: _____

PRINT NAME:  CHAN YUK WAH WONG

TITLE: VICE PRESIDENT, INTERNATIONAL OPERATIONS MANAGER

DATE:  MARCH 25, 2015

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _Los Angeles_

On _March 25, 2015_ before me, _Alicia Barbosa, Notary_,
　　　　Date　　　　　　　　　　　　　Here Insert Name and Title of the Officer
personally appeared _Chaw Yuk Wah Wong_
　　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

ALICIA BARBOSA
Commission # 1955837
Notary Public - California
Los Angeles County
My Comm. Expires Oct 21, 2015

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Alicia Barbosa_
　　　　　　Signature of Notary Public

Place Notary Seal Above

───────────────── **OPTIONAL** ─────────────────
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document _tmd by Loc_　　　Document Date: _3/25/15_
Number of Pages: _4_　Signer(s) Other Than Named Above: _n/a_

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _Chaw Yuk Wah Wong_　　　　Signer's Name: _____
☒ Corporate Officer — Title(s): _V.P._　　　☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General　　　　☐ Partner — ☐ Limited ☐ General
☐ Individual　　☐ Attorney in Fact　　　☐ Individual　　☐ Attorney in Fact
☐ Trustee　　☐ Guardian or Conservator　☐ Trustee　　☐ Guardian or Conservator
☐ Other: _____　　　　　　　☐ Other: _____
Signer Is Representing: _____　Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)　Item #5907

## 9a - Students that are Participating in a Teach-Out with Independence University

| STUDENT NAME | COLLEGEAMERICA CAMPUS | EMAIL | ADDRESS | CITY | STATE | ZIP | PHONE |
|---|---|---|---|---|---|---|---|
| Balijahe, Bonebana | Denver | amotiesther@gmail.com | 19398 East Batavia Drive | Aurora | CO | 80011 | (720)236-7504 |
| Delphine, Ahishakiye | Denver | delphinetyra@gmail.com | 1755 S Pecos St Apt 15 | Denver | CO | 80223 | (720)707-5048 |
| Hernandez Rodriguez, Yolanda | Denver | yhernandez.love@gmail.com | 3481 South Fenton Street Apt E-104 | Denver | CO | 80227 | (720)467-6324 |
| Hernandez, Lacey | Denver | laceyh.lh@gmail.com | 8831 Bruce St. | Thornton | CO | 80260 | (720)345-1455 |
| Kayayeva, Madina | Denver | madina0116@gmail.com | 1372 S Cathay Ct #106 | Aurora | CO | 80017 | (720)755-0271 |
| Naranjo, Starlene | Denver | naranjostar970@gmail.com | 2385 S Dawson Way | Aurora | CO | 80014 | (303)507-0911 |
| Pinckert, Carissa | Denver | carissapinckert@gmail.com | 3915 S Pitkin Way | Aurora | CO | 80013 | (720)291-0859 |
| Santillano, Griselda | Denver | gsantillano777@gmail.com | 1333 Kingston St | Aurora | CO | 80010 | (720)999-5048 |
| Soto, Lucia | Denver | sotolucia425@gmail.com | 1877 S Federal Blvd Apt 304 | Denver | CO | 80219 | (720)919-6280 |
| Berry, Annastasia R | Fort Collins | mommabear19ab@gmail.com | 705 14Th Street Se Apt 202 | Loveland | CO | 80537 | (970)391-4306 |
| Brennan, Christian A | Fort Collins | galeflames@gmail.com | 6675 S Lemay Ave. Apt F4 | Fort Collins | CO | 80525 | (720)546-3842 |
| Cunningham, Angela M | Fort Collins | angelcunn1@gmail.com | 13716 Harrison Plaza #522 | Omaha | NE | 68137 | (531)213-6638 |
| Flores, Candi C | Fort Collins | candi92194@gmail.com | 410 Barnard Court | Longmont | CO | 80501 | (720)650-9888 |
| Frausto, Brandix S | Fort Collins | brandixfrausto@gmail.com | 1000 West Horsetooth Rd, Apt. A2 | Fort Collins | CO | 80526 | (970)227-9396 |
| Grimm, Mikayla L | Fort Collins | Mikaylagrimm99@gmail.com | 115 11th Ave    Po Box 1232 | Page | AZ | 86040 | (928)614-8399 |
| Mukubwa, Nathanael M | Fort Collins | NathanMukubwa5@gmail.com | 700 37th Ave Unit 3 | Greeley | CO | 80634 | (970)539-8199 |
| Cabello, Cassandra | Colorado Springs | cassie0474@gmail.com | 1341 Commanchero Dr. | Colorado Springs | CO | 80905 | 719-237-9320 |
| Felton, Bernard | Colorado Springs | feltonbernard6@gamil.com | 1165 Chiriciaua Loop 4 | Colorado Springs | CO | 80915 | 719-419-0045 |
| Kelly, Jessica | Colorado Springs | jessk1992jk@icloud.com | 6663 Provincial Dr. | Fountain | CO | 80817 | 719-964-0631 |
| Lewis, Kristine | Colorado Springs | kmaestas19@gmail.com | 1357 Luna Dr | Fountain | CO | 80817 | 719-474-9778 |
| Leyba, Shantanell | Colorado Springs | ayooshaay@gmail.com | 2922 Strauss Lane Apt D | Colorado Springs | CO | 80907 | 719-291-7936 |
| McFarren, Jessica | Colorado Springs | kiruthuj5@gmail.com | 923 Quail Lake Circle | Colorado Springs | CO | 80906 | 719-306-4752 |
| Powell, Dakota | Colorado Springs | dakota.powell158@gmail.com | 2806 Shady Dr. | Colorado Springs | CO | 80918 | 719-640-0376 |
| Rosenberger, Ashley | Colorado Springs | puppygirl1105@yahoo.com | 1111 Market St | Colorado Springs | CO | 80904 | 719-432-5436 |
| Schobitz, Raymond | Colorado Springs | raymondschobitz@gmail.com | 2515 Verde Dr Apt 213 | Colorado Springs | CO | 80910 | 719-627-2357 |
| Tapia, Isabel | Colorado Springs | isable.tap143@gmail.com | 2515 Verde Dr Apt 213 | Colorado Springs | CO | 80910 | 719-491-2362 |

