**Nos. 22-1732C**
**(Senior Judge Smith)**

---

### IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

**CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant**

---

### DEFENDANT'S REPLY
### IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT, AND, IN THE ALTERNATIVE, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

| | |
|---|---|
| | **BRIAN M. BOYNTON**<br>**Principal Deputy Assistant Attorney General**<br><br>**PATRICIA M. McCARTHY**<br>**Director**<br><br>**ELIZABETH M. HOSFORD**<br>**Assistant Director** |
| **OF COUNSEL:**<br><br>**STEVEN FINLEY**<br>**RAZIYA BRUMFIELD**<br>**Department of Education** | **JAMES W. POIRIER**<br>**Trial Attorney**<br>**Commercial Litigation Branch**<br>**Civil Division**<br>**Department of Justice**<br>**PO Box 480**<br>**Ben Franklin Station**<br>**Washington, D.C. 20044**<br>**Tele: 202-598-7547**<br>**Fax: 202-305-7644**<br>**james.poirier@usdoj.gov** |
| **August 15, 2023** | **Attorneys for Defendant** |

# TABLE OF CONTENTS

**PAGE**

I.    The Court Should Not Assume Hypothetical Jurisdiction Over Contract Claims ................................................................................2

II.    CEHE Has Failed To Prove The Existence Of Any Federal Contract ..........................................................................................6

    A.    CEHE Seeks To Rely Upon Dicta ....................................................6

    B.    There Was No Mutual Intent To Contract .........................................9

        1.    Congress Imposes Terms And Conditions In Spending For Federal Employment Without Creating A Contract ..............................................11

        2.    Congress Imposes Terms And Conditions In Spending For The General Welfare Without Creating A Contract ..............................................14

    C.    CEHE Makes Other Flawed Arguments ...........................................17

III.    CEHE Failed To Plausibly Plead Any Taking Claim ...................................18

IV.    CEHE Failed To Plausibly Plead Any Illegal Exaction Claim.....................20

IV.    CEHE Failed To Demonstrate Jurisdiction To Consider Its Fiduciary Duty Claims ...............................................................21

CONCLUSION.......................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**CASES** **PAGE(s)**

*Acceptance Insurance Companies, Inc. v. United States,*
    583 F.3d 849 (Fed. Cir. 2009) ................................................................. 18

*Adair v. United States,*
    208 U.S. 161 (1908) .............................................................................. 12

*Aerolineas Argentinas v. United States,*
    77 F.3d 1564 (Fed. Cir. 1996) ................................................................ 20

*Aetna Casualty and Surety Company v. United States,*
    655 F.2d 1047 (Ct. Cl. 1981) ............................................................... 3, 5

*American Bankers Association v. United States,*
    932 F.3d 1375 (Fed. Cir. 2019) ......................................................*passim*

*Armstrong v. United States,*
    364 U.S. 40 (1960) ................................................................................ 19

*Army and Air Force Exchange v. Sheehan,*
    456 U.S. 728 (1982) .........................................................................*passim*

*Barnes v. United States,*
    150 F.Supp. 317 (Ct. Cl. 1957) ......................................................... 13, 16

*Bates v. United States,*
    450 F.2d 886 (Ct. Cl. 1971) .................................................................... 8

*Bell v. Hood,*
    327 U.S. 678 (1946) ................................................................................ 5

*Black & Decker Disability Plan v. Nord,*
    538 U.S. 822 (2003) .............................................................................. 18

*Boeing Company v. United States,*
    968 F.3d 1371 (Fed. Cir. 2020) .............................................................. 20

*Bowen v. Massachusetts,*
    487 U.S. 879 (1988) .............................................................................. 19

*Bowen v. Michigan Academy of Family Physicians,*
    476 U.S. 667 (1986) .............................................................................. 19

*Bowen v. Public Agencies Opposed To Social Security Entrapment,*
    477 U.S. 41 (1986)............................................................. 11, 15

*Branch v. United States,*
    69 F.3d 1571 (Fed. Cir. 1995)............................................ 19

*Brecht v. Abrahamson,*
    507 U.S. 619 (1993)........................................................... 7, 8

*Brown v. Legal Foundation of Washington,*
    538 U.S. 216 (2003)........................................................... 19

*Cacciapalle v. United States,*
    148 Fed. Cl. 745 (2020)..................................................... 21

*Capron v. Van Noorden,*
    6 U.S. 126 (1804)............................................................... 3

*Casitas Municipal Water District v. United States,*
    708 F.3d 1340 (Fed. Cir. 2013).......................................... 8

*Central Virginia Community College v. Katz,*
    546 U.S. 356 (2006)........................................................... 8

*Chu v. United States,*
    773 F.2d 1226 (Fed. Cir. 1985).......................................... 14

*City of Milwaukee v Illinois and Michigan,*
    451 U.S. 304 (1981)........................................................... 18

*Cleveland Chair Company,*
    557 F.2d 244 (Ct. Cl. 1977)............................................... 22

*Cohens v. Virginia,*
    19 U.S. 264 (1821)............................................................. 9

*Columbus Regional Hospital v. United States,*
    990 F.3d 1330 (Fed. Cir. 2021).......................................... 2

*Dodge v. Board of Education,*
    302 U.S. 74 (1937)............................................................. 15, 16

*Edelman v. Jordan,*
    415 U.S. 651 (1974)........................................................... 7, 8

*Embry v. United States,*
    100 U.S. 680 (1879)........................................................... 12

iii

*Ex parte Curtis*,
106 U.S. 371 (1882).................................................................................................12

*Fair v Kohler Die & Specialty Company*,
228 U.S. 22 (2013)...................................................................................................5

*Fairholme Funds, Inc. v. United States*,
26 F.4th 1274 (Fed. Cir. 2022) ..............................................................................22

*Insurance Corp. Of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S 694 (1982) ................................................................................................18

*James M. Ellett Construction Company v. United States*,
93 F.3d 1537 (Fed. Cir. 1996)...............................................................................17

*Joplin Mercantile Co. v. United States*,
236 U.S. 531 (1915)............................................................................................8, 9

*K-Con Building Systems v. United States*,
778 F.3d 1000 (Fed. Cir. 2015) .............................................................................17

*Keim v. United States*,
177 U.S. 290 (1900)...............................................................................................12