| 9b - Students in Attendance (or on an approved LOA) as of May 13, 2020 | | | | | | | |
|---|---|---|---|---|---|---|---|
| **STUDENT NAME** | **COLLEGEAMERICA CAMPUS** | **EMAIL** | **ADDRESS** | **CITY** | **STATE** | **ZIP** | **PHONE** |
| Balijahe, Bonebana | Denver | amotiesther@gmail.com | 19398 East Batavia Drive | Aurora | CO | 80011 | (720)236-7504 |
| Boehringer, Monica D | Denver | boehringer92@gmail.com | 14400 E Fremont Ave #11-103 | Englewood | CO | 80112 | (469)864-9453 |
| Delgadillo-Mendoza, Sandra | Denver | delgadillosandra454@gmail.com | 4180 Kalamath Street | Denver | CO | 80211 | (720)421-3359 |
| Delphine, Ahishakiye | Denver | delphinetyra@gmail.com | 1755 S Pecos St Apt 15 | Denver | CO | 80223 | (720)707-5048 |
| Diaz-Bernardino, Stephanie | Denver | sdiazbernardino1996@gmail.com | 770 Kingston St. | Aurora | CO | 80010 | (720)498-5652 |
| Garcia, Monique | Denver | moniqueg257@gmail.com | 2173 E 101St Pl | Thornton | CO | 80229 | (720)695-6941 |
| Gonzalez, Yexli | Denver | gonzalezyexli515@gmail.com | 3105 W Alabama Place | Denver | CO | 80219 | (720)642-4369 |
| Green, Sunni | Denver | Sag618@msn.com | 3415 Grape St | Denver | CO | 80207 | (720)635-3556 |
| Gutierrez-Barboza, David | Denver | davidgutierrezbarboza@gmail.com | 5190 Clarkson St | Denver | CO | 80216 | |
| Hernandez Rodriguez, Yolanda | Denver | yhernandez.love@gmail.com | 3481 South Fenton Street Apt E-104 | Denver | CO | 80227 | (720)467-6324 |
| Hernandez, Lacey | Denver | laceyh.lh@gmail.com | 8831 Bruce St. | Thornton | CO | 80260 | (720)345-1455 |
| Jimenez, Eustorgio | Denver | ejjimenez707@gmail.com | 475 S Moline St | Aurora | CO | 80012 | (720)763-1316 |
| Kayayeva, Madina | Denver | madina0116@gmail.com | 1372 S Cathay Ct #106 | Aurora | CO | 80017 | (720)755-0271 |
| Macias, Jasmine | Denver | jasminemacias98@gmail.com | 92 Del Norte St | Denver | CO | 80221 | (720)908-2330 |
| Maes, Danesha | Denver | maesdanesha@gmail.com | 4962 Saint Paul St | Denver | CO | 80216 | (720)492-3876 |
| Martinez, Brian | Denver | brian.mtz70116@gmail.com | 4210 Combine Place | Brighton | CO | 80601 | (720)380-6605 |
| Naranjo, Starlene | Denver | naranjostar970@gmail.com | 2385 S Dawson Way | Aurora | CO | 80014 | (303)507-0911 |
| Perea, Natalie | Denver | nattielove13@yahoo.com | 2143 South Meade Street | Denver | CO | 80219 | (720)544-9434 |
| Pinckert, Carissa | Denver | carissapinckert@gmail.com | 3915 S Pitkin Way | Aurora | CO | 80013 | (720)291-0859 |
| Sanchez-Davila, Linda E | Denver | sanchez.lindaestefania.201@gmail.com | 7755 Turner Drive #D | Denver | CO | 80221 | (720)755-7002 |
| Santander, Thalia | Denver | tsantander117@gmail.com | 170 S King St | Denver | CO | 80219 | (303)968-9946 |
| Santillano, Griselda | Denver | gsantillano777@gmail.com | 1333 Kingston St | Aurora | CO | 80010 | (720)999-5048 |
| Soto, Lucia | Denver | sotolucia425@gmail.com | 1877 S Federal Blvd Apt 304 | Denver | CO | 80219 | (720)919-6280 |
| Andrews, Kaci K | Fort Collins | kacement24@gmail.com | 630 Birch St   Po Box 553 | Windsor | CO | 80550 | (970)576-5978 |
| Arensmeier, Kathryn I | Fort Collins | karensmeier@gmail.com | 2455 Stonecrest Dr | Fort Collins | CO | 80521 | (970)237-0335 |
| Ashlock, Andrew A | Fort Collins | ashlockandrew21@gmail.com | 1331 Redwood Street #3-105 | Fort Collins | CO | 80524 | (970)658-6797 |
| Benavides, Destiny E | Fort Collins | destbenavides4@gmail.com | 140 23Rd Ave #10 | Greeley | CO | 80631 | (970)313-8489 |
| Bennett-Sandoval, Calandrea C | Fort Collins | ccbennett02@live.com | Po Box 38 | Laporte | CO | 80535 | (970)403-7573 |
| Berry, Annastasia R | Fort Collins | mommabear19ab@gmail.com | 705 14Th Street Se Apt 202 | Loveland | CO | 80537 | (970)391-4306 |
| Black, Jennifer R | Fort Collins | JRBlack72@outlook.com | 1114 34Th Ave | Greeley | CO | 80634 | (303)886-2122 |
| Brennan, Christian A | Fort Collins | galeflames@gmail.com | 6675 S Lemay Ave. Apt F4 | Fort Collins | CO | 80525 | (720)546-3842 |
| Brewer, Taylor S | Fort Collins | taysharae1220@gmail.com | 132 Jones Ln | Sterling | CO | 80751 | (970)980-5251 |
| Cunningham, Angela M | Fort Collins | angelcunn1@gmail.com | 13716 Harrison Plaza #522 | Omaha | NE | 68137 | (531)213-6638 |
| Esquivel, Beatris A | Fort Collins | beatrisesquivel@yahoo.com | 4747 Kings Canyon Dr. | Greeley | CO | 80634 | (970)539-3982 |
| Flores, Candi C | Fort Collins | candi92194@gmail.com | 410 Barnard Court | Longmont | CO | 80501 | (720)650-9888 |
| Frausto, Brandix S | Fort Collins | brandixfrausto@gmail.com | 1000 West Horsetooth Rd, Apt. A2 | Fort Collins | CO | 80526 | (720)223-9396 |
| Grimm, Mikayla L | Fort Collins | Mikaylagrimm99@gmail.com | 115 11th Ave  Po Box 1232 | Page | AZ | 86040 | (928)614-8399 |
| Harper, Jessica L | Fort Collins | benji16dex@gmail.com | 2009 Wagon Train Drive | Milliken | CO | 80543 | (970)815-1770 |
| Kube, Ceanna M | Fort Collins | safirekube1@gmail.com | 816 Gallup Road | Ft. Collins | CO | 80521 | (970)763-1316 |
| Kube, Cinnamon M | Fort Collins | cinkube@gmail.com | 816 Gallup Road | Fort Collins | CO | 80521 | (970)646-9024 |
| Mathis, Leesa C | Fort Collins | leesa.mathis666@gmail.com | 3617 Precision Dr. Apt H358 | Fort Collins | CO | 80528 | (970)420-8760 |
| McClain, Cady | Fort Collins | cadymcclain96@gmail.com | 3717 S Taft Hill Rd Lot N 291 | Fort Collins | CO | 80526 | (970)691-8410 |
| McIntosh, Alyxandra R | Fort Collins | alyrose31092@gmail.com | 4105 N Garfield Ave # 37 | Loveland | CO | 80538 | (970)278-6249 |