*Kokkonen v. Guardian Life Ins. Co. of America*,
511 U.S. 375 (1994) ................................................................................................9

*Lawrenson v. United States*,
153 F.Supp. 790 (Ct. Cl. 1957) .............................................................................15

*MacFarland v. Bieber*,
32 App.D.C. 513 (1909) ........................................................................................14

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*,
298 U.S. 178 (1936)................................................................................................3

*Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*,
341 U.S. 246 (1951)................................................................................................5

*National American Insurance Company v. United States*,
498 F.3d 1301 (Fed. Cir. 2007)..........................................................................6, 7

*National Railroad Passenger Corporation v. Atchison*,
470 U.S. 451 (1985)...............................................................................................11

*Topeka and Santa Fe Railway Company*,
470 U.S. 451 (1985).........................................................................................10, 16

iv

*Newby v. United States,*
    57 Fed. Cl. 283 (2003) ................................................................................. 21

*Olatunji v. Ashcroft,*
    387 F.3d 383 (4th Cir. 2004) ........................................................................ 8

*Palafox Street Associates, L.P. v. United States,*
    114 Fed. Cl. 773 (2014) .............................................................................. 18

*Park Properties Associates, L.P. v. United States,*
    916 F.3d 998 (Fed. Cir. 2019) ................................................................. 4, 5

*Pennie v. Reis,*
    132 U.S. 464 (1889) .................................................................................... 14

*Powell v. McCormack,*
    395 U.S. 486 (1969) ...................................................................................... 7

*Reynolds v. Army & Air Force Exch. Serv.,*
    846 F.2d 746 (Fed. Cir. 1988) ................................................................. 3, 5

*Richardson v. Belcher,*
    404 U.S. 78 (1971) ...................................................................................... 15

*San Juan City College, Inc. v. United States,*
    58 Fed. Cl. 26 (2003) .................................................................................... 6

*San Juan City College, Inc. v. United States,*
    391 F.3d 1357 (Fed. Cir. 2004) ............................................................... 1, 6

*Steel Company v. Citizens for a Better Environment,*
    523 U.S. 83 (1998) ..................................................................................... 4, 5

*Troutman v. United States,*
    51 Fed. Cl. 527 (2002) ..................................................................... 13, 14, 17

*United States v. Ewing,*
    184 U.S. 140 (1902) .................................................................................... 12

*United States v. Hartwell,*
    73 U.S. 385 (1867) ...................................................................................... 12

*United States v. Hopkins,*
    427 U.S.123. (1976) .................................................................................... 13

*United States v. McLean,*
    95 U.S. 750 (1877) ................................................................................ 12, 13

*United States v. Moore,*
 130 F.3d 1414 (10th Cir. 1997) ................................................................... 8

*United States v. Sherwood,*
 312 U.S. 584 (1941) .................................................................... 3, 4, 5, 6

*United States v. Tapia-Escalera,*
 356 F.3d 181 (1st Cir. 2004) ....................................................................... 8

*United States v. Testan,*
 424 U.S. 392 (1976) ............................................................................ 4, 19

*United States v. Verdier,*
 164 U.S. 213 (1896) ..................................................................................... 12

*United States v. Vilas,*
 124 U.S. 86 (1888) ........................................................................................ 12

*United States v. Wickersham,*
 201 U.S. 390 (1906) ..................................................................................... 12

*Virgin Islands Port Authority v. United States,*
 922 F.3d 1328 (Fed. Cir. 2019) .................................................................. 20

*Webb's Fabulous Pharmacies, Inc. v. Beckwith,*
 449 U.S. 155 (1988) ..................................................................................... 19

**Statutes**

28 U.S.C. § 1491 ...................................................................................... 3, 21

41 U.S.C. § 7102(a)(2) ............................................................................... 17

**Regulations**

34 C.F.R. § 668.162(d)(2) ........................................................................... 21

48 C.F.R. § 1.602-3 ..................................................................................... 18

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CENTER FOR EXCELLENCE IN HIGHER EDUCATION, INC., | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 22-1732C |
| THE UNITED STATES, | ) ) | (Senior Judge Smith) |
| Defendant. | ) ) | |

**DEFENDANT'S REPLY**
**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT,**
**AND, IN THE ALTERNATIVE, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, the United States, respectfully submits this reply to the response to our motions filed by plaintiff, Center For Excellence In Higher Education, Inc. (CEHE). *See* Response, July 7, 2023, ECF No. 18. We have abandoned our motion for summary judgment to simplify the arguments.

The principal issue in this case is whether CEHE's various temporary provisional program participation agreements and provisional program participation agreements are contracts. They are not. These agreements are merely part of a regulatory scheme established by Congress to direct its spending to specific purposes. Because CEHE has failed to demonstrate a contract, the Court does not possess jurisdiction to consider CEHE's contract claims.

In support of CEHE's allegations that its agreements were contracts, CEHE relies heavily upon statements by the Federal Circuit in an earlier case referring to a program participation agreement as a contract. *See San Juan City College, Inc. v. United States,* 391 F.3d 1357 (Fed. Cir. 2004). Those statements were mere *dicta*; they do not bind the Court here.

It is undisputed that CEHE must demonstrate that it satisfies four elements to prove the existence of a Federal contract. As a matter of law, CEHE cannot prove mutual intent to contract because the relevant statutes demonstrate conclusively that program participation agreements were part of a regulatory scheme to direct spending. For the same reason, other alleged agreements made in the course of program administration cannot be contracts.

Further, CEHE fails to state a plausible claim that the United States took its contract rights for public use without compensation, in violation of the Fifth Amendment to the United States Constitution. Because CEHE cannot demonstrate any contract, it cannot allege that it has a property interest in its contract for purposes of the Takings Clause. CEHE also fails to state a plausible claim of a physical taking of its guarantee funds because there can be no physical taking of a financial guarantee voluntarily given, and because CEHE and the United States both have rights relating to the guarantee fund.

CEHE fails to state a plausible claim that the United States illegally exacted money by failing to reimburse CEHE for money credited to its students (HCM2 funds) because CEHE fails to identify any violation of law.

CEHE's breach of fiduciary duty claim is a tort claim that this Court lacks jurisdiction to consider. Assuming for the sake of argument that such a claim may be based upon a contract, the Court lacks jurisdiction because CEHE cannot demonstrate any contract.