| 9b - Students in Attendance (or on an approved LOA) as of May 13, 2020 | | | | | | | |
|---|---|---|---|---|---|---|---|
| STUDENT NAME | COLLEGEAMERICA CAMPUS | EMAIL | ADDRESS | CITY | STATE | ZIP | PHONE |
| Miera, Paul | Fort Collins | mierapaul32@gmail.com | 1245 E Lincoln Ave Apt 220 | Fort Collins | CO | 80524 | (970)308-4655 |
| Mukubwa, Nathanael  M | Fort Collins | NathanMukubwa5@gmail.com | 700 37th Ave Unit 3 | Greeley | CO | 80634 | (970)539-8199 |
| Mulligan, Caitlyn  S | Fort Collins | caitlyn.mulligan5@gmail.com | 2928 Remington St. | Fort Collins | CO | 80525 | (970)939-1012 |
| Ortivez, Taylor  K | Fort Collins | tortivez200@gmail.com | 1608 3Rd St Sw | Loveland | CO | 80537 | (970)691-8104 |
| Pierce, Stephanie  N | Fort Collins | norcaliheart224@gmail.com | 2413 Crabtree Dr. Unit #1 | Fort Collins | CO | 80521 | (970)231-4254 |
| Pratt-Gray, Michael  A | Fort Collins | michael.prattgray@gmail.com | 1214 1/2 Remington St. | Fort Collins | CO | 80524 | (208)813-8581 |
| Ramirez, Angel | Fort Collins | ramirez091618@gmail.com | 400 S. Overland Trail Lot 9 | Fort Collins | CO | 80521 | (970)821-7473 |
| Reynolds, Melissa  J | Fort Collins | mfr.cafc@gmail.com | Po Box 734 | Wellington | CO | 80549 | (970)599-9579 |
| Rimson, Markeda  M | Fort Collins | puddin_beast_3140@yahoo.com | 1025 Wake Robin Lane Apt G108 | Fort Collins | CO | 80525 | (970)310-6337 |
| Rivas-Palafox, Julissa  N | Fort Collins | julissarivas484@gmail.com | 377 E. 19Th St. | Greeley | CO | 80631 | (970)714-9508 |
| Rojas, Marisela | Fort Collins | mariselarojas@rocketmail.com | 612 Goss Dr. | Longmont | CO | 80504 | (720)518-8461 |
| Romero, Daesy  H | Fort Collins | daesypr@gmail.com | 2025 North College Ave #321 | Fort Collins | CO | 80524 | (970)222-2685 |
| Romero, Myrna  L | Fort Collins | myrna27romero@gmail.com | 2025 N College Ave Lot 321 | Fort Collins | CO | 80524 | (970)222-4608 |
| Saunders, Ariel  J | Fort Collins | saonorato5121@gmail.com | 1551 32Nd St | Evans | CO | 80620 | (970)590-8575 |
| Thompson, Ryan  J | Fort Collins | rthompson1689@gmail.com | 327 Maddies Way | Cheyenne | WY | 82007 | (860)488-1809 |
| Wheeler, Heather  L | Fort Collins | harleylynnewheeler87@gmail.com | 210 Colland Drive | Fort Collins | CO | 80525 | (970)821-5691 |
| Andrews, Cheyenne | Colorado Springs | cheyenneandrews81@hotmail.com | 4825  Astrozon Blvd 268D | Colorado Springs | CO | 80916 | 719-205-1204 |
| Arrington, Jackquelynn | Colorado Springs | jackie.jobs@yahoo.com | 7337 Glensburn Drive | Fountain | CO | 80817 | 530-615-1109 |
| Arsenault, Michael | Colorado Springs | arsenaultomaha@gmail.com | 2745 Telluride Dr. | Colorado Springs | CO | 80918 | 719-598-9032 |
| Blasko, Amanda | Colorado Springs | anb180764@gmail.com | 2910 E. Bijou St  Apt #1C | Colorado Springs | CO | 80909 | 719-492-1014 |
| Brest, Shannon | Colorado Springs | shannon.brest@yahoo.com | 4209 E Pikes Peak Ave. Apt #18 | Colorado Springs | CO | 80909 | 713-791-8528 |