I.    The Court Should Not Assume Hypothetical Jurisdiction Over Contract Claims

CEHE does not expressly address the standard for establishing jurisdiction, but CEHE relies upon a case holding that jurisidiction is established merely by making a non-frivolous allegation that a contract exists. *See Columbus Regional Hospital v. United States,* 990 F.3d 1330, 1341 (Fed. Cir. 2021). This has the practical effect of moving the determination of

whether a contract exists from a jurisdictional issue to a merits issue.  This approach is contrary to binding precedent.

One of the oldest legal doctrines in our country is that a court should first examine its jurisdiction.  *E.g., Capron v. Van Noorden*, 6 U.S. 126, 127 (1804) (failure to determine diversity jurisdiction was a failure of the court; judgment reversed).  Where Congress has created jurisdiction dependent on facts, a court has the authority and duty to consider jurisdictional facts:

> The authority which the statute vests in the court to enforce the limitations of its jurisdiction *precludes the idea that jurisdiction may be maintained by mere averment* or that the party asserting jurisdiction may be relieved of his duty by any formal procedure. If his allegations of jurisdictional fact are challenged by his adversary in any appropriate manner, *he must support them by competent proof.*  And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations *by a preponderance of evidence.*

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936) (italics added) (non-frivolous allegations that plaintiff's volume of business in Indiana was vast did not prove that plaintiff's cost to acquire needed Indiana permits would exceed $3,000) (diversity jurisdiction).

This Court possesses jurisdiction to consider claims arising from a Federal contract.  28 U.S.C. § 1491 (Tucker Act).  Where a plaintiff cannot prove the existence of a contract, its contract claim must be dismissed for lack of jurisdiction.  *United States v. Sherwood,* 312 U.S. 584, 588 (1941) (no jurisdiction because no contract existed between the United States and the creditor of a Federal contractor); *Army and Air Force Exchange v. Sheehan,* 456 U.S. 728, 736-738, 741 (1982) (no jurisdiction because no contract) (regulations did not create implied in fact contract); *Aetna Casualty and Surety Company v. United States,* 655 F.2d 1047, 1052-1054 (Ct. Cl. 1981) (no jurisdiction over contract claims because no express or implied contract); *Reynolds*

*v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747-748 (Fed. Cir. 1988) (where jurisdictional

fact of whether a contract existed was challenged by the United States, plaintiff had the burden

of proving the existence of a contract by a preponderance of the evidence) (case remanded

because trial court misunderstood regulations that permitted employment by contract as well as

employment by appointment); *Park Properties Associates, L.P. v. United States,* 916 F.3d 998,

1002-1006 (Fed. Cir. 2019) (no jurisdiction because plaintiff failed to prove the existence of a

contract, *citing McNutt*) ("Whether a contract exists is a mixed question of law and fact.").

Since the Supreme Court's decision in *McNutt*, a doctrine of hypothetical jurisdiction

developed in various circuits concerning certain cases "arising under" a Federal statute:

> This is essentially the position embraced by several Courts of
> Appeals, which find it proper to proceed to the merits question,
> despite jurisdictional objections, at least where (1) the merits
> question is more readily resolved, and (2) the prevailing party on
> the merits would be the same as the prevailing party were
> jurisdiction denied.

*Steel Company v. Citizens for a Better Environment,* 523 U.S. 83, 93 (1998) (called "doctrine of

hypothetical jurisdiction").  The Supreme Court rejected hypothetical jurisdiction.  *Id.* at 94-95

(court must determine its jurisdiction before proceeding to the merits).  Where a plaintiff alleges

a claim arising under a Federal statute, jurisdiction is established whenever a non-frivolous claim

puts the meaning of that statute in dispute.  *Id.* at 89.

It appears that the *Columbus* decision seeks to draw upon the standard for determining

jurisdiction when the violation of a statute or the Constitution is alleged, but there is a vital

difference:  statutes and the Constitutiion are publicly available legal authorities.  In contrast,

whether a contract exists as legal authority for a claim is not publicly known.  Indeed, the

existence of a contract is subject to challenge and adjudication.  *E.g., United States v. Sherwood,*

312 U.S. at 588.  The Tucker Act is a publicly known statute, and provides a waiver of sovereign

immunity, but it is not the legal source for any claim. *E.g., United States v. Testan,* 424 U.S. 392, 398 (1976). Thus, the *Columbus* decision would move the determination of a jurisdictional requirement – the existence of a Federal contract -- to a merits consideration. This is contrary to binding precedent. *E.g., Steel,* 523 U.S. at 93.

Just as importantly, the *Columbus* decision is contrary to binding precedent requiring proof of a contract in order to establish jurisdiction to consider contract claims pursuant to the Tucker Act. *E.g., Sherwood,* 312 U.S. at 588; *Army and Air Force Exchange,* 456 U.S. at 736-738, 741; *Aetna,* 655 F.2d at 1052-1054; *Reynolds*, 846 F.2d at 747-748; *Park,* 916 F.3d at 1002-1006. *Columbus* failed to distinguish, or even mention, this binding precedent.

*Columbus* cited three Supreme Court cases, but all are inapposite. *See The Fair v Kohler Die & Specialty Company,* 228 U.S. 22 (2013); *Bell v. Hood,* 327 U.S. 678 (1946); *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.,* 341 U.S. 246 (1951). None of these cases involve the Tucker Act, and all of these cases stand for the unremarkable proposition that it is not necessary to state a claim upon which relief may be granted in order to invoke the jurisdiction of a Federal court. *The Fair,* 228 U.S. at 24 (defendant's pleading that it had satisfied the patent law requirements alleged in the complaint did not demonstrate that jurisdiction for the claim was lacking); *Bell,* 327 U.S. at 680-682 (district court has jurisdiction to consider claims arising under the United States Constitution or Federal statutes); *Montana-Dakota*, 341 U.S. at 249 (where plaintiff identifies a Federal statute as the legal authority for its claim, there is jurisdiction, even if the complaint fails to state a claim upon which relief may be granted). In each of these cases, jurisdiction is predicated upon a statute or the Constitution. The existence of the legal source is uncontested, and jurisdiction is established whenever a non-frivolous claim puts the meaning of the statute or Constitution in dispute. *Steel,* at 89. In contrast to the three

cases cited in *Columbus*, the existence of the legal source underpinning the claim – a Federal contract – is sometimes disputed in Tucker Act cases.