| Brukardt, Stacey | Colorado Springs | brukardt@gmail.com | 602 S. Tower St | Colorado Springs | CO | 80905 | 254-290-2207 |
| Cabello, Cassandra | Colorado Springs | cassie0474@gmail.com | 1341 Commanchero Dr. | Colorado Springs | CO | 80905 | 719-237-9320 |
| Chaplin, George | Colorado Springs | medic7chaplin@gmail.com | 1715 Whitehall Rd | Colorado Springs | CO | 80906 | 505-709-0916 |
| Duran, Kimberly | Colorado Springs | kim.duran-era@yahoo.com | 985 Winebrook Way | Fountain | CO | 80817 | 719-298-7096 |
| Evans, Jamal | Colorado Springs | jtevans6@gmail.com | 841 Hathaway Dr. Apt 307 A | Colorado Springs | CO | 80915 | 719-493-8399 |
| Felton, Bernard | Colorado Springs | feltonbernard6@gamil.com | 1165 Chiriciaua Loop 4 | Colorado Springs | CO | 80915 | 719-419-0045 |
| Garland, Sharon | Colorado Springs | sharon1.garland@outlook.com | 1210 Sandalwood Dr Apt A C | Colorado Springs | CO | 80916 | 719-487-4271 |
| Geebro, Hawa | Colorado Springs | omalichamaryduwah@gmail.com | 4027 East Pieks Peak Ave | Colorado Springs | CO | 80909 | 720-910-9106 |
| Gilliam , Nickey | Colorado Springs | nickey.gilliam@yahoo.com | 2135 Natural Wells Dr. | Tallahassee | FL | 32305 | 719-259-9300 |
| Hall, Kurian | Colorado Springs | hallkurian24@gmail.com | 2641 Easter Ave | Dallas | TX | 75216 | 214-931-9755 |
| Hall, Richard | Colorado Springs | rickhall17@yahoo.com | 4535 Country Heights Point | Colorado Springs | CO | 80917 | 801-505-8040 |
| Hayward, Joshua | Colorado Springs | iokua87@gmail.com | 6602 Lange Circle | Colorado Springs | CO | 80918 | 360-485-5835 |
| Henderson, Ian | Colorado Springs | ian.herderson17@gmail.com | 935 Saturn Dr Unit 230 | Colorado Springs | CO | 80905 | 757-775-0063 |
| Kelly, Jessica | Colorado Springs | jessk1992jk@icloud.com | 6663 Provincial Dr. | Fountain | CO | 80817 | 719-964-0631 |
| Lewis, Kristine | Colorado Springs | kmaestas19@gmail.com | 1357 Luna Dr | Fountain | CO | 80817 | 719-474-9778 |
| Leyba, Shantanell | Colorado Springs | ayooshaay@gmail.com | 2922 Strauss Lane Apt D | Colorado Springs | CO | 80907 | 719-291-7936 |
| Lomax, Shankia | Colorado Springs | max31@gmail.com | 450 Gold Pass Heights Apt 1010 | Colorado Springs | CO | 80906 | 719-722-8200 |
| McFarren, Jessica | Colorado Springs | kiruthuj5@gmail.com | 923 Quail Lake Circle | Colorado Springs | CO | 80906 | 719-306-4752 |
| Peters, Makaila | Colorado Springs | makailapeters98@gmail.com | 396 E Bijou St. Apt 344 | Colorado Springs | CO | 80909 | 719-209-0683 |
| Plaughter, Charity | Colorado Springs | charityplaugher@gmail.com | 3309 Jon Street | Colorado Springs | CO | 80907 | 719-321-6414 |
| Powell, Dakota | Colorado Springs | dakota.powell158@gmail.com | 2806 Shady Dr. | Colorado Springs | CO | 80918 | 719-640-0376 |
| Rivera, Joshua | Colorado Springs | joshua.d.rivera1@gmail.com | 4260 Mira Linda Point 1025 | Colorado Springs | CO | 80920 | 347-701-9641 |