To establish juridiction, CEHE must prove the existence of a Federal contract. *E.g., Sherwood,* 312 U.S. at 588; *Army and Air Force Exchange,* 456 U.S. at 736-738, 741.

II.    <u>CEHE Has Failed To Prove The Existence Of Any Federal Contract</u>

CEHE has failed to prove that a program participation agreement is a contract. As a matter of law, a program participation agreement cannot be a contract because the relevant statutes demonstrate that there was no mutual intent to contract. The same statutes prove that any agreements made by Education during program administration were also not contracts.

A.    <u>CEHE Seeks To Rely Upon *Dicta*</u>

In its response, CEHE relies upon *dicta* in the *San Juan* case in an effort to prove that a program participation agreement is a contract. Response, at 19, 21, 25; *see San Juan*, 391 F.3d at 1360-1362. CEHE admits that there was no live dispute in *San Juan* about whether a contract had been formed, Response, at 19-20,[1] but CEHE nonetheless contends that the references to a contract in *San Juan* are binding. *Id.* at 19 (alleging that there could have been no issue of whether damages were available for contract breach in *San Juan* without a contract; therefore references to a contract were a "necessary and central element" to the holding that damages were available). CEHE is mistaken.

CEHE cites *National American Insurance Company v. United States,* 498 F.3d 1301 (Fed. Cir. 2007), for the proposition that a statement cannot be *dicta* if that statement was

---

[1]    *See San Juan City College, Inc. v. United States,* 58 Fed. Cl. 26, 27 (2003) ("Defendant concedes, however, that the agreement functions as a legally-binding contract."); *see also* Brief of Appellant, *19, 2003 WL 24305634 (Fed. Cir. November 28, 2003) ("it has never been in dispute . . . that the PPA at issue in this case is a legally binding contract between the parties").

necessary to the decision in some general sense.  However, CEHE has misconstrued the holding of *National American*.  In *National American,* the Federal Circuit found that a statement in an earlier decision that a payment bond surety "has no enforceable rights against the government" ***was dicta*** because the legal issue had not been decided in the earlier case, and so the quoted statement had not been necessary to the holding.  *National American,* 498 F.3d 1306.[2]  However, CEHE goes beyond the holding of *National American,* and argues that the inverse is also true: any statement *necessary* to the decision in some sense ***cannot be dicta***.  Response, at 19. CEHE's contention is not supported by *National American*, and its contention is inconsistent with binding precedent in two separate ways.

First, even where a court expressly relies upon a legal ruling in the course of reaching another legal issue, the reliance on the first ruling is *dicta* unless the court discusses its legal reasoning:

> Although we have applied the *Chapman* standard in a handful of federal habeas cases, [citations to four previous Supreme Court cases decided between 1968 and 1991 omitted], we have yet squarely to address its applicability on collateral review.  Petitioner contends that we are bound by these habeas cases, by way of *stare decisis* . . . But since we have never squarely addressed the issue, and have at most assumed the applicability of the *Chapman* standard on habeas, we are free to address the issue on the merits.

*Brecht v. Abrahamson,* 507 U.S. 619, 630-631 (1993) (bracket added) (*Chapman* standard *necessary* to four prior habeas decisions, but not binding precedent); *accord Edelman v. Jordan,* 415 U.S. 651, 670 (1974) (rejection of 11th Amendment defense in same circumstances was *necessary* to an earlier decision, but still not binding precedent) ("This Court, while affirming the judgment, did not in its opinion refer to or substantively treat the Eleventh Amendment

---

[2]  Indeed, this is a common form of *dicta*.  *E.g., Powell v. McCormack,* 395 U.S. 486, 519 n. 40 (1969).

argument."); *see Central Virginia Community College v. Katz,* 546 U.S. 356, 363 (2006) (even though both the majority and the dissent in a prior decision agreed about how the majority's holding concerning the 11th Amendment in that earlier case would affect bankruptcy law, bankruptcy law was not in dispute in the earlier case, and so the statements were mere *dicta*).

In *San Juan,* the Federal Circuit did not address any dispute about whether there was a contract – much less discuss the four necessary elements of unambiguous offer and acceptance, mutual intent to contract, authority and consideration.  Thus, the references to a contract in *San Juan* are mere *dicta*.  *Brecht,* 507 U.S. at 630-631; *Edelman,* 415 U.S. at 670.

Second, where the parties agree concerning an issue, no dispute is presented to the court, and therefore any ruling on the agreed issue is *dicta.  E.g., Joplin Mercantile Co. v. United States,* 236 U.S. 531, 538 (1915) (prior ruling was *dicta* because no dispute was before the Court); *Olatunji v. Ashcroft*, 387 F.3d 383, 386-387 (4th Cir. 2004) (language in an earlier Supreme Court decision based upon a concession by the government was *dicta*); *United States v. Tapia-Escalera,* 356 F.3d 181, 187 n.7 (1st Cir. 2004) (five prior decisions accepted a statutory interpretation favoring a criminal defendant, but statements in all cases were *dicta* because the government had conceded the legal point); *United States v. Moore,* 130 F.3d 1414, 1419 n.4 (10th Cir. 1997) (prior ruling that the government must prove actual possession of an amount of drugs when applying a sentencing guideline was *dicta* because there had been no live dispute) ("This concession by the defendant confirms our conclusion that the court's discussion in Footnote 4 is *dicta*."); *see Casitas Municipal Water District v. United States,* 708 F.3d 1340, 1353 (Fed. Cir. 2013) (statements in a previous decision about the nature of plaintiff's property interest in water were *dicta* because based in part upon Government concessions); *Bates v. United States,* 450 F.2d 886, 890-891 (Ct. Cl. 1971) (where the parties agreed who was permitted

to authorize overtime under the regulations, any analysis of the regulations would be *dicta*).

Indeed, even where a prior ruling has been stated emphatically, the statement remains mere *dicta* where there had been no live dispute in that case. *E.g., Joplin,* 236 U.S. at 538 ("The declaration upon the subject in 225 U.S., at p. 681, was *based upon a concession by the government*") (italics added) (prior ruling that a statute had been impliedly repealed was based upon a concession, and so mere *dicta*); *see Ex Parte Webb,* 225 U.S. 663, 681 (1912) (emphatically stating that a Federal statute had been impliedly repealed).