| 9b - Students in Attendance (or on an approved LOA) as of May 13, 2020 | | | | | | | |
|---|---|---|---|---|---|---|---|
| STUDENT NAME | COLLEGEAMERICA CAMPUS | EMAIL | ADDRESS | CITY | STATE | ZIP | PHONE |
| Rosenberger, Ashley | Colorado Springs | puppygirl1105@yahoo.com | 1111 Market St | Colorado Springs | CO | 80904 | 719-432-5436 |
| Ruiz, Evangeline | Colorado Springs | ruizannie92@gmail.com | 432 N Circle Dr. | Colorado Springs | CO | 80909 | 719-308-0055 |
| Santos, Napoleon | Colorado Springs | nhap1962@gmail.com | 4495 Borden Dr | Colorado Springs | CO | 80911 | 719-393-0394 |
| Schobitz, Raymond | Colorado Springs | raymondschobitz@gmail.com | 2515 Verde Dr Apt 213 | Colorado Springs | CO | 80910 | 719-627-2357 |
| Simmons, CaeDee | Colorado Springs | ayedan2010@yahoo.com | 3682 Parkmoar Village Apt D | Colorado Springs | CO | 80917 | 719-722-7031 |
| Stacey, Charles | Colorado Springs | charlesstacey13@gmail.com | 2517 Ivanhoe Dr. | Colorado Springs | CO | 80911 | 251-709-6500 |
| Tapia, Isabel | Colorado Springs | isable.tap143@gmail.com | 2515 Verde Dr Apt 213 | Colorado Springs | CO | 80910 | 719-491-2362 |
| Thomas, Michele | Colorado Springs | miethomas2018@gmail.com | PO Box 92 | Victor | CO | 80860 | 719-619-7170 |
| Wielenbeck, Gary | Colorado Springs | gary.w.wielenbeck@gmail.com | 707 Baling Wire Way | Fountain | CO | 80817 | 443-987-8664 |