In *San Juan,* the United States conceded that the program participation agreement was a contract; thus, the Federal Circuit's references to a contract were mere *dicta. E.g., Joplin,* 236 U.S. at 538.

The *dicta* in *San Juan* does not bind this Court. *E.g., Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 379 (1994) (*dicta* is not binding); *Cohens v. Virginia,* 19 U.S. 264, 399-402 (1821) (same).

B.    There Was No Mutual Intent To Contract

Beyond insisting that *San Juan* is binding precedent, CEHE offers little argument to support its contention that its various temporary provisional program participation agreements and provisional program participation agreements were contracts. *See* Response, at 18-27. Most importantly, CEHE fails to demonstrate mutual intent to contract, a required element of a Federal contract. *E.g., American Bankers Association v. United States,* 932 F.3d 1375, 1380-1381 (Fed. Cir. 2019) (four necessary elements of a Federal contract).

In our moving brief, we emphasized that there could be no contract in this case because there was no mutual intent to contract.[3]  We demonstrated that Congress intended program participation agreements to be eligibility certifications for a spending program, and that Congress intended for Education to continually monitor and regulate the participation of schools who applied for eligibility.  Motion, at 5-7, March 24, 2023, ECF No. 12 (describing 1980 Act); *id.* at 7-10 (describing 1992 Act and subsequent amendments); *id.* at 29-35 (program participation certifications are part of the regulatory scheme, and not contracts).

In response, CEHE insists that the word "agreement" in the statute must mean a contract. Response, at 25 ("eligibility is expressly conditioned on entry into an agreement").  However, CEHE quickly moved away from arguing that the statutory scheme was relevant in any way to the issue of whether a contract had been formed.  *Id.* ("more fundamentally, CEHE is not relying on the statutes to evidence a contract").

Rather than closely examining the relevant statutes at issue in this case, CEHE shifts to a more general argument that *any* agreement reached in the course of *any* statutory program that imposes terms and conditions *must* be a contract:

> It is settled law in this Court that when an agency executes an agreement to provide federal assistance under certain terms and conditions, *it agrees to be contractually bound* by the terms.

---

[3]  In our moving brief, we demonstrated that there was an application process for program certification, rather than an offer and acceptance to contract.  *E.g.,* Motion, at 8 (Congress required standard application form); *id.* at 11 (quoting correspondence from CEHE referencing "application requirements."  Similarly, CEHE recognized in its complaint that its financial guarantee was merely a program requirement.  Complaint, ¶ 44; *see* Motion, at 12; *see also id.*, at 8-9 (Congress required financial guarantees as a condition of program eligibility).

As discussed below, CEHE has failed to show that any person with contracting authority issued any agreement – as CEHE implicitly conceded in its demand for discovery.  *See* Response App. at 13-14.  Also discussed below, CEHE's suggestion that it offered loan origination services to Education as consideration for a contract merely raises another basis for challenging jurisdiction.

Response, at 25 (italics added).  CEHE is mistaken.  Congress can authorize agreements without authorizing contracts.  *E.g., National Railroad Passenger Corporation v. Atchison, Topeka and Santa Fe Railway Company,* 470 U.S. 451, 461-462, 465-471 (1985) (rejecting contract allegations, and enforcing statutory requirements) (railroads made payments and took other actions as part of an agreement with Amtrak, but no contract was formed); *Bowen v. Public Agencies Opposed To Social Security Entrapment,* 477 U.S. 41, 55 (1986) (rejecting contract allegations, and enforcing statutory requirements) (States participating in social security program no longer permitted to withdraw from the spending program); *American Bankers,* 932 F.3d at 1382 (rejecting contention that the word "subscribe" in the statute was a term of art referring to a contract offering the sale of stock).  In this case, the pertinent question is *what Congress intended* by enacting the statutes at issue, and CEHE has avoided that question entirely.

In order to appreciate the significance of the cases cited by the parties, we respectfully suggest that it is helpful to put the cases into a broader historical perspective.  At its foundation, *this case is about the constitutional powers* of Congress, and many of the fundamental principles at issue were decided long ago.  Many of the first cases to decide Congress's authority to limit spending without entering into contracts involved Federal employment.  Subsequently, similar issues were raised in connection with other public welfare spending.

    1.    Congress Imposes Terms And Conditions In Spending
For Federal Employment Without Creating A Contract

In the 19th century, Congress placed limits on spending for Federal employees without creating a contract:

> His claim rests *not upon any contract* with the government, either
> express or implied, but upon acts of Congress providing for a
> regulation of the salaries of deputy-postmasters.

*United States v. McLean,* 95 U.S. 750, 751 (1877) (italics added) (interpreting various statutes to determine salary owed).[4]  The authority to do so was rooted in various constitutional provisions. *See United States v. Hartwell,* 73 U.S. 385, 394 n. 9 (1867) (determining that a clerk was an "officer" for the purposes of a criminal statute, and citing the appointment clause of the Constitution); U.S. Constitution, Article 1, Section 2, Clause 2 (appointment clause); U.S. Constitution, Article 1, Section 8, Clause 1 (power to tax and spend for the common defense and general welfare); U.S. Constitution, Article 1, Section 8, Clause 18 (power to make laws necessary and proper to carry out authorities of Article 1).

The most frequent terms and conditions limiting spending for employee services in the 19th century concerned salary and the authority to terminate appointments.[5]  However, Congress also imposed other terms and conditions for Federal employment.[6]

---

[4]  The significance of this decision is highlighted by the fact that almost all employees were considered to be hired by contract during this century.  *See e.g.*, *Adair v. United States,* 208 U.S. 161, 171-176 (1908) (describing liberty to make "at will" employment contracts).

[5]  *E.g., Embry v. United States,* 100 U.S. 680, 683 (1879) (interpreting "tenure-of-office act" of 1867 to determine whether salary was owed to suspended postmaster); *United States v. Vilas,* 124 U.S. 86, 97 (1888) (enforcing statutory requirement to submit records about the volume of mail handled; denying adjustment to a postmaster salary); *United States v. Verdier*, 164 U.S. 213, 215-220 (1896) (determining right to statutory interest on award of postmaster salary pursuant to act of 1883 permitting retroactive adjustment of certain salaries); *United States v. Ewing,* 184 U.S. 140, 141-151 (1902) (applying 1886 act amending the 1883 act for retroactive adjustment of postmaster salaries); *United States v. Wickersham,* 201 U.S. 390, 393-400 (1906) (awarding salary to clerk dismissed in violation of a regulation implementing the 1883 civil service act); *Keim v. United States,* 177 U.S. 290, 296 (1900) (finding 1883 act gave employee (hired by a veteran's preference) no right to challenge a dismissal for inefficiency).