**A282**

| 9d - Students Terminated or Dismissed between May 13, 2020 and September 13, 2020 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| STUDENT NAME | COLLEGEAMERICA CAMPUS | EMAIL | ADDRESS | CITY | STATE | ZIP | PHONE | REASON FOR DISMISSAL |
| Delgadillo-Mendoza, Sandra | Denver | delgadillosandra454@gmail.com | 4180 Kalamath Street | Denver | CO | 80211 | (720)421-3359 | Satisfactory Academic Progress |
| Martinez, Brian | Denver | brian.mtz70116@gmail.com | 4210 Combine Place | Brighton | CO | 80601 | (720)380-6605 | Satisfactory Academic Progress |
| Sanchez-Davila, Linda  E | Denver | sanchez.lindaestefania.201@gmail.com | 7755 Turner Drive #D | Denver | CO | 80221 | (720)755-7002 | Satisfactory Academic Progress |
| Privette, Talisha  S | Fort Collins | talishaprivette@gmail.com | 802 Waterglen Drive Unit M57 | Fort Collins | CO | 80524 | (970)342-9172 | Academic Dismissal |
| Thompson, Ryan  J | Fort Collins | rthompson1689@gmail.com | 327 Maddies Way | Cheyenne | WY | 82007 | (860)488-1809 | Satisfactory Academic Progress |
| Hayward, Joshua | Colorado Springs | iokua87@gmail.com | 6602 Lange Circle | Colorado Springs | CO | 80918 | 360-485-5835 | Satisfactory Academic Progress |
| Simmons, CaeDee | Colorado Springs | ayedan2010@yahoo.com | 3682 Parkmoar Village Apt D | Colorado Springs | CO | 80817 | 719-722-7031 | Academic Dismissal |

**A283**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC., | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22-1732C |
| | ) | |
| THE UNITED STATES, | ) | (Senior Judge Smith) |
| | ) | |
| Defendant. | ) | |

<u>DECLARATION OF MICHAEL J. FROLA</u>

I, Michael J. Frola, hereby declare as follows:

1. I am employed by the United States Department of Education ("Department") as the Division Chief of the Department's Multi-Regional and Foreign Schools Participation Division ("MRFSPD"). I have been in my current role since 2012. I have worked for the Department since 2004.