[6]  *See Ex parte Curtis,* 106 U.S. 371, 372-374 (1882) (criminal statute passed in 1876 prohibiting Federal employees from receiving money "for political purposes" was constitutional) (citing Article 1, Section 8 in support of the authority of Congress to make conditions on spending for services, and describing a number of statutes enacted between 1791 and 1870 that regulated conflict of interest in employment).

Congress continued to place terms and conditions upon spending for employee services into the 20th century *without creating contracts.*[7] Congress can, and sometimes does, authorize contracts for labor services, but where Congress has authorized spending for an appointment, no contract can be formed. *Army and Air Force Exchange,* 456 U.S. at 735-741 (no evidentiary hearing necessary to consider contract elements where plaintiff was appointed to his position); *see United States v. Hopkins,* 427 U.S.123. 128-129 (1976) (where statutes and regulations authorize employment by either appointment or contract, it is necessary to determine whether the employee was appointed).

Where the congressional spending is for an appointed position, no express or implied in fact contract related to an employee can be grafted onto the terms of employment. *Army and Air Force Exchange,* 456 U.S. at 735-741; *Barnes,* 150 F.Supp. at 318-320 (appointed employees could not allege implied in fact contract); *Troutman,* 51 Fed. Cl. at 533 (no jurisdiction to consider implied in fact contract alleged by appointed employee).

The same reasoning supports the conclusion that no express or implied in fact contract related to student aid spending (such as the agreement alleged by CEHE regarding its financial guarantee obligations) can be contracts because Congress's authority to place limits on student aid spending is broad and exclusive (unless an exception is expressly authorized) for the same constitutional reasons supporting the authority of Congress to place terms and conditions on spending for employment without creating contracts. *See e.g., United States v. McLean,* 95 U.S.

---

[7] *E.g., Barnes v. United States,* 150 F.Supp. 317, 318-320 (Ct. Cl. 1957) (printers who took demotions to qualify for a training program had no claim for breach of contract when the training program was cancelled); *Troutman v. United States,* 51 Fed. Cl. 527, 533 (2002) (no jurisdiction to consider claim that agency made implied contract to obtain waiver from the Office of Personnel Management) ("if the plaintiff was employed by virtue of an appointment, rather than by virtue of an employment contract, this Court lacks jurisdiction") (reviewing cases).

at 751; *Army and Air Force Exchange,* 456 U.S. at 741 (contract claims dismissed for lack of jurisdiction because employees were appointed); *Chu v. United States,* 773 F.2d 1226, 1228-1229 (Fed. Cir. 1985) ("under the controlling statutes, residency training was only authorized for and available to federal employees") (implied in fact contract claim dismissed for lack of jurisdiction); *Troutman,* 51 Fed. Cl. at 533 (no jurisdiction to consider contract claims).

2.    Congress Imposes Terms And Conditions In Spending
 For The General Welfare Without Creating A Contract

In the 19th century, Congress also placed terms and conditions on spending for the general welfare without creating contracts. *E.g., MacFarland v. Bieber,* 32 App.D.C. 513, 517, 520-521 (1909).  In *MacFarland*, payroll deductions were taken from the pay of a fireman, Mr. Bieber, to support a Federal fireman's relief fund.  Mr. Bieber retired, and began to collect disability benefits from the fund.  Subsequently, a Federal statute required periodic medical examinations.  Mr. Bieber ignored the requirement, and his benefits were cancelled.  Mr Bieber asserted that he had a contract right to insurance benefits, *id.* at 517, but the predecessor to the United States Court of Appeals for District of Columbia Circuit disagreed.  *Id.* at 520-521; *see Pennie v. Reis,* 132 U.S. 464, 471 (1889) (California statute requiring payroll deductions for "Police Life and Health Insurance Fund" was repealed before plaintiff's death, and benefits were denied) ("There was no contract on the part of the state").

In the 20th century, Congress also placed terms and conditions on spending for the general welfare without creating contracts, even when the recipient made contributions to the spending program:

> The fact that social security benefits are financed in part by taxes on an employee's wages does not in itself limit the power of Congress to fix the levels of benefits under the Act or the conditions upon which they may be paid.  *Nor does an expectation*

- 14 -

> *of public benefits confer a contractual right* to receive the expected
> amounts.

*Richardson v. Belcher,* 404 U.S. 78, 80 (1971) (italics added) (Federal disability benefits reduced

based upon disabled worker's receipt of State worker compensation benefits); *accord Lawrenson*

*v. United States,* 153 F.Supp. 790, 791-792 (Ct. Cl. 1957) (compulsory employee contributions

did not create a contract right to an annuity based upon 1946 act, where the act was amended in

1948 to provide for later eligibility); *see Dodge v. Board of Education,* 302 U.S. 74, 79 (1937)

(state statute) (contributions from teachers to a retirement fund did not create a contract, even

when teachers were induced to retire by the promise of future benefits).

Congress can authorize agreements without authorizing contracts.  *E.g., Bowen v. Public*

*Agencies,* 477 U.S. at 45 ("States enter the System by executing 'an agreement'").  When

determining whether an agreement authorized by a statute is a contract, *it is the intent of*

*Congress* – not the intent of any employee at the agency – that is material to a determination

concerning whether there was a mutual intent to enter a contract:

> For many decades, this Court has maintained that absent some
> clear indication that the legislature intends to bind itself
> contractually, the presumption is that "a law is not intended to
> create private contractual or vested rights but merely declares a
> policy to be pursued until the legislature shall ordain otherwise"
> [*quoting Dodge*, a case involving spending for retirement benefits].
> [Citations omitted.]  This well-established presumption is
> grounded in the elementary proposition that the principal function
> of a legislature is not to make contracts, but to make laws that
> establish the policy of the state.  [Citations omitted.]  Policies,
> unlike contracts, are inherently subject to revision and repeal, and
> to construe laws as contracts when the obligation is not clearly and
> unequivocally expressed would be to limit drastically the essential
> powers of a legislative body.  Indeed, "[t]he continued existence of
> a government would be of no great value, if by implications and
> presumptions, it was disarmed of the powers necessary to
> accomplish the aims of its creation."  [Citations omitted.]  Thus,
> the party asserting the creation of a contract must overcome the
> well-founded presumption, [citation omitted] and we proceed

- 15 -

cautiously both in identifying a contract within the language of a
regulatory scheme and in defining the contours of any contractual
obligation.