2. My duties as the Division Chief of the MRFSPD include managing two distinct School Participation Teams under the School Eligibility and Oversight Group. One team focuses on the large nationally participating for-profit schools, and the other oversees foreign schools participating in the title IV programs. The purpose of my position is to monitor and evaluate the operations of postsecondary schools participating in financial assistance programs authorized by the Higher Education Act of 1965, as amended. In this position, I have access and knowledge of the records identified herein which were obtained from the Department's files where such documents are routinely held.

3. Counsel has provided me with a copy of the draft appendix to Defendant's Motion to Dismiss the Complaint, and, in the Alternative, Defendant's Motion for Summary Judgment, and counsel has represented to me that this appendix will be filed with the Motion. For the purposes

of this declaration, I am relying upon that representation.  I have placed a copy of the draft

appendix in an office file, should it ever be needed.

4. Documents from our office were provided to counsel at the Department of Justice,

these documents were placed in the draft appendix:

Temporary Provisional Program Participation Agreement, issued in January 2013 to
Stevens Henager College;

Temporary Provisional Program Participation Agreement, issued in January 2013 to
California College San Diego;

Temporary Provisional Program Participation Agreement, issued in January 2013 to
CollegeAmerica Denver;

Temporary Provisional Program Participation Agreement, issued in January 2013 to
CollegeAmerica – Flagstaff;

Provisional Program Participation Agreement, issued in December 2018 to Stevens
Henager College;

Provisional Program Participation Agreement issued in December 2018 to California
College San Diego;

Provisional Program Participation Agreement, issued in December 2018 to
CollegeAmerica Denver;

Provisional Program Participation Agreement, issued in December 2018 to
CollegeAmerica – Flagstaff;

Provisional Program Participation Agreement, issued in May 2020 to CollegeAmerica
Denver;

Provisional Program Participation Agreement, issued in May 2020 to California College
San Diego;

Provisional Program Participation Agreement, issued in May 2020 to CollegeAmerica –
Flagstaff; and

Letter from CEHE to Education, dated September 21, 2020.

5. I declare under penalty of perjury that the foregoing is true and correct to the best of

my knowledge, information, and belief.

- 2 -

Executed on March 21, 2023.

MICHAEL FROLA

Digitally signed by MICHAEL FROLA
Date: 2023.03.21 17:02:01 -04'00'

_____
Michael J. Frola

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CENTER FOR EXCELLENCE IN HIGHER )
EDUCATION, INC., )
)
      Plaintiff, )
)
   v. )     No. 22-1732C
) (Senior Judge Smith)
THE UNITED STATES, )
)
      Defendant. )
)

## DECLARATION OF LISA R. AIKEN

    I hereby declare under penalty of perjury that the following statements are true.

1.    My name is Lisa R. Aiken.  My current position is Lead Paralegal Specialist with the United States Department of Justice.

2.    I am responsible with gathering documents and maintaining a database of documents gathered for the above captioned case.

3.    In connection with this case, James Poirier directed me find and download documents from the United States District Court for the District of Utah.

4.    I searched PACER for Case No. 16-cv-00911-PMW filed in the United States District Court for the District of Utah.

5.    I located and downloaded Center For Excellence in Higher Education, Inc.'s Complaint (and attachments) against Defendants John . King, Jr. in his official capacity as Secretary of the United States Department of Education ("King" or "Secretary"), the

United States Department of Education (the "Department"), and the United States of America (the "United States").

6.      This  appendix contains a true copy of the complaint, filed August 30, 2016, In the United States District Court for the District of Utah and Exhibits 6, 9, 10 and 11 to the complaint.


_Lisa R. Aiken_
Lisa R. Aiken
Lead Paralegal Specialist
Department of Justice


Dated:  March 22, 2023