*National Railroad Passenger Corp.,* 470 U.S. at 465-466 (brackets added); *accord American*

*Bankers,* 932 F.3d at 1381-1382.

To determine whether statutes authorize contractual obligations, a court must first look to

the language of the statutes.  *Dodge,* 302 U.S. at 78 ("it is of first importance to examine the

language of the statute"); *accord National Railroad Passenger Corp.,* 470 U.S. at 466; *American*

*Bankers,* 932 F.3d at 1382.  As demonstrated in our moving brief, Congress never intended

program participation agreements to be contracts.  Instead, Congress intended program

participation agreements to be eligibility certifications, and Congress intended for Education to

continually monitor and regulate the participation of schools who applied for eligibility.  Motion,

at 5-7 (describing 1980 Act); *id.* at 7-10 (describing 1992 Act and subsequent amendments); *id.*

at 29-35 (program participation certifications are part of the regulatory scheme, and not

contracts).

CEHE has not responded to our statutory analysis in any meaningful way.  Thus, CEHE

has failed to demonstrate a mutual intent to contract, and failed to demonstrate that program

participation agreements are Federal contracts.  *E.g., American Bankers,* 932 F.3d at 1382

(where there is no mutual intent to contract, there is no contract).  Where the statutory scheme

does not authorize contracts, agreements made during program administration are not contracts,

and so neither the escrow agreement nor the letters cited by CEHE can be contracts.  *E.g., Army*

*and Air Force Exchange,* 456 U.S. at 735-741 (appointed employees can make no employment

contract); *Barnes,* 150 F.Supp. at 318-320 (appointed employees could not allege implied in fact

contract); *Troutman,* 51 Fed. Cl. at 533 (no jurisdiction to consider implied in fact contract alleged by appointed employee).

    C.    <u>CEHE Makes Other Flawed Arguments</u>

Without a contract, there is no jurisdiction to consider contract claims, and so it is not necessary to reach other issues raised by CEHE. Nonetheless, we will highlight a few points.

CEHE alleges that its temporary provisional program participation agreements and provisional program participation agreements were contracts to perform loan origination services. Response, at 27 ("originate loans on behalf of the Department"). If this were true, then the agreements would be subject to the Contract Disputes Act, 41 U.S.C. § 7102(a)(2), and there would be no jurisdiction in this case because no claim was submitted to a contracting officer. *K-Con Building Systems v. United States,* 778 F.3d 1000, 1005 (Fed. Cir. 2015); *James M. Ellett Construction Company v. United States,* 93 F.3d 1537, 1341-1342 (Fed. Cir. 1996).

Although program participation agreements are not contracts, Congress has authorized Education to enter into certain contracts in connection with its spending program. *E.g.,* Motion, at 31 (contrasting *section 486* of the 1980 Act, authorizing "contracts" for training, *with section 487* of the 1980 Act, requiring program participation agreements). Accordingly, there are contracting officers at Education. However, none of the persons who signed the various temporary provisional program agreements, provisional program agreements, escrow agreement, or letters are contracting officers. With further declarations and documents, we could demonstrate the limits of contracting authority at Education, but this effort is unnecessary at this time. As demonstrated above, as a matter of law, CEHE cannot demonstrate a mutual intent to contract, and so no Federal contract can be formed. *E.g., American Bankers,* 932 F.3d at 1382. For the same reason, the Court should deny CEHE's requests for discovery about contracting

authority and other factual issues; no facts can change the legal conclusion, drawn from the statutes, that there was no mutual intent to contract.

CEHE cites common law ratification to establish authority to contract, Response, at 24, but ratification is possible only where the authority of the governmental official is the only missing contract element. In this case, there is no mutual intent to contract, and so no contract. *E.g., American Bankers,* 932 F.3d at 1382. Furthermore, CEHE makes no effort to demonstrate that it has satisfied the regulatory requirements for ratification. *See* 48 C.F.R. § 1.602-3.[8]

CEHE hints at judicial estoppel, but never expressly asserts a right to judicial estoppel. Response at 20-21. In any event, a plaintiff may not rely upon estoppel to establish Federal jurisdiction. *Insurance Corp. Of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S 694, 702 (1982) ("no action of the parties can confer subject matter jurisdiction upon a federal court . . . principles of estoppel do not apply"); *Palafox Street Associates, L.P. v. United States,* 114 Fed. Cl. 773, 755 (2014) ("Judicial Estoppel Cannot Vest this Court with Subject Matter Jurisdiction).

III.    CEHE Failed To Plausibly Plead Any Taking Claim

CEHE alleges that the United States violated the Fifth Amendment by a *regulatory taking of its contract rights* for the return of money given to Education as a financial guarantee ("escrow funds"), and by a *regulatory taking of contract rights* to money that CEHE credited to students in the expectation of reimbursement (HCM2 funds). Response, at 35-37; *see e.g., Acceptance Insurance Companies, Inc. v. United States,* 583 F.3d 849, 854 (Fed. Cir. 2009)

---

[8] Federal regulations supplant Federal common law. *City of Milwaukee v Illinois and Michigan*, 451 U.S. 304, 313-14 (1981); *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 829-32 (2003).

(elements of a regulatory taking).  As demonstrated above, no contracts were made with CEHE in the course of program administration,[9] and CEHE possessed no contract rights.

In the alternative, CEHA argues that there was a physical taking of its escrow funds. Response, at 37.  The physical taking precedents are inapposite to financial guaranties given to the United States.  *Branch v. United States,* 69 F.3d 1571, 1576-1578 (Fed. Cir. 1995) (no physical taking) (financial guarantee was a lawful requirement, and mere fact that the resulting liability may exceed the value of the guarantee does not support application of physical taking precedents).

*Branch* is binding precedent.  Furthermore, *Branch* is supported by the logic of other cases.  On occasion, a fund of money has been treated as property that can be analyzed pursuant to "physical taking" precedents, but in no case cited by CEHE (or that we have discovered) has such a fund been pledged as a guarantee.  In the leading cases, the plaintiffs had unencumbered property interests in the relevant fund.  *E.g., Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155 (1988) (impleaded fund was owned by debtors); *Brown v. Legal Foundation of Washington,* 538 U.S. 216 (2003) (funds in lawyer accounts owned by clients, and interest on those funds owned by clients).  In the guarantee fund at issue in this case, the United States has a legal right similar to a lien.  *See Armstrong v. United States,* 364 U.S. 40, 40-46 (1960) (where United States and subcontractor had competing liens, even the less valuable lien had some

---

[9]  Congress has provided for judicial review of program decisions in district court pursuant to the waiver of sovereign immunity in the Admnistrative Procedures Act (APA).  *E.g., Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 670-671 (1986); *see Bowen v. Massachusetts,* 487 U.S. 879, 909-910 (1988) (in some cases, a suit pursuant to the APA can have the practical effect of requiring a payment); *see also United States v. Testan,* 424 U.S. at 403-404 ("The respondents, thus, are not entirely without remedy.  They are without the remedies in the Court of Claims of retroactive classification and money damages to which they assert they are entitled.  Additional remedies of this kind are for the Congress to provide and not for the courts to construct").

value).  Accordingly, there can be no physical taking of CEHE's funds because the guarantee funds do not entirely belong to CEHE.

With regard to any other issues, we rely upon the authorities in our moving brief. Motion, at 37-41.

IV.    CEHE Failed To Plausibly Plead Any Illegal Exaction Claim

CEHE alleges that its HCM2 funds were illegally exacted.  Complaint, ¶ 255-258, November 23, 2022, ECF No. 1.  To prove an illegal exaction of money paid on behalf of the United States, a plaintiff must prove that the Government "in obtaining the money, has violated the Constitution, a statute, or a regulation."  *Boeing Company v. United States,* 968 F.3d 1371, 1383 (Fed. Cir. 2020) (jurisdiction established to consider challenge to cost accounting regulation that required payment); *accord Aerolineas Argentinas v. United States,* 77 F.3d 1564, 1572 (Fed. Cir. 1996) ("recovery of monies that the government has required to be paid contrary to law").  Where no violation of law is identified, there is no illegal exaction claim.  *E.g., Virgin Islands Port Authority v. United States,* 922 F.3d 1328, 1333-1334 (Fed. Cir. 2019) (agency acted within its legal authority).

In our moving brief, we demonstrated that CEHE failed to identify any violation of law. Motion, at 42 (two statutes and one regulation cited in complaint contained no requirement violated by any act alleged in the complaint).  CEHE has now abandoned any contention that the statutes and regulation cited in the complaint were violated.  *See* Response, at 31-34.

In its response, CEHE seeks to prove that regulations required CEHE to issue credits to its students in advance of reimbursement by Education, *id.* at 31-33, but, even if true, CEHE fails to demonstrate that Education violated any statute or regulation by requiring advance crediting. The crux of CEHE's claim is not illegal advance crediting; instead CEHE claims Education

illegally exacted money by not reimbursing CEHE.  Complaint, ¶¶ 255-257.  However, in its

response, CEHE fails to identify any statute or regulation that has been violated by Education's

failure to reimburse CEHE to date.  Without any alleged violation, CEHE has failed to plausibly

allege an illegal exaction claim.

It is undisputed that Education sent CEHE instructions about how to properly submit its

HCM2 claim, and that CEHE has ignored those instructions and has refused to submit a proper

application for reimbursement because CEHE considers those instructions too onerous.  *See*

Complaint Doc 1-24, at 3 (instructions); Complaint, ¶ 256 (instructions too onerous); Response,

at 34 (instructions too onerous).  However, this is, at most, an APA claim challenging

Education's administration of its authority.  *E.g.,* 34 C.F.R. § 668.162(d)(2) (authority to

"modify the documentation requirements").  Without alleging a violation of law, CEHE has

failed to state an illegal exaction claim.

With regard to any other issues, we rely upon the authorities in our moving brief.

Motion, 41-43.

IV.     CEHE Failed To Demonstrate Jurisdiction To Consider Its Fiduciary Duty Claims

As demonstrated in our moving brief, most fiduciary duty claims are tort claims outside

the jurisdiction of this Court.  *Newby v. United States,* 57 Fed. Cl. 283, 293-294 (2003); 28

U.S.C. § 1491.  We conceded an exception where statutes create a trust relationship, but CEHE

admits that its claim in not based upon any statute.  Response, at 38.  Thus, this Court lacks

jurisdiction to consider CEHE's fiduciary duty claim.

CEHE argues that its fiduciary duty claims "arise out of a contract," *id*. at 38, citing *dicta*

in a case that itself cited *dicta* in an earlier case.  *See Cacciapalle v. United States,* 148 Fed. Cl.

745, 772-775 (2020) (dismissing fiduciary claim because it sounds in tort); *affirmed in relevant*

part, and reversed in part on other grounds sub nom *Fairholme Funds, Inc. v. United States,* 26 F.4th 1274, 1296- 1299 (Fed. Cir. 2022); *Cleveland Chair Company,* 557 F.2d 244, 247-249 (Ct. Cl. 1977) (assuming the existence of an implied in fact contract under the Uniform Commercial Code (UCC), dismissing claim for interest because no duty arose under the UCC, and, alternatively, because no waiver of sovereign immunity for a claim for interest existed).  Even assuming that a contract could give rise to a fiduciary duty, CEHE has failed to demonstrate any contract in this case.  CEHE's fiduciary duty claims should be dismissed for lack of jurisdiction.

<u>CONCLUSION</u>

For the reasons set forth above, and in our moving brief, we respectfully request that the complaint be dismissed.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/ Elizabeth M. Hosford
ELIZABETH M. HOSFORD
Assistant Director

OF COUNSEL

STEVEN FINLEY                    s/ James W. Poirier
RAZIYA BRUMFIELD             JAMES W. POIRIER
Department of Education        Trial Attorney
                                              Commercial Litigation Branch
                                              Civil Division
                                              Department of Justice
                                              PO Box 480
                                              Ben Franklin Station
                                              Washington, D.C. 20044
                                              Tele:  202-598-7547
                                              Fax:   202- 305-7644
                                              james.poirier@usdoj.gov

August 15, 2023                    Attorneys for Defendant